## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE PHILLIES, a Pennsylvania limited partnership,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>HARRISON/ERICKSON, INCORPORATED, a New York corporation, HARRISON ERICKSON, a partnership, and WAYDE HARRISON and BONNIE ERICKSON,<br><br>　　　　Defendants. | CIVIL ACTION NO. 19-7239<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff The Phillies (hereinafter also referred to as "the Club"), by and through its undersigned counsel, as and for its Complaint against Defendants Harrison/Erickson Incorporated, Harrison Erickson, a partnership, Wayde Harrison, and Bonnie Erickson (collectively referred to as "H/E"), alleges as follows:

## INTRODUCTION

1.　　In the late 1970s, then Phillies Executive Vice President Bill Giles developed a vision for a new Phillies mascot:  He would be green, fat, furry, big-nosed, and instantly accessible to children.  He would be called "the Phillie Phanatic"—the quintessential fanatical Phillies fan.  The Phanatic would engage in audacious slapstick routines, playfully teasing anyone within range of the field or the stands—players, umpires, sportscasters, managers, and fans.

2.      In March 1978, Giles and other Phillies personnel worked with H/E to develop a costume for the Phanatic, providing them with their criteria.  H/E had the costume ready in about 2 weeks, paying various "costumers" $4 an hour to build it, for a total cost of about $2,000.

3.      The Phillies asked the talented Dave Raymond, an intern in its marketing department, to don the costume and to bring it to life.  Raymond debuted the Phanatic at the April 25, 1978 home game.

4.      Raymond and the Phanatic were an instant hit.  By the summer of 1978, H/E itself was acknowledging that Raymond had "developed a fun and sensitive character" and Bonnie Erickson observed that the Phanatic had become "wildly popular."

5.      H/E was paid well for their 2 weeks of work and $2,000 or so of expense.  Under 1978 and 1979 license agreements with The Phillies, they earned over $200,000 by the end of January 1980.

6.      In 1984, well after the Phanatic had become "wildly popular," H/E terminated the 1979 license agreement and used its strong bargaining position to negotiate an assignment ("the 1984 Assignment") of all of H/E's rights for $215,000—about $533,000 in today's dollars.   The 1984 Assignment expressly states that the transfer of these rights is "forever."

7.      Over the last 41 years, the Club has devoted millions of dollars to developing and promoting the Phanatic.  Dave Raymond appeared as the Phanatic thousands of times until his retirement in 1994.  Since then, Tom Burgoyne and others have donned Phanatic costumes thousands of times as well.  Raymond, Burgoyne, and other Phillies employees have developed hundreds of slapstick routines at the ballpark, and made thousands of appearances, many at charity events.

8.      The Club also has developed dozens of new costumes for the Phanatic and creatively modified his appearance in numerous ways.

9.      In addition, the Club has developed scores of giveaways and merchandise items representing the Phanatic.

10.      The Club has also spent millions of dollars promoting the Phanatic via advertising and marketing in traditional, digital, and social media.

11.      The Club is also the owner of numerous trademarks for the name and image of the Phanatic, including numerous incontestable federal registrations in the word mark "PHANATIC" and in designs of the Phanatic character.

12.      All of this was suddenly threatened when The Phillies received a letter from H/E's attorneys in June 2018 purporting to give notice of termination of the 1984 Assignment, notwithstanding H/E's agreement that it would be "forever."  The letter falsely claimed that H/E had "created the copyrighted character" of the Phanatic, and ignored The Phillies' role in designing the Phanatic's costume.  The letter went on to claim that H/E had the right to terminate the 1984 Assignment under Section 203 of the Copyright Act and that, if The Phillies did not negotiate a fifth agreement with H/E, the Club would not be able to "continue to use the Phillie Phanatic" after June 15, 2020.  Since sending that letter, H/E has threatened to obtain an injunction against the Phillies' use of the Phanatic and to "make the Phanatic a free agent" if the Club does not renegotiate the 1984 Assignment and pay H/E millions of dollars.

13.      As described in greater detail below, H/E's effort to deprive The Phillies and its fans of the Phanatic is legally baseless.

14.      First, Section 203 of the Copyright Act gives authors only one right to renegotiate the terms of a license or assignment of copyright rights.  By renegotiating those terms in 1984—

when H/E had full knowledge of the market value of the Phanatic costume—H/E exhausted the single opportunity provided by the Copyright Act to revisit those terms.  Here, H/E renegotiated its agreement with The Phillies twice—first in 1979 and again in 1984—both times after the Phanatic had become, in Bonnie Erickson's words, "enormously popular."  H/E does not have the right to terminate the 1984 Assignment yet again under Section 203 of the Copyright Act.

15.     Second, even if H/E could terminate the agreement it promised would last "forever," it cannot enforce its purported copyright in the Phanatic costume.  That is because H/E fraudulently obtained its copyright registration by representing to the Copyright Office that the Phanatic costume was "an artistic sculpture" rather than a costume.  H/E made that false statement because it knew that, if it had described the work as a costume, the Copyright Office would not have registered it.  As such, even if H/E had the right to terminate any of The Phillies' rights and somehow recapture them, H/E is barred from proceeding against The Phillies with any legal action under the Copyright Act, including its threat to enjoin The Phillies from using the Phanatic.

16.     Third, the Club is a co-author of the Phanatic costume because it contributed expressive content to its design.  The Phillies dictated to H/E distinctive features of the design including its green color, large waistline, and big nose, in addition to designing many aspects of the costume, including the Phanatic's jersey, cap, and leggings.  The parties intended to combine those elements into an integrated costume design.  Accordingly, even if H/E had not already exhausted its one opportunity to recapture rights under Section 203, it cannot recapture sole authorship rights because it is not the sole author of the costume, and it has no right to terminate the Club's rights as a joint author.

17.     Fourth, the Club is the author of the Phanatic character.  The Phillies took a lifeless costume and brought it to life, transforming it into a beloved character.  Without the Club's contributions, the Phanatic would not have been a character at all.  Accordingly, even if H/E had not already exhausted its one opportunity to recapture rights under Section 203, it cannot recapture sole authorship rights because it is not the author of the character and therefore has no right to terminate the Club's rights as author of the Phanatic character.

18.     Fifth, even if H/E were able to terminate pursuant to Section 203 of the Copyright Act, the rights that would revert to H/E are highly limited.  Under Section 203, the right to utilize derivative works prepared before the termination becomes effective does not revert to the author. At great expense, the Club has prepared scores of derivative works of the Phanatic costume, and it has the absolute right to continue using them, notwithstanding H/E's false claim that it can hold up all use of the Phanatic.

19.     Sixth, H/E's threat to make the Phanatic "a free agent" implicates the Lanham Act.  The Club owns incontestable federal trademarks in the Phanatic, including in its design, and the Phanatic marks are famous marks.  Any use by another organization in commerce likely would confuse consumers as to source or sponsorship, as well as dilute the distinctiveness of the Phillies' famous marks, and therefore would violate the Lanham Act.  Accordingly, H/E should be enjoined from making the Phanatic "a free agent."

20.     Seventh, in the alternative, in the event that the Court holds that H/E is somehow permitted to terminate pursuant to Section 203, H/E is liable to The Phillies for breach of the duty of good faith and fair dealing and unjust enrichment.  H/E should not be permitted to retain all of the $215,000 paid to H/E in 1984 while at the same time terminating an agreement that H/E agreed would last "forever."  The portion of the $215,000 paid to H/E that reflects the value

5

of the terminated copyrights from the date of termination to the expiration of the copyrights should be returned to The Phillies.  It would be unjust for H/E to keep the full amount that The Phillies paid for a permanent assignment if the Phillies will have received the benefit of only a 35-year term.

21.     The Club therefore requests that this Court put an immediate end to H/E's effort to hold up The Phillies with its threats of legal action and to make the Phanatic a free agent.  By issuing a declaratory judgment in The Phillies' favor and an injunction against H/E's threatened actions, the Court will ensure that Phillies fans will not be deprived of their beloved mascot of 41 years and that The Phillies' investment of creativity, time, effort, and money in the Phanatic will not be liquidated by H/E.

## PARTIES

22.     The Club is a Pennsylvania limited partnership, having its principal place of business at Citizens Bank Park, One Citizens Bank Way, Philadelphia, Pennsylvania 19148. None of the limited partners reside in New York.

23.     Harrison/Erickson, Incorporated is a New York corporation, having its principal place of business at 62 Pierrepont Street, Brooklyn, New York, 11201.  Harrison/Erickson, Incorporated also does business in this District.

24.     Harrison Erickson is a New York partnership, comprised of partners Wayde Harrison and Bonnie Erickson, that does business in this District.

25.     Wayde Harrison is an individual residing in Brooklyn, New York who does business in this District.

26.     Bonnie Erickson is an individual residing in Brooklyn, New York who does business in this District.

## JURISDICTION AND VENUE

27.     This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. §§ 1331 and 1338(a) because this action arises under the Copyright Act, 17 U.S.C. § 101,

*et seq.*, and the Lanham Act, 15 U.S.C. §§ 1051 *et seq*., in that the claims asserted require

construction of the Copyright Act and Lanham Act.

28.     This Court also has jurisdiction over the subject matter of this action pursuant to

28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy

exceeds $75,000, exclusive of interest and costs.

29.     This Court also has supplemental jurisdiction over pendent and ancillary state law

claims pursuant to 28 U.S.C. § 1367.

30.     An actual controversy exists between The Phillies and H/E.  On June 1, 2018,

H/E's attorneys sent a letter to The Phillies claiming that H/E can terminate The Phillies' rights

in the Phanatic pursuant to 17 U.S.C. § 203.  In subsequent communications, H/E has asserted

that, although 17 U.S.C. § 203(b)(1) clearly provides that a party can continue to utilize

derivative works prepared before termination, that provision somehow does not apply to The

Phillies' numerous expressive contributions to the Phanatic, and that H/E's termination notice

will have the effect of terminating The Phillies' right to use derivative versions of the Phanatic

costume and The Phillies' rights in the Phanatic character.  Accordingly, H/E has asserted that it

is currently exercising purported rights to terminate The Phillies' rights in the Phanatic, including

derivatives, which, if effective, would imminently and adversely affect The Phillies.

31.     In addition, H/E has threatened to sue The Phillies for copyright infringement if

The Phillies "continue to use the Phanatic" and derivatives of the Phanatic after the effective date

of the purported termination.

32.     H/E also has expressed its intention to make the Phanatic a "free agent" —as soon as the purported termination takes effect—that will be sold to another sports team, in violation of The Phillies' trademark rights.

33.     This Court has personal jurisdiction over H/E pursuant to N.Y. C.P.L.R. § 301. Wayde Harrison and Bonnie Erickson are domiciled in Brooklyn, New York. Harrison/Erickson, Incorporated is incorporated in New York, has its principal place of business in New York, and engages in continuous, permanent, and substantial activity in New York. The partnership Harrison Erickson is domiciled in New York and engages in continuous, permanent, and substantial activity in New York.

34.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this district. At the time the relevant agreements between H/E and The Phillies were negotiated and executed, H/E maintained an office in this district at 95 Fifth Avenue, New York, New York. The 1978, 1979, and 1984 agreements were drafted and executed by H/E in this district and sent to The Phillies from this district. The 1979 and 1984 agreements provide that they shall be governed by New York law. In addition, the original Phanatic costume was designed and created, pursuant to the March 1978 agreement, in this district. Personnel from The Phillies visited H/E's Fifth Avenue offices, including visits by Dave Raymond for costume fittings. The Copyright Registration for the Phillie Phanatic also was submitted from this district. H/E made statements to The Phillies regarding their intention to make the Phanatic a "free agent" and to sue The Phillies for infringement from and in this district. Moreover, H/E itself has sought the assistance of the United States District Court for the Southern District of New York by filing suit against The Phillies in a lawsuit concerning the Phanatic captioned *Harrison v. The Philadelphia National*

*League Club, Inc.*, 79 Civ. 2663 (HFW) (S.D.N.Y.) ("the 1979 SDNY Litigation").  In H/E's complaint, it alleged that it "has its principal place of business in the Southern District of New York."  Exh. A (complaint w/o exhibits).

## FACTS

### Bill Giles' Green, Fat, Big-Nosed Mascot and The Phillies' First Agreement With H/E

35.     In February 1978, then Phillies Executive Vice President Bill Giles decided to develop a new mascot for The Phillies.  He thought that the existing mascots, colonial characters Phil and Phyllis, did not allow for much movement or expression of personality.  Giles was looking to develop a character that could be highly active—a character who could engage in slapstick routines that would be as exuberant and "in your face" (but nonetheless family friendly) as Philadelphia's legendary baseball fans.  Giles had a clear picture in his mind of what the key aspects of this mascot should be:  green, fat and loveable—with a big nose.  The Phillies already had created the term "phanatic" to promote itself, inspire its fans to be "phanatics," and to encourage fans to come to games to go "phanatic."  So The Phillies decided that the new mascot would be called "the Phillie Phanatic."

36.     On February 14, 1978, Giles had The Phillies' promotions director, Frank Sullivan, call Bonnie Erickson and Wayde Harrison, who had founded a Manhattan firm that specialized in making costumes.

37.     On March 17, 1978, The Phillies and H/E entered into an agreement in this district whereby H/E would provide a design and construct a costume based on Giles' specifications for $3,900, plus expenses.  In exchange, The Club was granted the right to use the costume on TV, in commercials, and in personal appearances to promote The Phillies.  Exh. B.

9

38.     After Giles conveyed his vision to Harrison and Erickson for the Phanatic, H/E submitted concepts to Giles, who, in turn, provided further input.  For example, upon reviewing initial designs, Giles insisted that the Phanatic be made fatter and have a larger nose.

39.     Various people hired by H/E at about $4 an hour constructed the costume, beginning on or around March 23, 1978.

40.     In addition to Giles' specifications, The Phillies provided the jersey, cap, and other material to H/E for the costume.

41.     The Phillies and H/E intended that Giles' specifications, the Phillies-designed clothing, and H/E's ideas for the costume be combined into an integrated costume design.

42.     By April 6, 1978, the costume was ready for a fitting that took place at H/E's offices in Manhattan.  Another fitting took place in Manhattan in mid-April 1978.

43.     The costume was delivered to The Phillies in late April 1978.

### Dave Raymond's Debut as the Phillie Phanatic

44.      Giles picked a young man with a lot of confidence and natural talent, Dave Raymond, to bring the Phanatic to life.  The Club had decided that the Phanatic would be mute, so The Phillies sent Raymond to mime school.

45.     Wearing H/E's costume, Dave Raymond debuted the Phanatic on April 25, 1978, The Phillies' sixth home game of the season.  Raymond's slapstick skits were a big hit.

46.     In fact, in August 1978, H/E acknowledged that Raymond "perform[s] very well" and that he had "developed a fun and sensitive character." And in her 1979 affidavit filed in this district, Erickson described the Phanatic as "enormously popular" and as having "enormous public appeal."

**The Phillies' Second Agreement With H/E**

47.     Because the Phanatic was well received, The Phillies decided to develop Phanatic-themed promotional items like key chains, pennants, and tee-shirts to be given away to fans late in the 1978 season, and even a Phanatic doll.

48.     Accordingly, on July 15, 1978, The Phillies entered into an agreement in this district with H/E to cover these promotional items.  Exh. C.  Under the July 15, 1978 agreement, The Club was given exclusive rights to make reproductions of the costume on souvenir items.  In exchange, The Phillies paid H/E $5,000 per year plus 7% of the greater of the manufacturing cost or retail selling price of the licensed souvenir items.

49.     The Phillies paid H/E over $100,000 in royalties under the July 15, 1978 agreement.

**H/E Registers Their Contribution to the Phanatic Costume as an "Artistic Sculpture" and Sues The Phillies**

50.     Despite the success of the Phanatic and receiving many times more money than they had expected, in May 1979, H/E sued The Phillies in this district over a disagreement about the extent to which H/E's approval was needed on promotional and merchandising items. *Harrison v. The Philadelphia National League Club, Inc.*, 79 Civ. 2663 (HFW) (S.D.N.Y.) ("the 1979 SDNY Litigation").  Among other things, H/E asserted a claim for copyright infringement. In order to assert such a claim, H/E needed to register the "work" with the Copyright Office.

51.     H/E's complaint in the 1979 S.D.N.Y Litigation did not claim that Harrison and Erickson were sole authors of the entire costume; rather, H/E alleged that what it called an "artistic sculpture" contained "a large amount of material wholly original with plaintiffs," implying (correctly) that the Club had contributed the rest of that material.

52.     In the 1979 SDNY Litigation, Ms. Erickson submitted to this Court an affidavit in support of H/E's request for a TRO and preliminary injunction.

53.     Ms. Erickson attached to her affidavit a copy of H/E's application to register the copyright with the Copyright Office.  In its application, H/E represented to the Copyright Office that the work was an "artistic sculpture."  Exh. 1 to Exh. D; Exh. D ¶ 2.

54.     The word "costume" appears nowhere in H/E's copyright registration application, nor does the word "character."

55.     The Copyright Office registered the work as a "sculpture" on May 4, 1979, describing it as "Shaggy creature wearing tennis shoes, tights & baseball shirt while carrying pennant."  Exh. E.

56.     H/E provided the Copyright Office with the following picture of what it described as an "artistic sculpture" as its deposit:



Exh. 1A to Exh. D.

57.     If H/E had submitted to the Copyright Office a photo of the costume without a

person inside, it would have been clear that what H/E was trying to register was a costume, not a

sculpture.  Without someone inside the costume, it would have appeared formless, more like this:



**The Club Pays H/E Another $120,000 in Its Third Agreement With H/E**

58.     On November 1, 1979, The Phillies and H/E settled the 1979 SDNY Litigation

and renegotiated their agreement with respect to the Phanatic.

59.     As described by Erickson in her affidavit filed in this Court in the 1979 SDNY

Litigation, the Phanatic was "enormously popular" as of May 1979.

60.     The parties' agreement dated November 26, 1979, therefore, reflected the increased value in the Phanatic that was well established by 1979.  Exh. F.

61.     In exchange for receiving exclusive rights to exploit the Phanatic costume and make certain reproductions, etc., The Phillies agreed to pay H/E $5,000 annually, increasing each year by $1,000.  And, per the November 1979 agreement, The Phillies agreed to pay H/E a lump sum of $115,000.  All promised payments were made by The Phillies over the next 5 years.

### The Club Pays H/E $215,000 Pursuant to The Fourth Agreement With H/E

62.     In the fall of 1984, the parties renegotiated yet again.  At this time, H/E certainly had full knowledge of the value of their purported copyright, since H/E had described the Phanatic as "wildly popular," and since the Phanatic had generated hundreds of thousands of dollars in merchandise sales.  Armed with that knowledge, H/E was able to negotiate a sale of whatever rights it had in the "artistic sculpture known as the 'Phillie Phanatic'" for $215,000, or about $533,000 in 2019 dollars.  Exh. G.

63.     During negotiations of the 1984 Assignment, one of the expressed concerns of The Phillies was that the conveyance of rights be "forever."  H/E's counsel agreed that the deal would be "forever," and the 1984 Assignment as executed so provides.   Exh. G at ¶ 1.

64.     The 1984 Assignment superseded the prior agreements and terminated the 1979 Agreement.  Exh. G.

65.     As part of this 1984 deal, H/E additionally signed an assignment that provided that H/E "hereby sells, assigns, and transfers to the PHILLIES, its successors and assigns, all of HE's right, title and interest in and to (a) the copyright in the artistic sculpture identified above, and all renewals and extensions thereof and (b) any and all causes of action heretofore accrued in HE's favor for infringement of said copyright."  Exh. G.

14

66.     In accordance with the representations of H/E and the language of the 1984 Assignment, H/E and The Phillies negotiated and agreed upon a fair price for a "forever" assignment of H/E's rights.

67.     In accordance with The Phillies' expectation that the assignment would last forever, The Phillies paid H/E a lump sum $215,000 ($533,000 in today's dollars), which was paid in three installments.

68.     The $215,000 paid by the Club reflected its expectation that the assignment was of unlimited duration, and reflected The Phillies' assessment of the value of an assignment of H/E's rights that would last forever.

69.     If H/E and The Phillies had negotiated in 1984 for a 35-year assignment, instead of an assignment for the life of the copyright, The Phillies would have paid a lower price, and H/E would not have been paid $215,000.

**The Club Utilizes Dozens of Creative Versions of the Phanatic on the Field, in Publicity, and in Merchandise**

70.     Since 1978, the Club has invested millions of dollars in developing the Phanatic's character and recognition as The Phillies' mascot, including dozens of costume modifications, hundreds of routines and skits, thousands of charity appearances, and 41 years of consistent promotion and marketing in traditional and digital media.

71.     Some of the many creative modifications of the Phanatic utilized by The Phillies since 1984 are shown below, with additional examples attached as Exhs. H-K:














72.    Since 1978, the Club also has utilized numerous promotional and merchandise artwork and items, including but not limited to the following, with additional examples attached as Exhibits L-X:






















73.     As explained further below, there is no question that the Club has the right to continue to utilize these costumes, designs, routines, artwork, and merchandise, as well as any others prepared before June 15, 2020.

**The Phillies' Incontestable Trademarks in the Name and Design of the Phanatic**

74.     Due to the decades of The Phillies' use of and investment in the Phanatic, the Phanatic's name and image have come to be strongly associated with and to identify The Phillies.  Accordingly, the Club owns federal trademark registrations involving the Phanatic, all of which marks have been in use for well over five consecutive years and have therefore become incontestable, including:

- U.S. Trademark Registration No. 4,143,914:  A standard character mark for "Phillie Phanatic" for clothing, namely headwear, shirts, cloth bibs, footwear, socks, and hosiery.

- U.S. Trademark Registration No. 4,143,913:  A standard character mark for "Phillie Phanatic" for toys and sporting goods, namely stuffed toys, plush toys, soft sculpture foam toys, foam novelty items, namely foam fingers, puppets, toy figures, dolls, bobbing head dolls, playground balls, baseball bats, inflatable toys, Christmas tree ornaments and decorations, and action figures.

- U.S. Trademark Registration No. 4,199,377:  A standard character mark for "Phillie Phanatic" for paper goods and printed matter, namely trading cards, posters, stickers, decals, temporary tattoos, bumper stickers, books featuring baseball, memo boards, mounted and un-mounted photographs, pens, pencils, art pictures, and art prints.

- U.S. Trademark Registration No. 4,035,158:  A standard character mark for "Phillie Phanatic" for entertainment services in the nature of performances and live appearances by a costumed mascot character at baseball games and exhibitions, clinics, promotions, schools, special events, parties, and social, cultural, charitable and educational events; providing recreational areas in the nature of children's play areas; fan club services; entertainment services, namely providing a reading program designed to motivate children to read; providing online newsletters in the field of sports; entertainment services, namely providing a website featuring baseball news, information and downloadable wallpaper.



- U.S. Trademark Registration No. 4,265,099:  A design mark in the design of the Phanatic (pictured left), described as a two-dimensional depiction of a three-dimensional costumed character wearing a baseball uniform depicting the word "PHILLIES," for paper goods and printed matter, namely trading cards, posters, stickers, decals, temporary tattoos, printed baseball game programs, magazines, books featuring baseball, mounted and un-mounted photographs, pens, pencils, art pictures, and art prints.

- U.S. Trademark Registration No. 4,246,618:  A design mark in the design of the Phanatic (pictured left), described as a two-dimensional depiction of a three-dimensional costumed character wearing a baseball uniform depicting the word "PHILLIES," for clothing, namely shirts and infant wear.

- U.S. Trademark Registration No. 4,234,650:  A design mark in the design of the Phanatic (pictured left), described as a two-dimensional depiction of a three-dimensional costumed character wearing a baseball uniform depicting the word "PHILLIES," for toys and sporting goods, namely stuffed toys, plush toys, puppets, puzzles, toy banks, toy figures, dolls, bobbing head dolls, miniature baseball bats, baseballs, baseball bats, inflatable toys, Christmas tree ornaments and decorations, action figures, and balls for games.

- U.S. Trademark Registration No. 4,120,821: A design mark in the design of the Phanatic (pictured left), described as a two-dimensional depiction of a three-dimensional costumed character wearing a baseball uniform depicting the word "PHILLIES," for entertainment services in the nature of performances and live appearances by a costumed mascot character at baseball games and exhibitions, clinics, promotions, schools, special events, parties, and social, cultural, charitable and educational events; providing recreational areas in the nature of children's play areas; fan club services; entertainment services, namely providing a reading program designed to motivate children to read; providing online newsletters in the field of sports; and entertainment services, namely providing a website featuring baseball news and information.

75.     H/E is aware of The Phillies' trademarks, and has acknowledged their strength and value.

### H/E Purports to Terminate The Phillies' Right to Use the Phanatic

76.     On June 1, 2018, H/E's attorneys sent a letter to Phillies Chairman, David Montgomery, claiming that H/E was the author of the "copyrighted character" of the Phanatic and that—notwithstanding the agreement that the 1984 Assignment would be "forever"—they somehow had the right to terminate The Phillies' rights in the Phanatic as of June 15, 2020.

77.     In subsequent negotiations, H/E demanded exorbitant sums from The Phillies, threatening that if such sums were not paid, H/E would make the Phanatic "a free agent" and sell him to another sports team.

78.     H/E also has asserted that the derivative works exception in 17 U.S.C. § 203(b)(1) does not apply to derivative works developed by The Phillies, and that H/E's termination notice has the effect of terminating The Phillies' right to use derivative versions of the Phanatic.

79.     H/E has further threatened to sue The Phillies for copyright infringement when the Club continues to use the Phanatic and/or derivatives of the Phanatic after June 15, 2020.

80.     This lawsuit is being brought, *inter alia,* to achieve a declaration that H/E does not have the right to deprive The Phillies' fans of the Phanatic, does not have the right to liquidate The Phillies' huge, 41-year investment in the Phanatic, cannot terminate The Phillies' rights as an author of the Phanatic costume and character, does not have the right to tear up the 1984 Assignment while at the same time retaining all The Phillies' payments thereunder, and does not have the right to cause confusion among consumers regarding the source or sponsorship of The Phillies' mascot—the Phanatic.

## COUNT I: DECLARATORY JUDGMENT THAT H/E DOES NOT HAVE THE RIGHT TO TERMINATE THE 1984 ASSIGNMENT

81.     The Club realleges the foregoing allegations as if set forth fully herein.

82.     In 1978, The Phillies paid H/E $3,900 plus approximately $2,000 in costs to design and manufacture the Phanatic costume.

83.     The Phillies debuted the Phanatic on April 25, 1978.

84.     In July 1978, The Phillies entered into an agreement with H/E to allow The Phillies to use the Phanatic design on promotional items.  In exchange for the rights to make reproductions of the costume on souvenir items, The Phillies paid H/E $5,000 per year plus a 7% royalty.

85.     In November 1979, H/E and The Phillies renegotiated their agreements.  In exchange for receiving exclusive rights to exploit the Phanatic costume and make certain reproductions, etc., The Phillies agreed to pay H/E $5,000 annually, increasing each year by $1,000.  And, in an agreement dated November 26, 1979, The Phillies agreed to pay H/E a lump sum of $115,000.  All promised payments were made by The Phillies over the next 5 years.

26

86.     In October 1984, H/E and The Phillies renegotiated their agreements again, this time agreeing to a complete buyout of H/E's rights to the "artistic sculpture known as the 'Phillie Phanatic.'"  By this time, as recognized by Erickson, the Phanatic was "enormously popular." The Phillies paid H/E a lump sum of $215,000 under the 1984 Assignment, which reflected the popularity and established market value of the Phanatic.  At the time of the negotiation of the 1984 Assignment, H/E had full knowledge of the market value of the work at issue.

87.     On information and belief, H/E was aware of its termination rights and used that knowledge in exercising their bargaining power in successfully renegotiating their agreement with The Phillies.

88.     The provision of the Copyright Act that allows authors to terminate a grant of a transfer or license of copyright, 17 U.S.C. § 203, protects authors with no bargaining power from transferring their rights for next-to-nothing before the market value of a successful work has been established.

89.     Section 203 of the Copyright Act does not provide authors with multiple opportunities to renegotiate grants of copyrights after they have full knowledge of the market value of the works at issue; an author has only a single opportunity to revisit the terms of its grant.

90.     The 1984 Assignment therefore is outside the scope of 17 U.S.C. §203. Accordingly, H/E's purported termination does not terminate the grant contained in the 1984 Assignment.

91.     An actual, substantial, and justiciable controversy of sufficient immediacy and reality exists between The Phillies and H/E concerning whether H/E has the right to terminate The Phillies' rights to use the Phanatic as set forth in the paragraphs above, including but not

limited to because H/E sent a letter to The Phillies on June 1, 2018 claiming that they can

terminate The Phillies' rights in the Phanatic pursuant to 17 U.S.C. § 203.  H/E has further

threatened to sue The Phillies for copyright infringement when The Phillies continue to use the

Phanatic after the effective date of the purported termination.

92.     A judicial declaration is necessary and appropriate so that The Phillies may

ascertain its rights regarding use of the Phanatic.

93.     Based on the foregoing, the Club hereby requests a judicial declaration that the

June 1, 2018 notice of termination is null and void and that H/E's purported termination is

ineffective as to the 1984 Assignment.

## COUNT II: DECLARATORY JUDGMENT THAT H/E CANNOT ENFORCE ITS PURPORTED COPYRIGHTS BECAUSE OF ITS FRAUD ON THE COPYRIGHT OFFICE

94.     The Club realleges the foregoing allegations as if set forth fully herein.

95.     H/E obtained its copyright registration from the Copyright Office fraudulently.

96.     In its application, H/E represented to the Copyright Office that its purported work

was an "artistic sculpture" when in fact the purported work is a costume.  H/E described its

purported work as an "artistic sculpture" because it believed that, if it had described it as a

costume, the Copyright Office would have rejected H/E's application, thereby impeding H/E's

1979 lawsuit filed in this District against The Phillies.  As the Second Circuit has explained in

*Whimsicality v. Rubie's Costume Co., Inc.*, 891 F.2d 452 (2d Cir. 1989), at the time the

Copyright Office "consider[ed] costumes to be wearing apparel and consistently reject[ed]

applications to register them."

97.     To make its application more misleading, H/E's deposit with the Copyright Office

was a poor-quality photo that obscured the fact that the work was a costume:



98.     Had H/E submitted an accurate photo, it would have looked more like this:



99.     As the Second Circuit held in *Whimsicality*, "the word 'sculpture' implies a relatively firm form representing a particular concept."  Like the costumes in *Whimsicality*, the Phanatic costume has "no such form.  If hung from a hook or laid randomly on a flat surface, the particular animal or item depicted by the costume would be largely unidentifiable.  The intended depiction is in fact recognizable only when the costume is worn by a person or is carefully laid out on a flat surface to reveal that depiction."  Like the costumes in *Whimsicality*, the Phanatic costume "do[es] not constitute sculpture."

100.    In describing the purported work in its card catalog, the Copyright Office described the purported work as "Sculpture."

101.    H/E knowingly failed to advise the Copyright Office of facts that likely would have resulted in the rejection of its application.

102.    H/E therefore engaged in fraud on the Copyright Office in obtaining its 1979 registration.

103.    Accordingly, like the plaintiff in *Whimsicality*, H/E cannot enforce its purported copyright in its "artistic sculpture."

104.    An actual, substantial, and justiciable controversy of sufficient immediacy and reality exists between The Phillies and H/E concerning whether H/E's copyright in the Phanatic is enforceable as set forth in the paragraphs above, including but not limited to because H/E has threatened to sue The Phillies for copyright infringement when the Club continues to use the Phanatic and/or derivatives of the Phanatic after the effective date of the purported termination— June 15, 2020.

105.    A judicial declaration is necessary and appropriate so that the Club may ascertain its rights regarding use of the Phanatic and derivatives of the Phanatic.

106.    The Club therefore requests a declaration from this Court that H/E cannot sue The Phillies for copyright infringement if and when its termination of the 1984 Assignment becomes effective.

### COUNT III: DECLARATORY JUDGMENT THAT SECTION 203 DOES NOT PROVIDE H/E WITH THE RIGHT TO RECAPTURE THE CLUB'S RIGHTS AS A JOINT AUTHOR OF THE PHANATIC COSTUME

107.    The Club realleges the foregoing allegations as if set forth fully herein.

108.    As set forth above, the Club contributed copyrightable content to the Phanatic costume, including the green, fat, and big-nosed look, and the design of the leggings, jersey, and cap.

109.    The Phillies and H/E intended those elements to be integrated with the elements contributed by H/E into the Phanatic costume.

110.    Indeed, H/E's complaint filed in the 1979 S.D.N.Y. Litigation acknowledges that H/E did not contribute all of the copyrightable material in the Phanatic costume, implicitly acknowledging The Phillies' contribution.

111.    The Club is therefore a joint author of the Phanatic costume.

112.    An actual, substantial, and justiciable controversy of sufficient immediacy and reality exists between The Phillies and H/E concerning whether H/E has the right to terminate The Phillies' rights to use the Phanatic as set forth in the paragraphs above, including but not limited to because H/E sent a letter to The Phillies on June 1, 2018 claiming that they can terminate The Phillies' rights in the Phanatic pursuant to 17 U.S.C. § 203.  H/E has further threatened to sue The Phillies for copyright infringement when The Phillies continues to use the Phanatic after the effective date of the purported termination.

113.    A judicial declaration is necessary and appropriate so that The Phillies may ascertain its rights regarding use of the Phanatic.

31

114.    Based on the foregoing, the Club hereby requests a judicial declaration that H/E's purported termination of the 1984 Assignment is null and void, and/or that section 203 of the Copyright Act of 1976 does not provide H/E with the right to terminate the Club's rights as a joint author of the Phanatic costume under the Copyright Act of 1976.

**COUNT IV: DECLARATORY JUDGMENT THAT SECTION 203 DOES NOT PROVIDE H/E WITH THE RIGHT TO TERMINATE THE CLUB'S RIGHTS AS THE AUTHOR OF THE PHANATIC'S CHARACTER**

115.    The Club realleges the foregoing allegations as if set forth fully herein.

116.    As set forth above, the Club contributed copyrightable content to the Phanatic costume to create the Phanatic character, including backstories, personality traits, and other distinctive features.

117.    H/E itself recognized that Dave Raymond, a Phillies employee, had "developed a fun and sensitive character."

118.    The Phillies and H/E intended that The Phillies would develop the character of the Phanatic using the costume that had been jointly authored by The Phillies and H/E.

119.    The Club is therefore the author of the Phanatic character.

120.    An actual, substantial, and justiciable controversy of sufficient immediacy and reality exists between The Phillies and H/E concerning whether H/E has the right to terminate The Phillies' rights to use the Phanatic as set forth in the paragraphs above, including but not limited to because H/E sent a letter to The Phillies on June 1, 2018 claiming that they can terminate The Phillies' rights in the Phanatic, including the Phanatic character, pursuant to 17 U.S.C. § 203.  H/E has further threatened to sue The Phillies for copyright infringement when The Phillies continues to use the Phanatic after the effective date of the purported termination.

121.    A judicial declaration is necessary and appropriate so that The Phillies may ascertain its rights regarding use of the Phanatic.

32

122.    Based on the foregoing, the Club hereby requests a judicial declaration that H/E's

purported termination of the 1984 Assignment is null and void, and/or that section 203 of the

Copyright Act of 1976 does not provide H/E with the right to terminate the Club's  rights as the

author of the Phanatic character under the Copyright Act of 1976.

**COUNT V: DECLARATORY JUDGMENT THAT THE CLUB HAS THE RIGHT TO
UTILIZE DERIVATIVE WORKS UNDER 17 U.S.C. § 203(B)(1)**

123.    The Club realleges the foregoing allegations as if set forth fully herein.

124.    The Club has created and will create numerous derivative works based on the

Phanatic costume, including but not limited to costumes, routines, designs, artwork, logos,

promotional products, and retail products.

125.    Pursuant to 17 U.S.C. § 203(b)(1), even if H/E were permitted to terminate certain

rights granted under the 1984 Assignment, H/E cannot terminate The Phillies' rights to use the

derivative works developed before June 15, 2020.

126.    The Club therefore has an absolute right to continue to use any derivative works

of the Phanatic developed before June 15, 2020.

127.    An actual, substantial, and justiciable controversy of sufficient immediacy and

reality exists between The Phillies and H/E concerning whether H/E has the right to terminate

The Phillies' rights to use derivatives of the Phanatic costume as set forth in the paragraphs

above, including but not limited to because H/E sent a letter to The Phillies on June 1, 2018

claiming that they can terminate The Phillies' rights in the Phanatic pursuant to 17 U.S.C. § 203,

and in subsequent communications H/E has asserted that the derivative works exception in 17

U.S.C. § 203(b)(1) does not apply to the derivative works prepared before June 15, 2020, and

that H/E's termination notice has the effect of terminating The Phillies' right to use derivative

versions of the Phanatic.  H/E has further threatened to sue The Phillies for copyright

33

infringement when the Club continues to use derivatives of the Phanatic after the effective date of the purported termination.

128.    A judicial declaration is necessary and appropriate so that the Club may ascertain its rights regarding use of the Phanatic and derivatives of the Phanatic.

129.    Based on the foregoing, the Club hereby requests a judicial declaration that: (a) H/E's purported termination is ineffective as to derivative works based on the "artistic sculpture known as the 'Phillie Phanatic'" developed before June 15, 2020; and (b) the Club has the right to continue to use such derivative works after June 15, 2020.

## <u>COUNT VI: DECLARATORY JUDGMENT AND PERMANENT INJUNCTION PURSUANT TO SECTIONS 32 AND 43 OF THE LANHAM ACT</u>

130.    The Club realleges the foregoing allegations as if set forth fully herein.

131.    H/E has threatened to make the Phanatic "a free agent," selling purported rights to its character and/or design to another sports team.

132.    As alleged above, the Club owns incontestable federal trademark registrations in the Phanatic, including in its design and name, and the Phanatic marks are famous marks.

133.    The Club has consistently used and invested in the Phillie Phanatic marks, and has therefore built up valuable good will in the marks and a powerful association of source and sponsorship among the relevant consumers and channels of trade.

134.    If H/E were to follow through on its threat of making the Phanatic a "free agent," it would likely cause confusion, mistake, or deception as to the source of origin, sponsorship or approval of the use of the Phillie Phanatic—in that consumers are likely to believe that the Club authorized and controlled the use of the Phillie Phanatic by other sports teams or commercial entities, or that the Club is associated with or related to the other sports teams or commercial

entities using the Phillie Phanatic—thereby violating the Lanham Act Section 32, 15 U.S.C. § 1114(1).

135.     Furthermore, the use of the Phanatic by any third party would dilute the distinctiveness of The Phillies' famous Phanatic marks—thereby violating the Lanham Act Section 43, 15 U.S.C. § 1125(c).  Any sale of the Phanatic by H/E should therefore be enjoined pursuant to 15 U.S.C. § 1125(c)(1).

136.     An actual, substantial, and justiciable controversy of sufficient immediacy and reality exists between The Phillies and H/E concerning whether H/E's threatened sale of the Phanatic to another sports team will infringe the Phillie Phanatic trademarks as set forth in the paragraphs above, including but not limited to because H/E has expressed its intention to make the Phanatic a "free agent" that will be sold to another sports team as soon as the purported termination takes effect.

137.     In the past, H/E has made one of its mascot costumes a "free agent."  For example, H/E initially created Youppi! for the Montreal Expos.  But when the Expos moved to Washington, D.C. and became the Nationals, H/E sold rights in Youppi! to the Montreal Canadiens.

138.     A judicial declaration is necessary and appropriate so that The Phillies and H/E may ascertain their rights regarding use of the Phanatic and derivatives of the Phanatic costume.

139.     Moreover, the sale of the Phanatic as a "free agent" to another sports team, commercial entity, or other third party will injure The Phillies' image and reputation with consumers by causing consumer confusion, dissatisfaction, a diminution of the value of the goodwill associated with the Phillie Phanatic marks, and a loss of sales and/or market share to The Phillies' competition.

140.   H/E's threat to sell the Phanatic to another sports team was made deliberately and willfully, with knowledge of The Phillies' exclusive rights and goodwill in the trademarks related to the Phanatic, and with knowledge that use of the Phanatic by another sports team will be infringing.

141.   H/E's sale of the Phanatic to another sports team, commercial entity, or other third party will cause The Phillies substantial and irreparable injury, loss and damage to its rights in and to the marks related to the Phanatic, and damage to the goodwill associated therewith, for which The Club has no adequate remedy at law.

142.   Based on the foregoing, the Club hereby requests a judicial declaration that the use of the Phanatic by another sports team or commercial entity for any similar goods or services to those for which The Phillies' trademarks related to the Phanatic are registered violates the Lanham Act Section 32, 15 U.S.C. § 1114(1).

143.   In addition, the Club requests the Court to enter a permanent injunction barring H/E from selling purported rights in the Phanatic to any sports team or commercial entity and from selling any Phanatic-related merchandise.

## COUNT VII: UNJUST ENRICHMENT

144.   The Club realleges the foregoing allegations as if set forth fully herein.

145.   At no point in the course of negotiating the 1984 Assignment did H/E disclose to The Phillies that it intended to terminate The Phillies' rights to use the Phanatic after 35 years.

146.   Yet, on June 1, 2018, H/E sent a letter to The Phillies asserting that— notwithstanding the agreement that the 1984 Assignment would be "forever"—The Phillies' right to use the Phanatic would terminate as of June 15, 2020.

147.   The Phillies relied on H/E's representations concerning the duration of the assignment and H/E's intent to transfer their rights to the Phanatic forever when agreeing to the

price for the assignment.  The price agreed to by The Phillies—$215,000—reflected what The Phillies believed to be appropriate compensation for the right to use the Phanatic, in all forms and including all derivatives, for the full term of the copyright.

148.    If H/E and The Phillies had negotiated in 1984 for a 35-year assignment, instead of an assignment for the life of the copyright, The Phillies would have paid a lower price, and H/E would not have been paid $215,000.

149.    Because The Phillies made a $215,000 payment to H/E for an assignment of rights for the duration of the copyright to the Phanatic, H/E will be unjustly enriched at The Phillies' expense if it is not precluded from terminating the 1984 Assignment.

150.    Equity and good conscience require that H/E pay The Phillies restitution for the amount H/E will be unjustly enriched—the difference between the value of a 35-year assignment as compared to the value of an assignment for the full term of the copyright—if H/E is permitted to terminate pursuant to section 203.

## COUNT VIII: BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

151.    The Club realleges the foregoing allegations as if set forth fully herein.

152.    In every contract there is an implied covenant of good faith and fair dealing by each party not to do anything that will deprive the other parties of the benefits of the contract.

153.    H/E owed The Phillies a duty of good faith and fair dealing in connection with the 1984 Assignment.

154.    H/E violated the duty of good faith and fair dealing by the aforementioned actions, including agreeing to a "forever" assignment of the rights in the copyright to the Phanatic, failing to disclose its intention to terminate the assignment after 35 years, negotiating a price for the 1984 assignment that reflected an amount appropriate for an assignment of rights

for the life of the copyright, and subsequently serving a notice of termination on The Phillies in 2018.

155.     The Club has or will suffer damages as a result of the aforementioned conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a judgment in its favor and against Defendants and requests the following relief:

156.     A declaratory judgment that H/E's termination letter dated June 1, 2018 is null and void.

157.     A declaratory judgment that H/E cannot sue The Phillies for copyright infringement if and when its termination of the 1984 Assignment  becomes effective;

158.     A declaratory judgment that section 203 of the Copyright Act of 1976 does not give H/E the right to terminate the Club's rights as a joint author of the Phanatic costume and as the author of the Phanatic character;

159.     A declaratory judgment that H/E purported termination is ineffective as to derivative works based on the "artistic sculpture known as the 'Phillie Phanatic'" developed between October 31, 1984 and June 15, 2020, that H/E does not have the right to recapture the Club's rights in such derivative works, and that the Club has the right to continue to use such derivative works after June 15, 2020;

160.     A declaratory judgment that the use of the Phanatic as a character or costume and the sale or distribution of any Phanatic-related product or merchandise by another sports team, commercial entity, or third party or by H/E for any similar goods or services to those for which the Phanatic trademarks are registered violates Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1) & 1125(c)(1);

161.    A permanent injunction barring H/E from selling or otherwise transferring or

licensing any purported rights in the Phanatic to any sports team, commercial entity, or other

third party, and from selling any Phanatic-related product or merchandise;

162.    An order entering judgment in favor of The Phillies and against H/E;

163.    An order awarding The Phillies damages in an amount to be determined; and

164.    Such additional relief as the Court finds just and proper.


Dated:  August 2, 2019                              DUANE MORRIS LLP

                                                    By: */s/ David T. McTaggart*
                                                        David T. McTaggart (NY ID 4097598)
                                                        1540 Broadway
                                                        New York, NY 10036-4086
                                                        Phone (212) 692-1000
                                                        Fax (212) 202-4931

                                                        and

                                                        David J. Wolfsohn (PA ID No. 57974)
                                                        *(pro hac vice pending)*
                                                        Tyler R. Marandola (PA ID No. 313585)
                                                        *(pro hac vice pending)*
                                                        Kendra C. Oxholm (NY ID No. 5267828;
                                                        PA ID No. 325621)
                                                        *(pro hac vice pending)*
                                                        30 South 17th Street
                                                        Philadelphia, PA 19103
                                                        Phone (215) 979-1000
                                                        Fax (215) 979-1020

                                                        *Attorneys for Plaintiff, The Phillies*