# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

WAYDE HARRISON and BONNIE ERICKSON,    :
doing business as  HARRISON ERICKSON,
a partnership,                         :

                Plaintiffs,    :    79 Civ. 2663 (HFW)

       -against-                 :    AFFIDAVIT OF PLAINTIFF
                        ERICKSON SUBMITTED IN
THE PHILADELPHIA NATIONAL LEAGUE       :    SUPPORT OF APPLICATION
CLUB, INC., doing business as               FOR TEMPORARY RESTRAIN-
THE PHILLIES,                          :    ING ORDER AND PRELIM-
                        INARY INJUNCTION
              Defendant.    :

------------------------------------x

STATE OF NEW YORK  )
               :ss.:
COUNTY OF NEW YORK )

        BONNIE ERICKSON, being duly sworn deposes and says:

        1.   I am one of the plaintiffs herein and a partner
with plaintiff WAYDE HARRISON in HARRISON ERICKSON, a creative
design enterprise.  This affidavit is submitted in support of
plaintiffs' application by order to show cause for a temporary
restraining order and preliminary injunction restraining and
enjoining defendant, and its respective agents, servants,
employees, officers, subsidiaries and affiliates, and all
persons and organizations acting in active concert or participa-
tion with defendant, from directly or indirectly (a) making,

producing, manufacturing, selling or in any way exploiting unauthorized reproductions of plaintiffs' copyrighted artistic sculpture, entitled the Phillie Phanatic (hereinafter referred to as the "Phanatic"), or authorizing or permitting any others to do such acts; (b) infringing plaintiffs' copyright in the Phanatic in any way; (c) authorizing or permitting the use of the Phanatic in association with any commercial products; and (d) exploiting any reproductions of The Phanatic unless the quality is approved by plaintiffs and plaintiffs' copyright notice is properly affixed to each copy.

2.      The Phanatic presently is used by defendant as the mascot for the Philadelphia Phillies, its major league baseball team.  Plaintiffs are the authors and copyright proprietors of the Phanatic.  Annexed hereto made a part thereof and marked Exhibits "1" and "1(a)", respectively, is a copy of the certificate of copyright registration issued to plaintiffs  by The United States Copyright Office and a copy of a photograph of the Phanatic deposited with the registration.  This action was instituted to prevent (a) unauthorized uses of the Phanatic by defendant in various reproductions, including in assorted articles of merchandise and printed advertisements for commercial products and (b) false representations and misdescriptions in commerce in connection with defendant's uses of reproductions of the Phanatic, including by sometimes using plaintiffs' names in connection with poor quality reproductions of the Phanatic and sometimes omitting any reference to plaintiffs in connection with reproductions of the Phanatic.

2

Plaintiffs also plead a claim herein for recission of its merchandising agreement authorizing defendant to exploit reproductions of the Phanatic, based upon defendant's repeated, substantial breaches of the agreement which plaintiffs' claim resulted in destroying the essence of the consideration plaintiffs should receive thereunder.  A copy of the merchandising agreement is annexed hereto, made a part hereof and marked Exhibit "2".

## PLAINTIFFS' BACKGROUND

3.      Plaintiffs operate a unique creative design enterprise at their New York City studio.  Prior to forming the partnership  with plaintiff WAYDE HARRISON, I worked for six years as a designer with Henson Associates, Inc., creators and designers of the Sesame Street and Muppet Show characters.  During my employment, I developed the highly popular Miss Piggy and the team of Statler and Waldorf, all soft foam puppet characters. Since the formation of Harrison Erickson, plaintiffs have created and designed numerous highly acclaimed characters and soft foam puppets, including the THREE BEARS, which were used in national television commercials for H O OATS; SIR SHAKE-A-LOT and BURGER THING, both used for a nation wide Burger King advertising campaign; SUNNY and FOSSIL, used by the National Education Association in the crusade for energy conservation; and mascot characters and costumes for defendant's Philadelphia Phillies, the Montreal Expos and the New York Yankees, all major league

baseball teams, and for the Philadelphia 76ers, a professional
basketball team.  Plaintiffs also created SLEEPY BEAR, a soft
toy exploited nationally by Knickbocker Toy Company, together
with various other toys.  Annexed hereto made a part hereof
and collectively marked Exhibit "3" is a reproduction of several
information cards distributed by plaintiffs, each reproducing
one of plaintiff's creations on the front and vital statistics
on the back.

4.      Annexed hereto, made a part hereof and collectively
marked Exhibit "4" are copies of news articles which feature
the details of plaintiffs' business, from such diverse publications
as The New York Trib, The Philadelphia Daily News and Sports
Illustrated.  As a result of highly selective business
practices plaintiffs have been able to achieve and maintain a
uniform reputation for high quality products.  One of the main
reasons plaintiffs achieved their reputation is that reproductions
of plaintiffs' copyrighted creations are monitored by plaintiffs
under agreements with users whereby plaintiffs retain strict
quality control.  Plaintiffs invariably require the use of the
best available materials for proposed reproductions and insist
upon faithfulness of the design of the proposed reproductions
to their original source.  Plaintiffs also offer additional
creative suggestions, which generally enhance the aesthetic
appeal of the proposed reproductions.  Defendant are usurping
virtually all of plaintiffs' quality control in producing

reproductions of the Phanatic and, by utilizing poor quality
reproductions, has created a serious threat to plaintiffs' hard
earned reputation.   In addition, defendant repeatedly ignores
the Copyright Law requirements that all published reproductions
of the Phanatic must bear proper copyright notice.

5.     Plaintiffs first created the Phanatic in the form of
a costume to be worn by a performer at the Phillies home games.
The Phanatic made its first appearance in April, 1978 and
became enormously popular.  Sports Illustrated calls the
Phanatic a "celebrity".  The Phanatic is described in the 1979
Phillies Yearbook as "first in the heart of the kids," "a part
of every [1978 home] baseball game," "one of us" and "the
strange, new green thing...[who] has made his presence known."
(p.47).  Annexed hereto made a part hereof and collectively
marked Exhibit "5" is a copy of newspaper photographs of the
Phanatic featured this year in the Philadelphia Inquirer and
nationwide by United Press International.  As a result of the
enormous public appeal of the Phanatic, it is a natural for
merchandise tie-ins.

6.     Consistent with our quality control policies, the
agreement with defendant authorizing it to produce the Phanatic
in various articles of merchandise (Exhibit 2) contains the
following express limitations:

>          (a) 2.  As an express condition precedent
> to your right to make reproductions, each
> proposed Licensed Article shall be submitted

to us in the form in which you intend
to manufacture it.  For a period of
ten working days following receipt by
us of each proprosed Licensed Article,
we shall have the right in our sole
discretion to determine whether the
proposed reproduction satisfies our
personal quality standards.  You shall
not manufacture any Licensed Article
of any kind unless (a) you have first
submitted to us the proposed Licensed
Article and (b) we do not object to
the quality within the ten working
day period.  Any subsequent modifications
must first be approved by us in the
same manner, before you incorporate
the changes in the Licensed Article.
Our approval of any proposed re-
production or modification shall not
be unreasonably withheld.

                    *    *    *    *

    (b)  3.  Copies of all Licensed
Articles made by you, or presently in
your possession or control, shall bear
copyright notice in our name in the
proper location as follows:

        "©1978 Harrison Erickson."

                    *    *    *    *

    (c)  4. . . . Promptly after the
commencement of manufacture, you shall
supply us with 5 complete copies of each
Licensed Article from the first quantity
manufactured by or for you.

                    *    *    *    *

    (d)  6. Except as expressly authorized
herein, and in our agreement dated March
17, 1978, you shall have no right to make
any use of the Phillie Phanatic character.

The uses authorized in the March agreement are uses of the

costume and do not bear upon the merchandise rights.

    7.    From virtually the inception of the merchandise

agreement, defendant repeatedly has ignored the express

conditions to its right to exploit reproductions of the Phanatic

6

As a result plaintiffs have became aware of the following reproductions of the Phanatic exploited by defendant and not authorized by plaintiffs because of defendant's failure to meet the express conditions of the contract.

<u>1978</u>

(a) <u>Keychains</u> with an unapproved reproduction and no copyright notice.  In response to plaintiffs'objections,defendant's attorney represented it was physically impossible to change the configuration or imprint the notice in time for a Keychain Day which defendant would not postpone.  Defendant's attorney also then represented by letter that "there are no outstanding orders for merchandise which do (sic) not contain the copyrighted (sic) notice."

(b)  <u>Pennants</u> - Poor quality reproduction not submitted for approval and copyright notice omitted.  A copy of the reproduction is annexed hereto made a part hereof and marked Exhibit "6".

(c)  <u>Tee shirts</u> - same as pennants.  A copy of the reproduction is annexed hereto made a part hereof and marked Exhibit "7".

(d)  <u>Dolls</u> - not submitted for approval. 15,000 sold by defendant without copyright notice properly affixed.  Defendant notified plaintiffs of the sales after the sales were made.  The design quality is not acceptable to plaintiffs.  A copy of one of the dolls purchased by my partner in Philadelphia this month, and the accompanying purchase receipt is annexed hereto made a part hereof and marked Exhibit "8".

(e)  <u>Miscellaneous</u> - team promotional literature such as advertising and promotional pieces using reproductions of

7

the Phanatic in presently unknown
quantities and not submitted for approval
of the reproductions.

   1979

(f)   Comic strip - Plaintiffs approved
the use of the Phanatic for a daily news-
paper comic strip.  None of the required
samples were supplied by defendant.  All
copies seen by me contain an illegible
acknowledgment of plaintiffs copyright,
contrary to an  express condition to the
use of the Phanatic for that purpose.  A
copy of one of the strips is annexed here-
to made a part hereof and marked Exhibit
"9".

   Schedule - Low grade reproduction
used in connection with promotion of
Girard Bank.  Use not even disclosed by
defendant until late April.  No copy-
right notice.  A copy of the reproduc-
tion is annexed hereto made a part hereof
and marked Exhibit "10".

   Program/Scorecard - Low grade reproduc-
tion used to plug MAB Paints.  Never
submitted for approval, recently discovered.
Photograph also used without approval to
plug Medford's hot dogs.  A copy of the
reproductions are annexed hereto made a
part hereof and respectively marked
Exhibits "11" and "12".

   Dolls - See details below.

   Miscellaneous - Tie tack, glass mugs,
tote bag, advertisements and promotional
literature all use reproductions of the
Phanatic.  Not submitted for approval
and samples not supplied, except three
glass mugs received this month.

8

8.     During the past several months, plaintiffs have
tried to avoid litigation with defendant by negotiation of
plaintiffs' claims. Although defendant repeatedly represented
it was prepared to meet its obligations to use plaintiffs'
copyright notice on all reproductions and to follow the
approval procedures, plaintiffs finally were forced to conclude
that defendant was not serious.  Each settlement discussion
revealed further unauthorized uses and a continuation of
defendant's flagrant refusal to meet the express conditions of
plaintiffs' authorization for reproductions.  A brief summary of
the exploitation of dolls and the use of the Phanatic as a
product salesman well illustrate the point.

9.     Defendant's conduct with respect to the manufacture and
sale of dolls reveals a thoroughly reprehensible scheme to
circumvent plaintiffs right of quality control.  As aforesaid,
when a sample was first revealed to plaintiffs in late 1978,
plaintiffs were told by defendant that defendant sold 15,000 dolls.
Defendant also then advised plaintiffs other dolls were ordered.
In an attempt to exercise our quality control, I visited the doll
manufacturer's plant in Korea in January, 1979.  I made various
corrections to a prototype, including in its proportions, eye
shape, eyebrows, shoe laces, tongue and copyright notice.  A copy
of my letter to one of defendant's vice presidents confirming the
foregoing is annexed hereto made, a part hereof and marked
Exhibit "13". On March 19, 1979, I received so-called "production
samples" in New York City although I recently discovered that the
dolls had been manufactured and shipped by that time.  I

9

notified both the manufacturer and defendant's vice president
by letter dated March 20, 1979, that changes I made in Korea
were not incorporated and other changes were unsuccessful.  I
requested "corrected production samples," because defendant
withheld disclosure of the fact that the dolls were already
manufactured and shipped.  Defendant clearly was making a mockery
of my examination and proposed corrections.  A copy of my letter
is annexed hereto made a part hereof and marked Exhibit "14".
By telephone conversation with our attorney in late March, 1979,
defendant's vice president revealed that in November, 1978
defendant actually acquired 30,000 dolls, sold 10,000 and
recently sold the remaining 20,000; that another 25,000 were then
due to be received by defendant from the manufacturer
(approximately a 30 day trip at sea, confirming that the submission
of "production samples" was pure deceit); that another 25,000 were
due to be received by defendant from the manufacturer in May; and
that only the latter 25,000 possibly could be corrected.  A
copy of the letter from plaintiffs' attorney to defendant's
attorney confirming the deceit is annexed hereto, made a part
hereof and marked Exhibit "15".  Upon information and belief,
defendant continues to sell all dolls in unapproved form, without
copyright notice and without any satisfactory quality control.
Defendant's dolls are an embarrassment.  Annexed hereto made a
part hereof and marked Exhibit "16" is a composite, consisting
of a side-by-side comparison of defendant's doll and the Phanatic.
Defendant's doll is a gross misrepresentation of our artistic
product.  It looks more like a plush poodle sold in Woolworth's

than the Phanatic.

10.    In addition to the previously mentioned commerical uses of the Phanatic as huckster for paints and hot dogs, plaintiffs recently discovered that in February, 1979 defendant authorized Mt. Ephraim Dodge to make a reproduction of the Phanatic on a Dodge van and granted it advertising concessions. A written authorization was issued by defendant to Mt. Ephraim Dodge in February, 1979, but defendant made no disclosure to plaintiffs until after plaintiffs discovered the use and plaintiffs' attorney wrote to defendant's attorney on May 3, 1979. A copy of defendant's February authorization is annexed hereto, made a part hereof and marked Exhibit "17".  The merchandise agreement does not authorize use of the Phanatic for product promotions.

11.    In certain instances, defendant has referred to plaintiffs as the source of unauthorized reproductions of poor quality by using their name on the reproductions.  That poses a real threat to our reputation for high quality, and our entire future.  We are just beginning to enjoy substantial business growth.  A set back now, based upon false attribution of poor quality products, could forever destroy our business potential. Similarly, whenever we are not referred to as the copyright proprietor of approved reproductions, we lose the opportunity to enhance our reputation because the purchasing public is not told we are the creators.  In either event, we necessarily will suffer

incalculable harm.  We already have been told by one of our customers that the Phanatic dolls he saw are of very poor quality not up to our usual standards.

12.    The reason this application is being brought on by order to show cause is that late last week I discovered that defendant has been dealing with another pennant designer who stated he is prepared to manufacture a pennant with defendant's authorization, which includes an unapproved reproduction of the Phanatic.  In addition, the unapproved dolls are widely offered for sale and defendant appears to be taking no steps to correct the defects.  Accordingly, I believe immediate action by this court is necessary to protect our commercial integrity and preserve our reputation for high quality.

13.    No prior application has been made for the relief sought herein.

WHEREFORE, it is respectfully submitted that plaintiffs application should be granted in all respects.

*Bonnie Erickson*

Sworn to before me this
    day of May, 1979

*Sandra Auteri*
Notary Public

SANDRA AUTERI
Notary Public, State of New York
No. 41-5129500
Qualified in Queens County
Commission Expires March 30, 1980

12

# FORM VA
UNITED STATES COPYRIGHT OFFICE

(SEAL IMPRESSED HERE)

This certificate, issued under the seal of the Copyright Office in accordance with the provisions of section 410(a) of title 17, United States Code, attests that copyright registration has been made for the work identified below. The information in this certificate has been made a part of the Copyright Office records.

*Barbara Ringer*

Register of Copyrights
United States of America

| REGISTRATION NUMBER | |
|---|---|
| VA | 23-748 |
| VA | VAU |

**EFFECTIVE DATE OF REGISTRATION**

MAY 4 1979
Month / Day / Year

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED ADDITIONAL SPACE, USE CONTINUATION SHEET (FORM VA/CON)**

**① Title**

**TITLE OF THIS WORK:** PHILLIE PHANATIC

**NATURE OF THIS WORK:** (See Instructions) Artistic Sculpture

Previous or Alternative Titles: ................................

**PUBLICATION AS A CONTRIBUTION:** (If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.)

Title of Collective Work: .............. Vol....... No...... Date................. Pages....................

**② Author(s)**

**IMPORTANT:** Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). If any part of this work was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates blank.

**1**

**NAME OF AUTHOR:** WAYDE HARRISON

Was this author's contribution to the work a "work made for hire"? Yes...... No..X.

**DATES OF BIRTH AND DEATH:**
Born........... Died...........
(Year) / (Year)

**AUTHOR'S NATIONALITY OR DOMICILE:**
Citizen of..United States.. or { Domiciled in........................
(Name of Country) / (Name of Country)

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:**
Anonymous? Yes...... No..X.
Pseudonymous? Yes...... No..X.

**AUTHOR OF:** (Briefly describe nature of this author's contribution) CO-AUTHOR ARTISTIC SCULPTURE.

If the answer to either of these questions is "Yes," see detailed instructions attached.

**2**

**NAME OF AUTHOR:** BONNIE ERICKSON

Was this author's contribution to the work a "work made for hire"? Yes...... No..X.

**DATES OF BIRTH AND DEATH:**
Born........... Died...........
(Year) / (Year)

**AUTHOR'S NATIONALITY OR DOMICILE:**
Citizen of..United States.. or { Domiciled in........................
(Name of Country) / (Name of Country)

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:**
Anonymous? Yes...... No..X.
Pseudonymous? Yes...... No..X.

**AUTHOR OF:** (Briefly describe nature of this author's contribution) CO-AUTHOR ARTISTIC SCULPTURE

If the answer to either of these questions is "Yes," see detailed instructions attached.

**3**

**NAME OF AUTHOR:**

Was this author's contribution to the work a "work made for hire"? Yes...... No......

**DATES OF BIRTH AND DEATH:**
Born........... Died...........
(Year) / (Year)

**AUTHOR'S NATIONALITY OR DOMICILE:**
Citizen of........................ or { Domiciled in........................
(Name of Country) / (Name of Country)

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:**
Anonymous? Yes...... No......
Pseudonymous? Yes...... No......

**AUTHOR OF:** (Briefly describe nature of this author's contribution)

If the answer to either of these questions is "Yes," see detailed instructions attached.

**③ Creation and Publication**

**YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED:**
Year...1978.
(This information must be given in all cases.)

**DATE AND NATION OF FIRST PUBLICATION:**
Date..April.. 18 1978
(Month) / (Day) / (Year)
Nation...United States..
(Name of Country)
(Complete this block ONLY if this work has been published.)

**④ Claimant(s)**

**NAME(S) AND ADDRESS(ES) OF COPYRIGHT CLAIMANT(S):**

WAYDE HARRISON and BONNIE ERICKSON, doing business as HARRISON ERICKSON, 95 Fifth Avenue, New York, New York 10003

**TRANSFER:** (If the copyright claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright.)

EXHIBIT 1

---

- Complete all applicable spaces (numbers 5-9) on the reverse side of this page
- Follow detailed instructions attached

| | EXAMINED BY: | APPLICATION RECEIVED: | |
|---|---|---|---|
| * ssigned Copyright Office deposit account number: DA028657 | CHECKED BY: | MAY 25 1979 | FOR COPYRIGHT OFFICE USE ONLY |
| VA 23-748 | CORRESPONDENCE: ☐ Yes | DEPOSIT RECEIVED: MAY 4 1979 | |
| | DEPOSIT ACCOUNT FUNDS USED: ☒ | REMITTANCE NUMBER AND DATE: | |

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED ADDITIONAL SPACE, USE CONTINUATION SHEET (FORM VA/CON)**

**PREVIOUS REGISTRATION:**

- Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office? Yes........No....... **x**

- If your answer is "Yes," why is another registration being sought? (Check appropriate box)
  - ☐ This is the first published edition of a work previously registered in unpublished form.
  - ☐ This is the first application submitted by this author as copyright claimant.
  - ☐ This is a changed version of the work, as shown by line 6 of the application.

- If your answer is "Yes," give: Previous Registration Number...........................Year of Registration.........................

**(5) Previous Registration**

---

**COMPILATION OR DERIVATIVE WORK:** (See Instructions)

PREEXISTING MATERIAL: (Identify any preexisting work or works that this work is based on or incorporates.)
.......................................................................................................
.......................................................................................................
.......................................................................................................
.......................................................................................................

MATERIAL ADDED TO THIS WORK: (Give a brief, general statement of the material that has been added to this work and in which copyright is claimed.)
.......................................................................................................
.......................................................................................................
.......................................................................................................
.......................................................................................................

**(6) Compilation or Derivative Work**

---

**DEPOSIT ACCOUNT:** (If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.)

Name: Abeles, Clark and Osterberg

Account Number: * 4503

**CORRESPONDENCE:** (Give name and address to which correspondence about this application should be sent.)

Name: Abeles Clark & Osterberg
Address: 4 East 52nd Street
New York, New York 10022
(City) (State) (ZIP)

**(7) Fee and Correspondence**

---

**CERTIFICATION:** * I, the undersigned, hereby certify that I am the: (Check one)
☐ author ☐ other copyright claimant ☐ owner of exclusive right(s) ☒ authorized agent of: HARRISON ERICKSON
(Name of author or other copyright claimant, or owner of exclusive right(s))
of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Handwritten signature: (X) _Robert Clark_

Typed or printed name: ROBERT C. OSTERBERG Date: May 24, 1979

**(8) Certification (Application must be signed)**

---

JOHN S. CLARK

**MAIL CERTIFICATE TO**

| ABELES CLARK AND OSTERBERG |
|---|
| (Name) |
| 4 East 52nd Street |
| (Number, Street and Apartment Number) |
| New York, New York 10022 |
| (City) (State) (ZIP code) |

**25 MAY 1979**
(Certificate will be mailed in window envelope)

**(9) Address For Return of Certificate**

---

* 17 U S C § 506(e) FALSE REPRESENTATION — Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.



EXHIBIT 1 A



95 FIFTH AVENUE
NEW YORK, N.Y. 10003
212-929-5700

The Phillies
Veterans Stadium
Broad Street and Pattison Avenue
Philadelphia, Pennsylvania 19143

Gentlemen:

Upon your signing below under the wording "CONSENTED AND AGREED TO", this will constitute our agreement as follows:

1. We hereby grant to you the exclusive rights throughout all of the territories of the world for the term of this agreement only, to make reproductions of our copyrighted character presently known as "Phillie Phanatic" the subject of the agreement between us dated March 17, 1978, in and as part of various souvenir items such as keychains, decals, tee-shirts and dolls. (All such items are hereinafter collectively referred to as the "Licensed Articles")

2. As an express condition precedent to your right to make reproductions, each proposed Licensed Article shall be submitted to us in the form in which you intend to manufacture it. For a period of ten working days following receipt by us of each proposed Licensed Article, we shall have the right in our sole discretion to determine whether the proposed reproduction satisfies our personal quality standards. You shall not manufacture any Licensed Article of any kind unless (a) you have first submitted to us the proposed Licensed Article and (b) we do not object to the quality within the ten working day period. Any subsequent modifications must first be approved by us in the same manner, before you incorporate the changes in the Licensed Article. Our approval of any proposed reproduction or modification shall not be unreasonably withheld.

EXHIBIT 2

95 FIFTH AVENUE
NEW YORK, N.Y. 10003
212-929-5700

The Phillies
Page Two

3.    Copies of all Licensed Articles made by you, or presently in
your possession or control, shall bear copyright notice in our name
in the proper location as follows:

"©1978 Harrison Erickson."

4.    You shall maintain accurate books and records evidencing
all of your transactions in the manufacture and sale or other distribution
of all Licensed Articles.  Promptly after the commencement of manufacture,
you shall supply us with 5 complete copies of each Licensed Article from
the first quantity manufactured by or for you.

5.    You shall make the following payments to us for the right
to make reproductions granted hereunder:

(a)    The sum of $5,000.00 upon execution of
this agreement, and on or before July 15 of each
calendar year during the term of this agreement, as
an advance against all royalties otherwise payable
to us pursuant to subdivision (b), infra, but which shall
constitute annual minimum guaranteed compensation hereunder
and is not returnable in any event.

(b)    Subject to the provisions of subdivision (a),
supra, royalties in a sum equal to 7% of either (i) the
total cost of manufacture of each Licensed Article, or
(ii) the retail selling price thereof, whichever is greater,
on or before August 1 for the period ended July 15 of
each year of the term of this agreement; provided, however,
that no royalties shall be payable for decals and brochures
distributed by you free of charge.  Each of the payments
referred to in this subdivision (b) shall be accompanied by
a statement under oath identifying for the annual period, the
Licensed Article, the total quantity manufactured, the total
quantity sold, the selling price and the manufacturing cost.



95 FIFTH AVENUE
NEW YORK, N.Y. 10003
212-929-5700

The Phillies
Page Three

6. Except as expressly authorized herein, and in our agreement dated March 17, 1978, you shall have no right to make any use of the Phillie Phanatic character.

7. The term of this agreement shall commence as of July 16, 1978, and shall continue through July 15, 1981. This agreement shall be automatically renewed from year to year thereafter unless either party, by written notice thirty days prior to the expiration of any one-year period, terminates the same by mailing written notice to such effect to the other party.

8. This agreement shall be construed and interpreted in accordance with the laws of the State of New York.

9. This writing constitutes the entire understanding between us, and none of the provisions herein contained shall be waived, modified or otherwise altered or discharged except by an instrument in writing signed by both of us.

10. Your signature, where indicated below, together with ours, shall constitute this a valid and binding agreement between us.

Dated: New York, New York
As of July 15, 1978

HARRISON ERICKSON

By _____

CONSENTED AND AGREED TO:
THE PHILLIES

By _____





## MISS PIGGY

18

- BORN: 1975 in The Muppets
  Workshop
- HOME: London, New York
- OWNER: Henson Associates, Inc.
- TEAM: The Muppet Show
- POSITION: glamorous star
- VITAL STATISTICS: 36-18-36½
- HITS: right
- ACCOMPLISHMENTS: black and
  blue belt in karate
- FAVORITE COLOR: green
- LAST BOOK READ: "Total Pig"
- QUOTE: *Make that a perfect 36-18-36!*

**HARRISON ERICKSON**

95 FIFTH AVENUE
NEW YORK, N.Y. 10003
212-929-5700

© HARRISON/ERICKSON 1978

# EXHIBIT 3



Statler and Waldorf © Henson Associates, Inc. 1975, 1978

STATLER and WALDORF



STATLER & WALDORF

BORN: 1975 in The Muppets Workshop
HOME: the balcony
OWNER: Henson Associates, Inc.
TEAM: The Muppet Show
POSITION: one-up
DRAFTED: 1898
VITAL STATISTICS: 180/90, 15/6
THROWS: insults and curves
ACCOMPLISHMENT: exist below the waist

QUOTE: *No, I'm the tall one.*

HARRISON ERICKSON
96 FIFTH AVENUE
NEW YORK, NY 10003
212-926-5300

© HARRISON/ERICKSON 1978





THE 3 BEARS

BORN: 1977
HOME: small cottage in
    the Village
OWNER: Harrison/Erickson
TEAM: HO Oats
POSITION: cereal testers
DRAFTED: Warwick, Welsh and Miller
VITAL STATISTICS: great big,
    middle-sized, teeny-weeny
ACCOMPLISHMENTS: weddings,
    bar mitzvahs and TV commercials
LAST BOOK READ: "3 Little Pigs"
QUOTE: *Mmmm, good.*

HARRISON
ERICKSON

95 FIFTH AVENUE
NEW YORK, N.Y. 10003
212-929-5700

© HARRISON/ERICKSON 1978



SIR SHAKE-A-LOT



## SIR SHAKE-A-LOT

BORN: 1973
HOME: coast to coast
OWNER: Burger King
DRAFTED: J. Walter
    Thompson
POSITION: on camera
VITAL STATISTICS: 6 ft. character
    costume
SPECIALTY: magician's assistant
ACCOMPLISHMENT: hobnobs with
    royalty
FAVORITE FLAVORS: vanilla,
    chocolate, and
    strawberry
QUOTE: *G-r-r-reat Shh-a-akes!*

50

**HARRISON ERICKSON**
95 FIFTH AVENUE
NEW YORK, N.Y. 10003
212-243-5700

Dolls by Lynne Clemens Corp., Brooklyn

(C) HARRISON/ERICKSON 1976





BURGER THING

BORN: 1978
HOME: coast to coast
OWNER: Burger King
DRAFTED: J. Walter Thompson
POSITION: top of the menu
VITAL STATISTICS: 24"x30"
  animated puppet
ACCOMPLISHMENT: hanging around
GOAL: to be relished
HOBBY: skateboarding

QUOTE: *Have me your way!*

47

HARRISON ERICKSON
85 FIFTH AVENUE
NEW YORK, NY 10003
212/226/6799

Gum, by Topps Chewing Gum, Brooklyn

© HARRISON/ERICKSON 1978





SUNNY AND FOSSIL

BORN: 1977
HOME: Washington, D.C.
OWNERS: Light, Inc. and
         Harrison/Erickson
CALLING: crusaders for energy
TEAM: National Education Assn.
         conservation
VITAL STATISTICS: 55MPH, 68°F
ACCOMPLISHMENTS: TV spots
HOBBIES: bicycling and recycling
GOAL: 10 minutes with the President
QUOTE: *I don't know where that boy
        gets all his energy.*

25

HARRISON
ERICKSON
65 FIFTH AVENUE
NEW YORK, NY 10003
212/989-5700

© HARRISON/ERICKSON 1978



PHILLIE PHANATIC

Phillie Phanatic ®Harrison/Erickson



PHILLIE PHANATIC

BORN: 1978
HOME: City of Brotherly Love
OWNER: Harrison/ Erickson
TEAM: Philadelphia Phillies
POSITION: designated mascot
VITAL STATISTICS: shoe size 18EE
ACCOMPLISHMENT: Gong Show appearance
GOAL: World Series Championship
HOBBIES: disco dancing
QUOTE: I feel very lucky to be the first of my kind in the major leagues.

HARRISON ERICKSON
85 FIFTH AVENUE
NEW YORK, N.Y. 10003
212-620-5700

Gum by Topps Chewing Gum, Brooklyn

© HARRISON/ERICKSON 1978



SLEEPY BEAR



SLEEPY BEAR

BORN: 1977
HOME: toy chest
OWNER: Knickerbocker
Toy Co.
TEAM: Harrison/Erickson Toys
VITAL STATISTICS: 13" and 17"
soft toy
SPECIALTY: sleeping
ACCOMPLISHMENT: a top selling
unlicensed toy, 1978
FAVORITE PASTIME: hugging
children of all ages

QUOTE: Zzzzzzzzz

HARRISON
ERICKSON

95 FIFTH AVENUE
NEW YORK, N.Y. 10003
212-929-5700

© HARRISON/ERICKSON 1978