

| | | |
|---|---|---|
| NEW YORK | | SHANGHAI |
| LONDON | | ATLANTA |
| SINGAPORE | | BALTIMORE |
| PHILADELPHIA | *FIRM and AFFILIATE OFFICES* | WILMINGTON |
| CHICAGO | | MIAMI |
| WASHINGTON, DC | | BOCA RATON |
| SAN FRANCISCO | DAVID J. WOLFSOHN | PITTSBURGH |
| SILICON VALLEY | DIRECT DIAL: +1 215 979 1866 | NEWARK |
| SAN DIEGO | PERSONAL FAX: +1 215 689 2739 | LAS VEGAS |
| LOS ANGELES | *E-MAIL:* DJWolfsohn@duanemorris.com | CHERRY HILL |
| TAIWAN | | LAKE TAHOE |
| BOSTON | *www.duanemorris.com* | MYANMAR |
| HOUSTON | | OMAN |
| AUSTIN | | *A GCC REPRESENTATIVE OFFICE* |
| HANOI | | *OF DUANE MORRIS* |
| HO CHI MINH CITY | | ALLIANCES IN MEXICO |
| | | AND SRI LANKA |

February 7, 2020

**VIA CM/ECF**

The Honorable Sarah Netburn
United States Magistrate Judge
United States District Court
  for the Southern District of New York
Thurgood Marshall Courthouse
40 Foley Square
New York, NY  10007

      Re:    *The Phillies v. Harrison/Erickson, Inc., et al.*, C.A. No. 19-7239-VM-SN

Dear Judge Netburn:

Pursuant to Your Honor's January 15 and January 29 Orders, Plaintiff, The Phillies, submits this letter brief setting forth The Phillies' positions on the parties remaining discovery disputes. Specifically, The Phillies request that the Court make three orders with respect to discovery:

1. An Order quashing the 30(b)(6) deposition notice topics to Major League Baseball Properties, Inc. ("MLBP") served by Defendants on January 24, 2020.

2. An Order limiting the 30(b)(6) deposition notice topics to the Phillies, served by Defendants on January 24, 2020, to the specific topics identified below, and quashing the remaining topics.

3. An Order that depositions of Phillies' employees shall take place in Philadelphia.

Separately, The Phillies request clarification of the deadline for serving contention interrogatories under Local Rule 33.3(c), as neither party is clear on the calculation of the deadline in this matter.  In this case, The Phillies believe that "30 days prior to the discovery cut-off date" should be read as 30 days prior to the deadline for all discovery, which is April 28, 2020.  Accordingly, we request that Your Honor set a deadline for serving contention interrogatories of **March 29, 2020**.



The Honorable Sarah Netburn
February 7, 2020
Page 2

**Summary of the Case and The Parties' Dispute Over Organizational Depositions**

The Phillies brought this case to seek rulings regarding defendants' attempt to terminate their 1984 assignment of the copyright in the Phillie Phanatic, the team's mascot. On June 1, 2018, Defendants sent a purported termination notice to The Phillies, claiming that, under 17 U.S.C. § 203 of the Copyright Act, Defendants were terminating the assignment effective June 15, 2020. This case centers around whether Defendants can properly terminate the 1984 Assignment at all, and, even if they can, what rights if any would actually revert to the Defendants and what rights would remain with The Phillies.

As to the first issue—the validity of the termination—the Phillies have raised several defenses to termination in Counts I-IV of their Complaint. First, Defendants cannot terminate the 1984 Assignment because the Copyright Act's termination provisions permit only one renegotiation, and Defendants exhausted that chance in 1979, when they first renegotiated the rights to the Phanatic copyright. Second, the Defendants do not have the right to enforce any copyright in the Phanatic because they obtained their copyright registration for the Phanatic by describing it as "an artistic sculpture" rather than as a costume, which, at the time, the office considered to be unregistrable. Third, Defendants cannot terminate the 1984 Assignment because The Phillies are co-authors of the costume because of their contribution of several key features back in 1978. And fourth, The Phillies are the authors of the Phanatic's character/personality because the Phillies' performers and others "brought the costume to life" in its performances. Accordingly, the Phillies' ability to use the character is not subject to termination.

As to the second issue—the consequences of termination—the Phillies have also raised several defenses to Defendants' broad claim that they are entitled to reversion of any and all rights in the Phillie Phanatic, as set forth in Counts V-VIII of the Complaint. In Count V, the Phillies seek a declaration that Section 203(b)(1) of the Copyright Act protects the Phillies rights in the many derivative works that have been created since the 1984 Assignment:

> A ***derivative work prepared under authority of the grant before its termination may continue to be utilized under the terms of the grant after its termination***, but this privilege does not extend to the preparation after the termination of other derivative works based upon the copyrighted work covered by the terminated grant.

In Count VI, the Phillies seek a declaration that, because the Phillies have incontestable trademarks rights in the Phanatic, it would violate the Lanham Act for Defendants to carry through on their threat to sell or license the costume for use by a different team. In Counts VII and VIII, the Phillies seek partial reimbursement of money paid to Defendants for the 1984 Assignment (and any other art or work to which the Defendants contend the termination notice applies) to reflect the difference in value between an assignment of the copyright through the full term and the value of the terminated assignment.

DuaneMorris

The Honorable Sarah Netburn
February 7, 2020
Page 3

Despite the number of legal issues raised by the pleadings, we do not believe that many facts are actually in dispute. Accordingly, The Phillies were surprised when Defendants served 19 deposition notices and subpoenas on January 8, 2020 seeking testimony from current and former employees of the Phillies; The Phillies organization; Major League Baseball; and Major League Baseball Properties, Inc. ("MLBP"). While Defendants have since withdrawn certain of those notices and subpoenas (as they had to, having served well more than the ten permitted by the Federal Rules), they still have indicated they intend to take at least seven 30(b)(1) depositions in addition to 30(b)(6) depositions of the Phillies and MLBP.

The 30(b)(6) notices are remarkably broad and unfocused. They do not give the required guidance to The Phillies to permit the proper preparation of one or more designees, and they appear to cover legal positions and invade the attorney-client privileged.

The parties met and conferred twice as to the scope of the noticed 30(b)(6) depositions—once on January 17, 2020 and once on January 27, 2020. On both occasions, the Phillies objected to the scope of the noticed topics for MLBP and the Phillies as not reasonably particular, as seeking legal positions rather than facts, and as failing to specify topics seeking information that is relevant and in dispute. During the calls, Defendants' counsel expressed an openness to limiting or modifying certain of its topics, but Defendants never again reached out to Plaintiffs. Instead, on February 5, the Phillies sent Defendants an email detailing their position on each topic, and specifically agreeing to produce a witness as to several topics.

Defendants responded to this communication by refusing to further discuss or narrow their topics, accusing the Phillies of claiming that they are "immune from a party deposition," and declaring their intent to proceed with their notices as written. Because attempts to narrow the issues in dispute have broken down, The Phillies seek the Court's intervention.

**Standards Governing 30(b)(6) Deposition Topics**

Federal Rule of Civil Procedure 30(b)(6) permits a party to notice the deposition of an organization by "describ[ing] with reasonable particularity the matters for examination." If the notice complies with that requirement, the organization must designate one or more persons to testify on its behalf and prepare the witness to testify about "information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6).

A 30(b)(6) notice is subject to the limitations on relevance, burden, and proportionality in Rule 26. *Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, N.A.*, 2017 WL 9400671, at *1 (S.D.N.Y. Apr. 27, 2017) (Netburn, J.) Moreover, "topics that generally seek testimony as to every fact that supports a legal claim will likely fail the reasonably particularity requirement." *Id.* Nor is a Rule 30(b)(6) deposition a substitute for other forms of discovery. Broad topics make it impossible for the organization to fully prepare a knowledgeable witness, and risk turning the deposition into a "'memory contest' of topics better suited to a written response or document production." *Id.* at *2. Finally, a Rule 30(b)(6) deposition is not designed

DuaneMorris

The Honorable Sarah Netburn
February 7, 2020
Page 4

as an opportunity for a party to examine lay witnesses seeking to "extract[] broadly dispositive, smoking-gun testimony on matters more properly reserved for summary judgment." *Id.*

**The 30(b)(6) Notice to MLBP Should be Quashed**

Major League Baseball Properties, Inc. is an entity that, among other functions, acts as the licensing agent for the intellectual property of the various Major League Baseball teams, including the Phillies.

The Notice to MLBP, attached hereto as Exhibit A, contains 10 topics. The topics are not drafted with reasonable particularity, encompassing largely irrelevant or undisputed information, and they cover subject matter more appropriate for document discovery.

**Topics 1, 2, 6, 7, and 8.** Each of these topics explicitly requests a witness to testify about "all agreements" or "all documents" or "all documents and communications" about broad topics such as "ownership, exploitation, licensing or enforcement of intellectual property rights." That is precisely the kind of topic that is more appropriate for written discovery, and inappropriate for an organizational deposition. *See Blackrock Allocation*, 2017 WL 9400671, at *2 ("A court should strike notice topics that would result in a witness merely testifying to information readily available through document production.").

**Topic 3.** This topic requests testimony as to "all revenues and profits by year and in total" earned by the Phillies, MLBP, and all other Major League Baseball clubs for use of the Phanatic and "any derivatives thereof." Putting aside that this, too, is a more appropriate topic for document discovery than an organizational depositions, Defendants have not explained why "revenues and profits" are relevant in this case, nor could they, since Defendants have no claim for damages.

**Topic 4.** This topic seeks testimony as to "[o]wnership, exploitation, licensing or enforcement of intellectual property rights in the Phillie Phanatic and any derivatives thereof." This topic fails the "reasonable particularity" test. What is it about "ownership" or "exploitation" or "licensing" or "enforcement" that Defendants want to know that is relevant and disputed in this case? Despite multiple meet and confers, Defendants have declined to say.

**Topic 5.** The Phillies (as opposed to MLBP) have offered to provide testimony, and have already provided documents, as to the "authorship" of derivative works of the Phanatic. Defendants have not explained why they believe they need identical testimony from MLBP. Additionally, with respect to "authorship" of the original Phillie Phanatic costume, MLBP has no first-hand information to provide, and therefore cannot designate a witness on this topic.

**Topics 9 and 10.** These topics—seeking testimony as to MLBP's "effort to respond to document requests" and to "prepare for this deposition"—are "discovery on discovery." Indeed, "[a] party must provide an 'adequate factual basis' for its belief that discovery on discovery is



The Honorable Sarah Netburn
February 7, 2020
Page 5

warranted." *Mortgage Resolution Servicing, LLC v. JP Morgan Chase Bank, N.A.*, 2016 WL 3906712, at *7 (S.D.N.Y. July 16, 2016). Defendants have not done so, except to claim that these topics are routinely included in 30(b)(6) notices in the Southern District of New York. To the contrary, "discovery on discovery" is not routine, and Defendants have made no showing that it is appropriate here. Accordingly, The Phillies request that the Court quash the deposition notice to MLBP.

**The Deficiencies in Defendants' 30(b)(6) Notice to the Phillies**

The Defendants' 30(b)(6) Notice, attached hereto as Exhibit B, contains 27 topics, virtually all of which violate the rules for a properly noticed 30(b)(6) deposition.

Defendants' proposed topics lack reasonable particularity because they are phrased in generalities the give The Phillies little to no guidance on what Defendants actually seek. This broad brush approach "subjects the noticed party to an impossible task, because, where it is not possible to identify the outer limits of the areas of inquiry notices, compliant designation is not feasible." *BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, N.A.* 2017 WL 3610511, at *11 (S.D.N.Y. Aug. 21, 2017). That is the catch-22 The Phillies face.

For example, various of Defendants' topics seek testimony as to "all facts" or all "statements" or "communications," or seek testimony about vague issues like the "relationship" between The Phillies and third parties. *See* Topics 1, 2, 5, 6, 19, 20, 21, 25, and 27. Such topics are inappropriate. *See Blackrock Allocation*, 2017 WL 9400671, at *1 ("[T]opics that generally seek testimony as to every fact that supports a legal claim will likely fail the reasonable particularity requirement."). Other inappropriate topics seek the Phillies legal positions rather than facts, such as the "understanding of the Copyright Act's termination provisions at the time" of the 1984 Assignment, and other legal issues. Topic 17; *see also* Topics 16, 18, and 23.

Finally, Defendants have failed to demonstrate the relevance of many of their topics to an issue actually in dispute. That is their burden: ""When a party subpoenas a corporation pursuant to F.R.C.P. 30(b)(6), . . . '[t]he party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings.'" *BlackRock Allocation*, 2017 WL 3610511, at *11. To take a fundamental example, the Defendants have broadly demanded testimony concerning

> Any derivative works of the Phanatic that the Phillies claim they, or other persons, may continue to use or exploit if the termination notice at issue in this case is effective, including all creative contributions to the derivative works, the persons involved with each contribution and their relationships to the Phillies, the owner(s) of intellectual property rights in the derivative works, and whether each alleged derivative work was copies from or closely resembles a work delivered to the Phillies by Defendant.

DuaneMorris

The Honorable Sarah Netburn
February 7, 2020
Page 6

Putting aside the breadth of the topic, Defendants have not offered a theory upon which all this information about "creative contributions," all the "persons involved," the "owner" of the derivative work, or the other information sought would be relevant. Under 17 U.S.C. § 203(b)(1), the relevant legal question is whether the derivative work was "prepared under authority of the grant before its termination." Despite repeated meet and confers, Defendants have failed to offer a theory of relevance for the information they seek. Defendants have also propounded multiple topics seeking information about "revenues and profits" or the "valuation of intellectual property rights" in the Phanatic, without explaining what relevance such information could have given that Defendants do not have a claim for damages in this case.

Despite the numerous deficiencies in Defendants' notice, The Phillies sought to narrow the issues in dispute by agreeing to designate a witness with respect to several of Defendants' topics, either as written or as limited. As set forth in the attached email message as Exhibit C, The Phillies agreed to designate a witness with respect to all or part of Topics 4, 7, 10, 11, 12, 13, 15, 17, 22, and 25. The Phillies ask that the Court adopt the Phillies limitations on those topics, and strike the remaining topics in the notice.

Alternatively, Defendants have noticed seven 30(b)(1) depositions of current and former Phillies employees. It is possible—even likely—that testimony from those individuals will narrow or eliminate the need for organizational testimony from the Phillies. If the Court does not believe now is the proper time to rule on the Phillies objections to the scope of the notice, then the Phillies propose that the Court order the 30(b)(1) depositions to go forward, subject to the parties' meeting and conferring following the depositions on issues, if any, that Defendants believe require an organization witness.

**Depositions of Phillies Witnesses Should be Conducted in Philadelphia**

The Phillies agreed to take—and are taking—the depositions of Defendants' principals in New York, based on Defendants' counsel's representation that doing so would be more convenient for their clients. Defendants' counsel, conversely, has noticed depositions of three Phillies employees, and the Phillies as an organization, for New York. With respect to the scheduling of Phillies' witness depositions, The Phillies are working to confirm available dates for the witnesses and are providing those dates to Defendants. The Phillies are about to begin spring training in Florida, making scheduling for certain witnesses more complicated.

Accordingly, depositions for the Phillies' witnesses would be far more convenient for the witnesses if they could be held in Philadelphia. Scheduling depositions in Philadelphia would also have the benefit of allowing certain witness depositions to be scheduled back-to-back with other current or former employees, as Defendants have already acknowledged that former Phillies employees should be deposed in or near Philadelphia. As to the Phillies organizational depositions, the Phillies are likely to need to designate more than one witness to meet the demands of Defendants topics, even limited as The Phillies propose. It makes little sense to require The Phillies to bring multiple witnesses and counsel to New York, when Defendants

DuaneMorris

The Honorable Sarah Netburn
February 7, 2020
Page 7

would only be required to send one lawyer to do the deposition in Philadelphia. These convenience gains are likely why Defendants' counsel initially agreed to deposing Phillies' witnesses in Philadelphia during the parties' January 17 meet and confer, only to change his mind by the time Defendants' served their new deposition notices on January 24. Moreover, one of Defendants' counsel—a partner—resides in the Washington, DC area and is resident in defense counsel's DC office,

Accordingly, The Phillies respectfully request that the Court order that depositions of Phillies witnesses take place in Philadelphia.

Respectfully,

DUANE MORRIS LLP

/s/*David J. Wolfsohn*
David J. Wolfsohn *(admitted pro hac vice)*
30 S. 17th Street
Philadelphia, PA 19103
Tel:    (215) 979-1000
Fax:   (215) 979-1020

*Attorneys for Plaintiff,
The Phillies*

DJW/kah
cc:    Leo M. Lichtman, Esq.
         Elaine Nguyen, Esq.
         J. Matthew Williams, Esq.
         Tyler R. Marandola, Esq.
         Kendra C. Oxholm, Esq.