

**MITCHELL SILBERBERG & KNUPP LLP**
A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Paul D. Montclare
A Limited Liability Partnership
(917) 546-7704 Phone
(917) 546-7674 Fax
pdm@msk.com

February 12, 2020

**VIA ECF**

Honorable Sarah Netburn
U.S. Magistrate Judge
Thurgood Marshall Courthouse
40 Foley Square, Room 430
New York, NY 10007

Re: **Phillies v. Harrison/Erickson, Inc. et al., No. 19-cv-7239-VM-SN**

Dear Judge Netburn:

On behalf of Defendants and Counter-Plaintiffs Harrison/Erickson, Incorporated, Harrison Erickson, Wayde Harrison, and Bonnie Erickson (collectively, "Defendants"), we write to respond to the contentions set forth in The Phillies' February 7, 2020 lengthy letter to the Court (ECF No. 58) (hereinafter, "Ltr.").[1]

This case was brought by The Phillies purely to gain bargaining leverage in negotiations with Defendants over The Phillies' continued use of the Phanatic mascot. The Phillies' claims are built on misrepresentations of fact and law, and they are now blatantly stonewalling deposition discovery in order to avoid those misrepresentations coming to light. Not only are The Phillies attempting to severely limit discovery into their institutional knowledge of some of the key issues that *they raised* in their Complaint and questioned Defendants on for two days, but they are now trying to prevent Defendants from obtaining any discovery from non-party Major League Baseball Properties, Inc. ("MLBP"), notwithstanding The Phillies' admissions that MLBP has acted as their agent with respect to the intellectual property rights at issue, and has played an important role in the creation and sales of Phanatic-related merchandise. Moreover, The Phillies have the burden to show good cause why their depositions should not proceed in New York—the forum *they chose*. They do not do so and instead baselessly assert that Defendants should bear the burden to travel to Philadelphia. All of The Phillies' requests should be denied.

I. **Defendants' Summary of the Case and the Current Dispute**

Defendants are renowned designers who over the course of several decades, have created countless iconic puppets, costumes, and other creations, including numerous Muppets characters and major sports league mascots. In 1978, The Phillies approached Defendants, on the recommendation of Jim Henson himself, to design and give life to a new mascot that would help bring more people—particularly children—to The Phillies games. And that is exactly what

---
[1] The Phillies' letter exceeds the 5-page limit set by this Court. Individual Practices, II.C. As a result, this response is slightly over the 5-page limit so that Defendants may fully respond.

437 Madison Ave., 25th Floor, New York, New York 10022-7001
Phone: (212) 509-3900  Fax: (212) 509-7239  Website: WWW.MSK.COM
11880062.2

Case 1:19-cv-07239-VM-SN   Document 60   Filed 02/12/20   Page 2 of 6



Honorable Sarah Netburn
February 12, 2020
Page 2

Defendants did.  Defendants conceived of and designed a fanciful character with a well-thought out backstory and personality, based on their years of experience working for Jim Henson's studio.  Among other things, they made the Phanatic green (because they believed it would stand out among the multi-colored seats at The Phillies' prior stadium); gave the Phanatic a large snout to resemble a megaphone (because the name "Phanatic" implied a loud and boisterous character); gave the Phanatic a party-blower tongue (because the addition of a moving object makes the character more entertaining and interesting); gave the Phanatic a Galapagos Islands origin story (because the Phanatic is an anomaly of evolution); gave life to the Phanatic by conceiving of the Phanatic's mannerisms and personality (based on their extensive experience giving life to characters on the Muppets and other Jim Henson productions); and approved a performer—Dave Raymond—who would accurately embody those mannerisms and personality.  In other words, the Phanatic was entirely an original creation of Defendants.  And The Phillies acknowledged this from the beginning, expressly agreeing that upon Defendants' creation of the Phanatic, "The character *will be copywritten by Harrison/Erickson who reserve all rights of its use . . .*" Compl. (ECF No. 1), Ex. B.[2]

In 1984, after years of licensing certain rights in the Phanatic to The Phillies, Defendants sold them the copyright to the Phanatic and all existing reproductions and portrayals of the Phanatic outright, and continued their artistic relationship with The Phillies for almost 40 years, up until Defendants served a notice of termination to renegotiate the 1984 assignment—as is their lawful right under § 203 of the Copyright Act.[3]  Upon serving the notice of termination, Defendants and The Phillies entered into renegotiation discussions in what Defendants believed to be in good faith; however, those discussions were hampered when The Phillies abruptly stopped all communications with Defendants and instead filed this lawsuit in New York.

The Phillies have brought incredible claims against Defendants including *inter alia* (1) that they, not Defendants, actually created numerous aspects of the Phanatic, Compl. ¶¶ 1-2, 7-8; 35-38, 45-46, 107-122; (2) that Defendants somehow defrauded the Copyright Office into registering the Phanatic copyright, Compl. ¶¶ 94-106; (3) that Defendants have threatened to infringe The Phillies' trademarks, Compl. ¶¶ 130-143; (4) and that Defendants tricked The Phillies into overpaying for the Phanatic copyright because they did not inform The Phillies about the existence of termination rights under § 203 of the Copyright Act, Compl. ¶¶ 144-155.

Defendants' subpoena and Rule 30(b)(6) notice seek to explore the basis for these very claims, and The Phillies themselves have put the issues therein front and center in this case, including by

---

[2] The Complaint and the exhibits thereto which are cited in this letter are attached hereto as Exhibit A.

[3] The Phillies' characterization that Defendants "renegotiated" their rights to the Phanatic in 1979 and therefore exhausted their opportunity to do so now is disingenuous at best.  After Defendants created the Phanatic, they allowed The Phillies to develop and sell certain merchandise, subject to Defendants' approval and control.  Compl. Ex. C.  The Phillies almost immediately violated that agreement, and Defendants' copyright, by creating unapproved merchandise, which prompted Defendants to sue The Phillies in 1979.  *See* Compl. ¶ 50.  The case resolved that year pursuant to a settlement agreement in which The Phillies paid Defendants a sum of money and agreed to new licensing terms.  Defendants always retained sole ownership and control of the Phanatic copyright until they sold the rights in 1984.

11880062.2



Honorable Sarah Netburn
February 12, 2020
Page 3

questioning Defendants for two days on the exact same issues.  Further, The Phillies have produced thousands of documents, but not a single one to Defendants' knowledge corroborates The Phillies' characterization of how the Phanatic came to be, undermines Defendants' legal ability to exercise their termination rights, or shows how The Phillies were or will be allegedly harmed by Defendants.  Their attempts to heavily limit Defendants from exploring these issues further in organizational depositions should not be countenanced.

## II.     The Subpoena to MLBP is Proper.

MLBP is a highly relevant non-party entity.  MLBP acts as The Phillies' merchandising partner with respect to the Phanatic, so would likely have critical information pertinent to the case.  The Phillies admit that MLBP acts as its "licensing agent for . . . intellectual property," Ltr. at 4, so its acts and knowledge with respect to The Phillies' rights in the Phanatic can be imputed to The Phillies themselves.  *See In re Maxwell Newspapers, Inc.*, 151 B.R. 63, 69 (Bankr. S.D.N.Y. 1993) ("The general rule is that the acts and knowledge of an agent acting within the scope of his agency are imputed to the agent's principal.").  Moreover, The Phillies elicited extensive testimony from Defendants concerning MLBP, and have stated, in an *unverified* interrogatory response, that MLBP has been involved in the creation of Phanatic artwork that form the basis for derivative works that The Phillies claim they can continue using after termination.  In short, MLBP is central to the case, and Defendants are entitled to seek discovery from them.

As a threshold matter, The Phillies have no standing to request that this Court quash the deposition of MLBP as it is not a party.  *See Estate of Ungar v. Palestinian Auth.*, 332 F. App'x 643, 645 (2d Cir. 2009) (explaining that a party ordinarily does not have standing to seek to quash a subpoena issued to a non-party absent a claim of privilege); *United States v. Nachamie*, 91 F. Supp. 2d 552, 558 (S.D.N.Y. 2000) ("A party generally lacks standing to challenge a subpoena issued to a third party absent a claim of privilege or a proprietary interest in the subpoenaed matter.").[4]  The Phillies have not raised any privilege issue, nor asserted *any* legitimate interest that would provide them with standing to challenge the MLBP's subpoena.  On this basis alone, The Phillies' motion to quash should be denied.  Nonetheless, their objections are meritless:

**Topics 1, 2, 6, 7, and 8.**  These topics seek *testimony* about MLBP's institutional knowledge with respect to the agreements, documents, and communications at issue.  They go to the understandings concerning the scope of MLBP's agency with respect to the rights at issue and the copyright interest and termination that The Phillies are challenging.  It is not The Phillies' place to decide what method of discovery Defendants are allowed to use.  *See* Fed. R. Civ. P. 26(b)  This is particularly the case here, where MLBP belatedly responded to the subpoena this past week, indicating that it *will not produce any documents* (a copy of MLBP's response and objections is attached hereto as Exhibit B).  To the extent The Phillies take issue with the word "all," Defendants are willing to modify those topics so as to remove the word "all."

---

[4] It is immaterial that MLBP is retained by the same counsel.  "Even when counsel for one party also represents the non-party who received the subpoena, only the recipient non-party has standing to object." *Meyer Corp. U.S. v. Alfay Designs, Inc.*, No. CV 2010 3647 (CBA)(MDG), 2012 WL 3537001, at *1 (E.D.N.Y. Aug. 14, 2012).



Honorable Sarah Netburn
February 12, 2020
Page 4

**Topic 3.**  The Phillies' stated objection that revenues and profits are not relevant because Defendants have no claim for damages, Ltr. at 4, entirely misses the point.  The Phillies have put their revenues and profits in connection with the Phanatic directly at issue.  They have alleged, *inter alia*, that Defendants already realized the full market value of the Phanatic when they sold the copyright in 1984, Compl. ¶¶ 14, 86, that Defendants will be unjustly enriched due to The Phillies' alleged investments in the Phanatic and alleged overpayment for the assignment in 1984 Compl. ¶¶ 7, 70-72, 149-50, and that Defendants will violate their trademark rights, Compl. ¶ 134.  Central to each theory is The Phillies' (and MLBP's) revenues and profits in connection with the Phanatic.  For instance, the extent of Phanatic-related sales to date will greatly inform whether Defendants were aware of the market potential for the Phanatic when they sold the copyright in 1984; the alleged harm to The Phillies from lost profits due to termination; and the scope of the trademark rights The Phillies allege will theoretically be violated.[5]  On top of all this, The Phillies have already opened the door to the relevance of Phanatic-related revenue and profits by questioning Defendants about revenue and profits, not only in connection with the Phanatic, but in connection with numerous mascots not even at issue in the case.

**Topic 4.**  Given that MLBP has acted as The Phillies' licensing agent, Defendants are entitled to seek discovery as to what rights MLBP has claimed in the Phanatic, including The Phillies' representations to MLBP and MLBP's representations to third parties.  Defendants have asserted the affirmative defenses of estoppel and statute of limitations with respect to The Phillies' authorship claims and challenges to the validity of the Phanatic copyright and termination right.  Answer and Counterclaims (ECF No. 38), at 25-26, 35-37 (attached hereto as Exhibit C).  Defendants have also asserted a claim for injunctive relief, based on The Phillies' express threat to willfully infringe the Phanatic copyright after the rights revert to Defendants upon termination.  *Id.* at 38-39.  Representations made by MLBP and The Phillies during the grant period concerning the validity of the copyright, The Phillies' authorship of the Phanatic, either MLBP or The Phillies' rights in the Phanatic vis-à-vis the rights of Defendants, and MLBP and The Phillies' understanding of Defendants' termination rights is highly relevant to Defendants' affirmative defenses and counterclaims.  This is especially true where, as here, The Phillies did not assert any authorship interest in the Phanatic nor challenge the validity of the copyright for over forty years, only raising these allegations after Defendants asserted their termination rights.

**Topic 5.**  The Phillies cannot oppose this topic on the basis that The Phillies have offered to provide testimony, nor should the Defendants have to rely on the representations of counsel that MLBP would provide "identical testimony," or that MLBP "has no first-hand information to provide."  *See Pegoraro v. Marrero*, No. 10 Civ. 00051 (AJN) (KNF), 2012 WL 1948887, at *5 (S.D.N.Y. May 29, 2012) ("A witness ordinarily cannot escape examination by denying knowledge of any relevant facts, since the party seeking to take the deposition is entitled to test the witness's lack of knowledge.").

---

[5] The Patent and Trademark Office even directs that in trademark opposition proceedings in which one party alleges that another party's applied-for trademark would violate its rights, "annual sales and advertising figures for a party's involved goods or services sold under its involved mark are proper matters for discovery."  T.B.M.P § 414(18).

11880062.2



Honorable Sarah Netburn
February 12, 2020
Page 5

**Topics 9 and 10.**  As stated *supra*, MLBP recently responded to the subpoena and stated that it will not agree to produce any documents.  Ex. B.  MLBP is not even willing to represent that it searched for the documents sought.  Instead, for a majority of the document requests, MLBP simply refers Defendants to The Phillies' document production.  Defendants are entitled to know what efforts MLBP actually took to comply with the subpoena.  *See* Fed. R. Civ. P. 45(e).

### III.      The Rule 30(b)(6) Notice to The Phillies is Proper.

The Phillies challenges to their Rule 30(b)(6) notice topics are similarly meritless.

Every topic for which The Phillies characterize as seeking "all facts" or all "statements" or "communications" (Topics 1, 2, 5, 6, 19, 20, 21, 25, and 27), Ltr. at 5, is a topic on which The Phillies already extensively questioned Defendants, and directly relates to their allegations.  For instance, Topic 1 is highly pertinent to determining the extent of MLBP's role in developing and licensing Phanatic derivative works, among other things;  Topic 5 is highly relevant to the extent The Phillies maintain that *they* authored the Phanatic, given that The Phillies allege that Dave Raymond, not Defendants, developed the Phanatic character, *see* Compl. ¶¶ 117-20; and Topic 19 is highly relevant given that several claims hinge on The Phillies' institutional understanding with respect to what rights were conveyed in each agreement, which The Phillies have put at issue, *see* Compl. ¶¶ 82-87, 148-54.  The Phillies fail to articulate why they should not have to testify as to these topics, or any of the others objected to on the same basis.  To the extent The Phillies take issue with the word "all," Defendants are willing to modify the topics to remove it.

As to topics that purportedly "seek The Phillies' legal positions" (Topics 16, 17, 18, and 23) Ltr. at 5, these topics plainly seek—*as a factual matter*—The Phillies' institutional understanding with respect to the Copyright Act's termination provisions, what rights they will have after termination, and their intentions with respect to using the Phanatic or Phanatic derivative works after termination.  These issues are central to The Phillies' claims, and highly relevant to Defendants claim for injunctive relief, given that The Phillies have expressly threatened to use the Phanatic without permission after the rights revert to Defendants.

The Phillies further contend that Defendants "failed to demonstrate the relevance of many of their topics to an issue actually in dispute," Ltr. at 5, but do not identify such topics.  This is not a proper basis to challenge a Rule 30(b)(6) notice.  *See Marrero*, 2012 WL 1948887, at *4 (explaining that the burden of persuasion for a protective order is borne by the movant).  The only topic they identify is Topic 7.  However, this topic directly concerns The Phillies' allegations that they will be entitled to utilize derivative works after termination pursuant to 17 U.S.C. § 203(b)(1).  Compl. ¶¶ 123-129.  As an exhibit to an unverified interrogatory response, The Phillies identified 399 derivative works that they claim they can continue to utilize after termination.  Defendants are entitled to seek The Phillies' testimony concerning the factual basis for their representations, including what new authorship was added to each work that Defendants contend they can continue to utilize.[6]

---

[6] The Phillies take for granted that after termination, they will no longer own the underlying copyright to the Phanatic.  Accordingly, to the extent they may continue to exercise rights with respect to derivative works after



Finally, to the extent The Phillies seek to limit Topics 4, 7, 10, 11, 12, 13, 15, 17, 22, and 25, their request is improper. It is not the place of The Phillies' counsel to unilaterally limit the topics.

### IV. Because The Phillies Chose to File in New York, they Cannot Now Avoid Being Deposed in New York

As set forth in Defendants' February 6, 2020 letter (ECF No. 57), The Phillies have no basis to avoid having their depositions taken in New York, given that they made the conscious choice to file this lawsuit in New York. Because "[The Phillies] chose to file suit in this district . . . they bear of the burden of showing the existence of good cause to excuse their presumptive obligation to be deposed in New York." *See Wei Su v. Sotheby's, Inc.*, No. 17-cv-4577 (VEC), 2019 WL 4053917, at *2 (S.D.N.Y. Aug. 28, 2019) (finding that claimed hardship did not excuse Chinese plaintiff from being deposed in United States, and that plaintiffs must agree to bear any costs for conducting deposition outside of New York). The Phillies have not come close to meeting that burden. *See also, e.g., Restis v. Am. Coal. Against Nuclear Iran, Inc.*, No. 13 CIV. 5032(ER)(KNF), 2014 WL 1870368, at *3 (S.D.N.Y. Apr. 25, 2014) (requiring plaintiff to travel from Greece to be deposed in New York because plaintiff "elected to commence this action in this judicial district"). On top of this, Defendants reside in New York and plan to attend The Phillies' depositions, and would be substantially burdened by having to travel to Philadelphia.[7] The Phillies should be required to litigate in the forum they chose.

Respectfully,

/s/ Paul D. Montclare

Paul D. Montclare
A Limited Liability Partnership of
MITCHELL SILBERBERG & KNUPP LLP

PDM/mcp

---

termination, their rights extend only to those aspects "contributed by the author of such [derivative] work." 17 U.S.C. § 103(b). Those original aspects must be "more than trivial." *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 909 (2d Cir. 1980) (holding that figurines based on copyrightable characters were not themselves copyrightable derivative works). Accordingly, whether anything original was contributed is critical to The Phillies' claim that they have the right to utilize it after termination, and the scope of their ownership in any particular work. The Phillies have the burden to prove that any particular work can be used after termination. *See Woods v. Bourne Co.*, 60 F.3d 978, 994 (2d Cir. 1995).

[7] Defendants agreed to accommodate two employees of The Phillies by taking their deposition in Philadelphia. They did not waive their right to insist that the remainder of The Phillies' employees should be deposed in New York. Defendants further made no other representations about accommodating The Phillies in Philadelphia let alone that they did so because it was somehow more convenient for everyone, notwithstanding The Phillies' suggestion to the contrary. *See* Ltr. at 6-7.