

| | | |
|---|---|---|
| NEW YORK | | SHANGHAI |
| LONDON | **Duane Morris®** | ATLANTA |
| SINGAPORE | | BALTIMORE |
| PHILADELPHIA | FIRM and AFFILIATE OFFICES | WILMINGTON |
| CHICAGO | | MIAMI |
| WASHINGTON, DC | | BOCA RATON |
| SAN FRANCISCO | DAVID J. WOLFSOHN | PITTSBURGH |
| SILICON VALLEY | DIRECT DIAL: +1 215 979 1866 | NEWARK |
| SAN DIEGO | PERSONAL FAX: +1 215 689 2739 | LAS VEGAS |
| LOS ANGELES | E-MAIL: DJWolfsohn@duanemorris.com | CHERRY HILL |
| TAIWAN | | LAKE TAHOE |
| BOSTON | www.duanemorris.com | MYANMAR |
| HOUSTON | | OMAN |
| AUSTIN | | *A GCC REPRESENTATIVE OFFICE* |
| HANOI | | *OF DUANE MORRIS* |
| HO CHI MINH CITY | | |
| | | ALLIANCES IN MEXICO |
| | | AND SRI LANKA |

March 17, 2020

The Honorable Sarah Netburn
United States Magistrate Judge
S.D.N.Y.
Thurgood Marshall Courthouse
40 Foley Square
New York, NY  10007

      Re:    *The Phillies v. Harrison/Erickson, Inc., et al.*, C.A. No. 19-7239-VM-SN

Dear Judge Netburn:

This letter responds to Defendants' letter of March 12.

**Defendants Have More Than Enough Information About The Phillies' Redesign of the Phanatic Costume to Assess Whether They Believe It Is a "Derivative Work"**

Defendants (hereafter "H/E") argue that, by rolling out a redesigned Phanatic at Spring Training, The Phillies are "ignoring the Copyright Act's directive" and "attempt[ing] to invalidate Defendants' termination right." But it is H/E that are ignoring ***The Phillies'*** copyrights and trademark rights as author of the Phanatic, as well as The Phillies' indisputable right to continue to utilize its multi-million-dollar investment in dozens of Phanatic-related derivative works. Discovery shows that it was ***The Phillies*** that provided H/E with the specifications for the Phanatic costume, including its green color, the shape of its belly and nose, and the Phillies jersey, leggings, and hat. Moreover, discovery proves that H/E contributed ***nothing*** to the Phanatic's personality; indeed, Wayde Harrison's own notes credit the first Phanatic performer—Dave Raymond—with "creat[ing] a fun and sensitive character," not his wife Bonnie Harrison. For these reasons, H/E has no right to renege on its 1984 promise that The Phillies would own the Phanatic "forever." Nor does the Copyright Act give H/E the right to stop The Phillies from utilizing the costumes and artwork that The Phillies bought from H/E for almost a million dollars over the last 40 years.

The Phillies' authorship aside, H/E's argument that the redesign of the Phanatic "circumvent[s] the Copyright Act's termination provisions" contradicts that Act's plain terms.  Section 203 provides that eligible authors may terminate certain "grants" after 35 years.  17 U.S.C. § 203(a)

DuaneMorris

The Honorable Sarah Netburn
March 17, 2020
Page 2

(D)(3). But for termination to be effective, the author must give at least 2 years notice. *Id.* at § 203(a)(4)(A). When an eligible author gives proper notice, rights covered by the grant revert, "but with the following limitations: (1) A derivative work prepared under authority of the grant ***before its termination*** may continue to be utilized under the terms of the grant after its termination . . . ." *Id.* at § 203(b)(1). As H/E's own authority puts it, "[t]he Derivative Works Exception preserves the right of the owners [i.e., The Phillies] of derivative works to continue to exploit their works [after termination] under previously negotiated terms. Without such an exception, authors [i.e., H/E] might use their [termination] rights to extract prohibitive fees from owners of successful derivative works or to bring infringement actions against them." *Woods v. Bourne Co.*, 60 F.3d 978, 986 (2d Cir. 1995). Congress made it clear that ***all*** derivative works prepared ***right up until the date of termination*** may continue to be utilized. If H/E has a problem with this, it should take it up with Congress.

After spending most of its letter mischaracterizing section 203, H/E argues that it needs more discovery about the new Phanatic costume design. First, H/E claims that its expert needs access to H/E's artwork to "assess[] any originality in P2 or lack thereof." But H/E has all of H/E's artwork, and The Phillies have not withheld any documents relating to the new Phanatic design that also refer to H/E or any of their designs. H/E also argues that it needs deposition testimony, H/E has already deposed two people involved in the Phanatic redesign and will depose in the next couple of weeks two more plus a Rule 30(b)(6) designee.

Truth be told, H/E has whatever it needs to analyze whether the new Phanatic design is a "derivative work." A derivative work is substantially similar to the original work, but it contains "some substantial, not merely trivial, originality." *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.,* 697 F.2d 27, 34 (2d Cir. 1982). To determine the originality of visual arts works, the Second Circuit conducts a visual comparison. *Id.* at 35 ("Since the factual question here depends entirely on visual comparison of exhibits, we are in as good a position as the district court to judge the originality of the work in question."); *see also Godinger Silver Art Co., Ltd. v. Int'l Silver Co.*, 1995 WL 702357, at *3 (S.D.N.Y. Nov. 28, 1995) (comparing designs based on "visual comparison").

H/E's own authorities are to the same effect. In *Durham Inds., Inc. v. Tomy Corp.*, 630 F.2d 905, 908-909 (2d Cir. 1980), the Second Circuit was faced with deciding whether wind-up toy versions of Disney characters contained sufficient "distinguishable variation" so as to constitute derivative works. The Second Circuit concluded that they did not, based on the "mute testimony of Mickey, Donald and Pluto": "In the instant case, the evidence that raises—and we think necessitates an adverse determination of—the issue of the validity of Tomy's copyrights on its three Disney figures is the mute testimony of Mickey, Donald and Pluto themselves. One look at Tomy's figures reveals that, in each, the element of originality that is necessary to support a valid copyright is totally lacking." 630 F.2d at 908-909; *see also Entertainment Res. Group, Inc. v. Genesis CreativeGroup, Inc.*, 122 F.3d 1211, 1222-23 (9th Cir. 1997) (cited by H/E) (visually comparing drawings with costumes and holding that "no reasonable juror could conclude that



The Honorable Sarah Netburn
March 17, 2020
Page 3

there are any 'nontrivial' artistic differences between the underlying cartoon characters and the immediately recognizable costumes that ERG has designed and manufactured").

H/E's reliance on *Woods v. Byrne*, 60 F.3d 978 (2d Cir. 1995) also does not support its motion. *Woods* involved the question of whether a piano-vocal arrangement of the song "When the Red, Red Robin Comes Bob, Bob, Bobbin' Along" was sufficiently original to constitute a derivative work of the lead sheet. *Id.* at 981. The district court concluded, based on expert musical testimony, that the differences between the two were "merely trivial changes dictated by, *inter alia*, convention of harmony to the melody in the lead sheet." 60 F.3d at 992. The Second Circuit upheld this portion of the district court's decision as not clearly erroneous. *Id.* at 992. Although this involved a musical composition, here again it was comparison of the two works that was dispositive, rather than the purpose or intent of the author.

Since H/E has two-dimensional drawings and photographs of the newly designed Phanatic costume, as well as its own 1979 copyright registration attaching a picture of the Phanatic costume, it has everything it needs to "assess[] any originality in P2 or lack thereof." Moreover, in the coming weeks, H/E will be able to question two more witnesses involved in the new design about changes that were made and the extent to which they were based on any of H/E's designs. While it is unclear what, precisely, H/E is asking for here, its attempts to make this case much more complicated and expensive than it needs to be should be rejected.

**This Court's February 13 Decision Was Correct**

At the hearing on February 13, The Phillies explained that its claim for damages is not based on the revenues earned from Phanatic appearances and merchandise. 2/3/2020 Tr. at 13:4-17, Exh. A. Instead, The Phillies is seeking to recover a portion of the amount *paid to* Harrison Erickson in exchange for their promise that their assignment would be "forever." As H/E's own cases show, the "measure of damages for an unjust enrichment claim 'is restricted to the reasonable value of the benefit conferred upon the defendants,' and is 'measured by a defendant's unjust gain, rather than by a plaintiff's loss.'" *Schatzki v. Weister Capital Mgmt., LLC*, 995 F. Supp. 2d 251, 253 (S.D.N.Y. 2014). The Court's decision to strike H/E's request for revenue information was therefore correct. Exh. A at 17:11-16.

Defendants' new argument—that if the Phillies earned "many multiples of what they originally paid Defendants," then Defendants could not have been unjustly enriched—makes no sense. Unjust enrichment focuses on what defendants received, not what plaintiff gained (or lost). "[I]nformation concerning [the plaintiff's] sales and profit margin . . . is irrelevant to [a] plaintiff's claim for unjust enrichment." *Speedfit LLC v. Woodway USA, Inc.*, 2020 WL 130423, at *5 (E.D.N.Y. Jan. 9, 2020). This Court's February 13 ruling was thus correctly decided.[1]

---

[1] Defendants claim that producing a "smattering of documents showing revenues earned in connection with certain uses of the Phanatic" somehow "waives" The Phillies' objection. The



The Honorable Sarah Netburn
March 17, 2020
Page 4

**Defendants' "Discovery on Discovery" is Wasteful and Unnecessary**

The Phillies has produced over 40,000 pages of documents spanning more than 40 years, and presented a thorough picture of the origins and development of the Phanatic and of The Phillies' relationship with H/E. Every step of the way, The Phillies has been transparent about what steps counsel have taken to collect and produce documents.

The Phillies and its prior in-house and outside counsel kept comprehensive paper files regarding the origins and development of the Phanatic, as well as concerning the parties' disputes, contracts, and the 1979 litigation. These documents were reviewed by outside counsel for privilege, relevance, and responsiveness. With regard to e-discovery, last fall, The Phillies identified for H/E the thirteen custodians to collect email from, and H/E has never complained about that list. Nov. 27, 2019 Email from T. Marandola, Exh. B. H/E insisted that The Phillies apply dozens of search terms to these custodians' data, many of them patently overbroad and nonsensical, resulting in 326,112 hits. Dec. 10, 2019 Email from M. Williams, Exh. C. Over the next 2 months, plaintiff's counsel spent dozens of hours negotiating with defense counsel and testing scores of their proposed search terms. Dec. 31, 2019 Email from D. Wolfsohn, Exh. D; Jan. 21, 2020 Email from T. Marandola, Exh. E. After test reviews of thousands of documents that defendants' terms "hit," more meet and confers, and more compromises by The Phillies, defendants were apparently satisfied with plaintiff's e-discovery efforts. Jan. 27, 2020 Email from T. Marandola, Exh. F; Feb. 6, 2020 Email from T. Marandola, Exh. G.[2]

Given the Club's exemplary effort and results, H/E's request that the Court order a broad, unfocused deposition about "The Phillies' efforts to respond to Defendants' discovery requests in this case" is meritless. Courts closely scrutinize requests for "discovery on discovery," requiring the movant to present an "adequate factual basis for their belief that the current production is deficient." *Freedman v. Weatherford Int'l Ltd.*, 2014 WL 4547039, at *1 (S.D.N.Y. Sept. 12, 2014); *Mortg. Resolution Serv., LLC v. JPMorgan Chase Bank, N.A.*, 2016 WL 3906712, at *7 (S.D.N.Y. July 14, 2016) ("[R]equests for such 'meta-discovery' should be closely scrutinized" in light of danger of extending already costly and time-consuming discovery process). Moreover, H/E's failure to explain which documents it thinks it has not received alone requires denial of their request. *Grant v. Witherspoon*, 2019 WL 7067088, at *2 (S.D.N.Y. Dec. 23,

---

Phillies have consistently taken the position that revenue and profit information is not relevant so there could not have been any waiver.

[2] The Phillies' transparency stands in sharp contrast to Defendants' failure to explain its e-discovery efforts, and their destruction of documents, including Wayde Harrison's business journal, records of the 1979 litigation, The Phillies' sketches for the Phanatic, and all but one of defendants' agreements with other teams by which they sold or leased their mascot designs—contracts that would have served as valuable benchmarks of the true value of a mascot costume.

DuaneMorris

The Honorable Sarah Netburn
March 17, 2020
Page 5

2019) (no adequate basis for discovery on discovery where party could "not identify any documents (or categories of documents) that he expected to receive in discovery but has not").

Defendants argue that the fact that Bill Webb, The Phillies' GC from 2000 to 2009, was not provided with a copy of his subpoena warrants a broad Rule 30(b)(6) deposition. But Mr. Webb testified that "Mr. Wolfsohn asked me whether I had any records relating to the case, and I said I didn't have any records relating to The Phillies, let alone something that happened in 1984." Webb Dep. at 86:20-87:11, Exh. H; *see also id*. at 161:16-62:22 (confirming that he had no responsive documents).

Defendants also argue that certain documents concerning P2 were identified "for the first time during Mr. Brandreth's deposition" on February 28. But the redesigned Phanatic did not have its Spring Training debut until February 23rd—five days before that deposition—and it wasn't until February 26 that defendants served a document request asking for documents "concerning the creation and development of the Phanatic costume design that made its public debut on February 23, 2020." H/E 3d RPD No. 75, Exh. I. The responses to those requests are not due until March 27.

Defendants rely upon *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 2019 WL 3334503, at *18 (S.D.N.Y. July 25, 2019), but that case did not address a request for a Rule 30(b)(6) deposition concerning document collection and production. Rather, the court in *CBF Industria* required the producing party to identify the "sources and custodians" of its data, the search terms used, and the number of documents identified using each term. *Id.* at 18. The Phillies have already done that—months ago!

Because the document collection, review, and production in this case was directed by outside counsel, there is no lay witness at The Phillies with deep knowledge of the process. That would make the preparation of a Rule 30(b)(6) witness time-consuming and expensive, as well as raising problematic privilege issues. Since H/E has utterly failed to identify the documents it believes exist but have not received, or to meet the "reasonable particularity" requirement for a proper Rule 30(b)(6) notice, its request for a corporate deposition regarding collection of documents should be denied.

                            Respectfully,

                            */s/David J. Wolfsohn*

                            David J. Wolfsohn

DJW/kah
cc:    Paul D. Montclare, Esq.
       Leo M. Lichtman, Esq.
       Elaine Nguyen, Esq.
       J. Matthew Williams, Esq.
       Tyler Marandola, Esq.