

MITCHELL SILBERBERG & KNUPP LLP
A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Paul D. Montclare
Partner
(917) 546-7704 Phone
(917) 546-7674 Fax
pdm@msk.com

March 19, 2020

**VIA ECF**

Honorable Sarah Netburn
U.S. Magistrate Judge
Thurgood Marshall Courthouse
40 Foley Square, Room 430
New York, NY 10007

**Re:** <u>**Phillies v. Harrison/Erickson, Inc. et al., No. 19-cv-7239-VM-SN**</u>

Dear Judge Netburn:

Pursuant to L.R. 6.1(a) of the Southern District of New York, we submit this letter on behalf of Defendants and Counterclaim Plaintiffs in reply to The Phillies' opposition, in further support of the relief sought in Defendants' March 12, 2020 letter (ECF No. 70).

The Phillies—not Defendants—chose to file a massive, 164 paragraph Complaint, asserting over half a dozen claims spanning over forty years, all of which Defendants maintain should be dismissed on summary judgment. For this multibillion dollar organization to complain now about the burden and expense of litigation that *they* started rings hollow. It is the Phillies that dragged two retired artists into Court, and have repeatedly resisted complying with routine discovery requests, causing hours of needless expense driving up Defendants' costs.[1]

Also, The Phillies' contention that they created any original aspect of the Phanatic is simply false. Defendants have produced thousands of documents showing their creation and development of the Phanatic, and have testified extensively about the same. By contrast, The Phillies have produced *zero* documents evidencing any creation on their part, and Bill Giles, who The Phillies allege developed the "vision" for the Phanatic's appearance (Compl. ¶ 1), testified at his deposition that he had no input in drafting the Complaint, had no recollection of creating the Phanatic, and in fact, *took credit for the work of others*. Giles Dep. 10:16-11:8, 45:19-46:11, 47:22 – 48:18, Exhibit A. The Phillies also argue that they created a Phanatic character because Wayde Harrison once said Dave Raymond who was but one of the persons inside the Phanatic costume "created a fun and sensitive character." But, the Phillies fail to reveal that both Wayde Harrison and Bonnie Erickson testified that Dave Raymond simply carried out the directives of Defendants. Harrison Dep. 120:18-25; Erickson Dep. 233:10-234:22, Exhibits B-C. Moreover, numerous contracts signed by The Phillies going back nearly forty years repeatedly acknowledged that Defendants—not The Phillies—created the Phanatic. The Phillies have never questioned the validity of any of these contracts. The Phillies' authorship claims of any aspect are completely unfounded and contrary to the record adduced to date in discovery. Indeed, it

---

[1] Forcing Defendants to request the discovery at issue, instead of simply producing the documents and information sought (which presents little burden to The Phillies), is just one example of driving up Defendants' costs.



does not appear that even the Phillies believe they created the original Phanatic. Otherwise, why would they be fighting so hard to use an imitation Phanatic costume, P2? It is indisputable that Defendants' original Phanatic character and artistry was created by Defendants 42 years ago in 1978, and their copyright registered with the United States Copyright Office in 1979. The Phillies knew all of this for more than 40 years, and never challenged this copyright or Defendants' creation until The Phillies received a valid notice of the termination in 2019.

The minimal remaining discovery sought by the Defendants on this letter motion is necessary to ensure that The Phillies document production and testimony is complete and binding on the Phillies, so that the Phillies' fractured claims and false narrative can be exposed fully, without real contradiction at the dispositive phase of this case.

I. **Documents and Testimony Concerning the Phanatic Redesign ("P2")[2]**

As mentioned in Defendants' opening letter, Scott Brandreth of The Phillies already identified as approximately one hundred documents that were never produced, which include *inter alia*, communications between the designers of P2, and artwork created by Defendants that directly influenced the design of P2. Brandreth Dep. 44:24-47:2, 104:6-20, Exhibit D. These are contained in electronic folders on his computer and have not been produced. He said it would be easy for him to produce these documents. These documents are discoverable.

The Second Circuit has admonished that "[a] party *must* be afforded a meaningful opportunity to establish the facts necessary to support his claim." *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008). Relevance under Rule 26 is an "extremely low threshold" to meet. *See King v. Ortiz*, No. 17 CV 7507 (ARR) (CLP), 2019 WL 1959488, at *2 (E.D.N.Y. May 2, 2019). And, it is the objecting party that bears the burden of showing why discovery should be denied. *Negrete v. Citibank, N.A.,* No. 15 Civ. 7250 (RWS), 2017 WL 3206330, at *1 (S.D.N.Y. July 26, 2017).

Yet, the Phillies argue that because they think a visual comparison of P2 to the original Phanatic is *the only* relevant inquiry, no discovery on this issue should be permitted. To preclude this discovery into the creation of P2 would fundamentally distort the scope of discovery articulated by the courts of this Circuit, especially where, as here, it is undeniable that the production requested will take very little effort to accomplish.

Defendants have a right, among other things, to examine what prior art (whether Defendants' art or the art of others) influenced the P2 design. *See Psiyohos v. Nat'l Geo. Soc'y*, 409 F. Supp. 2d 268, 278-29 (S.D.N.Y. 2005) (finding element of derivative work was not original where the artist drew inspiration from prior artwork for that element Indeed, it appears from the deposition testimony so far that the design of P2 was not dictated by artistic expression at all but was done

---

[2] On March 17, 2019 The Phillies produced some documents concerning P2. Defendants' counsel inquired as to the scope of that production to determine whether and the extent to which it addresses the issues in Defendants' motion, but received no response from The Phillies' counsel.

<2>

Honorable Sarah Netburn
March 19, 2020
Page 3

at the direction of The Phillies' counsel to try to get around Defendants' right to terminate the 1984 assignment.

Congress expressly directed that a derivative work copyright must not "affect or enlarge the scope, duration, ownership, or subsistence of" copyright protection in preexisting material. 17 U.S.C. § 103(b), yet The Phillies are trying to do just that by developing an imitation Phanatic to circumvent Defendants' rights.[3] The Phillies should not be the only party to have access to information bearing on these factors or on the issue of whether The Phillies work on P2 was original or sufficiently artistic to give it copyright protection as a derivative work as defined by the Copyright Act. Given the minimal effort necessary to produce the documents requested, one can reasonably expect that these documents will not help the Phillies' case.

Also, The Phillies appear to be bent on marketing new P2 works *after termination*. But the Copyright Act prohibits this very activity. *See* 17 U.S.C. § 203(b)(1) (stating that the derivative work exception to termination "does not extend to the preparation *after* the termination of other derivative works based upon the copyrighted work covered by the terminated grant.").[4] The documents withheld may very well elaborate on The Phillies' post-termination plans to continue creating derivative works of the Phanatic after termination, and accordingly bear directly on Defendants' counterclaim for injunctive relief. *See* Answer and Counterclaims (ECF No. 38) at 38-39 ("The Phillies have expressly threatened to willfully continue to use the Phanatic copyright without authorization . . . .").

By withholding the documents, The Phillies seek to keep facts from Defendants so only The Phillies know what, if any, original artistic expression was used to create P2; what, if any, original design choices were made for P2; and what if any P2 works the Phillies intend to develop and use post-termination. In light of the foregoing, and for all the reasons set forth in Defendants' opening letter, The Phillies do not come close to meeting their burden for withholding these documents and information in discovery.[5]

---

[3] The Phillies argue that *Woods v. Byrne*, 60 F.3d 978 (2d Cir. 1995) suggests that it was the comparison of the two works that was dispositive, rather than the purpose or intent of the author. Opp'n, at 3. Whether a fact is dispositive is not the test for relevance, by any definition. *See* Fed. R. Evid. 401.

[4] Notably, The Phillies have repeatedly replaced this part of 17 U.S.C. § 203(b)(1) with an ellipsis, ignoring this part of the statute altogether.

[5] Just as The Phillies should produce all documents concerning P2, they should be required to designate a Rule 30(b)(6) witness to speak on the subject. The Phillies' counsel has taken the position that The Phillies are not bound by their employees or former employees' testimony so it is all the more important that The Phillies produce a witness that will actually speak to *The Phillies*' position. *See Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, N.A.*, 2017 WL 3610511, at *13 & n.5 (S.D.N.Y. Aug. 21, 2017) (noting that the binding nature of 30(b)(6) testimony gives it unique importance, especially where a company does not consent that non-30(b)(6) testimony will be binding on it). It would present little burden to The Phillies, who have already agreed to produce Rule 30(b)(6) witness(es). Messrs. Burgoyne and Brandreth named others within the organization whom The Phillies could easily designate as having knowledge of P2, with little preparation.



## II. Revenue Earned From the Phanatic

The Phillies take the position that they will be shortchanged upon termination because they thought they would hold the Phanatic copyright "forever"—which they characterize as being the full term of Defendants' copyright rights. Putting aside the utter absurdity of this theory, which requires the Court to accept the premise that the parties understood the term "forever" in a copyright assignment to be *limited by the Copyright Act* but not 17 U.S.C. § 203, The Phillies have not explained to the Court what facts will inform their unjust enrichment claim.

Instead, The Phillies have performed backflips to avoid disclosing any facts on the issue, arguing that their payments to Defendants are all that inform their claim. Yet, The Phillies' own case law explains, "an allegation that a defendant received benefits, standing alone, *is insufficient to establish a cause of action to recover damages for unjust enrichment*." *Schatzki v. Weister Capital Mgmt., LLC*, 995 F. Supp. 2d 251, 252 (S.D.N.Y. 2014) (emphasis added).[6] Rather, given that The Phillies' unjust enrichment claim rests on the theory that Defendants benefitted from a sale of a copyright that The Phillies *also* demonstrably benefitted from, any documents concerning the extent of that benefit are unquestionably relevant.[7]

And The Phillies have already injected this very issue into the case, on numerous occasions. The Complaint is rife with allegations that The Phillies devoted "millions of dollars" to promoting the Phanatic. *See* Compl. ¶¶ 7, 9, 10, 70. These allegations beg the question of *why* The Phillies would invest so much to build the Phanatic's value and goodwill if the Phanatic copyright wasn't going to benefit them. This is especially the case where The Phillies' counsel previously represented to the Court that Phanatic merchandise "does not generate a huge amount of revenue." November 12, 2019 Initial Pretrial Conference Tr. 13:22-14:15, Exhibit F. The Phillies simply cannot raise claims and make representations to the Court, while denying Defendants the ability to test those claims and representations.

## III. The Phillies' efforts to comply with its discovery obligations

The Phillies' own witnesses have called the completeness of The Phillies' document collection efforts into question:

- Mr. Burgoyne, the current Phanatic performer who played a key role in the development of P2 and other merchandise, did not recall being asked to look for documents in

---

[6] The Phillies also cite *Speedfit LLC v. Woodway USA, Inc.*, No. 13-CV_1276 (KAM)(AKT), 2020 WL 130423, at *5 (E.D.N.Y. Jan. 9, 2020), but that case addressed admissibility not discoverability, and information "need not be admissible in evidence to be discoverable." *See* Fed. R. Civ. P. 26(b). In fact, the court specifically noted that plaintiff had failed to produce evidence of its sales during fact discovery despite defendant's request for such production. *Id.* at *4 ("Plaintiffs do not dispute their failure to produce evidence of [their] sales during fact discovery . . . .").

[7] The Phillies also ignore that when Defendants sold the Phanatic copyright, they necessarily *gave up* the right to collect revenues in connection with the Phanatic for the last 35 years—a right that The Phillies instead benefitted from. This should of course be taken into account in determining the extent of any "unjust gain."



Honorable Sarah Netburn
March 19, 2020
Page 5

- connection with this litigation, including hard copy files in his office, nor did anyone else search for documents.  Burgoyne Dep. 102:11-107:11, Exhibit E.

- Scott Brandreth identified as many as a hundred documents concerning P2, which Defendants would have never learned of had Defendants' counsel not questioned him about P2.  Brandreth Dep. 102:7-103:20, Exhibit D.  The Phillies claim that Defendants did not seek such documents until February 26, but this is incorrect.  Defendants sought "[a]ll documents concerning each derivative work of the Phanatic" that the Phillies claim to be able to use after the effective termination date (which would include P2) on October 8, 2019.  Defendants' First Set of Requests for Production to The Phillies, Exhibit G.

- Bill Webb was never asked to produce any documents in connection with the subpoena directed to him, which is significant because Defendants served subpoenas on other witnesses who they have not yet deposed, so it is unclear whether those witnesses have even looked for any documents.  Webb Dep., 9:7-10:11, Exhibit H.  At Mr. Webb's deposition, a draft of the 1984 assignment that was apparently marked up by Mr. Webb was produced for the first time, despite being an obviously responsive document.  Mr. Webb was the outside lawyer hired by The Phillies to render legal advice in connection with this assignment, which is the key contract in the case, and Defendants would have never seen this document had they not deposed Webb and learned of its existence.

- Mr. Webb also had no recollection of reviewing (or having knowledge of) copyright law during the sale of the Phanatic copyright, and stated that he no longer had documents in his possession.  Webb Dep. 23:8-24:10, Exhibit H.  It is not clear what documents exist at his former law firm, which is significant because Bill Giles testified that he would have relied on Webb to protect The Phillies regarding legal issues that implicated in the Phanatic copyright sale (such as termination).  Giles Dep. 142:17-19, Exhibit A.

These examples of document production deficiencies show the need for The Phillies to produce a 30(b)(6) witness to explain what efforts The Phillies have taken to collect and produce documents.[8]

---

[8] The Phillies' contentions concerning ESI search protocols are immaterial to Defendants' motion.  The emails they attach to their opposition simply show that Defendants tried to avoid motion practice over ESI issues, and ultimately did so.



Honorable Sarah Netburn
March 19, 2020
Page 6

Respectfully,

/s/ Paul D. Montclare

Paul D. Montclare
A Limited Liability Partnership of
MITCHELL SILBERBERG & KNUPP LLP

PDM/mcp