

**MITCHELL SILBERBERG & KNUPP LLP**
A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Paul D. Montclare
Partner
(917) 546-7704 Phone
(917) 546-7674 Fax
pdm@msk.com

April 27, 2020

**VIA ECF**

Honorable Sarah Netburn
U.S. Magistrate Judge
Thurgood Marshall Courthouse
40 Foley Square
Room 430
New York, NY 10007

Re:   Phillies v. Harrison/Erickson, Inc. et al., No. 19-cv-7239-VM-SN

Dear Judge Netburn:

We write on behalf of Defendants in response to The Phillies' April 22, 2020 letter requesting a pre-motion discovery conference in connection with their tardy deposition notice addressed to Harrison/Erickson, Inc. and Harrison Erickson, a partnership (collectively, the "Entities"). The Phillies' Rule 30(b)(6) notice is nothing more than a ploy to re-depose defendants Bonnie Erickson ("Bonnie") and Wayde Harrison ("Wayde") and The Phillies know it. We ask Your Honor to reject this gambit.

The Phillies do not, because they cannot, deny that Bonnie and Wayde are the *sole proprietors* of these closely held entities. There are no other officers, employees, or representatives of the Entities. Even The Phillies' Complaint does not distinguish between the defendants. Instead, in the opening paragraph of the Complaint at page 1, the Entities, Bonnie, and Wayde, are defined to be "collectively referred to as 'H/E.'" ECF No. 1. And, the allegations in the Fact section of the Complaint do not distinguish between The Entities and Bonnie and Wayde with respect to the topics in The Phillies' 30(b)(6) notice.

There is also no doubt that the Entities' knowledge is entirely coextensive with Bonnie's and Wayde's knowledge. To allow The Phillies to take another deposition of Bonnie and/or Wayde, where The Phillies had a full and fair opportunity to depose Bonnie and Wayde over two days on February 7 and 10, 2020, violates the very purpose of Rule 30(b)(6).

And The Phillies' ignore the very case law set forth in their letter motion, which holds, "common sense teaches that in the case of relatively small, closely-held entities . . . ***there may be no difference between the knowledge of the entity and the knowledge of its principals***." *A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, 2002 WL 104135, at *3 (S.D.N.Y. May 23, 2002) (emphasis added) ("A 30(b)(6) deposition may not be justified where, assuming the witness is properly prepared, the entity establishes that the witness's testimony as a 30(b)(6) witness would



April 27, 2020
Page 2

be identical to his testimony as an individual and the 30(b)(6) is limited, or substantially limited, to topics covered in the deposition taken in the witness's individual capacity").[1]

Furthermore, The Phillies have no reasonable basis for seeking a completely redundant 30(b)(6) deposition at this late stage of discovery.  Discovery has been ongoing for seven months.  Here, counsel for The Phillies insisted that the depositions of Bonnie and Wayde be the first depositions scheduled, and never offered or sought to take a Rule 30(b)(6) deposition concurrent with their individual testimony, which Defendants' counsel insisted on for The Phillies' witnesses.

The Phillies deposed Defendants in their individual capacities on February 7 and 10, 2020, and, since that time, the Court has repeatedly ordered the parties to bring discovery issues to its attention.  To avoid unnecessarily burdening the Court, Defendants significantly narrowed their requested Rule 30(b)(6) topics, given that, until now, counsel for The Phillies seemed to believe that corporate depositions were a complete waste of time, even going so far as to accuse Defendants' counsel of trying to run up The Phillies' bills.  *See* ECF No. 71, at 3.  Despite unlimited opportunities over the last few months, The Phillies have not once suggested that they would require a 30(b)(6) deposition.  Quite to the contrary, with respect to their own 30(b)(6) deposition, The Phillies have repeatedly suggested that questioning of key employees *would limit the need for it*.  *See* Feb. 13, 2020 Conf. Tr. 21:9-22:6, Ex. A.

Each of The Phillies' specific Topics are addressed below and should be rejected in any event.

## **Topics 1-5**

These topics seek information concerning the design of the original Phanatic and Phanatic-related artwork, and a number of mascots created by Defendants *not at issue in the case*.  The Phillies served document requests concerning these issues on October 9, 2019, and Defendants produced ample documents responsive to those requests prior to their depositions. *See* Ex. B (document requests); *see also* Erickson Dep. 8:13-24, Ex. C (acknowledgement by The Phillies' counsel that Defendants had "produced a lot of documents" and The Phillies are "very appreciative").[2]  With full access to these documents, The Phillies questioned Defendants for two days on issues concerning the design of the Phanatic and other mascots they created.  *See, e.g., id.* 18:22-20:24; 49:9-50:1; 58:9-59:15; 66:10-67:18; *see also* Harrison Dep. 85:4-10, Ex. D.  The Phillies fail to adequately explain why they need Defendants to submit to further questioning.

The Phillies nonetheless argue that Defendants' counsel raised legal issues concerning the copyrightability of the "P2" knock-off for the first time at the March 19, 2020 conference.  Ltr. at

---

[1] None of The Phillies' cases appear to concern facts analogous to the case at hand—the request to depose a closely-held corporation where *all* of the principals have already been deposed.

[2] By contrast, The Phillies belatedly produced documents concerning the "P2" design only *after* the depositions of three of their key witnesses; supplemented that production only upon order of the Court; and *still* have not produced all responsive documents.

12081692.3



April 27, 2020
Page 3

3.  But The Phillies' own belated document production shows that they started to surreptitiously develop P2 from the Phanatic at least as early as late June or early July 2019, *months* before they took Bonnie and Wayde's depositions on February 7 and 10, 2020.  Thus, The Phillies knew and could have examined Defendants at their depositions about any aspect of P2 as a claimed derivative work.  The Phillies' letter motion is nothing more than a gambit seeking a "do-over" of the deposition of Wayde and/or Bonnie.

**Topics 6 & 10**

Harrison/Erickson, Inc. was not even in existence until after Defendants created the Phanatic's backstory and personality, so it is unclear what organizational knowledge The Phillies expect to learn from this entity.  Moreover, The Phillies already questioned Defendants extensively concerning these topics.  Ms. Erickson in particular explained in detail the origins of the Phanatic's Galapagos Islands backstory, and the process by which she trained Dave Raymond (the original Phanatic) to move in the Phanatic costume.  Erickson Dep. 31:21-32:9; 50:14-51:8; 54:3-25; 233:11-234:22, Ex. C.  Again, The Phillies had every opportunity to question Bonnie and Wayde at length about these topics the first time around.

**Topic 7**

As The Phillies acknowledge, they already questioned Defendants regarding this topic.  Ltr. at 3.[3]  The Phillies argue that they should be able to examine a witness who is prepared on the issue of whether Defendants were aware of the termination provisions at the time of the 1984 Agreement or thereafter.  The questions were answered by Bonnie and Wayde to the best of their knowledge, after having reviewed and produced all documents in their possession regarding this issue.  Again, there is no basis to re-depose them.

**Topics 8-9**

Similar to Topic 7, The Phillies already acknowledge these topics were raised at Defendants' depositions.  Ltr. at 4.  Even prior to their depositions, The Phillies challenged the propriety of the Phanatic copyright registration *in the Complaint*, *see* Compl., ¶¶ 94-106, and sought documents concerning these very topics prior to the deposition.  *See* Ex. B (document requests).  The Phillies seek "information available to the two entities," but they already explored this information at the deposition of Bonnie and Wayde.

**Topic 14**

From the outset, The Phillies concede that they already have information concerning the total amounts paid to Defendants.  Indeed, it is in their own files, and Defendants produced what documents they had pertaining to The Phillies' document requests on this topic.  Instead, The Phillies say they simply want Defendants to agree or disagree to their payment information, which they could have asked Defendants at their depositions months ago.  There is no need for

---

[3] The Phillies deliberately quote Bonnie and Wayde's deposition testimony out of context to suggest that they gave inconsistent responses.  Neither Defendants' testimony could reasonably be interpreted to suggest that either learned of termination in "the 1990s."  Erickson Dep. 111:23-112:18, Ex. C; Harrison Dep. 93:6-14, Ex. D.



April 27, 2020
Page 4

this to be a deposition topic. Defendants will stipulate to whether they agree or disagree, or whether they have sufficient information to agree or disagree about these numbers.[4]

\* \* \*

The Phillies simply have no basis to seek a second bite at the apple, especially at this late stage of discovery with no justification for delay.  Defendants respectfully request that The Phillies' request for a wasteful Rule 30(b)(6) deposition be denied.

Respectfully,


/s/ Paul D. Montclare


Paul D. Montclare
A Limited Liability Partnership of
MITCHELL SILBERBERG & KNUPP LLP

PDM/mcp

---

[4] As the Court may recall, Defendants offered to withdraw several deposition topics if The Phillies would provide adequate stipulations, which so far have not been forthcoming.

12081692.3