# EXHIBIT G

```
                                                              Page 1
 1

 2         IN THE UNITED STATES DISTRICT COURT

 3        FOR THE SOUTHERN DISTRICT OF NEW YORK

 4
     THE PHILLIES, a Pennsylvania   )
 5   limited partnership,           )
                                    )
 6                 Plaintiff,       )
                                    ) Civil Action No.
 7            vs.                   ) 19-7239
                                    )
 8   HARRISON/ERICKSON,             )
     INCORPORATED, a New York       )
 9   corporation, HARRISON ERICKSON,)
     a partnership, and WAYDE       )
10   HARRISON and BONNIE ERICKSON,  )
                                    )
11                 Defendants.      )
     -------------------------------)
12

13                        1

14          ****CONFIDENTIAL****

15              CONTINUED

16   VIDEOTAPED-TELEPHONIC 30(b)(6) DEPOSITION

17            TAKEN REMOTELY VIA

18      VIDEOCONFERENCE AND TELECONFERENCE

19                 OF

20            DAVID RAYMOND

21          Thursday, May 8, 2020

22              VOLUME II

23

24   Reported by:
     FRANCIS X. FREDERICK, CSR, RPR, RMR
25   JOB NO. 179939
```

```
                                              Page 2
 1
 2
 3
 4
 5        May 8, 2020
 6        1:45 p.m.
 7
 8        CONFIDENTIAL continued videotaped
 9   deposition of DAVID RAYMOND, pursuant to
10   Federal Rule of Civil Procedure
11   30(b)(6), before Francis X. Frederick, a
12   Certified Shorthand Reporter, Registered
13   Merit Reporter and Notary Public of the
14   States of New York and New Jersey.
15
16
17
18
19
20
21
22
23
24
25
```

```
                                              Page 3
 1
 2   A P P E A R A N C E S:
 3
 4        (All Counsel and Participants
 5        present via videoconference and
 6        teleconference in compliance with
 7        COVID-1 restrictions.)
 8
 9        DUANE MORRIS
10        Attorneys for Plaintiff
11            30 South 17th Street
12            Philadelphia, Pennsylvania  19103
13        BY:   TYLER MARANDOLA, ESQ.
14              DAVID WOLFSOHN, ESQ.
15
16        MITCHELL SILBERBERG & KNUPP
17            437 Madison Avenue
18            New York, New York  10022
19        BY:   PAUL MONTCLARE, ESQ.
20              LEO LICHTMAN, ESQ.
21              - and -
22        MITCHELL SILBERBERG & KNUPP
23            1818 N Street NW
24            Washington, DC  20036
25        BY:   MATTHEW WILLIAMS, ESQ.
```

```
                                              Page 4
 1
 2   A P P E A R A N C E S:  (Cont'd.)
 3
 4   ALSO PRESENT:
 5        ROBERT RINKEWICH, Videographer
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
                                              Page 5
 1   ROUGH DRAFT- NOT A FINAL TRANSCRIPT
 2        THE VIDEOGRAPHER:  Good afternoon.
 3   My name is Robert Rinkewich.  I'm the
 4   legal videographer in association with
 5   TSG Reporting, Inc.  Due to the severity
 6   of the COVID-19 and following the
 7   practice of social distancing, I will
 8   not be in the same room with the
 9   witness.  Instead, I will record this
10   videotaped deposition remotely.  The
11   reporter, Francis Frederick, also will
12   not be in the same room and will swear
13   in the witness remotely.  Will all
14   parties stipulate to the validity of
15   this video recording and remote swearing
16   and that it will be admissible in the
17   courtroom as if it had been taken
18   following Rule 30 of the Federal Rules
19   of Civil Procedure and the state rules
20   where this case is pending?
21        MR. MONTCLARE:  So stipulated on
22   behalf of the defendants.
23        MR. MARANDOLA:  Tyler Marandola
24   for The Phillies.  We also agree.
25        THE VIDEOGRAPHER:  Thank you.
```

Page 30

ROUGH DRAFT- NOT A FINAL TRANSCRIPT

question, please.
BY MR. MONTCLARE:
    Q.    Finish your answer, sir.
        MR. MARANDOLA: Mr. Raymond --
        MR. MONTCLARE: And I'm going to move to exclude this entire testimony and say that this witness was never produced and you're going to be precluded because of that very interruption.
        But you may now finish and please finish the way you were going to finish before the objection was made.
    Q.    You may continue.
        MR. MARANDOLA: Mr. Raymond, you can testify about -- to your personal capacity as to the costume. You're here as a designee of the Phillies as to character.
    A.    Right. So I was making the distinction that we were talking about the costume and/or the design of the costume; that Harrison/Erickson created that at the -- at the instruction of the Philadelphia Phillies

Page 31

ROUGH DRAFT- NOT A FINAL TRANSCRIPT

and collaborated with Bill Giles in order to come up with that drawing. From that drawing a costume was created. And that the costume was delivered to The Phillies.
        And then from that point forward The Phillies took that costume and brought it to light with a personality. And that was my answer.
    Q.    My answer is a different -- let me follow up. I heard your answer. It's on the record. And so was the interruption.
    A.    Okay.
    Q.    My question, I'll say it a different way this time.
        What if any were the creative contributions made by Harrison/Erickson to the Phanatic character?
    A.    I answered that question. The character in terms of the costume and the drawing that the costume was produced from, Bonnie and Wade were vendors were hired to do those actual things and the actual drawing was created through a collaboration bean Bill Giles and Bonnie Erickson. That collaboration

Page 32

ROUGH DRAFT- NOT A FINAL TRANSCRIPT

produced a drawing that both entities decided or The Phillies that that -- we will take that one with that instruction we'll take that drawing, build a costume that looks like that drawing. Then Harrison/Erickson built the costume based on the collaborative effort between Bonnie and Bill. And that costume was created. And then The Phillies took it, named it the Phillie Phanatic and then put all of their commitment, all of their budget and all of their expertise into building the personality which is the other half of what's described as a character that is what brought the character to life.
        Prior to that, the costume was hanging on a rack in Frank Sullivan's office. So as I mentioned before --
    Q.    Excuse me --
        MR. MARANDOLA: Don't interrupt the witness.
    A.    Would you like me to finish?
    Q.    I thought you were finished.
    A.    No, I wasn't finished.
        MR. MARANDOLA: No, I wasn't

Page 33

ROUGH DRAFT- NOT A FINAL TRANSCRIPT

finished.
    Q.    Go ahead. Keep going.
    A.    Prior to that, before all of that work by The Phillies and all that support and all that commitment, it was a costume, a suit. Just like clothing hanging on a rack in Frank Sullivan's office. That was the extent of what Ms. Erickson and Mr. Harrison created. That costume from the drawing that was a collaboration between Bill Giles, The Phillies, and the Bonnie.
        From that point forward it would have remained a costume sitting on the rack and not one of the most famous mascots in the history of sports. That was all the Phillies' doing. It wasn't the doing of it Bonnie Wade -- of Bonnie and Wade. It's the simple. That's my answer.
    Q.    All right. Well, I have to follow up now, try to disconnect all these things and ask questions so I can understand.
        First of all, were you ever present when Bill Giles was collaborating with Harrison/Erickson?

30(b)(6); confidential

Page 34

ROUGH DRAFT- NOT A FINAL TRANSCRIPT
2  A.     No, I was not.
3         MR. MARANDOLA:  Objection, outside
4  the scope of the 30(b)(6) it's no.
5         MR. MONTCLARE:  This is
6  outrageous.  Outrageous.  From now on
7  this is what you say I'll make a deal.
8  When you want to make the long-winded
9  objection that you may be about 55 times
10 yesterday and took about the 55 minutes
11 to do it, will you please just say
12 outside the scope and I'll know what you
13 mean you don't have to go through the
14 oleyl routine.  Do we have an agreement
15 on that.
16        MR. MARANDOLA:  We don't.  I'll
17 make my own objections.  I won't
18 interrupt your examination.
19        MR. MONTCLARE:  So just so you
20 know I'm going to take the position that
21 from here on we are not going to pay --
22 we're going to seek damages and costs
23 for the amount of space that your
24 objections take because I offered a
25 shorthand and you refused to give it.

Page 35

ROUGH DRAFT- NOT A FINAL TRANSCRIPT
2  It's just absolutely to cut down the
3  amount of time.  And as far as I'm
4  concerned every objection that you make
5  from here on in should not be included
6  in the time of this deposition.
7  BY MR. MONTCLARE:
8     Q.     Okay.  So the question -- there
9  was a question.
10        MR. MONTCLARE:  Can someone read
11       back that question, please, and I would
12       like an answer.
13        (Record read.)
14        MR. MARANDOLA:  The objection is
15       outside the scope of the 30(b)(6) notice
16       but Mr. Raymond could answer through
17       this personal knowledge.
18 BY MR. MONTCLARE:
19     Q.     Just answer the question, whatever
20 knowledge you have.
21        Did you talk to Mr. Giles about
22 this issue before come to testify today on
23 behalf of The Phillies?
24        MR. MARANDOLA:  Objection, vague,
25       "this issue."

Page 36

ROUGH DRAFT- NOT A FINAL TRANSCRIPT
2     Q.     The issue about Giles
3  collaborating with the Harrison/Erickson
4  people that you never saw.  Did you ever talk
5  to him about it in connection with preparing
6  for this deposition?
7     A.     No, I did not.
8     Q.     Did you ever look for any
9  documents relating to that collaboration
10 within the books and records of The Phillies
11 before coming to this deposition?
12    A.     No, I did not.
13    Q.     Now, isn't it correct that you
14 never performed the Phanatic character outside
15 of the Phanatic costume; is that correct?
16        MR. MARANDOLA:  Objection, vague.
17    A.     I don't understand that question.
18    Q.     You never -- all the creative
19 contributions that the Phillies say that they
20 had a right to were always the result of
21 performances made by the actor inside the
22 Phanatic costume, correct?
23        MR. MARANDOLA:  Objection, vague.
24       Objection, asked and answered.
25    Q.     You may answer.

Page 37

ROUGH DRAFT- NOT A FINAL TRANSCRIPT
2     A.     I don't -- I completely don't
3  understand the question.  I really don't.
4     Q.     Okay.  All right.  So in this case
5  you've testified about what the creative
6  contributions were of The Phillies and so on
7  behalf of The Phillies with respect to the
8  creation of the Phanatic character.
9         My question is did you ever use
10 the Phanatic character that you created
11 outside of the Phanatic costume?
12        MR. MARANDOLA:  Objection, vague.
13    A.     Prior to my work with The Phillies
14 or --
15    Q.     No.  At any time did you ever --
16 you're claiming that you created a character.
17    A.     Right.
18    Q.     Did you ever perform that
19 character outside of the Phanatic costume?
20    A.     Yeah.
21        MR. MARANDOLA:  Objection, vague.
22       Objection, asked and answered.
23    Q.     And when was that?
24    A.     It was a part of me and was always
25 made a part of me.  I danced.  I loved the