# Exhibit D

Regan A. Smith
General Counsel and
Associate Register of Copyrights
U.S. Copyright Office
101 Independence Ave. S.E.
Washington, D.C. 20559-6000

Dear Ms. Smith,

In case number 1:19-cv-07239 in the U.S. District Court for the Southern District of New York, Plaintiff The Phillies seeks a declaratory judgment from the Court that Defendants Bonnie Erickson, Wayde Harrison, Harrison Erickson (a partnership) and Harrison/Erickson, Inc. committed fraud on the Copyright Office in relation to copyright registration number VA 23-748 for a work entitled "Phillie Phanatic." Plaintiff alleges that Defendants inaccurately described the work as an "artistic sculpture" and that, had they not done so, the Copyright Office would have denied Defendants' registration application. Defendants deny committing fraud on the Copyright Office; deny submitting any inaccurate information in the application at issue; and allege that they followed the practices observed by the Copyright Office at the time the application was submitted on May 4, 1979. Copies of the Plaintiff's Complaint, Defendants' Answer and Counterclaims, and Plaintiff's Reply to the Answer and Counterclaims in the case are enclosed.

Pursuant to 17 U.S.C. § 411(b)(2), the Court hereby requests that you advise the Court (i) whether you conclude, after reviewing the enclosed registration certificate, reproductions of the images deposited with the associated application, and pleadings, that it was inaccurate for Defendants to describe the work at issue as an "artistic sculpture"; (ii) whether, if the answer to question (i) is in the affirmative, the inaccuracy of the information, if known to the Copyright Office, would have caused the Register of Copyrights to refuse registration of the work; and (iii) whether referring to the work at issue as an "artistic sculpture" was consistent with the practices observed by the Copyright Office on May 4, 1979.

The Court appreciates your assistance in this matter. If you or your staff have any questions for the parties or for the Court, please submit a letter addressed to me via the Court's Electronic Case Filing System ("ECF").

Sincerely,

Honorable Sarah Netburn
U.S. District Court
  for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

cc: Hon. Maria Strong, Acting Register of Copyrights and Director of the U.S. Copyright Office

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

THE PHILLIES, a Pennsylvania limited
partnership,

                Plaintiff,

      v.

HARRISON/ERICKSON,
INCORPORATED, a New York corporation,
HARRISON ERICKSON, a partnership, and
WAYDE HARRISON and BONNIE
ERICKSON,

                Defendants.

CIVIL ACTION NO. 19-7239

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff The Phillies (hereinafter also referred to as "the Club"), by and through its undersigned counsel, as and for its Complaint against Defendants Harrison/Erickson Incorporated, Harrison Erickson, a partnership, Wayde Harrison, and Bonnie Erickson (collectively referred to as "H/E"), alleges as follows:

## INTRODUCTION

1.      In the late 1970s, then Phillies Executive Vice President Bill Giles developed a vision for a new Phillies mascot:  He would be green, fat, furry, big-nosed, and instantly accessible to children.  He would be called "the Phillie Phanatic"—the quintessential fanatical Phillies fan.  The Phanatic would engage in audacious slapstick routines, playfully teasing anyone within range of the field or the stands—players, umpires, sportscasters, managers, and fans.

2.      In March 1978, Giles and other Phillies personnel worked with H/E to develop a costume for the Phanatic, providing them with their criteria.  H/E had the costume ready in about 2 weeks, paying various "costumers" $4 an hour to build it, for a total cost of about $2,000.

3.      The Phillies asked the talented Dave Raymond, an intern in its marketing department, to don the costume and to bring it to life.  Raymond debuted the Phanatic at the April 25, 1978 home game.

4.      Raymond and the Phanatic were an instant hit.  By the summer of 1978, H/E itself was acknowledging that Raymond had "developed a fun and sensitive character" and Bonnie Erickson observed that the Phanatic had become "wildly popular."

5.      H/E was paid well for their 2 weeks of work and $2,000 or so of expense.  Under 1978 and 1979 license agreements with The Phillies, they earned over $200,000 by the end of January 1980.

6.      In 1984, well after the Phanatic had become "wildly popular," H/E terminated the 1979 license agreement and used its strong bargaining position to negotiate an assignment ("the 1984 Assignment") of all of H/E's rights for $215,000—about $533,000 in today's dollars.   The 1984 Assignment expressly states that the transfer of these rights is "forever."

7.      Over the last 41 years, the Club has devoted millions of dollars to developing and promoting the Phanatic.  Dave Raymond appeared as the Phanatic thousands of times until his retirement in 1994.  Since then, Tom Burgoyne and others have donned Phanatic costumes thousands of times as well.  Raymond, Burgoyne, and other Phillies employees have developed hundreds of slapstick routines at the ballpark, and made thousands of appearances, many at charity events.

8.      The Club also has developed dozens of new costumes for the Phanatic and creatively modified his appearance in numerous ways.

9.      In addition, the Club has developed scores of giveaways and merchandise items representing the Phanatic.

10.     The Club has also spent millions of dollars promoting the Phanatic via advertising and marketing in traditional, digital, and social media.

11.     The Club is also the owner of numerous trademarks for the name and image of the Phanatic, including numerous incontestable federal registrations in the word mark "PHANATIC" and in designs of the Phanatic character.

12.     All of this was suddenly threatened when The Phillies received a letter from H/E's attorneys in June 2018 purporting to give notice of termination of the 1984 Assignment, notwithstanding H/E's agreement that it would be "forever."  The letter falsely claimed that H/E had "created the copyrighted character" of the Phanatic, and ignored The Phillies' role in designing the Phanatic's costume.  The letter went on to claim that H/E had the right to terminate the 1984 Assignment under Section 203 of the Copyright Act and that, if The Phillies did not negotiate a fifth agreement with H/E, the Club would not be able to "continue to use the Phillie Phanatic" after June 15, 2020.  Since sending that letter, H/E has threatened to obtain an injunction against the Phillies' use of the Phanatic and to "make the Phanatic a free agent" if the Club does not renegotiate the 1984 Assignment and pay H/E millions of dollars.

13.     As described in greater detail below, H/E's effort to deprive The Phillies and its fans of the Phanatic is legally baseless.

14.     First, Section 203 of the Copyright Act gives authors only one right to renegotiate the terms of a license or assignment of copyright rights.  By renegotiating those terms in 1984—

3

when H/E had full knowledge of the market value of the Phanatic costume—H/E exhausted the single opportunity provided by the Copyright Act to revisit those terms.  Here, H/E renegotiated its agreement with The Phillies twice—first in 1979 and again in 1984—both times after the Phanatic had become, in Bonnie Erickson's words, "enormously popular."  H/E does not have the right to terminate the 1984 Assignment yet again under Section 203 of the Copyright Act.

15.     Second, even if H/E could terminate the agreement it promised would last "forever," it cannot enforce its purported copyright in the Phanatic costume.  That is because H/E fraudulently obtained its copyright registration by representing to the Copyright Office that the Phanatic costume was "an artistic sculpture" rather than a costume.  H/E made that false statement because it knew that, if it had described the work as a costume, the Copyright Office would not have registered it.  As such, even if H/E had the right to terminate any of The Phillies' rights and somehow recapture them, H/E is barred from proceeding against The Phillies with any legal action under the Copyright Act, including its threat to enjoin The Phillies from using the Phanatic.

16.     Third, the Club is a co-author of the Phanatic costume because it contributed expressive content to its design.  The Phillies dictated to H/E distinctive features of the design including its green color, large waistline, and big nose, in addition to designing many aspects of the costume, including the Phanatic's jersey, cap, and leggings.  The parties intended to combine those elements into an integrated costume design.  Accordingly, even if H/E had not already exhausted its one opportunity to recapture rights under Section 203, it cannot recapture sole authorship rights because it is not the sole author of the costume, and it has no right to terminate the Club's rights as a joint author.

4

17.     Fourth, the Club is the author of the Phanatic character.  The Phillies took a lifeless costume and brought it to life, transforming it into a beloved character.  Without the Club's contributions, the Phanatic would not have been a character at all.  Accordingly, even if H/E had not already exhausted its one opportunity to recapture rights under Section 203, it cannot recapture sole authorship rights because it is not the author of the character and therefore has no right to terminate the Club's rights as author of the Phanatic character.

18.     Fifth, even if H/E were able to terminate pursuant to Section 203 of the Copyright Act, the rights that would revert to H/E are highly limited.  Under Section 203, the right to utilize derivative works prepared before the termination becomes effective does not revert to the author.  At great expense, the Club has prepared scores of derivative works of the Phanatic costume, and it has the absolute right to continue using them, notwithstanding H/E's false claim that it can hold up all use of the Phanatic.

19.     Sixth, H/E's threat to make the Phanatic "a free agent" implicates the Lanham Act.  The Club owns incontestable federal trademarks in the Phanatic, including in its design, and the Phanatic marks are famous marks.  Any use by another organization in commerce likely would confuse consumers as to source or sponsorship, as well as dilute the distinctiveness of the Phillies' famous marks, and therefore would violate the Lanham Act.  Accordingly, H/E should be enjoined from making the Phanatic "a free agent."

20.     Seventh, in the alternative, in the event that the Court holds that H/E is somehow permitted to terminate pursuant to Section 203, H/E is liable to The Phillies for breach of the duty of good faith and fair dealing and unjust enrichment.  H/E should not be permitted to retain all of the $215,000 paid to H/E in 1984 while at the same time terminating an agreement that H/E agreed would last "forever."  The portion of the $215,000 paid to H/E that reflects the value

5

of the terminated copyrights from the date of termination to the expiration of the copyrights should be returned to The Phillies. It would be unjust for H/E to keep the full amount that The Phillies paid for a permanent assignment if the Phillies will have received the benefit of only a 35-year term.

21.     The Club therefore requests that this Court put an immediate end to H/E's effort to hold up The Phillies with its threats of legal action and to make the Phanatic a free agent. By issuing a declaratory judgment in The Phillies' favor and an injunction against H/E's threatened actions, the Court will ensure that Phillies fans will not be deprived of their beloved mascot of 41 years and that The Phillies' investment of creativity, time, effort, and money in the Phanatic will not be liquidated by H/E.

## PARTIES

22.     The Club is a Pennsylvania limited partnership, having its principal place of business at Citizens Bank Park, One Citizens Bank Way, Philadelphia, Pennsylvania 19148. None of the limited partners reside in New York.

23.     Harrison/Erickson, Incorporated is a New York corporation, having its principal place of business at 62 Pierrepont Street, Brooklyn, New York, 11201. Harrison/Erickson, Incorporated also does business in this District.

24.     Harrison Erickson is a New York partnership, comprised of partners Wayde Harrison and Bonnie Erickson, that does business in this District.

25.     Wayde Harrison is an individual residing in Brooklyn, New York who does business in this District.

26.     Bonnie Erickson is an individual residing in Brooklyn, New York who does business in this District.

## JURISDICTION AND VENUE

27.     This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. §§ 1331 and 1338(a) because this action arises under the Copyright Act, 17 U.S.C. § 101,

*et seq.*, and the Lanham Act, 15 U.S.C. §§ 1051 *et seq*., in that the claims asserted require

construction of the Copyright Act and Lanham Act.

28.     This Court also has jurisdiction over the subject matter of this action pursuant to

28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy

exceeds $75,000, exclusive of interest and costs.

29.     This Court also has supplemental jurisdiction over pendent and ancillary state law

claims pursuant to 28 U.S.C. § 1367.

30.     An actual controversy exists between The Phillies and H/E.  On June 1, 2018,

H/E's attorneys sent a letter to The Phillies claiming that H/E can terminate The Phillies' rights

in the Phanatic pursuant to 17 U.S.C. § 203.  In subsequent communications, H/E has asserted

that, although 17 U.S.C. § 203(b)(1) clearly provides that a party can continue to utilize

derivative works prepared before termination, that provision somehow does not apply to The

Phillies' numerous expressive contributions to the Phanatic, and that H/E's termination notice

will have the effect of terminating The Phillies' right to use derivative versions of the Phanatic

costume and The Phillies' rights in the Phanatic character.  Accordingly, H/E has asserted that it

is currently exercising purported rights to terminate The Phillies' rights in the Phanatic, including

derivatives, which, if effective, would imminently and adversely affect The Phillies.

31.     In addition, H/E has threatened to sue The Phillies for copyright infringement if

The Phillies "continue to use the Phanatic" and derivatives of the Phanatic after the effective date

of the purported termination.

32.     H/E also has expressed its intention to make the Phanatic a "free agent" —as soon as the purported termination takes effect—that will be sold to another sports team, in violation of The Phillies' trademark rights.

33.     This Court has personal jurisdiction over H/E pursuant to N.Y. C.P.L.R. § 301. Wayde Harrison and Bonnie Erickson are domiciled in Brooklyn, New York. Harrison/Erickson, Incorporated is incorporated in New York, has its principal place of business in New York, and engages in continuous, permanent, and substantial activity in New York.  The partnership Harrison Erickson is domiciled in New York and engages in continuous, permanent, and substantial activity in New York.

34.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this district.  At the time the relevant agreements between H/E and The Phillies were negotiated and executed, H/E maintained an office in this district at 95 Fifth Avenue, New York, New York.  The 1978, 1979, and 1984 agreements were drafted and executed by H/E in this district and sent to The Phillies from this district.  The 1979 and 1984 agreements provide that they shall be governed by New York law.  In addition, the original Phanatic costume was designed and created, pursuant to the March 1978 agreement, in this district.  Personnel from The Phillies visited H/E's Fifth Avenue offices, including visits by Dave Raymond for costume fittings.  The Copyright Registration for the Phillie Phanatic also was submitted from this district.  H/E made statements to The Phillies regarding their intention to make the Phanatic a "free agent" and to sue The Phillies for infringement from and in this district.  Moreover, H/E itself has sought the assistance of the United States District Court for the Southern District of New York by filing suit against The Phillies in a lawsuit concerning the Phanatic captioned *Harrison v. The Philadelphia National*

*League Club, Inc.*, 79 Civ. 2663 (HFW) (S.D.N.Y.) ("the 1979 SDNY Litigation").  In H/E's

complaint, it alleged that it "has its principal place of business in the Southern District of New

York."  Exh. A (complaint w/o exhibits).

## FACTS

### Bill Giles' Green, Fat, Big-Nosed Mascot and The Phillies' First Agreement With H/E

35.     In February 1978, then Phillies Executive Vice President Bill Giles decided to

develop a new mascot for The Phillies.  He thought that the existing mascots, colonial characters

Phil and Phyllis, did not allow for much movement or expression of personality.  Giles was

looking to develop a character that could be highly active—a character who could engage in

slapstick routines that would be as exuberant and "in your face" (but nonetheless family friendly)

as Philadelphia's legendary baseball fans.  Giles had a clear picture in his mind of what the key

aspects of this mascot should be:  green, fat and loveable—with a big nose.  The Phillies already

had created the term "phanatic" to promote itself, inspire its fans to be "phanatics," and to

encourage fans to come to games to go "phanatic."  So The Phillies decided that the new mascot

would be called "the Phillie Phanatic."

36.     On February 14, 1978, Giles had The Phillies' promotions director, Frank

Sullivan, call Bonnie Erickson and Wayde Harrison, who had founded a Manhattan firm that

specialized in making costumes.

37.     On March 17, 1978, The Phillies and H/E entered into an agreement in this

district whereby H/E would provide a design and construct a costume based on Giles'

specifications for $3,900, plus expenses.  In exchange, The Club was granted the right to use the

costume on TV, in commercials, and in personal appearances to promote The Phillies.  Exh. B.

38.     After Giles conveyed his vision to Harrison and Erickson for the Phanatic, H/E submitted concepts to Giles, who, in turn, provided further input.  For example, upon reviewing initial designs, Giles insisted that the Phanatic be made fatter and have a larger nose.

39.     Various people hired by H/E at about $4 an hour constructed the costume, beginning on or around March 23, 1978.

40.     In addition to Giles' specifications, The Phillies provided the jersey, cap, and other material to H/E for the costume.

41.     The Phillies and H/E intended that Giles' specifications, the Phillies-designed clothing, and H/E's ideas for the costume be combined into an integrated costume design.

42.     By April 6, 1978, the costume was ready for a fitting that took place at H/E's offices in Manhattan.  Another fitting took place in Manhattan in mid-April 1978.

43.     The costume was delivered to The Phillies in late April 1978.

### Dave Raymond's Debut as the Phillie Phanatic

44.      Giles picked a young man with a lot of confidence and natural talent, Dave Raymond, to bring the Phanatic to life.  The Club had decided that the Phanatic would be mute, so The Phillies sent Raymond to mime school.

45.     Wearing H/E's costume, Dave Raymond debuted the Phanatic on April 25, 1978, The Phillies' sixth home game of the season.  Raymond's slapstick skits were a big hit.

46.     In fact, in August 1978, H/E acknowledged that Raymond "perform[s] very well" and that he had "developed a fun and sensitive character." And in her 1979 affidavit filed in this district, Erickson described the Phanatic as "enormously popular" and as having "enormous public appeal."

**The Phillies' Second Agreement With H/E**

47.     Because the Phanatic was well received, The Phillies decided to develop Phanatic-themed promotional items like key chains, pennants, and tee-shirts to be given away to fans late in the 1978 season, and even a Phanatic doll.

48.     Accordingly, on July 15, 1978, The Phillies entered into an agreement in this district with H/E to cover these promotional items.  Exh. C.  Under the July 15, 1978 agreement, The Club was given exclusive rights to make reproductions of the costume on souvenir items.  In exchange, The Phillies paid H/E $5,000 per year plus 7% of the greater of the manufacturing cost or retail selling price of the licensed souvenir items.

49.     The Phillies paid H/E over $100,000 in royalties under the July 15, 1978 agreement.

**H/E Registers Their Contribution to the Phanatic Costume as an
"Artistic Sculpture" and Sues The Phillies**

50.     Despite the success of the Phanatic and receiving many times more money than they had expected, in May 1979, H/E sued The Phillies in this district over a disagreement about the extent to which H/E's approval was needed on promotional and merchandising items. *Harrison v. The Philadelphia National League Club, Inc.*, 79 Civ. 2663 (HFW) (S.D.N.Y.) ("the 1979 SDNY Litigation").  Among other things, H/E asserted a claim for copyright infringement. In order to assert such a claim, H/E needed to register the "work" with the Copyright Office.

51.     H/E's complaint in the 1979 S.D.N.Y Litigation did not claim that Harrison and Erickson were sole authors of the entire costume; rather, H/E alleged that what it called an "artistic sculpture" contained "a large amount of material wholly original with plaintiffs," implying (correctly) that the Club had contributed the rest of that material.

52.     In the 1979 SDNY Litigation, Ms. Erickson submitted to this Court an affidavit in support of H/E's request for a TRO and preliminary injunction.

53.     Ms. Erickson attached to her affidavit a copy of H/E's application to register the copyright with the Copyright Office.  In its application, H/E represented to the Copyright Office that the work was an "artistic sculpture."  Exh. 1 to Exh. D; Exh. D ¶ 2.

54.     The word "costume" appears nowhere in H/E's copyright registration application, nor does the word "character."

55.     The Copyright Office registered the work as a "sculpture" on May 4, 1979, describing it as "Shaggy creature wearing tennis shoes, tights & baseball shirt while carrying pennant."  Exh. E.

56.     H/E provided the Copyright Office with the following picture of what it described as an "artistic sculpture" as its deposit:



Exh. 1A to Exh. D.

57.    If H/E had submitted to the Copyright Office a photo of the costume without a person inside, it would have been clear that what H/E was trying to register was a costume, not a sculpture.  Without someone inside the costume, it would have appeared formless, more like this:



**The Club Pays H/E Another $120,000 in Its Third Agreement With H/E**

58.    On November 1, 1979, The Phillies and H/E settled the 1979 SDNY Litigation and renegotiated their agreement with respect to the Phanatic.

59.    As described by Erickson in her affidavit filed in this Court in the 1979 SDNY Litigation, the Phanatic was "enormously popular" as of May 1979.

60.     The parties' agreement dated November 26, 1979, therefore, reflected the increased value in the Phanatic that was well established by 1979.  Exh. F.

61.     In exchange for receiving exclusive rights to exploit the Phanatic costume and make certain reproductions, etc., The Phillies agreed to pay H/E $5,000 annually, increasing each year by $1,000.  And, per the November 1979 agreement, The Phillies agreed to pay H/E a lump sum of $115,000.  All promised payments were made by The Phillies over the next 5 years.

### The Club Pays H/E $215,000 Pursuant to The Fourth Agreement With H/E

62.     In the fall of 1984, the parties renegotiated yet again.  At this time, H/E certainly had full knowledge of the value of their purported copyright, since H/E had described the Phanatic as "wildly popular," and since the Phanatic had generated hundreds of thousands of dollars in merchandise sales.  Armed with that knowledge, H/E was able to negotiate a sale of whatever rights it had in the "artistic sculpture known as the 'Phillie Phanatic'" for $215,000, or about $533,000 in 2019 dollars.  Exh. G.

63.     During negotiations of the 1984 Assignment, one of the expressed concerns of The Phillies was that the conveyance of rights be "forever."  H/E's counsel agreed that the deal would be "forever," and the 1984 Assignment as executed so provides.   Exh. G at ¶ 1.

64.     The 1984 Assignment superseded the prior agreements and terminated the 1979 Agreement.  Exh. G.

65.     As part of this 1984 deal, H/E additionally signed an assignment that provided that H/E "hereby sells, assigns, and transfers to the PHILLIES, its successors and assigns, all of HE's right, title and interest in and to (a) the copyright in the artistic sculpture identified above, and all renewals and extensions thereof and (b) any and all causes of action heretofore accrued in HE's favor for infringement of said copyright."  Exh. G.

14

66.     In accordance with the representations of H/E and the language of the 1984 Assignment, H/E and The Phillies negotiated and agreed upon a fair price for a "forever" assignment of H/E's rights.

67.     In accordance with The Phillies' expectation that the assignment would last forever, The Phillies paid H/E a lump sum $215,000 ($533,000 in today's dollars), which was paid in three installments.

68.     The $215,000 paid by the Club reflected its expectation that the assignment was of unlimited duration, and reflected The Phillies' assessment of the value of an assignment of H/E's rights that would last forever.

69.     If H/E and The Phillies had negotiated in 1984 for a 35-year assignment, instead of an assignment for the life of the copyright, The Phillies would have paid a lower price, and H/E would not have been paid $215,000.

**The Club Utilizes Dozens of Creative Versions of the Phanatic on the Field, in Publicity, and in Merchandise**

70.     Since 1978, the Club has invested millions of dollars in developing the Phanatic's character and recognition as The Phillies' mascot, including dozens of costume modifications, hundreds of routines and skits, thousands of charity appearances, and 41 years of consistent promotion and marketing in traditional and digital media.

71.     Some of the many creative modifications of the Phanatic utilized by The Phillies since 1984 are shown below, with additional examples attached as Exhs. H-K:














72.     Since 1978, the Club also has utilized numerous promotional and merchandise artwork and items, including but not limited to the following, with additional examples attached as Exhibits L-X:























73.     As explained further below, there is no question that the Club has the right to continue to utilize these costumes, designs, routines, artwork, and merchandise, as well as any others prepared before June 15, 2020.

**The Phillies' Incontestable Trademarks in the Name and Design of the Phanatic**

74.     Due to the decades of The Phillies' use of and investment in the Phanatic, the Phanatic's name and image have come to be strongly associated with and to identify The Phillies.  Accordingly, the Club owns federal trademark registrations involving the Phanatic, all of which marks have been in use for well over five consecutive years and have therefore become incontestable, including:

- U.S. Trademark Registration No. 4,143,914:  A standard character mark for "Phillie Phanatic" for clothing, namely headwear, shirts, cloth bibs, footwear, socks, and hosiery.

- U.S. Trademark Registration No. 4,143,913:  A standard character mark for "Phillie Phanatic" for toys and sporting goods, namely stuffed toys, plush toys, soft sculpture foam toys, foam novelty items, namely foam fingers, puppets, toy figures, dolls, bobbing head dolls, playground balls, baseball bats, inflatable toys, Christmas tree ornaments and decorations, and action figures.

- U.S. Trademark Registration No. 4,199,377:  A standard character mark for "Phillie Phanatic" for paper goods and printed matter, namely trading cards, posters, stickers, decals, temporary tattoos, bumper stickers, books featuring baseball, memo boards, mounted and un-mounted photographs, pens, pencils, art pictures, and art prints.

- U.S. Trademark Registration No. 4,035,158:  A standard character mark for "Phillie Phanatic" for entertainment services in the nature of performances and live appearances by a costumed mascot character at baseball games and exhibitions, clinics, promotions, schools, special events, parties, and social, cultural, charitable and educational events; providing recreational areas in the nature of children's play areas; fan club services; entertainment services, namely providing a reading program designed to motivate children to read; providing online newsletters in the field of sports; entertainment services, namely providing a website featuring baseball news, information and downloadable wallpaper.



- U.S. Trademark Registration No. 4,265,099:  A design mark in the design of the Phanatic (pictured left), described as a two-dimensional depiction of a three-dimensional costumed character wearing a baseball uniform depicting the word "PHILLIES," for paper goods and printed matter, namely trading cards, posters, stickers, decals, temporary tattoos, printed baseball game programs, magazines, books featuring baseball, mounted and un-mounted photographs, pens, pencils, art pictures, and art prints.

- U.S. Trademark Registration No. 4,246,618:  A design mark in the design of the Phanatic (pictured left), described as a two-dimensional depiction of a three-dimensional costumed character wearing a baseball uniform depicting the word "PHILLIES," for clothing, namely shirts and infant wear.

- U.S. Trademark Registration No. 4,234,650:  A design mark in the design of the Phanatic (pictured left), described as a two-dimensional depiction of a three-dimensional costumed character wearing a baseball uniform depicting the word "PHILLIES," for toys and sporting goods, namely stuffed toys, plush toys, puppets, puzzles, toy banks, toy figures, dolls, bobbing head dolls, miniature baseball bats, baseballs, baseball bats, inflatable toys, Christmas tree ornaments and decorations, action figures, and balls for games.

- U.S. Trademark Registration No. 4,120,821:  A design mark in the design of the Phanatic (pictured left), described as a two-dimensional depiction of a three-dimensional costumed character wearing a baseball uniform depicting the word "PHILLIES," for entertainment services in the nature of performances and live appearances by a costumed mascot character at baseball games and exhibitions, clinics, promotions, schools, special events, parties, and social, cultural, charitable and educational events; providing recreational areas in the nature of children's play areas; fan club services; entertainment services, namely providing a reading program designed to motivate children to read; providing online newsletters in the field of sports; and entertainment services, namely providing a website featuring baseball news and information.

75.     H/E is aware of The Phillies' trademarks, and has acknowledged their strength and value.

## H/E Purports to Terminate The Phillies' Right to Use the Phanatic

76.     On June 1, 2018, H/E's attorneys sent a letter to Phillies Chairman, David Montgomery, claiming that H/E was the author of the "copyrighted character" of the Phanatic and that—notwithstanding the agreement that the 1984 Assignment would be "forever"—they somehow had the right to terminate The Phillies' rights in the Phanatic as of June 15, 2020.

77.     In subsequent negotiations, H/E demanded exorbitant sums from The Phillies, threatening that if such sums were not paid, H/E would make the Phanatic "a free agent" and sell him to another sports team.

78.     H/E also has asserted that the derivative works exception in 17 U.S.C. § 203(b)(1) does not apply to derivative works developed by The Phillies, and that H/E's termination notice has the effect of terminating The Phillies' right to use derivative versions of the Phanatic.

25

79.     H/E has further threatened to sue The Phillies for copyright infringement when the Club continues to use the Phanatic and/or derivatives of the Phanatic after June 15, 2020.

80.     This lawsuit is being brought, *inter alia,* to achieve a declaration that H/E does not have the right to deprive The Phillies' fans of the Phanatic, does not have the right to liquidate The Phillies' huge, 41-year investment in the Phanatic, cannot terminate The Phillies' rights as an author of the Phanatic costume and character, does not have the right to tear up the 1984 Assignment while at the same time retaining all The Phillies' payments thereunder, and does not have the right to cause confusion among consumers regarding the source or sponsorship of The Phillies' mascot—the Phanatic.

## COUNT I: DECLARATORY JUDGMENT THAT H/E DOES NOT HAVE THE RIGHT TO TERMINATE THE 1984 ASSIGNMENT

81.     The Club realleges the foregoing allegations as if set forth fully herein.

82.     In 1978, The Phillies paid H/E $3,900 plus approximately $2,000 in costs to design and manufacture the Phanatic costume.

83.     The Phillies debuted the Phanatic on April 25, 1978.

84.     In July 1978, The Phillies entered into an agreement with H/E to allow The Phillies to use the Phanatic design on promotional items.  In exchange for the rights to make reproductions of the costume on souvenir items, The Phillies paid H/E $5,000 per year plus a 7% royalty.

85.     In November 1979, H/E and The Phillies renegotiated their agreements.  In exchange for receiving exclusive rights to exploit the Phanatic costume and make certain reproductions, etc., The Phillies agreed to pay H/E $5,000 annually, increasing each year by $1,000.  And, in an agreement dated November 26, 1979, The Phillies agreed to pay H/E a lump sum of $115,000.  All promised payments were made by The Phillies over the next 5 years.

86.     In October 1984, H/E and The Phillies renegotiated their agreements again, this time agreeing to a complete buyout of H/E's rights to the "artistic sculpture known as the 'Phillie Phanatic.'"  By this time, as recognized by Erickson, the Phanatic was "enormously popular." The Phillies paid H/E a lump sum of $215,000 under the 1984 Assignment, which reflected the popularity and established market value of the Phanatic.  At the time of the negotiation of the 1984 Assignment, H/E had full knowledge of the market value of the work at issue.

87.     On information and belief, H/E was aware of its termination rights and used that knowledge in exercising their bargaining power in successfully renegotiating their agreement with The Phillies.

88.     The provision of the Copyright Act that allows authors to terminate a grant of a transfer or license of copyright, 17 U.S.C. § 203, protects authors with no bargaining power from transferring their rights for next-to-nothing before the market value of a successful work has been established.

89.     Section 203 of the Copyright Act does not provide authors with multiple opportunities to renegotiate grants of copyrights after they have full knowledge of the market value of the works at issue; an author has only a single opportunity to revisit the terms of its grant.

90.     The 1984 Assignment therefore is outside the scope of 17 U.S.C. §203. Accordingly, H/E's purported termination does not terminate the grant contained in the 1984 Assignment.

91.     An actual, substantial, and justiciable controversy of sufficient immediacy and reality exists between The Phillies and H/E concerning whether H/E has the right to terminate The Phillies' rights to use the Phanatic as set forth in the paragraphs above, including but not

limited to because H/E sent a letter to The Phillies on June 1, 2018 claiming that they can

terminate The Phillies' rights in the Phanatic pursuant to 17 U.S.C. § 203.  H/E has further

threatened to sue The Phillies for copyright infringement when The Phillies continue to use the

Phanatic after the effective date of the purported termination.

92.     A judicial declaration is necessary and appropriate so that The Phillies may

ascertain its rights regarding use of the Phanatic.

93.     Based on the foregoing, the Club hereby requests a judicial declaration that the

June 1, 2018 notice of termination is null and void and that H/E's purported termination is

ineffective as to the 1984 Assignment.

## COUNT II: DECLARATORY JUDGMENT THAT H/E CANNOT ENFORCE ITS PURPORTED COPYRIGHTS BECAUSE OF ITS FRAUD ON THE COPYRIGHT OFFICE

94.     The Club realleges the foregoing allegations as if set forth fully herein.

95.     H/E obtained its copyright registration from the Copyright Office fraudulently.

96.     In its application, H/E represented to the Copyright Office that its purported work

was an "artistic sculpture" when in fact the purported work is a costume.  H/E described its

purported work as an "artistic sculpture" because it believed that, if it had described it as a

costume, the Copyright Office would have rejected H/E's application, thereby impeding H/E's

1979 lawsuit filed in this District against The Phillies.  As the Second Circuit has explained in

*Whimsicality v. Rubie's Costume Co., Inc.*, 891 F.2d 452 (2d Cir. 1989), at the time the

Copyright Office "consider[ed] costumes to be wearing apparel and consistently reject[ed]

applications to register them."

97.     To make its application more misleading, H/E's deposit with the Copyright Office

was a poor-quality photo that obscured the fact that the work was a costume:



98.     Had H/E submitted an accurate photo, it would have looked more like this:



99.     As the Second Circuit held in *Whimsicality*, "the word 'sculpture' implies a relatively firm form representing a particular concept."  Like the costumes in *Whimsicality*, the Phanatic costume has "no such form.  If hung from a hook or laid randomly on a flat surface, the particular animal or item depicted by the costume would be largely unidentifiable.  The intended depiction is in fact recognizable only when the costume is worn by a person or is carefully laid out on a flat surface to reveal that depiction."  Like the costumes in *Whimsicality*, the Phanatic costume "do[es] not constitute sculpture."

100.    In describing the purported work in its card catalog, the Copyright Office described the purported work as "Sculpture."

101.    H/E knowingly failed to advise the Copyright Office of facts that likely would have resulted in the rejection of its application.

102.    H/E therefore engaged in fraud on the Copyright Office in obtaining its 1979 registration.

103.    Accordingly, like the plaintiff in *Whimsicality*, H/E cannot enforce its purported copyright in its "artistic sculpture."

104.    An actual, substantial, and justiciable controversy of sufficient immediacy and reality exists between The Phillies and H/E concerning whether H/E's copyright in the Phanatic is enforceable as set forth in the paragraphs above, including but not limited to because H/E has threatened to sue The Phillies for copyright infringement when the Club continues to use the Phanatic and/or derivatives of the Phanatic after the effective date of the purported termination—June 15, 2020.

105.    A judicial declaration is necessary and appropriate so that the Club may ascertain its rights regarding use of the Phanatic and derivatives of the Phanatic.

106.    The Club therefore requests a declaration from this Court that H/E cannot sue The Phillies for copyright infringement if and when its termination of the 1984 Assignment becomes effective.

## COUNT III: DECLARATORY JUDGMENT THAT SECTION 203 DOES NOT PROVIDE H/E WITH THE RIGHT TO RECAPTURE THE CLUB'S RIGHTS AS A JOINT AUTHOR OF THE PHANATIC COSTUME

107.    The Club realleges the foregoing allegations as if set forth fully herein.

108.    As set forth above, the Club contributed copyrightable content to the Phanatic costume, including the green, fat, and big-nosed look, and the design of the leggings, jersey, and cap.

109.    The Phillies and H/E intended those elements to be integrated with the elements contributed by H/E into the Phanatic costume.

110.    Indeed, H/E's complaint filed in the 1979 S.D.N.Y. Litigation acknowledges that H/E did not contribute all of the copyrightable material in the Phanatic costume, implicitly acknowledging The Phillies' contribution.

111.    The Club is therefore a joint author of the Phanatic costume.

112.    An actual, substantial, and justiciable controversy of sufficient immediacy and reality exists between The Phillies and H/E concerning whether H/E has the right to terminate The Phillies' rights to use the Phanatic as set forth in the paragraphs above, including but not limited to because H/E sent a letter to The Phillies on June 1, 2018 claiming that they can terminate The Phillies' rights in the Phanatic pursuant to 17 U.S.C. § 203.  H/E has further threatened to sue The Phillies for copyright infringement when The Phillies continues to use the Phanatic after the effective date of the purported termination.

113.    A judicial declaration is necessary and appropriate so that The Phillies may ascertain its rights regarding use of the Phanatic.

114.    Based on the foregoing, the Club hereby requests a judicial declaration that H/E's purported termination of the 1984 Assignment is null and void, and/or that section 203 of the Copyright Act of 1976 does not provide H/E with the right to terminate the Club's rights as a joint author of the Phanatic costume under the Copyright Act of 1976.

## COUNT IV: DECLARATORY JUDGMENT THAT SECTION 203 DOES NOT PROVIDE H/E WITH THE RIGHT TO TERMINATE THE CLUB'S RIGHTS AS THE AUTHOR OF THE PHANATIC'S CHARACTER

115.    The Club realleges the foregoing allegations as if set forth fully herein.

116.    As set forth above, the Club contributed copyrightable content to the Phanatic costume to create the Phanatic character, including backstories, personality traits, and other distinctive features.

117.    H/E itself recognized that Dave Raymond, a Phillies employee, had "developed a fun and sensitive character."

118.    The Phillies and H/E intended that The Phillies would develop the character of the Phanatic using the costume that had been jointly authored by The Phillies and H/E.

119.    The Club is therefore the author of the Phanatic character.

120.    An actual, substantial, and justiciable controversy of sufficient immediacy and reality exists between The Phillies and H/E concerning whether H/E has the right to terminate The Phillies' rights to use the Phanatic as set forth in the paragraphs above, including but not limited to because H/E sent a letter to The Phillies on June 1, 2018 claiming that they can terminate The Phillies' rights in the Phanatic, including the Phanatic character, pursuant to 17 U.S.C. § 203.  H/E has further threatened to sue The Phillies for copyright infringement when The Phillies continues to use the Phanatic after the effective date of the purported termination.

121.    A judicial declaration is necessary and appropriate so that The Phillies may ascertain its rights regarding use of the Phanatic.

122.     Based on the foregoing, the Club hereby requests a judicial declaration that H/E's

purported termination of the 1984 Assignment is null and void, and/or that section 203 of the

Copyright Act of 1976 does not provide H/E with the right to terminate the Club's  rights as the

author of the Phanatic character under the Copyright Act of 1976.

## COUNT V: DECLARATORY JUDGMENT THAT THE CLUB HAS THE RIGHT TO UTILIZE DERIVATIVE WORKS UNDER 17 U.S.C. § 203(B)(1)

123.     The Club realleges the foregoing allegations as if set forth fully herein.

124.     The Club has created and will create numerous derivative works based on the

Phanatic costume, including but not limited to costumes, routines, designs, artwork, logos,

promotional products, and retail products.

125.     Pursuant to 17 U.S.C. § 203(b)(1), even if H/E were permitted to terminate certain

rights granted under the 1984 Assignment, H/E cannot terminate The Phillies' rights to use the

derivative works developed before June 15, 2020.

126.     The Club therefore has an absolute right to continue to use any derivative works

of the Phanatic developed before June 15, 2020.

127.     An actual, substantial, and justiciable controversy of sufficient immediacy and

reality exists between The Phillies and H/E concerning whether H/E has the right to terminate

The Phillies' rights to use derivatives of the Phanatic costume as set forth in the paragraphs

above, including but not limited to because H/E sent a letter to The Phillies on June 1, 2018

claiming that they can terminate The Phillies' rights in the Phanatic pursuant to 17 U.S.C. § 203,

and in subsequent communications H/E has asserted that the derivative works exception in 17

U.S.C. § 203(b)(1) does not apply to the derivative works prepared before June 15, 2020, and

that H/E's termination notice has the effect of terminating The Phillies' right to use derivative

versions of the Phanatic.  H/E has further threatened to sue The Phillies for copyright

infringement when the Club continues to use derivatives of the Phanatic after the effective date of the purported termination.

128.    A judicial declaration is necessary and appropriate so that the Club may ascertain its rights regarding use of the Phanatic and derivatives of the Phanatic.

129.    Based on the foregoing, the Club hereby requests a judicial declaration that: (a) H/E's purported termination is ineffective as to derivative works based on the "artistic sculpture known as the 'Phillie Phanatic'" developed before June 15, 2020; and (b) the Club has the right to continue to use such derivative works after June 15, 2020.

### COUNT VI: DECLARATORY JUDGMENT AND PERMANENT INJUNCTION PURSUANT TO SECTIONS 32 AND 43 OF THE LANHAM ACT

130.    The Club realleges the foregoing allegations as if set forth fully herein.

131.    H/E has threatened to make the Phanatic "a free agent," selling purported rights to its character and/or design to another sports team.

132.    As alleged above, the Club owns incontestable federal trademark registrations in the Phanatic, including in its design and name, and the Phanatic marks are famous marks.

133.    The Club has consistently used and invested in the Phillie Phanatic marks, and has therefore built up valuable good will in the marks and a powerful association of source and sponsorship among the relevant consumers and channels of trade.

134.    If H/E were to follow through on its threat of making the Phanatic a "free agent," it would likely cause confusion, mistake, or deception as to the source of origin, sponsorship or approval of the use of the Phillie Phanatic—in that consumers are likely to believe that the Club authorized and controlled the use of the Phillie Phanatic by other sports teams or commercial entities, or that the Club is associated with or related to the other sports teams or commercial

entities using the Phillie Phanatic—thereby violating the Lanham Act Section 32, 15 U.S.C. § 1114(1).

135.    Furthermore, the use of the Phanatic by any third party would dilute the distinctiveness of The Phillies' famous Phanatic marks—thereby violating the Lanham Act Section 43, 15 U.S.C. § 1125(c).  Any sale of the Phanatic by H/E should therefore be enjoined pursuant to 15 U.S.C. § 1125(c)(1).

136.    An actual, substantial, and justiciable controversy of sufficient immediacy and reality exists between The Phillies and H/E concerning whether H/E's threatened sale of the Phanatic to another sports team will infringe the Phillie Phanatic trademarks as set forth in the paragraphs above, including but not limited to because H/E has expressed its intention to make the Phanatic a "free agent" that will be sold to another sports team as soon as the purported termination takes effect.

137.    In the past, H/E has made one of its mascot costumes a "free agent."  For example, H/E initially created Youppi! for the Montreal Expos.  But when the Expos moved to Washington, D.C. and became the Nationals, H/E sold rights in Youppi! to the Montreal Canadiens.

138.    A judicial declaration is necessary and appropriate so that The Phillies and H/E may ascertain their rights regarding use of the Phanatic and derivatives of the Phanatic costume.

139.    Moreover, the sale of the Phanatic as a "free agent" to another sports team, commercial entity, or other third party will injure The Phillies' image and reputation with consumers by causing consumer confusion, dissatisfaction, a diminution of the value of the goodwill associated with the Phillie Phanatic marks, and a loss of sales and/or market share to The Phillies' competition.

140.     H/E's threat to sell the Phanatic to another sports team was made deliberately and willfully, with knowledge of The Phillies' exclusive rights and goodwill in the trademarks related to the Phanatic, and with knowledge that use of the Phanatic by another sports team will be infringing.

141.     H/E's sale of the Phanatic to another sports team, commercial entity, or other third party will cause The Phillies substantial and irreparable injury, loss and damage to its rights in and to the marks related to the Phanatic, and damage to the goodwill associated therewith, for which The Club has no adequate remedy at law.

142.     Based on the foregoing, the Club hereby requests a judicial declaration that the use of the Phanatic by another sports team or commercial entity for any similar goods or services to those for which The Phillies' trademarks related to the Phanatic are registered violates the Lanham Act Section 32, 15 U.S.C. § 1114(1).

143.     In addition, the Club requests the Court to enter a permanent injunction barring H/E from selling purported rights in the Phanatic to any sports team or commercial entity and from selling any Phanatic-related merchandise.

## COUNT VII: UNJUST ENRICHMENT

144.     The Club realleges the foregoing allegations as if set forth fully herein.

145.     At no point in the course of negotiating the 1984 Assignment did H/E disclose to The Phillies that it intended to terminate The Phillies' rights to use the Phanatic after 35 years.

146.     Yet, on June 1, 2018, H/E sent a letter to The Phillies asserting that— notwithstanding the agreement that the 1984 Assignment would be "forever"—The Phillies' right to use the Phanatic would terminate as of June 15, 2020.

147.     The Phillies relied on H/E's representations concerning the duration of the assignment and H/E's intent to transfer their rights to the Phanatic forever when agreeing to the

36

price for the assignment.  The price agreed to by The Phillies—$215,000—reflected what The Phillies believed to be appropriate compensation for the right to use the Phanatic, in all forms and including all derivatives, for the full term of the copyright.

148.    If H/E and The Phillies had negotiated in 1984 for a 35-year assignment, instead of an assignment for the life of the copyright, The Phillies would have paid a lower price, and H/E would not have been paid $215,000.

149.    Because The Phillies made a $215,000 payment to H/E for an assignment of rights for the duration of the copyright to the Phanatic, H/E will be unjustly enriched at The Phillies' expense if it is not precluded from terminating the 1984 Assignment.

150.    Equity and good conscience require that H/E pay The Phillies restitution for the amount H/E will be unjustly enriched—the difference between the value of a 35-year assignment as compared to the value of an assignment for the full term of the copyright—if H/E is permitted to terminate pursuant to section 203.

## COUNT VIII: BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

151.    The Club realleges the foregoing allegations as if set forth fully herein.

152.    In every contract there is an implied covenant of good faith and fair dealing by each party not to do anything that will deprive the other parties of the benefits of the contract.

153.    H/E owed The Phillies a duty of good faith and fair dealing in connection with the 1984 Assignment.

154.    H/E violated the duty of good faith and fair dealing by the aforementioned actions, including agreeing to a "forever" assignment of the rights in the copyright to the Phanatic, failing to disclose its intention to terminate the assignment after 35 years, negotiating a price for the 1984 assignment that reflected an amount appropriate for an assignment of rights

for the life of the copyright, and subsequently serving a notice of termination on The Phillies in 2018.

155.     The Club has or will suffer damages as a result of the aforementioned conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a judgment in its favor and against Defendants and requests the following relief:

156.     A declaratory judgment that H/E's termination letter dated June 1, 2018 is null and void.

157.     A declaratory judgment that H/E cannot sue The Phillies for copyright infringement if and when its termination of the 1984 Assignment  becomes effective;

158.     A declaratory judgment that section 203 of the Copyright Act of 1976 does not give H/E the right to terminate the Club's rights as a joint author of the Phanatic costume and as the author of the Phanatic character;

159.     A declaratory judgment that H/E purported termination is ineffective as to derivative works based on the "artistic sculpture known as the 'Phillie Phanatic'" developed between October 31, 1984 and June 15, 2020, that H/E does not have the right to recapture the Club's rights in such derivative works, and that the Club has the right to continue to use such derivative works after June 15, 2020;

160.     A declaratory judgment that the use of the Phanatic as a character or costume and the sale or distribution of any Phanatic-related product or merchandise by another sports team, commercial entity, or third party or by H/E for any similar goods or services to those for which the Phanatic trademarks are registered violates Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1) & 1125(c)(1);

161.    A permanent injunction barring H/E from selling or otherwise transferring or

licensing any purported rights in the Phanatic to any sports team, commercial entity, or other

third party, and from selling any Phanatic-related product or merchandise;

162.    An order entering judgment in favor of The Phillies and against H/E;

163.    An order awarding The Phillies damages in an amount to be determined; and

164.    Such additional relief as the Court finds just and proper.


Dated:  August 2, 2019                          DUANE MORRIS LLP

                                                By: */s/ David T. McTaggart*
                                                    David T. McTaggart (NY ID 4097598)
                                                    1540 Broadway
                                                    New York, NY 10036-4086
                                                    Phone (212) 692-1000
                                                    Fax (212) 202-4931

                                                    and

                                                    David J. Wolfsohn (PA ID No. 57974)
                                                    *(pro hac vice pending)*
                                                    Tyler R. Marandola (PA ID No. 313585)
                                                    *(pro hac vice pending)*
                                                    Kendra C. Oxholm (NY ID No. 5267828;
                                                    PA ID No. 325621)
                                                    *(pro hac vice pending)*
                                                    30 South 17th Street
                                                    Philadelphia, PA 19103
                                                    Phone (215) 979-1000
                                                    Fax (215) 979-1020

                                                    *Attorneys for Plaintiff, The Phillies*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE PHILLIES, a Pennsylvania limited partnership,<br><br>   Plaintiff,<br><br>v.<br><br>HARRISON/ERICKSON, INCORPORATED, a New York corporation, HARRISON ERICKSON, a partnership, and WAYDE HARRISON and BONNIE ERICKSON,<br><br>   Defendants. | CIVIL ACTION NO. 19-CV-7239 (VM)<br><br><br>JURY TRIAL DEMANDED |

## ANSWER AND COUNTERCLAIMS

Defendants and Counterclaim Plaintiffs Harrison/Erickson Incorporated, Harrison Erickson, a partnership, Wayde Harrison, and Bonnie Erickson, by and through their undersigned counsel, for their Answer to Plaintiff's Complaint, allege as follows:

## INTRODUCTORY RESPONSE TO THE COMPLAINT

1.  Plaintiff The Phillies brings this case, not because they have any valid claim to the Phanatic copyright—they do not.   Instead, The Phillies are using their Complaint as a weapon to try to get the Defendants to accept a lower amount for the renewal of the 1984 assignment of the Phanatic copyright, which was originally granted to The Phillies by Wayde Harrison and Bonnie Erickson ("H/E") by the 1984 Agreement attached to the Complaint as Exhibit G.

2.  Despite the twisted allegations of the Complaint, it is undeniable that for four decades The Phillies absolutely knew and repeatedly acknowledged that H/E were the sole authors of Phanatic copyright.  The Phillies even concede this in the very agreements that are attached to their Complaint as Exhibits B, C, F, and G.  Most significantly, the 1984 Agreement

1

assigning the Phanatic copyright to The Phillies specifically acknowledged that H/E owned the Phanatic copyright, stating in the very first clause: "Whereas, HE owns the copyright of the artistic sculpture presently known as the 'Phillies Phanatic' (hereinafter referred to as the 'MASCOT')".

3.     This undeniable concession by The Phillies is in the principal 1984 Agreement, executed by The Phillies themselves, which granted The Phillies the right to use H/E's copyrighted artistic work, the Phanatic.  While The Phillies had to attach this key document as Exhibit G to the Complaint, there is not a word of this clause acknowledging H/E's sole, initial ownership of the Phanatic copyright found anywhere in The Phillies' prolix, fiction-filled Complaint.  This kind of selective exclusion of real facts pervades the disingenuous allegations of the Complaint.

4.     The Phillies also falsely and shamelessly allege that they or Bill Giles, a former Executive Vice President of The Phillies, created the Phanatic.  The truth is that other than wanting it to be named the Phanatic, Giles and The Phillies had no input into the design and creation of the Phanatic.

5.     Instead, the real, undeniable facts are that H/E designed and created the Phanatic. H/E are renowned designers who over the course of several decades, created countless iconic puppets, costumes, and other creations, including numerous Muppets characters and major sports league mascots.  Defendant Bonnie Erickson, while working for the legendary Jim Henson of Sesame Street and Muppets fame, created iconic characters, including Miss Piggy, among others. In 1978, The Phillies first asked Jim Henson to create their mascot.  Mr. Henson declined, and personally recommended that The Phillies contact H/E to create The Phanatic.  H/E met with Phillies representatives—not Mr. Giles—early in 1978, and began working on the design and

specifications for the Phanatic.  In March of 1978, H/E entered into a written Letter Agreement with The Phillies to create the Phanatic.  While The Phillies attach that seminal Letter Agreement to the Complaint as Exhibit B, they omit from the narrative in their Complaint that this Letter Agreement specifically provided "The character [i.e., the Phanatic] will be copywritten by Harrison/Erickson . . . ."  Once again, The Phillies are allergic to the real facts and bent on spreading half-truths throughout their Complaint.

6.      In accordance with their promises in the Letter Agreement, H/E completed their design and construction of the Phanatic, which debuted as The Phillies' mascot at The Phillies ballpark on April 25, 1978.  And, as contemplated by the express terms of the 1978 Letter Agreement, H/E registered their copyright in the Phanatic with the U.S. Copyright Office in 1979.  It is telling that The Phillies never took issue with this H/E copyright or the Copyright Office registration until 40 years later, and only after H/E exercised their express right under the United States Copyright law (in accordance with Section 203) to terminate the assignment of the copyright granted to The Phillies 35 years ago in the 1984 Agreement.

7.      The Phillies, one of the most lucrative franchises in Major League Baseball, cannot deny with any integrity that they knew, or at least should have known, that H/E had the right to terminate the 1984 assignment after 35 years in accordance with the plain language of the Copyright Law.  Section 203 of the Copyright Act provides that any transfer of copyright executed by the author(s) on or after January 1, 1978 may be terminated starting thirty-five (35) years from the date of execution of the grant.  17 U.S.C. § 203(a)(3).  In order to ensure that its express legislation could not be overridden by contract, Congress expressly made the termination right inalienable; it may be effected "notwithstanding any agreement to the contrary."  17 U.S.C. § 203(a)(5).  If management and counsel of The Phillies now say they were ignorant of the

copyright law when they executed the 1984 Agreement, then shame on them.

8.      In any event, H/E had the right to terminate its 1984 Agreement and sent the appropriate notice of termination to The Phillies in June of 2018, and properly recorded that notice with the U.S. Copyright Office.  At the same time, H/E, through their representatives, made it clear they wanted to negotiate a re-granting of the Phanatic copyright to The Phillies for a fair price, to be negotiated.  Indeed, negotiations proceeded for more than a year prior to The Phillies bringing this lawsuit (and, including the ludicrous claims that the Phillies through Bill Giles were the creators of the Phanatic, or somehow joint owners of the Phanatic copyright, or that H/E's 40 year old registered copyright, never challenged to date, was invalid or improperly undertaken in 1979).  It was also made clear to The Phillies during this year-long negotiation process that H/E were very proud of the success of their creation and the joy the Phanatic has brought to Phillies fans and Philadelphians for more than 40 years.  This success was due in no small part to H/E's artistry and continued support, cooperation, and other artistic work regarding the Phanatic, which H/E provided to The Phillies continuing over the past 40 years (ending only upon the filing of the termination notice with The Phillies in June 2018).

9.      During these negotiations to re-grant the Phanatic copyright, The Phillies repeatedly said that the Phanatic had very little monetary value for The Phillies.  It was during a single negotiation session that reference to making the Phanatic a "free agent" was spoken, in a light moment during a courteous and civil face-to-face negotiation with Phillies management.  Rather than being a threat, this remark addressed, in baseball terms, the repeated negotiating position claimed by The Phillies that the Phanatic had very little value to them.  As in baseball, the copyright rights in the Phanatic would be able to walk away from The Phillies once its contract (i.e., the assignment of copyrights) ended, if the parties could not reach a mutually

4

acceptable price for H/E re-granting the Phanatic rights to The Phillies.  That was the context for the entire "free agent" thought, expressed in a sentence at most, during a long, confidential negotiation session.  To stretch this innocent singular play on words into an imminent threat to be enjoined is bizarre and reflects the hyperbolic, empty rhetoric that permeates the Complaint. Likewise, for The Phillies to try to bolster its spurious "free agent" argument by referencing a completely unrelated H/E transaction with the Montreal Canadiens regarding H/E's Youppi! character is even more ridiculous, given that the circumstances of that transaction—a sports franchise leaving town and voluntarily agreeing to give up its mascot for a new mascot—were entirely different.  Plus, The Phillies ignored their promise, which they insisted on at the commencement of talks, to keep the substance of the negotiations with H/E confidential.

10.     The facts are—and Defendants will prove—that The Phillies' claims are all built on half-truths, distortions of fact and law, and incomplete snippets of confidential settlement communications.  This lawsuit never should have been filed by The Phillies, and it is H/E, not The Phillies, who are entitled to a declaratory judgment that: (i) their termination notice is valid; (ii) H/E are the sole authors of the Phanatic; and (iii) after the termination notice's effective date (in June 2020), H/E are entitled to use their copyrighted work as they see fit and The Phillies may not use it whatsoever absent H/E's permission.

### ANSWERING THE INTRODUCTION SECTION OF THE COMPLAINT

11.     Defendants deny the truth of the allegations in paragraph "1" of the Complaint, and refer to paragraphs 1 through 10 of this Answer.

12.     Defendants deny the truth of the allegations in paragraph "2" of the Complaint, and refer to paragraphs 1 through 10 of this Answer.

13.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "3" of the Complaint and on that basis deny said allegations, and refer to paragraphs 1 through 10 of this Answer.

14.     Defendants deny the truth of the allegations in paragraph "4" of the Complaint.

15.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "5" of the Complaint and on that basis deny said allegations, and refer to 1984 Agreement for the terms thereof.

16.     Defendants deny the truth of the allegations in paragraph "6" of the Complaint, and refer to the 1984 Agreement for the terms thereof.

17.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "7" of the Complaint and on that basis deny said allegations.

18.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "8" of the Complaint and on that basis deny said allegations.

19.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "9" of the Complaint and on that basis deny said allegations.

20.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "10" of the Complaint and on that basis deny said allegations.

21.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "11" of the Complaint and on that basis deny said allegations, and specifically deny the legal conclusions therein.

6

22.     Defendants admit only that H/E's attorneys sent a termination notice by letter to The Phillies in June of 2018 terminating the 1984 Agreement in accordance with Section 203 of the Copyright Act, and refer to that letter for the contents thereof, and otherwise deny the truth of the allegations in paragraph "12" of the Complaint, and further refer to the 1984 Agreement for the terms thereof, and to paragraphs 1 through 10 of this Answer.

23.     Defendants deny the truth of the allegations in paragraph "13" of the Complaint.

24.     Defendants deny the truth of the allegations in the first sentence of paragraph "14" of the Complaint, refer the Court to the statute referenced in paragraph "14" of the complaint, and lack knowledge or information sufficient to form a belief as to the truth of the allegations in the final sentence of paragraph "14" of the Complaint and on that basis deny said allegations, and otherwise deny the truth of the allegations in paragraph "14" of the Complaint.

25.     Defendants deny the truth of the allegations in paragraph "15" of the Complaint.

26.     Defendants deny the truth of the allegations in paragraph "16" of the Complaint, and refer to paragraphs 1 through 10 of this Answer, and further refer to *inter alia*, Exhibit B to the Complaint.

27.     Defendants deny the truth of the allegations in paragraph "17" of the Complaint, and refer to paragraphs 1 through 10 of this Answer.

28.     Paragraph "18" of the Complaint is a legal argument to which no response is required, and to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "18" of the Complaint.

29.     Paragraph "19" of the Complaint is a legal argument to which no response is required, and to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "19" of the Complaint.

30.     Paragraph "20" of the Complaint is a legal argument to which no response is required, and to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "20" of the Complaint.

31.     Paragraph "21" of the Complaint is a legal argument to which no response is required, and to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "21 of the Complaint.

### ANSWERING THE PARTIES SECTION

32.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "22" of the Complaint and on that basis deny said allegations.

33.     Defendants only admit the allegations in the first sentence in paragraph "23" of the Complaint that Harrison/Erickson, Incorporated, is a New York Corporation, having its principal place of business at 62 Pierrepont Street, Brooklyn, NY 11201, and otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence in paragraph 23 of the Complaint and on that basis deny said allegations.

34.     Defendants deny the truth of the allegations in paragraph "24" of the Complaint.

35.     Defendants admit the part of paragraph "25" of the Complaint that alleges that Wayde Harrison is an individual residing in Brooklyn and otherwise lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph "25" of the Complaint and on that basis deny said allegations.

36.     Defendants admit the part of paragraph "26" of the Complaint that alleges that Bonnie Erickson is an individual residing in Brooklyn and otherwise lack knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in paragraph "26" of the Complaint and on that basis deny said allegations.

## ANSWERING THE JURISDICTION AND VENUE SECTION

37.     Defendants refer the Court to the Statutes referred to in paragraph "27" of the Complaint that establish subject matter jurisdiction over cases and controversies arising under the Copyright Act and Lanham Act, and otherwise deny the truth of the allegations in paragraph "28" of the Complaint.

38.     Defendants refer the Court to the Statute referred to in paragraph "28" of the Complaint, and otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "28" of the Complaint and on that basis deny said allegations.

39.     Defendants refer the Court to the Statute referred to in paragraph "29" of the Complaint, and otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "29" of the Complaint and on that basis deny said allegations.

40.     Defendants deny the truth of the allegations in paragraph "30" of the Complaint, except admit only that on June 15, 2018  H/E's attorneys sent a proper termination letter to The Phillies which will terminate the Phanatic copyright rights in accordance with 17 USC § 203, and refer to that statute for its content.

41.     Defendants deny the truth of the allegations in paragraph "31" of the Complaint, and aver that they will enforce their rights upon termination of the 1984 Assignment of the Phanatic copyright.

42.     Defendants deny the truth of the allegations in paragraph "32" of the Complaint.

9

43.     Paragraph "33" of the Complaint contains legal conclusions to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "33" of the Complaint.

44.     Paragraph "34" of the Complaint contains legal conclusions to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "34" of the Complaint.

## ANSWERING THE FACTS SECTION

45.     Defendants deny the truth of the allegations in paragraph "35" of the Complaint, and refer to paragraphs 1 through 10 of this Answer.

46.             With respect to paragraph "36" of the Complaint, Defendants admit only that on February 14, 1978, H/E spoke with Frank Sullivan and otherwise deny the truth of the allegations in paragraph "36" of the Complaint, and refer to paragraphs 1 through 10 of this Answer.

47.     With respect to paragraph "37" Defendants admit that H/E entered into the agreement attached to the Complaint as Exhibit B and respectfully refer the Court to that Agreement for the terms thereof, and otherwise deny the truth of the allegations in paragraph "37" of the Complaint, and refer to paragraphs 1 through 10 of this Answer.

48.     Defendants deny the truth of the allegations in paragraph "38" of the Complaint, and refer to paragraphs 1 through 10 of this Answer.

49.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "39" of the Complaint and on that basis deny said allegations.

50.    Defendants deny the truth of the allegations in paragraph "40" of the Complaint, and refer to paragraphs 1 through 10 of this Answer, and further aver that H/E asked for a Phillies shirt and cap for reference, not at the suggestion of Giles.

51.    Defendants deny the truth of the allegations in paragraph "41" of the Complaint, and refer to paragraphs 1 through 10 of this Answer.

52.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "42" of the Complaint and on that basis deny said allegations.

53.    Defendants admit only that H/E delivered the original Phanatic work of art that they created to The Phillies in April 1978, and otherwise deny the truth of the allegations in paragraph "43" of the Complaint.

54.    Defendants deny the truth of the allegation in paragraph "44" of the Complaint that "the Club had decided that the Phanatic would be mute" and aver that H/E and not The Phillies designed the Phanatic to be mute, and otherwise lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph "44" of the Complaint and on that basis deny said allegations.

55.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "45" of the Complaint and on that basis deny said allegations, and admit only that H/E's original Phanatic work of art debuted on April 25, 1978.

56.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "46" of the Complaint and on that basis deny said allegations, and refer to the referenced affidavit in this paragraph of the Complaint for the full contents thereof.

11

57.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "47" of the Complaint and on that basis deny said allegations, and further answering refer to the terms of the July15, 1978 Agreement, attached to the Complaint as Exhibit C for the terms thereof.

58.      Answering Paragraph "48" of the Complaint, the Defendants admit that The Phillies and H/E entered into the July 15, 1978 Agreement attached to the Complaint as Exhibit C and refer to that agreement for the terms thereof, and further aver that paragraph 3 of the July 15, 1978 Agreement provides that "Copies of all Licensed Articles made by you [The Phillies], or presently in your possession or control, shall bear copyright notice in our [H/E's] name in the proper location as follows: © 1978 Harrison Erickson"; and otherwise deny the remaining allegations in paragraph "48" of the Complaint.

59.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "49" of the Complaint and on that basis deny said allegations.

60.      Answering paragraph "50" of the Complaint, H/E sued The Phillies in 1979 for copyright infringement because, *inter alia*, The Phillies, granted only reproduction rights, were producing inferior quality Phanatic merchandise without H/E's required approval in violation of the March 17, 1978 and the July 15, 1978 Agreements, and The Phillies indisputably knew based on the complaint in that case that H/E had duly registered the Phanatic at the U.S. Copyright Office as "an artistic sculpture," a term that was used again in the 1984 Agreement; and for 41 years The Phillies never claimed that the copyright registration was improper, never mind fraudulent, and Defendants admit that H/E commenced the action identified in Paragraph "50" of

the Complaint, and otherwise deny the truth of the allegations in paragraph "50" of the

Complaint.

61.     Defendants deny the truth of the allegations in paragraph "51" of the Complaint.

62.     Defendants refer to the Erickson Affidavit and exhibits attached thereto for the

full contents thereof, and otherwise deny the truth of the allegations in paragraph "52" of the

Complaint.

63.     Defendants refer to the Erickson Affidavit and exhibits attached thereto for the

full contents thereof, and otherwise deny the truth of the allegations in paragraph "53" of the

Complaint.

64.     Defendants refer to H/E's Copyright Office registration for the full contents

thereof, and otherwise deny the truth of the allegations in paragraph "54" of the Complaint.

65.     Defendants refer to H/E's Copyright Office registration for the full contents

thereof, and otherwise deny the truth of the allegations in paragraph "55" of the Complaint.

66.     Defendants refer to H/E's Copyright Office registration certificate attached to the

Erickson Affidavit for the full contents thereof, and otherwise deny the truth of the allegations in

paragraph "56" of the Complaint.

67.     Defendants deny the truth of the allegations in paragraph "57" of the Complaint.

68.     Defendants admit H/E settled the 1979 SDNY Litigation, and otherwise deny the

truth of the allegations in paragraph "58" of the Complaint.

69.     Defendants refer to the Erickson Affidavit for the full contents thereof, and

otherwise deny the truth of the allegations in paragraph "59" of the Complaint.

70.     Defendants refer to the November 26, 1979 Agreement, attached as Exhibit F to the Complaint, for the full contents thereof, and otherwise deny the truth of the allegations in paragraph "60" of the Complaint.

71.     Defendants refer to the November 26, 1979 Agreement, attached as Exhibit F to the Complaint, for the full contents thereof, lack knowledge or information sufficient to form a belief as to the truth of the allegations in the last sentence of paragraph "61" of the Complaint, and on that basis deny said allegation, and otherwise deny the truth of the remaining allegations in paragraph "61" of the Complaint.

72.     Defendants deny the truth of the allegations in paragraph "62" of the Complaint, refer to paragraphs 1 through 10 of this Answer, and refer to the 1984 Agreement attached as Exhibit G to the Complaint for the full contents thereof.

73.     Defendants deny the truth of the allegations in paragraph "63" of the Complaint, refer to paragraphs 1 through 10 of this Answer, and refer to the 1984 Agreement attached as Exhibit G to the Complaint for the full contents thereof.

74.     Defendants deny the truth of the allegations in paragraph "64" of the Complaint, and refer to the 1984 Agreement attached as Exhibit G to the Complaint for the full contents thereof.

75.     Defendants deny the truth of the allegations in paragraph "65" of the Complaint, and refer to the 1984 Agreement attached as Exhibit G to the Complaint for the full contents thereof.

76.     Defendants deny the truth of the allegations in paragraph "66" of the Complaint, refer to paragraphs 1 through 10 of this Answer, and refer to the 1984 Agreement attached as Exhibit G to the Complaint for the full contents thereof.

77.     Defendants deny the truth of the allegations in paragraph "67" of the Complaint, refer to paragraphs 1 through 10 of this Answer, and refer to the 1984 Agreement attached as Exhibit G to the Complaint for the full contents thereof.

78.     Defendants deny the truth of the allegations in paragraph "68" of the Complaint, refer to paragraphs 1 through 10 of this Answer, and refer to the 1984 Agreement attached as Exhibit G to the Complaint for the full contents thereof.

79.     Defendants deny the truth of the allegations in paragraph "69" of the Complaint.

80.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "70" of the Complaint and on that basis deny said allegations.

81.     Defendants deny the truth of the allegations in paragraph "71" of the Complaint.

82.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "72" of the Complaint and on that basis deny said allegations.

83.     Defendants deny the truth of the allegations in paragraph "73" of the Complaint.

84.     Defendants deny the truth of the allegations in the first sentence of  paragraph "74" of the Complaint, and refer to paragraphs 1 through 10 of this Answer, and lack knowledge or information sufficient to form a belief as to the truth of the rest of the allegations in paragraph "74" of the Complaint and on that basis deny said allegations.

85.     Defendants deny the truth of the allegations in paragraph "75" of the Complaint.

86.     Defendants deny the truth of the allegations in paragraph "76" of the Complaint, except admit only that on June 15, 2018  H/E's attorneys sent a proper termination letter to The

Phillies which will terminate the Phanatic copyright in accordance with 17 USC § 203, and refer to such letter for the complete contents thereof.

87.    Defendants deny the truth of the allegations in paragraph "77" of the Complaint, and refer to paragraphs 1 through 10 of this Answer.

88.    Defendants deny the truth of the allegations in paragraph "78" of the Complaint, and refer to paragraphs 1 through 10 of this Answer.

89.    Defendants deny the truth of the allegations in paragraph "79" of the Complaint, and refer to paragraphs 1 through 10 of this Answer, and further aver that H/E will seek all legal remedies available to it if The Phillies use the Phanatic in violation of the termination of the 1984 grant of rights.

90.    Paragraph "80" of the Complaint is a legal conclusion to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "80" of the Complaint.

**ANSWERING COUNT I:**

**(Declaratory Judgment that H/E Does Not Have a Right to Terminate the 1984 Agreement)**

91.    Defendants reallege the forgoing responses to the Complaint as if set forth fully herein.

92.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "82" of the Complaint and on that basis deny said allegations.

93.    Answering paragraph "83" of the Complaint, Defendants admit that the Phanatic debuted on April 25, 1978.

94.     Answering paragraph "84" of the Complaint, Defendants admit that H/E entered into the July 15, 1978 Letter Agreement attached to the Complaint as Exhibit C and refer to that agreement for the full contents thereof, and otherwise deny the truth of the allegations set forth in paragraph "84" of the Complaint.

95.     Answering paragraph "85" of the Complaint, Defendants admit that H/E entered into the November 26, 1979 agreement attached to the Complaint as Exhibit F and refer to that agreement for the full contents thereof, and otherwise deny the truth of the allegations set forth in paragraph "85" of the Complaint.

96.     Defendants deny the truth of the allegations in paragraph "86" of the Complaint.

97.     Defendants deny the truth of the allegations in paragraph "87" of the Complaint

98.     Paragraph "88" of the Complaint is a legal conclusion to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "88" of the Complaint.

99.     Paragraph "89" of the Complaint is a legal conclusion to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "89" of the Complaint.

100.     Paragraph "90" of the Complaint is a legal conclusion to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "90" of the Complaint.

101.     Paragraph "91" of the Complaint is a legal conclusion to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "91" of the Complaint.

102.    Paragraph "92" of the Complaint is a legal conclusion to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "92" of the Complaint.

103.    Paragraph "93" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "93" of the Complaint.

## ANSWERING COUNT II:

### (Declaratory Judgment for Fraud on the Copyright Office)

104.    Defendants reallege the forgoing responses to the Complaint as if set forth fully herein.

105.    Defendants deny the truth of the allegations in paragraph "95" of the Complaint.

106.    Defendants deny the truth of the allegations in paragraph "96" of the Complaint.

107.    Defendants deny the truth of the allegations in paragraph "97" of the Complaint.

108.    Defendants deny the truth of the allegations in paragraph "98" of the Complaint.

109.    Defendants deny the truth of the allegations in paragraph "99" of the Complaint.

110.    Answering paragraph "100" of the Complaint, Defendants refer to the complete Copyright Office registration for the Phanatic for the contents thereof, and otherwise deny the truth of the allegations in paragraph "100" of the Complaint.

111.    Defendants deny the truth of the allegations in paragraph "101" of the Complaint.

112.    Defendants deny the truth of the allegations in paragraph "102" of the Complaint.

113.    Defendants deny the truth of the allegations in paragraph "103" of the Complaint.

114.     Paragraph "104" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "104" of the Complaint.

115.     Paragraph "105" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "105" of the Complaint.

116.     Paragraph "106" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "103" of the Complaint.

**ANSWERING COUNT III:**

**(Declaratory Judgment That Section 203 Does Not Provide H/E with the Right to the Club's Rights as a Joint Author of the Phanatic Costume)**

117.     Defendants reallege the forgoing responses to the Complaint as if set forth fully herein.

118.     Defendants deny the truth of the allegations in paragraph "108" of the Complaint.

119.     Defendants deny the truth of the allegations in paragraph "109" of the Complaint.

120.     Defendants deny the truth of the allegations in paragraph "110" of the Complaint.

121.     Defendants deny the truth of the allegations in paragraph "111" of the Complaint.

122.     Defendants deny the truth of the allegations in paragraph "112" of the Complaint.

123.     Paragraph "113" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "113" of the Complaint.

124.     Paragraph "114" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "114" of the Complaint.

## ANSWERING COUNT IV:

### (Declaratory Judgment That Section 203 Does Not Provide H/E with the Right to Terminate the Club's Rights as Author of the Phanatic's Character)

125.     Defendants reallege the forgoing responses to the Complaint as if set forth fully herein.

126.     Defendants deny the truth of the allegations in paragraph "116" of the Complaint.

127.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "117" of the Complaint and on that basis deny the truth of the said allegations.

128.     Defendants deny the truth of the allegations in paragraph "118" of the Complaint.

129.     Defendants deny the truth of the allegations in paragraph "119" of the Complaint.

130.     Defendants deny the truth of the allegations in paragraph "120" of the Complaint.

131.     Paragraph "121" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "121" of the Complaint.

132.     Paragraph "122" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "122" of the Complaint.

**ANSWERING COUNT V:**

**(Declaratory Judgment that the Club has the Right to Utilize Derivative Works under 17 U.S.C. §203(B)(1))**

133.     Defendants reallege the forgoing responses to the Complaint as if set forth fully herein.

134.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "124" of the Complaint and on that basis deny said allegations.

135.     Defendants deny the truth of the allegations in paragraph "125" of the Complaint.

136.     Defendants deny the truth of the allegations in paragraph "126" of the Complaint.

137.     Paragraph "127" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "127" of the Complaint.

138.     Paragraph "128" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "128" of the Complaint.

Paragraph "129" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "129" of the Complaint.

**ANSWERING COUNT VI**

**(Declaratory Judgment and Permanent Injunction Pursuant to Sections 32 and 43**

**of the Lanham)**

139.    Defendants reallege the forgoing responses to the Complaint as if set forth fully herein.

140.    Defendants deny the truth of the allegations in paragraph "131" of the Complaint.

141.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "132" of the Complaint and on that basis deny said allegations.

142.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "133" of the Complaint and on that basis deny said allegations.

143.    Defendants deny the truth of the allegations in paragraph "134" of the Complaint and aver that there was no actionable threat made by H/E, or any real threat at all.

144.    Defendants deny the truth of the allegations in paragraph "135" of the Complaint.

145.    Paragraph "136" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "136" of the Complaint.

146.    Defendants deny the truth of the allegations in paragraph "137" of the Complaint.

147.    Defendants deny the truth of the allegations in paragraph "138" of the Complaint.

148.    Defendants deny the truth of the allegations in paragraph "139" of the Complaint.

149.    Defendants deny the truth of the allegations in paragraph "140" of the Complaint.

150.    Defendants deny the truth of the allegations in paragraph "141" of the Complaint.

151.    Paragraph "142" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "142" of the Complaint.

152.    Paragraph "143" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "143" of the Complaint.

## ANSWERING COUNT VII

### (Unjust Enrichment)

153.    Defendants reallege the forgoing responses to the Complaint as if set forth fully herein.

154.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "145" of the Complaint and aver that The Phillies never raised that issue during any such negotiations.

155.    Defendants deny the truth of the allegations in paragraph "146" of the Complaint.

156.    Defendants deny the truth of the allegations in paragraph "147" of the Complaint.

157.    Defendants deny the truth of the allegations in paragraph "148" of the Complaint.

158.    Defendants deny the truth of the allegations in paragraph "149" of the Complaint.

159.    Defendants deny the truth of the allegations in paragraph "150" of the Complaint.

## ANSWERING COUNT VIII

### (Breach of the Covenant of Good Faith and Fair Dealing)

160.    Defendants reallege the forgoing responses to the Complaint as if set forth fully herein.

161.    Paragraph "152" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "152" of the Complaint.

162.    Paragraph "153" of the Complaint" is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "153" of the Complaint.

163.    Defendants deny the truth of the allegations in paragraph "154" of the Complaint.

164.    Defendants deny the truth of the allegations in paragraph "155" of the Complaint.

165.    Defendants are not required to respond to the headings in the Complaint which do not have paragraph numbers, but to the extent a response is deemed required Defendants deny the truth of the allegations in each said heading.

166.    Defendants deny that The Phillies are entitled to any of the relief requested in the Complaint's "Prayer for Relief."

## DEFENSES

Without waiving or excusing the burden of proof of The Phillies, or admitting that Defendants have any burden of proof, Defendants assert the following affirmative and other defenses.  Defendants do not presently know all facts and circumstances with respect to The Phillies' allegations, and thereby reserve the right to amend this Answer should they later discover facts demonstrating the existence of additional defenses.

### FIRST DEFENSE

### (Failure to State a Claim)

1.      The Complaint and any purported claims for relief therein fail to state a claim upon which relief can be granted.

### SECOND DEFENSE

### (Statute of Limitations)

2.      The Complaint and any purported claims for relief therein are barred, precluded, and/or limited by the statute of limitations, including but not limited to 17 U.S.C. § 507 and N.Y. C.P.L.R. § 213.

### THIRD DEFENSE

### (Laches)

3.      The Complaint and any purported claims for relief therein are barred, in whole or in part, by the doctrine of laches.  To the extent The Phillies contests Defendants' lawful exercise of their copyright law (i.e., federal statutory) right of termination, Copyright Office registration of the Phanatic copyright rights, and/or ownership interests in the Phanatic work, The Phillies did not take reasonable steps to inform Defendants of its subjective beliefs and unreasonably delayed in informing Defendants of its purported claims.

25

## FOURTH DEFENSE

### (Estoppel)

4.      The Complaint and any purported claims for relief therein are barred, in whole or in part, by the doctrine of estoppel.  To the extent The Phillies contests Defendants' lawful exercise of their copyright law (i.e., federal statutory) right of termination, Copyright Office registration of the Phanatic copyright rights, and/or copyright ownership interests in the Phanatic work, The Phillies did not take reasonable steps to inform Defendants of its subjective beliefs and instead, made numerous representations to Defendants that are contrary to the allegations in the Complaint, to Defendants' detriment.

## FIFTH DEFENSE

### (Waiver)

5.      The Complaint and any purported claims for relief therein are barred, in whole or in part, because The Phillies have, through its own actions, conduct, and failure to act, waived any right to relief.

## SIXTH DEFENSE

### (Injunctive/Declaratory Relief Improper)

6.      Any claims by The Phillies for equitable relief are barred because The Phillies have an adequate and complete remedy at law, and/or cannot make the other requisite showings to obtain equitable relief, including but not limited to injunctive relief or declaratory relief.

## SEVENTH DEFENSE

### (Copyright Misuse)

7.      The Complaint and any purported claims for relief therein are barred, in whole or in part, by the doctrine of copyright misuse.

## EIGHTH DEFENSE

### (Trademark Misuse)

8.     The Phillies' claim under Count VI is barred, in whole or in part, by the doctrine of trademark misuse.

## NINTH DEFENSE

### (Dastar Rule)

9.     The Phillies' claim under Count VI is barred, in whole or in part, by the Supreme Court's holding in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003).

## TENTH DEFENSE

### (Lack of Subject Matter Jurisdiction)

10.     The Court lacks subject matter jurisdiction over Counts V and VI to the extent that The Phillies fail to allege any case or controversy.

## ELEVENTH DEFENSE

### (Statutory Standing)

11.     The Phillies' claims under Counts V and VI are barred, in whole or in part, because The Phillies lack standing under the Declaratory Judgments Act, 28 U.S.C. § 2201.

## TWELTH DEFENSE

### (Article III Standing)

12.     The Phillies' claims under Counts V and VI are barred, in whole or in part, because The Phillies' lack standing under Article III of the United States Constitution.

## THIRTEENTH DEFENSE

### (Ratification/Acquiescence/Abandonment/Forfeiture)

13.     The Complaint and any purported claims for relief therein are barred, in whole or in part, by the doctrines of ratification, acquiescence, abandonment, and/or forfeiture.

## FOURTEENTH DEFENSE

### (Preemption by Federal Law)

14.     The Phillies' claims under Count VII and VIII are preempted by the U.S. Copyright Act, *see* 17 U.S.C. § 301.

## FIFTEENTH DEFENSE

### (No Damages)

15.     The Phillies' claims to damages under Counts VII and VIII are barred, in whole or in part, because The Phillies have not suffered any damage or injury as a result of any act or conduct by Defendants.

## SIXTEENTH DEFENSE

### (Damages Too Speculative)

16.     The Phillies' claims to damages under Counts VII and VIII are barred, in whole or in part, because damages sought are too speculative and remote.

## SEVENTEENTH DEFENSE

### (Failure to Mitigate)

17.     The Phillies' claims to damages under Counts VII and VIII are barred, in whole or in part, because The Phillies have failed to mitigate any alleged damages.

**EIGHTEENTH DEFENSE**

**(Good Faith)**

18.     Count VII and VIII are barred, in whole or in part, because Defendants acted in good faith in all of their dealings with The Phillies.  Defendants have dealt honestly and fairly with The Phillies; The Phillies' ignorance of Defendants' statutory termination right under U.S. copyright law is a problem of The Phillies' own making.

**NINETEENTH DEFENSE**

**(Bad Faith)**

19.     The Complaint and any purported claims for relief therein are barred, in whole or in part, as a result of The Phillies' bad faith.

**TWENTIETH DEFENSE**

**(Unclean Hands)**

20.     The Phillies have not come to Court with clean hands and thus, the Complaint and any purported claims for relief therein are barred, in whole or in part, by the doctrine of unclean hands.

**TWENTY-FIRST DEFENSE**

**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

21.     The Complaint and any purported claims for relief therein are barred due to the fact that The Phillies, by their own acts and/or omissions, breached the covenant of good faith and fair dealing implied in its agreements with Defendants.

### TWENTY-SECOND DEFENSE

#### (First Amendment)

22.     The Phillies' claim under Count VI is barred, in whole or in part, by the First

Amendment to the U.S. Constitution.

### TWENTY-THIRD DEFENSE

#### (Fair Use)

23.     The Phillies' claim under Count VI is barred, in whole or in part, by the fair use

defense.

### TWENTY-FOURTH DEFENSE

#### (Breach and Default by Plaintiff)

24.     Defendants have substantially performed any and all contractual obligations, and

any duty or performance on behalf of Defendants is excused by The Phillies' own actions,

breaches, and defaults, including but not limited to those specified in Defendants' counterclaims.


WHEREFORE, Defendants request that the Court issue a judgment in their favor; order

that The Phillies are not entitled to any relief on any of their claims; and order that Defendants

are entitled to a judgment in their favor for their reasonable attorneys' fees and full costs,

including under 17 U.S.C. § 505.

## COUNTERCLAIMS

Defendants Harrison/Erickson Incorporated, Harrison Erickson, a partnership, Wayde Harrison, and Bonnie Erickson, by and through their undersigned counsel, hereby allege, on personal knowledge as to matters relating to themselves and on information and belief as to all other matters, as follows:

## PARTIES

1.     Counterclaim Plaintiffs repeat and reallege paragraphs 1-10 of their Answer, and also incorporate into these counterclaims the denials, averments and defenses set forth in response to The Phillies' Complaint.

2.     Counterclaim Plaintiff Bonnie Erickson is a designer of puppets, costumes, toys, and graphics, best known for her work as Head of the Muppet Workshop with Jim Henson.  With her husband, Counterclaim Plaintiff Wayde Harrison, she is a partner in Counterclaim Plaintiff Harrison/Erickson.  Counterclaim Plaintiffs are all domiciled in Brooklyn, New York.

3.     Erickson and Harrison authored the "Phanatic" at the request of The Phillies Major League Baseball team.  Counterclaim Defendant The Phillies is a Pennsylvania limited partnership, which is trying to subvert the letter and intent of the Copyright Act by attempting to prevent Harrison and Erickson from terminating an assignment of the copyrights authored and owned by Harrison and Erickson to the Phanatic, under 17 U.S.C. § 203.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over the subject matter of the action pursuant to 28 U.S.C. §§ 1331 and 1338 because the counterclaims arise under the Copyright Act.

5.     An actual controversy exists between the parties because The Phillies have wrongly claimed an ownership interest in the Phanatic as a purported copyright author of the

mascot and of an associated "character."  The Phillies have also wrongly claimed that a notice of termination served by Counterclaim Plaintiffs on The Phillies and instructing that a October 31, 1984 Assignment of the copyright to the Phanatic from Counterclaim Plaintiffs to The Phillies will terminate under 17 U.S.C. § 203, in June 2020, is invalid.  Thus, the Court has subject matter jurisdiction under 28 U.S.C. § 2201.

6.      This Court has personal jurisdiction over The Phillies pursuant to N.Y.C.P.L.R. § 302.  The Phillies transact business within the state and enter contracts to supply goods or services in the state.  The Phillies have further consented to jurisdiction in this District by filing the instant lawsuit in this District.

7.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400 because a substantial part of the events giving rise to the counterclaims occurred in this District.

## FACTS

8.       The Phillies have known and conceded for four decades that they did not author or initially own the copyrights in the Phanatic.  They admitted as much in the exhibits attached to their own Complaint in this action, which are binding agreements concerning copyright authorship and ownership, and the exploitation of the Phanatic.  Only after Counterclaim Plaintiffs served The Phillies with a valid termination notice under 17 U.S.C. § 203, in 2018, did The Phillies concoct theories as to why they should be declared an original author of the Phanatic.

9.      The purpose of termination of assignments under the Copyright Act is to provide authors with an opportunity 35 years later to reclaim rights and/or negotiate with an original assignee, for additional monies, for a term extended beyond the 35 year term.  There is nothing unfair about this statutory entitlement: indeed Congress created it due to the inequities individual

32

authors such as Harrison and Erickson frequently face when entering negotiations with large companies like The Phillies.

10.     When The Phillies asked Counterclaim Plaintiffs to create a mascot, the team knew they were seeking the assistance of established artists.  Although The Phillies first asked Jim Henson to take on the project, he told them they should hire Bonnie Erickson, who had worked with Henson to create such famous art works as Miss Piggy, and who also had worked on the Sesame Street programs.

11.     The entire artistic design for the Phanatic, a fantasy animal, with both artistic merit, as well as a written and well-thought out backstory and personality (i.e., as an anomaly of evolution from the Galapagos Islands), was created solely by Counterclaim Plaintiffs.  The Phillies contributed no copyrightable work to the project, and only simple, abstract notional ideas, none of which had any copyrightable expression.  Counterclaim Plaintiffs conceived of, and designed, the color, shape, mannerisms, fictional backstory, and other protectable elements of the Phanatic.  For example, Erickson designed the large snout of the Phanatic to resemble a megaphone, because the name Phanatic implied a loud and boisterous character.  She also chose green as the color for the mascot, because after visiting the Philadelphia stadium to gather inspiration, she thought a green mascot would stand out among the multi-colored seats.

12.     As stated above, The Phillies admitted this was true in multiple signed agreements, which reference Counterclaim Plaintiffs' initial ownership of the copyrights to the Phanatic, including the Phanatic "character."  So, Counterclaim Plaintiffs expressly repudiated any initial ownership claim by The Phillies long ago.  Indeed, The Phillies were granted an assignment of the Phanatic copyrights from Counterclaim Plaintiffs in 1984, acknowledging in writing that H/E owned and had registered the Phanatic copyright.

33

13.     The U.S. Copyright Office also acknowledged Counterclaim Plaintiffs' authorship and ownership of the copyright to the Phanatic by issuing a 1979 registration certificate to Counterclaim Plaintiffs.  That certificate, which is prima facie evidence of the truth of the facts stated therein, 17 U.S.C. § 410, and of which The Phillies were well aware, confirms The Phillies did not author the Phanatic.  The Phillies never challenged this registration for decades, until they received a valid termination notice from Counterclaim Plaintiffs, informing the Phillies that Counterclaim Plaintiffs will reclaim ownership of the Phanatic on June 15, 2020.  The U.S. Copyright Office has now also recorded that valid termination notice, indicating it was substantively complete and procedurally proper.

14.     The Phillies have threatened to continue using the copyrighted material of the Phanatic, even after ownership of the copyright reverts to Counterclaim Plaintiffs under 17 U.S.C. § 203.  Rather than respecting the public policy choices of Congress, which elected to provide artists with the ability to reclaim their rights, or pay additional money for their highly successful work after the termination is effected in 2020, The Phillies are trying to bully Counterclaim Plaintiffs and force them to waste money on a lawsuit.  This Court should set them straight.

## CLAIMS

### First Cause of Action –Authorship of the Phanatic

15.     Counterclaim Plaintiffs reallege all of the allegations in paragraphs 1-14 herein.

16.     In 1978, Counterclaim Plaintiffs created the Phillie Phanatic.  The Phillies contributed no artistic expression to the Phanatic whatsoever, let alone copyrightable expression.

17.     Between 1978 and 1984, the parties entered multiple written agreements within which The Phillies acknowledged Counterclaim Plaintiffs' authorship of the Phanatic.  These

agreements include acknowledgement of Counterclaim Plaintiffs' authorship of the Phanatic "character."

18.　　After Counterclaim Plaintiffs served a notice on The Phillies in 2018, as required by the Copyright Act, to terminate their 1984 Assignment of the copyright rights in the Phanatic, The Phillies concocted an argument to attempt to claim partial authorship of the Phanatic. An actual, substantial, and justiciable controversy thus exists between Counterclaim Plaintiffs and The Phillies concerning who authored and initially owned the copyright rights in the Phanatic. A judicial declaration is necessary to vindicate Counterclaim Plaintiffs' rights.

19.　　Based on the foregoing, Counterclaim Plaintiffs hereby request a judicial declaration that they authored the Phanatic, and that The Phillies did not.

## Second Cause of Action – Statute of Limitations and Estoppel

20.　　Counterclaim Plaintiffs reallege all of the allegations in paragraphs 1-19 herein.

21.　　Counterclaim Plaintiffs always claimed authorship and initial ownership of the copyright to the Phanatic. Counterclaim Plaintiffs also always denied that The Phillies had any authorship interest in the Phanatic. These denials were express, and were even conveyed in writing multiple times in and before 1984. Indeed, in 1979, Counterclaim Plaintiffs registered the copyright to the Phanatic, and informed The Phillies that they did so. The Phillies never claimed an authorship interest in the Phanatic for forty years.

22.　　The Copyright Act, 17 U.S.C. § 507, includes a three-year statute of limitations. This limitations provision applies to claims of authorship, just as it does to infringement actions. Because Counterclaim Plaintiffs repudiated any authorship claim possessed by The Phillies, and The Phillies failed to file an action within three years contesting Counterclaim Plaintiffs' rights, the statute of limitations now bars The Phillies from claiming any authorship interest.

23.     Moreover, Counterclaim Plaintiffs materially relied on The Phillies' representations that they acknowledged Counterclaim Plaintiffs' authorship of the Phanatic when the parties entered written agreements and Counterclaim Plaintiffs continued to do business with The Phillies after doing so.  Equitable estoppel therefore bars The Phillies from now challenging Counterclaim Plaintiffs' authorship of the Phanatic.

24.     Nevertheless, the Phillies are now asserting, for the first time, that they authored the Phanatic.  An actual, substantial, and justiciable controversy thus exists between Counterclaim Plaintiffs and The Phillies concerning who authored the Phanatic.  A judicial declaration is necessary to vindicate Counterclaim Plaintiffs' rights.

25.     Based on the foregoing, Counterclaim Plaintiffs hereby request a judicial declaration that the Copyright Act's statute of limitations and equitable estoppel prevent The Phillies from claiming any authorship of the Phanatic.

### Third Cause of Action – Validity of Copyright Registration

26.     Counterclaim Plaintiffs reallege all of the allegations in paragraphs 1-25 herein.

27.     In 1979, Counterclaim Plaintiffs registered their copyright interests in the Phanatic, and the U.S Copyright Office issued a registration certificate that same year.  In applying for the registration, Counterclaim Plaintiffs complied with all applicable Copyright Office regulations and practices.  Counterclaim Plaintiffs did so in good faith, and informed The Phillies of the issuance of the Copyright Office registration certificate.  The Phillies acknowledged the existence of the certificate in writing.

28.     Moreover, Counterclaim Plaintiffs materially relied on The Phillies representations that they acknowledged Counterclaim Plaintiffs' registration when the parties entered written agreements and Counterclaim Plaintiffs continued to do business with The

Phillies after doing so.  Equitable estoppel, and the Copyright Act's statute of limitations, 17

U.S.C. § 507, therefore bar The Phillies from now challenging the validity of Counterclaim

Plaintiffs' registration.

29.     Nevertheless, The Phillies assert that the registration is invalid.  An actual,

substantial, and justiciable controversy thus exists between Counterclaim Plaintiffs and The

Phillies concerning the whether Counterclaim Plaintiffs possess a valid registration.  A judicial

declaration is necessary to vindicate Counterclaim Plaintiffs' rights.

30.     Based on the foregoing, Counterclaim Plaintiffs hereby request a judicial

declaration that their registration certificate is valid.

### Fourth Cause of Action – Validity of Termination Notice

31.     Counterclaim Plaintiffs reallege all of the allegations in paragraphs 1-30 herein.

32.     On October 31, 1984, Counterclaim Plaintiffs assigned, in writing, their

copyrights in the Phanatic to The Phillies.  Under 17 U.S.C. § 203, Counterclaim Plaintiffs are

entitled to terminate that transfer.

33.     The statute states: "Termination of the grant may be effected at any time during a

period of five years beginning at the end of thirty-five years from the date of execution of the

grant ..."  The statute also states: "Termination of the grant may be effected notwithstanding any

agreement to the contrary, including an agreement to make a will or to make any future grant."

The statute also states: "Upon the effective date of termination, all rights under this title that

were covered by the terminated grants revert to the author, authors, and other persons owning

termination interests …"

34.     Counterclaim Plaintiffs complied with all of 17 U.S.C. § 203's requirements,

including a timely notice of termination and the requirement to record the termination notice

with the U.S. Copyright Office.  The notice was timely, complete, and valid.  Pursuant to the notice, the 1984 assignment of the Phanatic copyright by Counterclaim Plaintiffs to The Phillies will terminate on June 15, 2020.

35.     The Phillies have claimed that the termination notice is ineffective, and have threatened to continue to use the copyright rights to the Phanatic after the date on which the assignment is terminated.  An actual, substantial, and justiciable controversy thus exists between Counterclaim Plaintiffs and The Phillies concerning whether the termination notice is valid.  A judicial declaration is necessary to vindicate Counterclaim Plaintiffs' rights.

36.     Based on the foregoing, Counterclaim Plaintiffs hereby request a judicial declaration that, under the Copyright Act, the termination notice effectively terminates the 1984 Assignment and all copyright interests owned by Counterclaim Plaintiffs in the Phanatic reverts to Counterclaim Plaintiffs in accordance with Section 203.

## Fifth Cause of Action – Injunctive Relief

37.     Counterclaim Plaintiffs reallege all of the allegations of paragraphs 1-36 herein.

38.     Given that Counterclaim Plaintiffs' termination notice is valid and enforceable as stated above in the Fourth Cause of Action, continued use by The Phillies of the Phanatic copyright after the effective date of termination will constitute actionable copyright infringement under 17 U.S.C. §§ 106 and 501.  A copyright owner whose exclusive rights are infringed is entitled, *inter alia*, to an injunction under 17 U.S.C. § 502.  The Court has the power to issue an injunction not only to restrain copyright infringement, but also to prevent it under 17 U.S.C. § 502(a).  Moreover, Counterclaim Plaintiffs obtained a copyright registration certificate from the U.S. Copyright Office for the copyright rights in the Phanatic in 1979.

39.     The Phillies have expressly threatened to willfully continue to use the Phanatic copyright without authorization, even if this Court rejects their declaratory judgment claims and grants Counterclaim Plaintiffs' declaratory judgment claims.  In other words, The Phillies have threatened to force Counterclaim Plaintiffs to sue The Phillies for infringement, even if the Court issues a declaratory judgment in Counterclaim Plaintiffs' favor stating that the termination notice served on The Phillies effectively terminates the 1984 grant made to The Phillies by Counterclaim Plaintiffs.  This bold threat creates a dispute between Counterclaim Plaintiffs and The Phillies concerning whether The Phillies may continue to use the Phanatic copyright rights after the date of termination.  A judicial declaration and permanent injunction is necessary to prevent blatant infringement of Counterclaim Plaintiffs' rights.

40.     In the absence of an injunction, Counterclaim Plaintiffs will be substantially and irreparably injured by The Phillies' willful infringement.  These injuries are not compensable by monetary damages alone and there is no adequate remedy at a law.

41.     Based on the foregoing, Counterclaim Plaintiffs hereby request a permanent injunction against The Phillies' continued willful violation of the exclusive rights that Counterclaim Plaintiffs will reclaim upon the effective date of the termination notice.

## PRAYER FOR RELIEF AND DEMAND FOR JURY

42.     Wherefore, Counterclaim Plaintiffs pray for a judgment in their favor and against The Phillies and request the following relief:

   a.   A declaratory judgment that Counterclaim Plaintiffs authored and initially owned the Phanatic, and that The Phillies did not;

b. A declaratory judgment that The Phillies are barred by the Copyright Act's statute of limitations, and by equitable estoppel, from asserting an authorship interest in the Phanatic;

c. A declaratory judgment that Counterclaim Plaintiffs' 1979 copyright registration for the Phanatic is valid;

d. A declaratory judgment that the termination notice served by Counterclaim Plaintiffs on The Phillies is effective and valid, and that the 1984 assignment from Counterclaim Plaintiffs to The Phillies of the copyright rights to the Phillie Phanatic will terminate on June 15, 2020;

e. A permanent injunction enjoining The Phillies and their officers, agents, servants, employees, attorneys, and all other persons in active concert or participation from infringing Counterclaim Plaintiffs' exclusive copyright rights in the Phanatic after June 15, 2020;

f. An order awarding Counterclaim Plaintiffs all of their attorneys' fees and full costs under 17 U.S.C. § 505; and

g. All other relief the Court deems just and proper.

DATED:      October 7, 2019                    MITCHELL SILBERBERG & KNUPP LLP
            New York, New York


                                              By: /s/ Paul D. Montclare
                                                  Paul D. Montclare (*pdm@msk.com*)
                                                  Leo M. Lichtman (*lml@msk.com*)
                                                  437 Madison Avenue, 25th Floor
                                                  New York, NY 10022
                                                  Telephone: (212) 509-3900
                                                  Facsimile:  (212) 509-7239

                                                  J. Matthew Williams (*mxw@msk.com*)
                                                  1818 N St. NW, 7th Floor
                                                  Washington, DC 20036
                                                  Telephone: (202) 355-7900
                                                  Facsimile: (202) 355-7899

                                                  *Attorneys for Defendants and*
                                                  *Counterclaim Plaintiffs Harrison/Erickson*
                                                  *Incorporated, Harrison Erickson, Wayde*
                                                  *Harrison, and Bonnie Erickson*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| THE PHILLIES, a Pennsylvania limited partnership, | |
| Plaintiff, | CIVIL ACTION NO. 19-7239-VM-SN |
| v. | JURY TRIAL DEMANDED |
| HARRISON/ERICKSON, INCORPORATED, a New York corporation, HARRISON ERICKSON, a partnership, and WAYDE HARRISON and BONNIE ERICKSON, | |
| Defendants. | |

## <u>PLAINTIFF'S ANSWER TO COUNTERCLAIMS</u>

Plaintiff/Counterclaim Defendant The Phillies (hereinafter also referred to as "the Club"), by and through its undersigned counsel, hereby responds to the counterclaims of Defendants Harrison/Erickson Incorporated, Harrison Erickson, a partnership, Wayde Harrison, and Bonnie Erickson (collectively referred to as "H/E"), as follows:

### <u>PARTIES</u>

1.      Denied.

2.      The Club lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and they are accordingly denied.

3.      It is admitted that the Club is a Pennsylvania limited partnership.  The remaining allegations of this paragraph are denied.

### <u>JURISDICTION AND VENUE</u>

4.      Admitted.

5.      It is admitted only that an actual controversy exists between the parties and that this Court has subject matter jurisdiction over this matter because H/E have wrongly claimed that they can terminate the 1984 Agreement and have misconstrued the scope of termination rights under Section 203 of the Copyright Act.

6.      Paragraph 6 is a legal argument to which no response is required.

7.      Admitted.

## FACTS

8.      Denied.

9.      Denied.  To the contrary, H/E were paid over half a million dollars (adjusted for inflation) for helping to design and build a costume—at a time when the Phanatic was already "wildly popular," as Bonnie Erickson put it in an affidavit submitted to this Court.

10.      Denied.

11.      Denied.

12.      Denied.

13.      It is admitted only that H/E submitted a fraudulent copyright certificate to the Copyright Office and that H/E's invalid termination notice has been recorded with the Copyright Office.  The remaining allegations of this paragraph are denied.

14.      Denied.

## CLAIMS

### First Cause of Action – Authorship of the Phanatic

15.      The Club reasserts its answers to paragraphs 1 through 14 as if set forth fully herein.

16.      Denied.

2

17.     It is admitted only that the Club entered into various written agreements between 1978 and 1984 with certain of Counterclaim Plaintiffs.  The remaining allegations of this paragraph are denied.

18.     It is admitted only that an actual, substantial, and justiciable controversy exists between Counterclaim Plaintiffs and The Phillies regarding the validity of Counterclaim Plaintiffs' purported termination notice and the scope of rights that can be recaptured under Section 203.  The remaining allegations of this paragraph are denied.

19.     It is admitted only that Counterclaim Plaintiffs are requesting a judicial declaration.  It is denied that Counterclaim Plaintiffs are entitled to the declaration that they seek.

### Second Cause of Action – Statute of Limitations and Estoppel

20.     The Club realleges its answers to paragraphs 1 through 19 as if set forth fully herein.

21.     Denied.

22.     With regard to the first sentence of paragraph 22, it contains a legal conclusion to which no response is required.  The Club denies the remaining allegations of this paragraph.

23.     Denied.

24.     It is admitted only that an actual, substantial, and justiciable controversy exists between the parties concerning the validity of H/E's termination notice.  The remaining allegations of this paragraph are denied.

25.     It is admitted only that H/E have requested a declaration.  It is denied that H/E are entitled to the declaration that they seek.

### Third Cause of Action – Validity of Copyright Registration

26.      The Club realleges its answers to paragraphs 1 through 25 as if set forth fully herein.

27.     It is admitted only that H/E submitted a fraudulent registration certificate to the Copyright Office in 1979.  The remaining allegations of this paragraph are denied.

28.     Denied.

29.     It is admitted only that the Club asserts that H/E's copyright registration is invalid and that a justiciable controversy exists between the parties concerning whether H/E possesses a valid registration.  The remaining allegations of this paragraph are denied.

30.     It is admitted only that H/E are requesting a declaration concerning their registration certificate; it is denied that H/E are entitled to the requested declaration.

### Fourth Cause of Action – Validity of Termination Notice

31.     The Club realleges its answers to paragraphs 1 through 30 as if set forth fully herein.

32.     It is admitted only that, on October 31, 1984, the Club entered into an agreement with Harrison Erickson whereby Harrison Erickson sold to the Club "forever" all of its rights in the "artistic sculpture" known as the "Phillies Phanatic" [sic].  The remaining allegations of this paragraph are denied.

33.     It is admitted only that H/E have selectively quoted from snippets of Section 203 of the Copyright Act.  It is denied that these snippets correctly characterize the scope of rights under Section 203.  The Club refers the Court to the statute for the complete, accurate text of Section 203.

34.     Denied.

35.     It is admitted only that the Club has claimed that H/E's purported termination notice is ineffective and that an actual, substantial, and justiciable controversy exists between the parties regarding whether the termination notice is valid.  The remaining allegations of this paragraph are denied.

4

36.     It is admitted that H/E are requesting a judicial declaration under the Copyright Act; it is denied that H/E are entitled to the declaration they have requested.

## Fifth Cause of Action – Injunctive Relief

37.     The Club realleges its answers to paragraphs 1 through 36 as if set forth fully herein.

38.     It is admitted only that H/E fraudulently obtained a copyright registration certificate from the Copyright Office.  The remaining allegations of this paragraph are denied.

39.     It is admitted only that a dispute exists between the parties regarding whether H/E can terminate the 1984 Assignment and, if so, the scope of rights, if any, that would revert to H/E as opposed to those rights that would remain with the Club.  The remaining allegations of this paragraph are denied.

40.     Denied.

41.     It is admitted that H/E are requesting a permanent injunction; it is denied that they are entitled to one.  It is further denied that the Club is willfully violating any rights of H/E or that it intends to do so in the future.  To the contrary, the Club has filed this lawsuit to have the Court declare what rights the Club will have after June 15, 2020.

## PRAYER FOR RELIEF AND DEMAND FOR JURY

WHEREFORE, the Club requests that judgment be entered in its favor and against H/E; that H/E take nothing under their counterclaim; that the Court deny all of the relief requested by H/E; and that the Club be awarded its attorneys' fees and full costs under 17 U.S.C. § 505.

Dated:  October 28, 2019                DUANE MORRIS LLP

                                        By:  _Koxholm_____
                                             Kendra C. Oxholm
                                             (NY ID No. 5267828)
                                             David J. Wolfsohn (PA ID No. 57974)
                                             *(admitted pro hac vice)*
                                             Tyler R. Marandola (PA ID No. 313585)
                                             *(admitted pro hac vice)*
                                             30 South 17th Street
                                             Philadelphia, PA 19103
                                             Phone (215) 979-1000
                                             Fax (215) 979-1020

                                             and

                                             David T. McTaggart
                                             (NY ID 4097598)
                                             DUANE MORRIS LLP
                                             1540 Broadway
                                             New York, NY 10036-4086
                                             Phone (212) 692-1000
                                             Fax (212) 202-4931


                                             *Attorneys for Plaintiff, The Phillies*