

MITCHELL SILBERBERG & KNUPP LLP
A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Paul D. Montclare
Partner
(917) 546-7704 Phone
(917) 546-7674 Fax
pdm@msk.com

July 27, 2020

**VIA ECF**

Honorable Victor Marrero
U.S. District Judge
500 Pearl Street, Suite 1610
New York, NY 10007

**Re: Phillies v. Harrison/Erickson, Inc. et al., No. 19-cv-7239-VM-SN**

Dear Judge Marrero:

We represent the Defendants and Counterclaim Plaintiffs ("H/E"). We intend to move for summary judgment on all of the claims in the The Phillies' complaint, and for summary judgment on H/E's counterclaims. The details of the claims and defenses are set forth in detail in the pleadings and we respectfully refer the Court to those comprehensive pleadings.

It is undisputed that H/E are renowned artists who have created countless iconic puppets, costumes, sports mascots and other creations, including Muppets characters, like Miss Piggy. In 1978, the Phillies were referred to H/E by the legendary Jim Henson to create the Phanatic. H/E created a fully-integrated, fantastical character that became the most recognizable mascot in baseball, which is even enshrined in the Hall of Fame in Cooperstown.

The record also establishes that (i) H/E created the Phanatic at the request of the Phillies in 1978; (ii) that contemporaneous written agreements between the Phillies and H/E repeatedly affirmed that H/E were the creators and original copyright holders of the Phanatic; (iii) that H/E registered the Phanatic as a copyrighted work in 1979 with The Phillies' knowledge and without challenge; and (iv) between 1979 and October 31,1984 the Phillies entered into licensing agreements with H/E acknowledging that H/E owned the Phanatic copyright. For over six years, H/E reserved all rights and exercised creative control.

It is also undisputed that on October 31, 1984, the parties entered into an agreement in which H/E agreed to grant to The Phillies rights in the Phanatic copyright and all existing portrayals thereof in accordance with the Copyright Act. This 1984 Assignment, which is attached to the Complaint, (Exh.G), expressly confirms that H/E created the Phanatic and the validity of H/E's 1979 copyright registration. Likewise irrefutable as a matter of law, is that Section 203 of the United States Copyright Act provides that H/E had a non-waivable right to terminate the 1984 Assignment after thirty-five years. *See* 17 U.S.C. § 203(a)(3).

In June 2018, H/E served The Phillies with a termination notice pursuant to 17 U.S.C. § 203, notifying The Phillies that they hoped to reach a new assignment, so that the Phanatic could continue to bring joy to the fans. On August 2, 2019, in the midst of renegotiations, The Phillies





abruptly commenced this action alleging the following meritless claims in its Complaint: Count I for a declaratory judgment that H/E does not have the right to terminate the 1984 Assignment under 17 U.S.C. § 203; Count II for a declaratory judgment that H/E's copyright rights are unenforceable because they committed fraud on the Copyright Office; Counts III & IV for declaratory judgments that The Phillies are co-authors of the Phanatic costume and sole authors of purported character rights in the Phanatic; Count V for a declaratory judgment that The Phillies may utilize alleged derivative works developed under authority of the 1984 Assignment; Count VI for a declaratory judgment and permanent injunction claiming that the Lanham Act prevents H/E from lawfully using or transferring the Phanatic copyright; and Counts VII and VIII asserting NY state law claims seeking damages under quasi-contract theories as an end-run around H/E's termination right. Each of The Phillies' claims should be dismissed at summary judgment as a matter of law:

First, there is no doubt that Section 203 of the Copyright Act gives H/E the right to terminate the 1984 Assignment. Section 203 provides that any transfer of copyright executed by the author on or after January 1, 1978 may be terminated starting thirty-five years from the date of execution of the grant. 17 U.S.C. § 203(a)(3); *Mills Music, Inc. v. Snyder*, 469 U.S. 153, 172-73 (1985). Congress expressly made the termination right inalienable; it may be effected "notwithstanding any agreement to the contrary." 17 U.S.C. § 203(a)(5). Numerous cases make clear that even a conveyance of copyright rights "forever" is terminable. *See, e.g., Ennio Morricone Music Inc. v. Bixio Music Grp. Ltd.*, 936 F.3d 69, 73 (2d Cir. 2019) ("Under U.S. law, a contractual assignment, no matter how expansively phrased, is still subject to the termination right.").[1]

Second, The Phillies' claim that H/E committed fraud on the Copyright Office is baseless and untimely. It is undisputed that the Phanatic is copyrightable and that The Phillies knew about the registration for decades and admitted to (and indeed heavily benefitted from) its validity. The Phillies allege, *without any factual basis*, that H/E referred to the Phanatic as an "artistic sculpture" only because they believed that describing it as a costume would have caused the Copyright Office to reject the registration as uncopyrightable. Setting aside The Phillies' failure to produce any facts showing that H/E *knowingly* provided inaccurate information in their registration, *see* 17 U.S.C. § 411(b), the Copyright Act, relevant case law, and even the U.S. Copyright Office's own registration practices, all contradict The Phillies' position that the Phanatic registration contains a material inaccuracy. Copyright Office policy clearly allows the registration of costumes, *see* U.S. Copyright Office, *Registrability of Costume Designs*, 56 Fed. Reg. 56530, 56532 (1991) ("[F]anciful costumes will be registered if they contain separable pictorial or sculptural authorship"), and case after case makes clear that ***sculptural*** elements of costumes such as the Phanatic are subject to copyright protection. *See, e.g., Silvertop Assocs. Inc. v. Kangaroo Mfg.,* 931 F.3d 215 (3d Cir. 2019); *Prima Creations, Inc. v. Santa's Best Craft, L.L.C.*, No. 11-CV-1649, 2011 WL 2982777 (E.D. Pa. July 22, 2011); *Masquerade Novelty, Inc.*

[1] The Phillies are incorrect as a matter of law that H/E cannot invoke section 203 because they entered multiple contracts with The Phillies prior to 1984 assignment and their sole case law, *Penguin Grp. (USA) Inc. v. Steinbeck*, 537 F.3d 193 (2d Cir. 2008) is inapposite. *See Baldwin v. EMI Feist Catalog, Inc.*, 805 F.3d 18, 31 (2d Cir. 2015).





*v. Unique Indus., Inc.*, 912 F.2d 663 (3d Cir. 1990). The Supreme Court agrees. *See Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002 (2017).[2]

Third, the Phillies authorship claims are barred by the Copyright Act's three-year statute of limitations. The Phillies' own exhibits to the Complaint make clear that they acknowledged from the start that (i) "the [Phanatic] character will be copywritten by Harrison/Erickson who reserve all rights," (Cmplt. Ex. B), (ii) the Phillies were aware that H/E filed a copyright registration listing only themselves as authors and sued The Phillies for copyright infringement in 1979, (*Id.* Ex. A & D), and (iii) when The Phillies ultimately purchased the rights to the Phanatic in 1984, they expressly agreed to credit H/E as its creators**.** (*Id.* Exh. G). Discovery has confirmed that The Phillies in fact understood H/E to be the authors and consistently credited them as such for decades, up until filing this lawsuit. To claim *any* authorship now, decades later, is patently untimely and equitably estopped. *See, e.g., Mahan v. Roc Nation, LLC*, 634 F. App'x 329, 331 (2d Cir. 2016); *Kwan v. Schlein*, 634 F.3d 224, 229-30 (2d Cir. 2011); *Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir. 1996).

Also, aside from The Phillies' claim being time barred its alleged contributions to the Phanatic did not rise to the level of authorship, whether co-authorship of the costume or sole authorship of any purported character. The Phillies contributed no copyrightable expression to the Phanatic mascot design, artwork, or character prior to 1984, and the only purported evidence to the contrary is the testimony of one witness, Bill Giles, who had little recollection of The Phanatic's creation other than the stories he told himself. At his deposition Mr. Giles admitted that he took credit for the work of others. Another Phillies witness, Dave Raymond, admitted that the Phanatic's "character" that he played was informed by Defendants' mascot design.[3] Even assuming *arguendo* that The Phillies did something copyrightable, they are not joint authors because neither The Phillies nor H/E ever intended The Phillies to be regarded as a joint author. *See, e.g., Thomson v. Larson*, 147 F.3d 195, 201 (2d Cir. 1998) ("A co-authorship claimant in our Circuit generally must show that "each of the putative co-authors (1) made independently copyrightable contributions to the work; and (2) fully intended to be co-authors.") (emphasis added). H/E were consistently billed as the creators, retained decision-making authority over the design and implementation of the Phanatic mascot and related works, exercised sole creative control over all depictions of the Phanatic, and held sole approval over deals with third parties to merchandise the Phanatic. *See 16 Casa Duse, LLC v. Merkin*, 791 F. 3d 247, 260 (2d Cir. 2015).

---

[2] The Phillies have cited *Whimsicality, Inc. v. Rubie's Costume Co., Inc.*, 891 F.2d 452 (2d Cir. 1989) as their sole authority. But, on remand, a Copyright Office examiner unequivocally stated that describing a costume as a "sculpture" was "*within the practice routinely allowed by the Copyright Office***.**" *Whimsicality, Inc. v. Rubie's Costume Co., Inc.*, 836 F. Supp. 112, 115 (E.D.N.Y. 1993) (emphasis added).

[3] Tellingly, Dave Raymond testified that he has never "played," and indeed cannot "play" the Phanatic character outside of the costume. This is because any purported character rights were formed by the numerous works of authorship H/E created, and not the antics Dave Raymond engaged in *while inside H/E's work*. *See KGB, Inc. v. Giannoulas*, 104 Cal.App.3d 844 (1980) ("In fact, the concept of parading as a mascot in an animal costume would seem to be in the public domain.").





Fourth, The Phillies are abusing the derivative work exception under 17 U.S.C. § 203(b)(1). Section 203(b)(1) allows an assignee to continue to utilize derivative works made under authority of the grant, but The Phillies are engaging in an insidious attempt to supplant H/E's copyrights and destroy the value of H/E's termination right under the guise of this exception. For instance, The Phillies created and publicly introduced a knock-off Phanatic that the team concocted with its lawyers during the litigation, which looks nearly identical to H/E's Phanatic, albeit with extremely minimal alterations, most of which are barely even noticeable. The Phillies' lawyers hid these efforts from H/E during much of discovery but were finally ordered to produce documents and information about this process. Discovery revealed, and H/E's experts have confirmed, that the alterations to H/E's design are entirely slavish, intended to mimic (and not recast, transform, or adapt) the underlying work, and contribute less than trivial originality to the underlying work. *See L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486, 489 (2d Cir. 1976) (*en banc*) (noting use of experts); *see also Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 909 (2d Cir. 1980).

Fifth, The Phillies' claim under the Lanham Act is subject to dismissal for failing to allege any case or controversy. The Phillies cannot prove that some hypothetical and unidentified use of the Phanatic would create consumer confusion or dilution. *See, e.g., H.G. Shopping Centers, L.P. v.* Birney, No. H-99-0622, 2000 WL 33538615, at *1 (S.D. Tex. Dec. 29, 2000) ("Until such time as Defendants actually pursue the expanded use of their trademark or in any other fashion face an actual conflict between their mark and that of Plaintiffs, any opinion rendered by the court on these matters would be advisory."); *Saleh v. Sulka Trading Ltd.*, 2019 WL 3711770, at *8 (S.D.N.Y. July 15, 2019). The Phillies instead seek to improperly invoke the Lanham Act "as an end run around the copyright laws," *see Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 307 (S.D.N.Y. 2011) (citing *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003)).

Sixth, The Phillies' claims for damages for unjust enrichment and breach of the duty of good faith and fair dealing are frivolous. Because recognition of these state claims would fundamentally undermine H/E's federal termination rights, they are, *inter alia*, preempted pursuant to the Supremacy Clause of the U.S. Constitution. *See Am. Soc. of Composers, Authors, and Publishers v. Pataki*, 930 F. Supp. 873, 878 (S.D.N.Y. 1996) (state law preempted where its provisions "hinder[ed] the realization of the federal copyright scheme").

For all of the reasons above, H/E are also entitled to summary judgment on each of their counterclaims.





Respectfully,

/s/ Paul D. Montclare

Paul D. Montclare
A Limited Liability Partnership of
MITCHELL SILBERBERG & KNUPP LLP

PDM/mcp