

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
LOS ANGELES
TAIWAN
BOSTON
HOUSTON
AUSTIN
HANOI
HO CHI MINH CITY

*FIRM and AFFILIATE OFFICES*

**DAVID J. WOLFSOHN**
DIRECT DIAL: +1 215 979 1866
PERSONAL FAX: +1 215 689 2739
*E-MAIL:* DJWolfsohn@duanemorris.com

*www.duanemorris.com*

SHANGHAI
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN
*A GCC REPRESENTATIVE OFFICE
OF DUANE MORRIS*

ALLIANCES IN MEXICO
AND SRI LANKA

July 27, 2020

The Honorable Victor Marrero
USDC, Southern District of New York
Daniel Patrick Moynihan Courthouse
New York, NY  10007

Re: *The Phillies v. Harrison/Erickson, Inc., et al.*, C.A. No. 19-7239-VM-SN

Dear Judge Marrero:

Pursuant to Section II.A. of the Court's individual practices, The Phillies hereby requests a pre-motion conference regarding the filing of an opposed motion for partial summary judgment on two issues that can be determined as a matter of law.

By way of background, in March 1978, The Phillies hired defendants to construct a costume pursuant to The Phillies' design specifications for use as the team mascot, the Phillie Phanatic. The first Phanatic was Dave Raymond, who debuted in April 1978 and whom defendants described as having "created a fun and sensitive character."  As performed by Raymond, the Phanatic was instantly "wildly popular" according to defendant Erickson, generating about $2 million in revenue in the first couple of years.

In May 1979, defendants registered the costume with the Copyright Office, fraudulently describing it as an "artistic sculpture" because that office at that time would not have registered a costume.  The deposit was a black-and-white photo of the "sculpture."  Exh. A.  (Defendants contend that the five color photos in Exhibit B comprise the deposit.  For purposes of a summary judgment motion only, The Phillies is willing to assume *arguendo* that that was the case.)  Based on the registration, a couple of weeks later, defendants sued plaintiff in this district for, *inter alia*, copyright infringement. The Phillies paid defendants $150,000 to settle that litigation.

In 1984, The Phillies paid defendants another $215,000 for assignment—which was supposed to last "forever"—of all rights to the costume ("the 1984 Assignment").  During the next 34 years, The Phillies paid defendants more than $30,000 for rights to use certain style guides and artwork to create Phanatic-related products and for other purposes ("the Style Guide Transactions").  Those transactions are memorialized in correspondence, invoices, and payments.

In June 2018, defendants sent The Phillies a notice pursuant to 17 U.S.C. § 203 stating that the 1984 Assignment would terminate effective June 15, 2020.  After lengthy negotiations

DuaneMorris

The Honorable Victor Marrero
July 27, 2020
Page 2

proved unfruitful, plaintiff filed this lawsuit last summer seeking, *inter alia*, a declaratory judgment that defendants do not have the right to terminate the 1984 Assignment because, *inter alia*, the Club is a coauthor of the costume and author of the Phanatic's character, but that, even if they do, plaintiff's rights to the derivative works prepared before June 15, 2020 do not revert to defendants, including rights to continue to use a redesigned Phanatic that debuted at Spring Training this February.  The Phillies also asserts that defendants cannot sue The Phillies for copyright infringement under the fraudulent registration.

### *Issue 1: The Redesigned Phanatic and a Related Style Guide Are Derivative Works Under 17 U.S.C. § 203(b)(1)*

The purpose of the termination provisions of the Copyright Act is to give authors a chance to renegotiate contracts executed when "their bargaining power [was] weak and their prospects for success uncertain," which is certainly not the case here.  *Penguin Group v. Steinbeck*, 537 F.3d 193, 197 (2d Cir. 2008).  In any event, Section 203(b)(1) provides an important mechanism to protect an assignee/licensee's investment in the work that may be subject to the terminated transfer.  This mechanism is particularly important in this case where the whole point of a mascot is to act as a symbol of the team, and to promote brand identity and goodwill, and where The Phillies have spent many millions over 40 years promoting the Phanatic. Section 203(b)(1) provides: "A derivative work prepared under authority of the grant before its termination may continue to be utilized under the terms of the grant after its termination . . . ."  Thus, to be subject to the derivative work exception, the redesigned Phanatic and a related style guide must be (1) prepared before June 15, 2020, (2) prepared under authority of the 1984 Assignment, and (3) a derivative work.  There is no dispute that the redesigned Phanatic and new style guide were prepared before June 15, 2020, when the 1984 Assignment was still in effect, so the only disputed issue is whether the redesigned Phanatic and style guide are derivative works.

A derivative work must add "some substantial, not merely trivial, originality" to the original work.  *L. Batlin & Sons, Inc. v. Snyder*, 536 F.2d 486, 490 (2d Cir. 1976).  A work that makes nontrivial contributions to the original work constitutes a derivative work even though "it retains the 'same aesthetic appeal.'"  *Eden Toys, Inc. v. Florelee Undergarment Co., Inc*., 697 F.2d 27, 34 (2d Cir. 1982).  "By its very nature, a 'derivative' work . . . borrows substantially from existing works . . . .."  *Id.*  "In this Circuit, the requisite level of 'originality' is not difficult to attain; it has been described as 'modest, minimal, and as establishing a low threshold.'"  *J&J Fabrics, Inc. v. India Garments Inc.,* 1993 WL 330463, * 3 (S.D.N.Y. Aug. 24, 1993), *quoting Durham Inds., Inc. v. Tomy Corp.,* 630 F.2d 905, 910 (2d Cir. 1980); *American Greetings Corp. v. Kleinfab Corp.*, 400 F. Supp. 28, 232-33 (S.D.N.Y. 1975) (adding inscription "Put on a Happy Face" to illustration qualifies it as a derivative work).

In determining whether a visual work is a derivative work, the Second Circuit and district courts typically engage in a "visual comparison." *Eden Toys,* 697 F.2d at 35 ("Since the factual question here depends on a visual comparison of exhibits, we are in as good a position as the district court to judge the originality of the work in question."); *Durham Ind.*, 630 F.2d at 908-909, 910 (toys based on Disney characters were not derivative works because of "mute testimony of Mickey, Donald and Pluto themselves"; "One look at Tomy's figures" reveals lack of

DuaneMorris

The Honorable Victor Marrero
July 27, 2020
Page 3

originality); *J&J Fabrics,* 1993 WL 330463, * 3-4 (granting summary judgment based on visual comparison of fabric patterns); *Godinger Silver Art Co., v. Int'l Silver Art Co.*, 1995 WL 702357, * 3 (S.D.N.Y. Nov. 28, 1995) ("visual comparison" of "Baroque" silverware designs); *Silberstein v. Fox Entm't Grp., Inc*, 424 F. Supp. 2d 616, 622, 629 & n.8 (S.D.N.Y. 2004) (visual comparisons of drawings), *aff'd* 242 F. App'x 720 (2d Cir. 2007); *Modern Pub. v. Landoll, Inc*., 841 F. Supp. 129 (S.D.N.Y. 1994) (visual comparison of trolls and drawings).  Two of the drawings at issue in *Eden Toys* are attached hereto as Exh. C.  The Court in *Eden Toys* held as a matter of law that the drawing on the right was a copyrightable derivative work when compared to the drawing on the left.

The Phillies seeks a ruling from this Court regarding the newly designed costume (Exh. D) as well as the new style guide (Exh. E).  Considered in their totality, the many changes in the new costume and style guide as compared to defendants' 1979 deposit far exceed the "modest" or "minimal" changes required by the pertinent authorities for a work to be considered "derivative."   Accordingly, partial summary judgment should be entered with regard to The Phillies' right to continue to utilize the newly designed costume and style guide.

***Issue 2: The Phillies' Rights Obtained in the Post-1984 Style Guide Transactions to Use the Style Guides Purchased from Defendants Have not Been Terminated.***

Beginning in 1989 and up to 2018, in a series of transactions, The Phillies paid defendants for drawings and designs, including various "style guides."  An example is attached as Exhibit F. In deposition testimony, defendants have admitted that they understood that the style guides would be used by The Phillies, Major League Baseball, and their licensees to design and manufacture Phanatic-related products.  Defendants have further admitted that they put no temporal or usage restrictions on how these guides and artwork could be used, or for how long.  As such, separately and apart from the 1984 Assignment, The Phillies have licenses to continue to use these style guides, whether for preparing new designs or using old designs.

To the extent that defendants would argue that the rights in these style guides terminated along with the "grant" embodied in the 1984 Assignment, defendants would be incorrect as a matter of law. The June 2018 termination notice only lists the 1984 Assignment, not any of the Style Guide Transactions or rights acquired thereunder.  Moreover, the minimum time period for terminating the grants subject to the Style Guide Transactions has not yet occurred:  The earliest of these transactions was in 1989; the most recent in 2018.  The 1989 transaction cannot therefore be terminated until 2024; the one dating from 2018, not until 2053.  17 U.S.C. § 203(a)(3) (earliest termination can be accomplished after 35 years).  Accordingly, partial summary judgment in favor of The Phillies would be appropriate with regard to its rights to continue to design and manufacture Phanatic-related products using the style guides.

                                                            Respectfully,
                                                            */s/David J. Wolfsohn*
                                                            David J. Wolfsohn

DJW
cc:      All counsel of record (by ECF)