| NEW YORK | | SHANGHAI |
| LONDON | | ATLANTA |
| SINGAPORE | | BALTIMORE |
| PHILADELPHIA | FIRM and AFFILIATE OFFICES | WILMINGTON |
| CHICAGO | | MIAMI |
| WASHINGTON, DC | | BOCA RATON |
| SAN FRANCISCO | DAVID J. WOLFSOHN | PITTSBURGH |
| SILICON VALLEY | DIRECT DIAL: +1 215 979 1866 | NEWARK |
| SAN DIEGO | PERSONAL FAX: +1 215 689 2739 | LAS VEGAS |
| LOS ANGELES | E-MAIL: DJWolfsohn@duanemorris.com | CHERRY HILL |
| TAIWAN | | LAKE TAHOE |
| BOSTON | www.duanemorris.com | MYANMAR |
| HOUSTON | | OMAN |
| AUSTIN | | A GCC REPRESENTATIVE OFFICE |
| HANOI | | OF DUANE MORRIS |
| HO CHI MINH CITY | | ALLIANCES IN MEXICO |
| | | AND SRI LANKA |



July 29, 2020

The Honorable Victor Marrero
USDC, Southern District of New York
Daniel Patrick Moynihan Courthouse
New York, NY 10007

      **Re:**    <u>*The Phillies v. Harrison/Erickson, Inc., et al.*, C.A. No. 19-7239-VM-SN</u>

Dear Judge Marrero:

On behalf of The Phillies, this letter responds to defendants' July 27 letter describing their proposed motion for summary judgment.[1]

**Count I/Counterclaim IV:** The Phillies seeks a declaration that Defendants' used up their one termination right when they used the threat of withholding the copyright to the Phanatic to renegotiate the grant of rights to The Phillies on previous occasions. *Penguin Group (USA) Inc. v. Steinbeck*, 537 F.3d 193 (2d Cir. 2008) held that such renegotiations can eliminate a party's termination right, and that "nothing in the statute suggests that an author or an author's statutory heirs are entitled to more than one opportunity, between them, to use termination rights to enhance their bargaining power or to exercise them." *Id.* at 204. The factual record would support a finding that, since the 1984 Assignment was negotiated years after The Phanatic was already "wildly popular," and since defendants had already renegotiated their initial deal in 1979 and then again in 1984, they have already had their "one shot" (if not two shots) to use their enhanced bargaining power under the statute and they cannot have two (or three) bites at the apple.

**Count II/Counterclaim Count III:** The Phillies claim that, under 17 U.S.C. § 411(b), Defendants' copyright registration for the Phanatic is invalid because they inaccurately described the mascot costume as an "artistic sculpture," and did so with knowledge of the inaccuracy. Defendants did so because they understood that the Copyright Office in 1979 would not grant the registration if it described the work as a "costume." *Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452, 454 (2d Cir. 1989). Defendants' claim that there is no evidence that they

---

[1] The Phillies notes that Defendants' letter exceeded the Court's requirement that it be no more than 3 pages.



"knowingly" provided inaccurate information is absurd. Wayde Harrison testified that he could not recall a single time that he had ever referred to the Phanatic as an artistic sculpture other than in the copyright application, and that he would probably "typically call it a costume." Instead, he said that "artistic sculpture" was a "legal term that our lawyer used." Ms. Erickson testified at deposition that she used the word "sculpture" when she was interviewed by various magazines and newspapers, but none of those articles—or any of Ms. Erickson's communications produced in discovery—use the word "sculpture" a single time to describe or refer to the Phanatic. The only time defendants used the word "sculpture" to describe the Phanatic was in their registration application, raising the inescapable inference that it was done to pull the wool over the eyes of the Copyright Office.

**Count III/Counterclaim I and II:** The Phillies seek a declaration that Defendants cannot exercise their termination rights and sue The Phillies for infringement because The Phillies is a co-author of the design for the costume. Defendants recognize that the testimony on this is conflicting—Bill Giles, The Phillies longtime president, testified that he contributed several key design elements to the Phanatic, and wrote about that process in a book he wrote. Moreover, it is undisputed that The Phillies contributed elements of the Phanatic's jersey and other clothing, and Bonnie Erickson admitted at one of her depositions that (as is obvious) the parties intended to combine those elements into the overall mascot design.

Rather than seriously argue that there is no factual dispute on authorship, Defendants claim that a co-authorship claim is time-barred. But this misunderstands the nature of a declaratory judgment claim, which is a mechanism for presenting a defense to an anticipated or threatened claim—here an infringement suit by Defendants following termination. Defenses presented in this way cannot be time barred, and there is therefore no legal basis for summary judgment on this issue. *See 133-24 Sanford Ave. Realty Corp. v. Cisneros*, 940 F. Supp. 83, 85 (S.D.N.Y. 1996) ("[A] party seeking a declaration as to the validity of a defense to a threatened action for coercive relief cannot be foreclosed from doing so by the statute of limitations."). Moreover, since The Phillies' declaratory judgment claim seeks a declaration that defendants cannot exercise any arguable termination right under section 203, that claim could not have accrued until The Phillies received defendants' termination notice in June 2018. Since the claim was filed a year later, it is well within the three years set forth in 17 U.S.C. § 507(b). Accordingly, defendants' proposed summary judgment motion on these issues lacks merit.

**Count IV:** The Phillies seeks a declaration that it is the sole author of the Phanatic's character in the copyright sense—as defined in such cases as *DC Comics v. Towle*, 802 F.3d 1012 (9th Cir. 2015) (holding the Batmobile is a copyrightable character). When defendants' "sculpture" was provided to David Raymond, it had no character, personality, or persona. Raymond brought the sculpture alive—giving it "distinctive character traits and attributes." *Id*. at 1020. It is remarkable that defendants have "forgotten" that they themselves credited Raymond in 1978 with having "developed a fun and sensitive character," later reiterating in their own publicity materials that he was the one who "created the personality that has been widely described as 'the best mascot in baseball.'" Defendants do not seriously contest this. Instead, Defendants mischaracterize Mr. Raymond's deposition testimony, arguing that he said that the character he



developed was "informed by Defendants' mascot design" when in fact he said the costume was a good "tool" from which to develop the mascot's personality. In short, any motion for summary judgment filed by defendants on this issue would be undermined by the summary judgment record, which strongly supports the fact that The Phillies created the mascot's character.

As for Defendants' statute of limitations argument regarding the character, defendants never once claimed to have developed it, so the issue never came up between the parties. And, as explained above, The Phillies' declaratory judgment claim did not accrue until the termination letter was received in June 2018.

**Count V:** As an initial matter, Defendants apparently do not propose to file a summary judgment motion as to the full scope of Count V, since they only address the redesigned Phanatic. That is no surprise in light of the fact that Defendants admitted in recent interrogatory responses that scores of Phanatic-related artwork and merchandise do indeed constitute derivative works that The Phillies may continue to utilize under section 203(b)(1). With regard to the redesigned Phanatic, the notion that it is "insidious" for The Phillies to do precisely what the statute contemplates—prepare a derivative work before termination under authority of the "grant"—flies in the face of the plain language of that statute, and is not supported by a single authority. If anything, it is defendants' attempt to destroy The Phillies' multi-million-dollar investment in the Phanatic that is "insidious" and contrary to the purpose of the Copyright Act's termination provisions.

**Count VI/Counterclaim Count V:** The Phillies indisputably have valuable and incontestable trademark rights in the name and design of the Phanatic, and defendants were aware of The Phillies' trademark rights as early as 1978. Defendants have recognized that the whole point of a mascot is for it to be a symbol of the team and to build brand recognition—i.e., trademark rights—and yet they seek to destroy that very value by making the Phanatic a "free agent." Defendants have admitted that they are no longer in the mascot business, so the only thing they would do with any reverted rights is sell them to an entity that would undermine The Phillies' trademark rights by creating confusion among the relevant consumers, thereby violating the Lanham Act.

**Counts VII and VIII:** The Phillies sought, and Defendants agreed, to grant them an assignment of rights to the Phanatic "forever." If the Court rules that Defendants do have the right to terminate the 1984 Assignment, nothing in the statute requires that they be allowed to keep all the money they were paid on the assumption that the assignment would be "forever." A ruling that defendants would be unjustly enriched or breached their duty of good faith and fair dealing would not violate the "agreement to the contrary" provision because, under this scenario, Defendants would be terminating the 1984 Assignment.

    Respectfully,
    /s/David J. Wolfsohn
    David J. Wolfsohn

DJW
cc:    All counsel of record (by ECF)