# EXHIBIT H



MITCHELL SILBERBERG & KNUPP LLP
A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

<div align="right">

Paul D. Montclare
Partner
(917) 546-7704 Phone
(917) 546-7674 Fax
pdm@msk.com

</div>

September 29, 2020

**VIA ECF**

Honorable Victor Marrero
U.S. District Judge
500 Pearl Street, Suite 1610
New York, NY 10007

Re:     **Phillies v. Harrison/Erickson, Inc. et al., No. 19-cv-7239-VM-SN**

Dear Judge Marrero:

Pursuant to Your Honor's Individual Rule II.A., we write on behalf of Defendants and
Counterclaim Plaintiffs (collectively, "H/E") in contemplation of H/E's intended motion for
leave of Court to file its proposed Amended Answer and Counterclaims (the "Proposed
Amended Counterclaim" or " PAC"), Exhibit A, hereto.  A redline comparison to the original
Answer and Counterclaim (ECF No. 38) is enclosed as Exhibit B.  The relevant facts of this case
are set forth in the Proposed Amended Counterclaim (Exhibit A), and an overview of the issues
in this case is summarized in H/E's pre-summary judgment letters previously filed with the
Court.  *See* ECF Nos. 98, 102.  The Phillies have stated that they do not consent to this
amendment.[1]

H/E seeks to add a copyright infringement claim to its existing declaratory judgment
counterclaims, and to update its injunction claim.  (*See* Exhibit B, Introductory Response to the
Complaint ¶¶ 1-12, Counterclaims ¶¶ 17-35, 58-64).  These proposed amendments arise from
facts and issues already being litigated in this case, and are sought to be added now because
H/E's copyright termination notice relating to the Phanatic became effective on June 15, 2020,
and the Phillies are now using the Phanatic in violation of H/E's exclusive copyright rights,
which reverted to H/E upon termination of H/E's prior 1984 assignment of the copyright to the
Phillies.  This amendment is the extension of H/E's existing declaratory judgment and injunction
claims in this case.

In its original Counterclaim served on October 7, 2019, H/E sought judgment against The
Phillies declaring that (i) H/E were the sole authors and owners of the original Phanatic
copyright; (ii) H/E had properly registered their copyright with the U.S. Copyright Office more
than 40 years ago with the knowledge of The Phillies; (iii) in 1984, H/E assigned the copyright to
The Phillies who expressly acknowledged H/E's registered U.S. Copyright; (iv) pursuant to the
express termination provisions of section 203 of the Copyright Act, (17 U.S.C. § 203), H/E, on
June 15, 2018, served a valid termination notice upon the Phillies, and then timely recorded that

---

[1] The Phillies' counsel stated that The Phillies would not consent because of alleged futility and undue delay, but did
not respond to H/E counsel's follow-up inquiry requesting that The Phillies particularize these objections.  *See* email
correspondence attached hereto as Exhibit C.



notice with the Copyright Office; and (v) pursuant to the notice of termination, the prior 1984 Phanatic copyright assignment to The Phillies would become effective on June 15 2020 ("Effective Termination Date"). *See* Original Counterclaim, ECF No. 38, ¶¶ 15 - 36. H/E further sought injunctive relief to prevent The Phillies from willfully violating H/E's rights after H/E reclaimed them upon the Effective Termination Date. *See id.* ¶¶ 37-41.

On June 15, 2020, the Effective Termination Date, all copyright rights in the Phanatic reverted to H/E, but the Phillies still continue to use and exploit H/E's Phanatic copyright in violation of H/E's exclusive copyright rights. As a result, The Phillies are now willfully and flagrantly infringing H/E's copyright rights in the Phanatic. Accordingly, H/E seeks to amend its original counterclaim to add a copyright infringement claim against The Phillies for money damages. *See* Exh. B, Counterclaims ¶¶ 17-35, 58-64. H/E's proposed amended counterclaim also updates its request for injunctive relief to stop The Phillies from its threatened continued use of the Phanatic. *Id.* at Prayer for Relief.

This amendment should not delay the parties' existing intention to move for partial summary judgment on the liability issues raised in prior pre-motion letters to the Court. We believe those motions should go forward and will inform liability and damages issues raised by H/E's proposed infringement claim. We therefore will ask Your Honor to grant leave to file the Amended Counterclaims.

**Legal Argument in Support of Granting H/E's Motion to Amend Their Counterclaim**

Generally, motions to amend pleadings should be freely granted absent undue prejudice to the opposing party. Fed. R. Civ. P. 15(a)(2) provides: "The court should freely give leave to amend when justice so requires." Courts in this district routinely grant motions to amend to add additional infringement claims. *See, e.g. Christians of California, Inc. v. Clive Christian New York, LLP*, No. 13 Civ. 0275 (KBF)(JCF), 2014 WL 3605526, at *8 (S.D.N.Y. July 18, 2014); *Bridgeport Music, Inc. v. Universal Music Grp., Inc.*, 248 F.R.D. 408, 417 (S.D.N.Y. 2008) (Marrero, J.); *Twisted Records v. Rauhofer*, No. 03 Civ. 2644(DF), 2005 WL 517328, at *7 (S.D.N.Y. Mar. 3, 2005); *Yurman Design Inc. v. Chaindom Enters., Inc.*, No. 99 Civ. 9307(JFK), 2001 WL 725291, at *4 (S.D.N.Y. June 27, 2001); *c.f. Too, Inc. v. Kohl's Dep't Stores, Inc.*, 210 F. Supp. 2d 402, 406 (S.D.N.Y. 2002) (Marrero, J.).

Here, H/E have timely sought to add their infringement claims. It is undeniable that H/E could not have pled such claims before the June 15, 2020, Effective Termination Date of the Phanatic copyright grant to The Phillies, because the copyrights in the Phanatic did not revert to H/E until then. *See Christians of California*, 2014 WL 3605526, at *5-6 (allowing an amendment where plaintiff waited until it obtained a copyright registration before amending to add infringement claim, as a motion prior to that time would have been futile). Once H/E reacquired its rights to the Phanatic, it had to root out the infringing conduct of The Phillies, which is continuing to this very day. Indeed, the Phillies have not disclosed to H/E its post-termination uses of the Phanatic, despite The Phillies' duty to supplement discovery responses and productions.



Honorable Victor Marrero
September 29, 2020
Page 3

H/E has acted diligently and in good faith to ascertain its right to protect its copyright by bringing the proposed infringement action, despite The Phillies' refusal to consent to the present amendment because of purported delay. And certainly, there has been no bad faith or undue or prejudicial delay here that supports denying leave to file the PAC. *See Twisted Records*, 2005 WL 517328, at *6 (absent a showing of bad faith or undue prejudice, delay does not provide a basis for denying a motion to amend).

Also, H/E's amendment comes as no surprise to The Phillies. From the date its Complaint was filed in August 2019, The Phillies knew that it intended to use the Phanatic copyright after the June 15, 2020 Effective Termination Date. And the Phillies expected to be sued for doing so. Paragraph 91 of the Phillies Complaint alleges that H/E "threatened to sue the Phillies for copyright infringement <u>when The Phillies continue to use the Phanatic after the effective date of the purported termination</u>." Complaint, ECF No. 1, ¶ 91 (emphasis added).

Throughout this entire case, The Phillies' counsel was aware of H/E's intention to file a copyright infringement action after the effective Copyright Termination Date. The Phillies' counsel more recently wrote that The Phillies did not intend to call an expert witness, but reserved their right to do so if H/E "amend the pleadings to assert claims of infringement." *See* Exhibit D (copy of June 26, 2020 email from David Wolfsohn to Paul Montclare); *see also* ECF No. 93 (Scheduling Order reflecting that email).

Discovery also confirmed that The Phillies knew that H/E would seek to enforce their rights after the Effective Termination Date. The Phillies even resorted to creating a knock-off Phanatic design for the sole purpose of trying to circumvent the termination of the Phanatic Copyright. See H/E MSJ Pre-motion letters, ECF No. 98, at 4; ECF No. 102, at 1-2, and Zung Expert Reports attached thereto as Exhibit A (ECF No. 102-1).

Nor does the close of discovery provide a basis for denying a motion to amend. "The mere fact that discovery has concluded . . . does not provide a reason for denying leave to amend, especially where the new claim arises from the same set of operative facts as the original claims. *See Twisted Records*, 2005 WL 517328, at *6 (granting leave to amend after discovery closed and the non-moving party had filed its motion for summary judgment). Any additional discovery of The Phillies resulting from The Phillies' continuing infringing acts would not be unduly burdensome. Instead, allowing the amendment in this case avoids H/E having to bring a new infringement action as a related case in this Court. Even where an amendment may require the expenditure of some additional time, effort, or money, it does not constitute prejudice or suffice to warrant denial of a motion to amend a pleading. *See Bridgeport Music, Inc.*, 248 F.R.D. at 414 (Marrero, J.).

Finally, for all the reasons set forth above, H/E has also acted diligently and established good cause to assert these counterclaims and will ask the Court to grant H/E's motion to file the attached PAC.



Honorable Victor Marrero
September 29, 2020
Page 4

Respectfully,


/s/ Paul D. Montclare


Paul D. Montclare
Partner
MITCHELL SILBERBERG & KNUPP LLP

PDM/mcp

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE PHILLIES, a Pennsylvania limited partnership, | CIVIL ACTION NO. 19-CV-7239 (VM) |
| Plaintiff, | |
| v. | |
| HARRISON/ERICKSON, INCORPORATED, a New York corporation, HARRISON ERICKSON, a partnership, and WAYDE HARRISON and BONNIE ERICKSON, | JURY TRIAL DEMANDED |
| Defendants. | |

## PROPOSED FIRST AMENDED ANSWER AND COUNTERCLAIMS

Defendants and Counterclaim Plaintiffs Harrison/Erickson Incorporated, Harrison Erickson, a partnership, Wayde Harrison, and Bonnie Erickson, by and through their undersigned counsel, for their Answer to Plaintiff's Complaint, allege as follows:

## INTRODUCTORY RESPONSE TO THE COMPLAINT

1.       Plaintiff, The Phillies, first brought this case, not because it had any valid claim to the Phanatic copyright—it does not.   Instead, The Phillies are using, and have used, its Complaint in this action as a weapon to try to get the Defendants to accept a lower amount for the renewal of the 1984 assignment of the Phanatic copyright, which was originally granted to The Phillies by Wayde Harrison and Bonnie Erickson (collectively, "H/E") by the October 31, 1984 agreement attached to the Complaint as Exhibit G (hereinafter referred to as the "1984 Agreement").  Unsuccessful in that attempt, The Phillies are now actively attempting to misappropriate H/E's copyright rights in the Phanatic, by freeloading off of H/E's artistry in perpetuity while denying H/E fair compensation for H/E's copyrighted artistic works.

2.       Notwithstanding the twisted allegations of the Complaint, it is undeniable that for

1

four decades The Phillies absolutely knew and repeatedly acknowledged that H/E were the sole authors of the Phanatic copyright.  The Phillies even conceded this in the agreements attached to their Complaint as Exhibits B, C, F, and G.  The 1984 Agreement assigning the Phanatic copyright to The Phillies specifically acknowledged that H/E owned the Phanatic copyright, stating in the very first clause: "Whereas, HE owns the copyright of the artistic sculpture presently known as the 'Phillies Phanatic' (hereinafter referred to as the 'MASCOT')."  If that was not clear enough, The Phillies also agreed under the 1984 Agreement, to "**credit HE as the creator of the MASCOT**," consistent with The Phillies' express understanding that H/E, and not The Phillies, were the copyright author (*i.e.*, creator) of the Phanatic.

3.      It is simply undeniable that The Phillies conceded in the principal 1984 Agreement, executed by The Phillies themselves that they wanted to purchase H/E's Phanatic copyright in accordance with the Copyright Act so they could use H/E's copyrighted artistic work, the Phanatic, and all existing reproductions and portrayals of the Phanatic.  It is disingenuous in the extreme for The Phillies now to claim, 36 years after they entered into the principal 1984 Agreement, that they already owned the Phanatic copyright in 1984, when they purchased H/E's Phanatic copyright in 1984.  This lack of candor is not an oversight—rather, it represents an intentional effort to present a false narrative, unhinged to the truth, displayed in false and misleading allegations made in The Phillies' Complaint that started this case.  The Phillies had to attach the 1984 Agreement as Exhibit G to the Complaint, but there is not a word in The Phillies' prolix Complaint that describes the pertinent clauses in the 1984 Agreement that expressly acknowledged that H/E, and not The Phillies, were the sole author, creator, and owner, of the Phanatic copyright.  The Phillies' selective exclusion of real facts pervades the allegations of the Complaint.

4.      In their complaint, The Phillies shamelessly allege that they or Bill Giles, a former Executive Vice President of The Phillies, created the Phanatic.  The truth is that other than wanting it to be named the Phanatic and to be family friendly, Giles and The Phillies had no input into the design and creation of the Phanatic.  In fact, while The Phillies allege that Mr. Giles envisioned the Phanatic to be green, Mr. Giles testified at his own deposition that he did not remember picking the color, that he may have "brainwashed" himself into thinking otherwise, and that he often took credit for the work of others.

5.      Also, the real, undeniable facts—acknowledged by The Phillies in their course of ongoing work and dealings with H/E for over 40 years—are that H/E originally designed and created the Phanatic.  H/E are renowned designers who over the course of several decades, created countless iconic puppets, costumes, and other creations, including numerous Muppets characters and major sports league mascots.  Defendant Bonnie Erickson, while working for the legendary Jim Henson of Sesame Street and Muppets fame, created iconic characters, including Miss Piggy, among others.  In 1978, The Phillies first asked Jim Henson to create their mascot.  Mr. Henson declined, and personally recommended that The Phillies contact H/E to create The Phanatic.  H/E met with Phillies representatives—not Mr. Giles—early in 1978, and began working on the creation of the Phanatic.  In March of 1978, H/E entered into a written letter agreement (the "Letter Agreement") with The Phillies to create the Phanatic.  While The Phillies attach this seminal Letter Agreement to the Complaint as Exhibit B, they once again intentionally omit from the narrative in their Complaint that this early Letter Agreement contained express language that specifically provided "**The character [i.e., the Phanatic] will be copywritten by Harrison/Erickson . . . .**"  Once again, The Phillies are allergic to the real facts and bent on spreading half-truths throughout their Complaint.

3

6.      In accordance with their promises in the 1978 Letter Agreement, H/E completed their design and construction of the Phanatic, which debuted as The Phillies' mascot at The Phillies' ballpark on April 25, 1978.  And, as contemplated by the express terms of the Letter Agreement, H/E registered their copyright in the Phanatic with the U.S. Copyright Office in 1979.  It is telling that The Phillies never took issue with this H/E copyright or the Copyright Office registration until 40 years later, and then only after H/E exercised their express right under the United States Copyright law to terminate the assignment of the copyright granted to The Phillies over 35 years ago in the 1984 Agreement.

7.       The Phillies, one of the most lucrative franchises in Major League Baseball, cannot deny with any integrity that they knew, or at least should have known, that H/E had the right to terminate the assignment of rights contained in the 1984 Agreement after 35 years in accordance with the plain language of the Copyright Act.  Section 203 of the Copyright Act provides that any transfer of copyright executed by the author(s) on or after January 1, 1978 may be terminated starting thirty-five (35) years from the date of execution of the grant.  17 U.S.C. § 203(a)(3).  In order to ensure that this express legislation could not be abrogated by contract, Congress expressly made the termination right inalienable; expressly providing in the statute that this termination right may be exercised by the copyright author "notwithstanding any agreement to the contrary." 17 U.S.C. § 203(a)(5).  If management and counsel of The Phillies now say they were ignorant of the copyright law when they executed the 1984 Agreement, then that unlikely scenario is their fault and no one else's.

8.      In any event, H/E had the absolute right to terminate its 1984 Agreement and sent the appropriate timely notice of termination to The Phillies in early June 2018, with an effective date of termination of June 15, 2020.  H/E properly recorded that termination notice with the

U.S. Copyright Office, where it was duly recorded.  At the same time, H/E, through their representatives, made it clear to The Phillies from the day they sent the termination notice that H/E wanted to negotiate a re-granting of the Phanatic copyright to The Phillies for a fair price, to be negotiated, so that their creation could continue to bring joy to Phillies fans.  Negotiations proceeded for more than a year prior to **The Phillies bringing this lawsuit without any prior notice.**  And The Phillies did so in a rambling, factually flawed, disingenuous complaint that ignored critical contractual provisions, facts, and settled statutory law that puts the lie to their Complaint.  It was also made clear to The Phillies during this year-long negotiation process that H/E were very proud of the success of their creation and the joy the Phanatic brought to Phillies fans and Philadelphians for more than 40 years.  This success was due in no small part to H/E's artistry and ongoing work, support, cooperation, and other related artistic works regarding the Phanatic, which H/E provided to The Phillies continuing over the past 40 years (ending only upon the filing of the termination notice with The Phillies in 2018).

9.      During these negotiations to re-grant the Phanatic copyright, The Phillies repeatedly said that the Phanatic had very little monetary value for The Phillies.  It was during a single negotiation session that Ms. Erickson made a reference to making the Phanatic a "free agent" was spoken, in a light moment during a courteous and civil face-to-face negotiation with The Phillies' management.  Rather than being a threat, this remark addressed, in baseball terms, the repeated negotiating position claimed by The Phillies that the Phanatic had very little economic or goodwill value to them.  As in baseball, the copyright rights in the Phanatic would be able to walk away from The Phillies once its contract (*i.e.*, the assignment of copyrights) ended upon the effective date of termination (June 15, 2020), if the parties could not reach a mutually acceptable price for H/E re-granting the Phanatic rights to The Phillies.  That was the

context for the entire "free agent" thought, expressed in a sentence at most, during a long, confidential negotiation session. To stretch this innocent, singular play on words into an imminent threat to be enjoined is bizarre, and reflects the hyperbolic, empty rhetoric that permeates the Complaint. Likewise, for The Phillies to try to bolster its spurious "free agent" argument by referencing a completely unrelated H/E transaction with the Montreal Canadiens regarding H/E's Youppi! character is even more ridiculous, given that H/E was not even a party to that transaction, and its circumstances—a sports franchise leaving town and voluntarily agreeing to give up its mascot for a new mascot—were entirely different.

10. In accordance with Section 203 of the Copyright Act, effective June 15, 2020, The Phillies' rights in the Phanatic copyright were terminated, and reverted to H/E pursuant to the express provisions of the Copyright Act. Knowing that H/E's termination of the assignment contained in the 1984 Agreement became effective as of June 15, 2020, The Phillies are attempting to circumvent the clear termination provisions of the Copyright Act by *inter alia*, producing a shoddy knock-off of the Phanatic devoid of new, original creative expression. Like common counterfeiters, The Phillies are now actively engaging in theft of H/E's intellectual property, and trying to use this falsely premised litigation as cover.

11. The Phillies are also continuing to reproduce, sell, and authorize the sale of merchandise featuring H/E's early portrayals of the Phanatic, which The Phillies do not own. Now that the 1984 Agreement has terminated, all of those existing reproductions and portrayals have reverted to and are owned and/or exclusively controlled by H/E. In other words, The Phillies are continuing to profit off H/E's creative work for free and without any legal right to do so, and without paying for the lawful exploitation of H/E's intellectual property. The Phillies' organization is effectively stealing H/E's intellectual property and trying to get away with it.

12.     The Phillies' claims in this action are built on half-truths, distortions of fact and law, and incomplete snippets of confidential settlement communications.  This lawsuit never should have been filed by The Phillies, and H/E are entitled to a declaratory judgment that their termination notice is valid and that H/E are the sole authors and owners of the Phanatic.  And now that the 1984 Phanatic copyright grant terminated, The Phillies must answer in damages for their unlawful use of H/E's copyrighted works and be enjoined by this Court from causing further harm to H/E and their copyrights.

## ANSWERING THE INTRODUCTION SECTION OF THE COMPLAINT

13.     Defendants deny the truth of the allegations in paragraph "1" of the Complaint, and refer to paragraphs 1 through 12 of this Answer.

14.     Defendants deny the truth of the allegations in paragraph "2" of the Complaint, and refer to paragraphs 1 through 12 of this Answer.

15.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "3" of the Complaint and on that basis deny said allegations, and refer to paragraphs 1 through 12 of this Answer.

16.     Defendants deny the truth of the allegations in paragraph "4" of the Complaint.

17.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "5" of the Complaint and on that basis deny said allegations, and refer to 1984 Agreement for the terms thereof.

18.     Defendants deny the truth of the allegations in paragraph "6" of the Complaint, and refer to the 1984 Agreement for the terms thereof.

19.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "7" of the Complaint and on that basis deny said allegations.

20.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "8" of the Complaint and on that basis deny said allegations.

21.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "9" of the Complaint and on that basis deny said allegations.

22.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "10" of the Complaint and on that basis deny said allegations.

23.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "11" of the Complaint and on that basis deny said allegations, and specifically deny the legal conclusions therein.

24.     Defendants admit only that H/E's attorneys sent a termination notice by letter to The Phillies in June of 2018 terminating the 1984 Agreement in accordance with Section 203 of the Copyright Act, and refer to that letter for the contents thereof, and otherwise deny the truth of the allegations in paragraph "12" of the Complaint, and further refer to the 1984 Agreement for the terms thereof, and to paragraphs 1 through 12 of this Answer.

25.     Defendants deny the truth of the allegations in paragraph "13" of the Complaint.

26.     Defendants deny the truth of the allegations in the first sentence of paragraph "14" of the Complaint, refer the Court to the statute referenced in paragraph "14" of the Complaint, and lack knowledge or information sufficient to form a belief as to the truth of the allegations in the final sentence of paragraph "14" of the Complaint and on that basis deny said allegations, and otherwise deny the truth of the allegations in paragraph "14" of the Complaint.

27.     Defendants deny the truth of the allegations in paragraph "15" of the Complaint.

28.     Defendants deny the truth of the allegations in paragraph "16" of the Complaint, and refer to paragraphs 1 through 12 of this Answer, and further refer to *inter alia*, Exhibit B to the Complaint.

29.     Defendants deny the truth of the allegations in paragraph "17" of the Complaint, and refer to paragraphs 1 through 12 of this Answer.

30.     Paragraph "18" of the Complaint is a legal argument to which no response is required, and to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "18" of the Complaint.

31.     Paragraph "19" of the Complaint is a legal argument to which no response is required, and to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "19" of the Complaint.

32.     Paragraph "20" of the Complaint is a legal argument to which no response is required, and to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "20" of the Complaint.

33.     Paragraph "21" of the Complaint is a legal argument to which no response is required, and to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "21" of the Complaint.

## ANSWERING THE PARTIES SECTION

34.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "22" of the Complaint and on that basis deny said allegations.

35.     Defendants only admit the allegations in the first sentence in paragraph "23" of the Complaint that Harrison/Erickson, Incorporated, is a New York Corporation, having its

9

principal place of business at 62 Pierrepont Street, Brooklyn, NY 11201, and otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence in paragraph 23 of the Complaint and on that basis deny said allegations.

36.     Defendants deny the truth of the allegations in paragraph "24" of the Complaint.

37.     Defendants admit the part of paragraph "25" of the Complaint that alleges that Wayde Harrison is an individual residing in Brooklyn and otherwise lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph "25" of the Complaint and on that basis deny said allegations.

38.     Defendants admit the part of paragraph "26" of the Complaint that alleges that Bonnie Erickson is an individual residing in Brooklyn and otherwise lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph "26" of the Complaint and on that basis deny said allegations.

## ANSWERING THE JURISDICTION AND VENUE SECTION

39.     Defendants refer the Court to the Statutes referred to in paragraph "27" of the Complaint that establish subject matter jurisdiction over cases and controversies arising under the Copyright Act and Lanham Act, and otherwise deny the truth of the allegations in paragraph "27" of the Complaint.

40.     Defendants refer the Court to the Statute referred to in paragraph "28" of the Complaint, and otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "28" of the Complaint and on that basis deny said allegations.

41.     Defendants refer the Court to the Statute referred to in paragraph "29" of the Complaint, and otherwise lack knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph "29" of the Complaint and on that basis deny said allegations.

42. Defendants deny the truth of the allegations in paragraph "30" of the Complaint, except admit only that on June 15, 2018  H/E's attorneys sent a proper termination letter to The Phillies which has terminated the Phanatic copyright rights in accordance with 17 USC § 203, and refer to that statute for its content.

43. Defendants deny the truth of the allegations in paragraph "31" of the Complaint, and aver that they will enforce their rights upon termination of the 1984 Assignment of the Phanatic copyright.

44. Defendants deny the truth of the allegations in paragraph "32" of the Complaint.

45. Paragraph "33" of the Complaint contains legal conclusions to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "33" of the Complaint.

46. Paragraph "34" of the Complaint contains legal conclusions to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "34" of the Complaint.

**ANSWERING THE FACTS SECTION**

47. Defendants deny the truth of the allegations in paragraph "35" of the Complaint, and refer to paragraphs 1 through 12 of this Answer.

48. With respect to paragraph "36" of the Complaint, Defendants admit only that on February 14, 1978, H/E spoke with Frank Sullivan and otherwise deny the truth of the allegations in paragraph "36" of the Complaint, and refer to paragraphs 1 through 12 of this Answer.

11

49.     With respect to paragraph "37" Defendants admit that H/E entered into the agreement attached to the Complaint as Exhibit B and respectfully refer the Court to that Agreement for the terms thereof, and otherwise deny the truth of the allegations in paragraph "37" of the Complaint, and refer to paragraphs 1 through 12 of this Answer.

50.     Defendants deny the truth of the allegations in paragraph "38" of the Complaint, and refer to paragraphs 1 through 12 of this Answer.

51.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "39" of the Complaint and on that basis deny said allegations.

52.     Defendants deny the truth of the allegations in paragraph "40" of the Complaint, and refer to paragraphs 1 through 12 of this Answer, and further aver that H/E asked for a Phillies shirt and cap for reference, not at the suggestion of Giles.

53.     Defendants deny the truth of the allegations in paragraph "41" of the Complaint, and refer to paragraphs 1 through 12 of this Answer.

54.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "42" of the Complaint and on that basis deny said allegations.

55.     Defendants admit only that H/E delivered the original Phanatic work of art that they created to The Phillies in April 1978, and otherwise deny the truth of the allegations in paragraph "43" of the Complaint.

56.     Defendants deny the truth of the allegation in paragraph "44" of the Complaint that "the Club had decided that the Phanatic would be mute" and aver that H/E and not The Phillies designed the Phanatic to be mute, and otherwise lack knowledge or information

12

sufficient to form a belief as to the truth of the remaining allegations in paragraph "44" of the Complaint and on that basis deny said allegations.

57.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "45" of the Complaint and on that basis deny said allegations, and admit only that H/E's original Phanatic work of art debuted on April 25, 1978.

58.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "46" of the Complaint and on that basis deny said allegations, and refer to the referenced affidavit in this paragraph of the Complaint for the full contents thereof.

59.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "47" of the Complaint and on that basis deny said allegations, and further answering refer to the terms of the July 15, 1978 Agreement, attached to the Complaint as Exhibit C for the terms thereof.

60.      Answering Paragraph "48" of the Complaint, the Defendants admit that The Phillies and H/E entered into the July 15, 1978 Agreement attached to the Complaint as Exhibit C and refer to that agreement for the terms thereof, and further aver that paragraph 3 of the July 15, 1978 Agreement provides that "Copies of all Licensed Articles made by you [The Phillies], or presently in your possession or control, shall bear copyright notice in our [H/E's] name in the proper location as follows: © 1978 Harrison Erickson"; and otherwise deny the remaining allegations in paragraph "48" of the Complaint.

61.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "49" of the Complaint and on that basis deny said allegations.

62.     Answering paragraph "50" of the Complaint, H/E sued The Phillies in 1979 for copyright infringement because, *inter alia*, The Phillies, granted only reproduction rights, were producing inferior quality Phanatic merchandise without H/E's required approval in violation of the March 17, 1978 and the July 15, 1978 Agreements, and The Phillies indisputably knew based on the complaint in that case that H/E had duly registered the Phanatic at the U.S. Copyright Office as "an artistic sculpture," a term that was used again in the 1984 Agreement; and for 41 years The Phillies never claimed that the copyright registration was improper, never mind fraudulent, and Defendants admit that H/E commenced the action identified in Paragraph "50" of the Complaint, and otherwise deny the truth of the allegations in paragraph "50" of the Complaint.

63.     Defendants deny the truth of the allegations in paragraph "51" of the Complaint.

64.     Defendants refer to the Erickson Affidavit and exhibits attached thereto for the full contents thereof, and otherwise deny the truth of the allegations in paragraph "52" of the Complaint.

65.     Defendants refer to the Erickson Affidavit and exhibits attached thereto for the full contents thereof, and otherwise deny the truth of the allegations in paragraph "53" of the Complaint.

66.     Defendants refer to H/E's Copyright Office registration for the full contents thereof, and otherwise deny the truth of the allegations in paragraph "54" of the Complaint.

67.     Defendants refer to H/E's Copyright Office registration for the full contents thereof, and otherwise deny the truth of the allegations in paragraph "55" of the Complaint.

68.     Defendants refer to H/E's Copyright Office registration certificate attached to the Erickson Affidavit for the full contents thereof, and otherwise deny the truth of the allegations in paragraph "56" of the Complaint.

69.     Defendants deny the truth of the allegations in paragraph "57" of the Complaint.

70.     Defendants admit H/E settled the 1979 SDNY Litigation, and otherwise deny the truth of the allegations in paragraph "58" of the Complaint.

71.     Defendants refer to the Erickson Affidavit for the full contents thereof, and otherwise deny the truth of the allegations in paragraph "59" of the Complaint.

72.     Defendants refer to the November 26, 1979 Agreement, attached as Exhibit F to the Complaint, for the full contents thereof, and otherwise deny the truth of the allegations in paragraph "60" of the Complaint.

73.     Defendants refer to the November 26, 1979 Agreement, attached as Exhibit F to the Complaint, for the full contents thereof, lack knowledge or information sufficient to form a belief as to the truth of the allegations in the last sentence of paragraph "61" of the Complaint, and on that basis deny said allegation, and otherwise deny the truth of the remaining allegations in paragraph "61" of the Complaint.

74.     Defendants deny the truth of the allegations in paragraph "62" of the Complaint, refer to paragraphs 1 through 12 of this Answer, and refer to the 1984 Agreement attached as Exhibit G to the Complaint for the full contents thereof.

75.     Defendants deny the truth of the allegations in paragraph "63" of the Complaint, refer to paragraphs 1 through 12 of this Answer, and refer to the 1984 Agreement attached as Exhibit G to the Complaint for the full contents thereof.

76.     Defendants deny the truth of the allegations in paragraph "64" of the Complaint, and refer to the 1984 Agreement attached as Exhibit G to the Complaint for the full contents thereof.

77.     Defendants deny the truth of the allegations in paragraph "65" of the Complaint, and refer to the 1984 Agreement attached as Exhibit G to the Complaint for the full contents thereof.

78.     Defendants deny the truth of the allegations in paragraph "66" of the Complaint, refer to paragraphs 1 through 12 of this Answer, and refer to the 1984 Agreement attached as Exhibit G to the Complaint for the full contents thereof.

79.     Defendants deny the truth of the allegations in paragraph "67" of the Complaint, refer to paragraphs 1 through 12 of this Answer, and refer to the 1984 Agreement attached as Exhibit G to the Complaint for the full contents thereof.

80.     Defendants deny the truth of the allegations in paragraph "68" of the Complaint, refer to paragraphs 1 through 12 of this Answer, and refer to the 1984 Agreement attached as Exhibit G to the Complaint for the full contents thereof.

81.     Defendants deny the truth of the allegations in paragraph "69" of the Complaint.

82.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "70" of the Complaint and on that basis deny said allegations.

83.     Defendants deny the truth of the allegations in paragraph "71" of the Complaint.

84.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "72" of the Complaint and on that basis deny said allegations.

85.    Defendants deny the truth of the allegations in paragraph "73" of the Complaint.

86.    Defendants deny the truth of the allegations in the first sentence of paragraph "74" of the Complaint, and refer to paragraphs 1 through 12 of this Answer, and lack knowledge or information sufficient to form a belief as to the truth of the rest of the allegations in paragraph "74" of the Complaint and on that basis deny said allegations.

87.    Defendants deny the truth of the allegations in paragraph "75" of the Complaint.

88.    Defendants deny the truth of the allegations in paragraph "76" of the Complaint, except admit only that on June 15, 2018  H/E's attorneys sent a proper termination letter to The Phillies which has terminated the Phanatic copyright in accordance with 17 USC § 203, and refer to such letter for the complete contents thereof.

89.    Defendants deny the truth of the allegations in paragraph "77" of the Complaint, and refer to paragraphs 1 through 12 of this Answer.

90.    Defendants deny the truth of the allegations in paragraph "78" of the Complaint, and refer to paragraphs 1 through 12 of this Answer.

91.    Defendants deny the truth of the allegations in paragraph "79" of the Complaint, and refer to paragraphs 1 through 12 of this Answer, and further aver that H/E will seek all legal remedies available for The Phillies' use of the Phanatic in violation of the termination of the 1984 grant of rights.

92.    Paragraph "80" of the Complaint is a legal conclusion to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "80" of the Complaint.

**ANSWERING COUNT I:**

**(Declaratory Judgment that H/E Does Not Have a Right to Terminate the 1984 Agreement)**

17

93.     Defendants reallege the forgoing responses to the Complaint as if set forth fully herein.

94.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "82" of the Complaint and on that basis deny said allegations.

95.     Answering paragraph "83" of the Complaint, Defendants admit that the Phanatic debuted on April 25, 1978.

96.     Answering paragraph "84" of the Complaint, Defendants admit that H/E entered into the July 15, 1978 Letter Agreement attached to the Complaint as Exhibit C and refer to that agreement for the full contents thereof, and otherwise deny the truth of the allegations set forth in paragraph "84" of the Complaint.

97.     Answering paragraph "85" of the Complaint, Defendants admit that H/E entered into the November 26, 1979 agreement attached to the Complaint as Exhibit F and refer to that agreement for the full contents thereof, and otherwise deny the truth of the allegations set forth in paragraph "85" of the Complaint.

98.     Defendants deny the truth of the allegations in paragraph "86" of the Complaint.

99.     Defendants deny the truth of the allegations in paragraph "87" of the Complaint

100.    Paragraph "88" of the Complaint is a legal conclusion to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "88" of the Complaint.

101.    Paragraph "89" of the Complaint is a legal conclusion to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "89" of the Complaint.

18

102.     Paragraph "90" of the Complaint is a legal conclusion to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "90" of the Complaint.

103.     Paragraph "91" of the Complaint is a legal conclusion to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "91" of the Complaint.

104.     Paragraph "92" of the Complaint is a legal conclusion to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "92" of the Complaint.

105.     Paragraph "93" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "93" of the Complaint.

## ANSWERING COUNT II:

### (Declaratory Judgment for Fraud on the Copyright Office)

106.     Defendants reallege the forgoing responses to the Complaint as if set forth fully herein.

107.     Defendants deny the truth of the allegations in paragraph "95" of the Complaint.

108.     Defendants deny the truth of the allegations in paragraph "96" of the Complaint.

109.     Defendants deny the truth of the allegations in paragraph "97" of the Complaint.

110.     Defendants deny the truth of the allegations in paragraph "98" of the Complaint.

111.     Defendants deny the truth of the allegations in paragraph "99" of the Complaint.

112. Answering paragraph "100" of the Complaint, Defendants refer to the complete Copyright Office registration for the Phanatic for the contents thereof, and otherwise deny the truth of the allegations in paragraph "100" of the Complaint.

113. Defendants deny the truth of the allegations in paragraph "101" of the Complaint.

114. Defendants deny the truth of the allegations in paragraph "102" of the Complaint.

115. Defendants deny the truth of the allegations in paragraph "103" of the Complaint.

116. Paragraph "104" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "104" of the Complaint.

117. Paragraph "105" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "105" of the Complaint.

118. Paragraph "106" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "106" of the Complaint.

**ANSWERING COUNT III:**

**(Declaratory Judgment That Section 203 Does Not Provide H/E with the Right to the Club's Rights as a Joint Author of the Phanatic Costume)**

119. Defendants reallege the forgoing responses to the Complaint as if set forth fully herein.

120. Defendants deny the truth of the allegations in paragraph "108" of the Complaint.

121. Defendants deny the truth of the allegations in paragraph "109" of the Complaint.

122. Defendants deny the truth of the allegations in paragraph "110" of the Complaint.

123. Defendants deny the truth of the allegations in paragraph "111" of the Complaint.

20

124.    Defendants deny the truth of the allegations in paragraph "112" of the Complaint.

125.    Paragraph "113" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "113" of the Complaint.

126.    Paragraph "114" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "114" of the Complaint.

### ANSWERING COUNT IV:

### (Declaratory Judgment That Section 203 Does Not Provide H/E with the Right to Terminate the Club's Rights as Author of the Phanatic's Character)

127.    Defendants reallege the forgoing responses to the Complaint as if set forth fully herein.

128.    Defendants deny the truth of the allegations in paragraph "116" of the Complaint.

129.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "117" of the Complaint and on that basis deny the truth of the said allegations.

130.    Defendants deny the truth of the allegations in paragraph "118" of the Complaint.

131.    Defendants deny the truth of the allegations in paragraph "119" of the Complaint.

132.    Defendants deny the truth of the allegations in paragraph "120" of the Complaint.

133.    Paragraph "121" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "121" of the Complaint.

134.    Paragraph "122" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "122" of the Complaint.

## ANSWERING COUNT V:

### (Declaratory Judgment that the Club has the Right to Utilize Derivative Works under 17 U.S.C. §203(B)(1))

135.    Defendants reallege the forgoing responses to the Complaint as if set forth fully herein.

136.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "124" of the Complaint and on that basis deny said allegations.

137.    Defendants deny the truth of the allegations in paragraph "125" of the Complaint, and refer to paragraphs 1-12 of this Answer the allegations in support of Defendants' Counterclaims.

138.    Defendants deny the truth of the allegations in paragraph "126" of the Complaint, and refer to paragraphs 1-12 of this Answer the allegations in support of Defendants' Counterclaims.

139.    Paragraph "127" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "127" of the Complaint.

140.    Paragraph "128" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "128" of the Complaint.

141.     Paragraph "129" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "129" of the Complaint.

## ANSWERING COUNT VI

### (Declaratory Judgment and Permanent Injunction Pursuant to Sections 32 and 43 of the Lanham)

142.     Defendants reallege the forgoing responses to the Complaint as if set forth fully herein.

143.     Defendants deny the truth of the allegations in paragraph "131" of the Complaint.

144.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "132" of the Complaint and on that basis deny said allegations.

145.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "133" of the Complaint and on that basis deny said allegations.

146.     Defendants deny the truth of the allegations in paragraph "134" of the Complaint and aver that there was no actionable threat made by H/E, or any real threat at all.

147.     Defendants deny the truth of the allegations in paragraph "135" of the Complaint.

148.     Paragraph "136" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "136" of the Complaint.

149.     Defendants deny the truth of the allegations in paragraph "137" of the Complaint.

150.     Defendants deny the truth of the allegations in paragraph "138" of the Complaint.

151.     Defendants deny the truth of the allegations in paragraph "139" of the Complaint.

152.     Defendants deny the truth of the allegations in paragraph "140" of the Complaint.

153.     Defendants deny the truth of the allegations in paragraph "141" of the Complaint.

154.     Paragraph "142" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "142" of the Complaint.

155.     Paragraph "143" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "143" of the Complaint.

## ANSWERING COUNT VII

### (Unjust Enrichment)

156.     Defendants reallege the forgoing responses to the Complaint as if set forth fully herein.

157.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "145" of the Complaint and aver that The Phillies never raised that issue during any such negotiations.

158.     Defendants deny the truth of the allegations in paragraph "146" of the Complaint.

159.     Defendants deny the truth of the allegations in paragraph "147" of the Complaint.

160.     Defendants deny the truth of the allegations in paragraph "148" of the Complaint.

161.     Defendants deny the truth of the allegations in paragraph "149" of the Complaint.

162.     Defendants deny the truth of the allegations in paragraph "150" of the Complaint.

## ANSWERING COUNT VIII

### (Breach of the Covenant of Good Faith and Fair Dealing)

163. Defendants reallege the forgoing responses to the Complaint as if set forth fully herein.

164. Paragraph "152" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "152" of the Complaint.

165. Paragraph "153" of the Complaint" is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "153" of the Complaint.

166. Defendants deny the truth of the allegations in paragraph "154" of the Complaint.

167. Defendants deny the truth of the allegations in paragraph "155" of the Complaint.

168. Defendants are not required to respond to the headings in the Complaint which do not have paragraph numbers, but to the extent a response is deemed required Defendants deny the truth of the allegations in each said heading.

169. Defendants deny that The Phillies are entitled to any of the relief requested in the Complaint's "Prayer for Relief."

## DEFENSES

Without waiving or excusing the burden of proof of The Phillies, or admitting that Defendants have any burden of proof, Defendants assert the following affirmative and other defenses.  Defendants do not presently know all facts and circumstances with respect to The Phillies' allegations, and thereby reserve the right to amend this Answer should they later discover facts demonstrating the existence of additional defenses.

## FIRST DEFENSE

### (Failure to State a Claim)

1.      The Complaint and any purported claims for relief therein fail to state a claim upon which relief can be granted.

## SECOND DEFENSE

### (Statute of Limitations)

2.      The Complaint and any purported claims for relief therein are barred, precluded, and/or limited by the statute of limitations, including but not limited to 17 U.S.C. § 507 and N.Y. C.P.L.R. § 213.

## THIRD DEFENSE

### (Laches)

3.      The Complaint and any purported claims for relief therein are barred, in whole or in part, by the doctrine of laches.  To the extent The Phillies contests Defendants' lawful exercise of their copyright law (*i.e.*, federal statutory) right of termination, Copyright Office registration of the Phanatic copyright rights, and/or ownership interests in the Phanatic work, The Phillies did not take reasonable steps to inform Defendants of its subjective beliefs and unreasonably delayed in informing Defendants of its purported claims.

26

## FOURTH DEFENSE

### (Estoppel)

4.      The Complaint and any purported claims for relief therein are barred, in whole or in part, by the doctrine of estoppel.  To the extent The Phillies contests Defendants' lawful exercise of their copyright law (*i.e.*, federal statutory) right of termination, Copyright Office registration of the Phanatic copyright rights, and/or copyright ownership interests in the Phanatic work, The Phillies did not take reasonable steps to inform Defendants of its subjective beliefs and instead, made numerous representations to Defendants that are contrary to the allegations in the Complaint, to Defendants' detriment.

## FIFTH DEFENSE

### (Waiver)

5.      The Complaint and any purported claims for relief therein are barred, in whole or in part, because The Phillies have, through its own actions, conduct, and failure to act, waived any right to relief.

## SIXTH DEFENSE

### (Injunctive/Declaratory Relief Improper)

6.      Any claims by The Phillies for equitable relief are barred because The Phillies have an adequate and complete remedy at law, and/or cannot make the other requisite showings to obtain equitable relief, including but not limited to injunctive relief or declaratory relief.

## SEVENTH DEFENSE

### (Copyright Misuse)

7.      The Complaint and any purported claims for relief therein are barred, in whole or in part, by the doctrine of copyright misuse.

27

## **EIGHTH DEFENSE**

### **(Trademark Misuse)**

8.      The Phillies' claim under Count VI is barred, in whole or in part, by the doctrine of trademark misuse.

## **NINTH DEFENSE**

### **(Dastar Rule)**

9.      The Phillies' claim under Count VI is barred, in whole or in part, by the Supreme Court's holding in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003).

## **TENTH DEFENSE**

### **(Lack of Subject Matter Jurisdiction)**

10.     The Court lacks subject matter jurisdiction over Count VI to the extent that The Phillies fail to allege any case or controversy.

## **ELEVENTH DEFENSE**

### **(Statutory Standing)**

11.     The Phillies' claims under Count VI are barred, in whole or in part, because The Phillies lack standing under the Declaratory Judgments Act, 28 U.S.C. § 2201.

## **TWELTH DEFENSE**

### **(Article III Standing)**

12.     The Phillies' claims under Count VI are barred, in whole or in part, because The Phillies' lack standing under Article III of the United States Constitution.

## THIRTEENTH DEFENSE

### (Ratification/Acquiescence/Abandonment/Forfeiture)

13.     The Complaint and any purported claims for relief therein are barred, in whole or in part, by the doctrines of ratification, acquiescence, abandonment, and/or forfeiture.

## FOURTEENTH DEFENSE

### (Preemption by Federal Law)

14.     The Phillies' claims under Count VII and VIII are preempted by the U.S. Copyright Act, *see* 17 U.S.C. § 301.

## FIFTEENTH DEFENSE

### (No Damages)

15.     The Phillies' claims to damages under Counts VII and VIII are barred, in whole or in part, because The Phillies have not suffered any damage or injury as a result of any act or conduct by Defendants.

## SIXTEENTH DEFENSE

### (Damages Too Speculative)

16.     The Phillies' claims to damages under Counts VII and VIII are barred, in whole or in part, because damages sought are too speculative and remote.

## SEVENTEENTH DEFENSE

### (Failure to Mitigate)

17.     The Phillies' claims to damages under Counts VII and VIII are barred, in whole or in part, because The Phillies have failed to mitigate any alleged damages.

## EIGHTEENTH DEFENSE

### (Good Faith)

18.      Count VII and VIII are barred, in whole or in part, because Defendants acted in good faith in all of their dealings with The Phillies.  Defendants have dealt honestly and fairly with The Phillies; The Phillies' alleged ignorance of Defendants' statutory termination right under U.S. copyright law is a problem of The Phillies' own making.

## NINETEENTH DEFENSE

### (Bad Faith)

19.      The Complaint and any purported claims for relief therein are barred, in whole or in part, as a result of The Phillies' bad faith.

## TWENTIETH DEFENSE

### (Unclean Hands)

20.      The Phillies have not come to Court with clean hands and thus, the Complaint and any purported claims for relief therein are barred, in whole or in part, by the doctrine of unclean hands.

## TWENTY-FIRST DEFENSE

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

21.      The Complaint and any purported claims for relief therein are barred due to the fact that The Phillies, by their own acts and/or omissions, breached the covenant of good faith and fair dealing implied in its agreements with Defendants.

## TWENTY-SECOND DEFENSE

### (First Amendment)

22.    The Phillies' claim under Count VI is barred, in whole or in part, by the First Amendment to the U.S. Constitution.

## TWENTY-THIRD DEFENSE

### (Fair Use)

23.    The Phillies' claim under Count VI is barred, in whole or in part, by the fair use defense.

## TWENTY-FOURTH DEFENSE

### (Breach and Default by Plaintiff)

24.    Defendants have substantially performed any and all contractual obligations, and any duty or performance on behalf of Defendants is excused by The Phillies' own actions, breaches, and defaults, including but not limited to those specified in Defendants' counterclaims.

WHEREFORE, Defendants request that the Court issue a judgment in their favor; order that The Phillies are not entitled to any relief on any of their claims; and order that Defendants are entitled to a judgment in their favor for their reasonable attorneys' fees and full costs, including under 17 U.S.C. § 505.

# COUNTERCLAIMS

Defendants and Counterclaim Plaintiffs Harrison/Erickson Incorporated, Harrison Erickson, a partnership, Wayde Harrison, and Bonnie Erickson (collectively, "Counterclaim Plaintiffs"), by and through their undersigned counsel, hereby allege, on personal knowledge as to matters relating to themselves and on information and belief as to all other matters, as follows:

## PARTIES

1. Counterclaim Plaintiffs repeat and reallege paragraphs 1-12 of their Answer, and also incorporate into these counterclaims the denials, averments, and defenses set forth in response to The Phillies' Complaint.

2. Counterclaim Plaintiff Bonnie Erickson is a designer of puppets, costumes, toys, and graphics, best known for her work as Head of the Muppet Workshop with Jim Henson.  With her husband, Counterclaim Plaintiff Wayde Harrison, she is a partner in Counterclaim Plaintiff Harrison/Erickson.  Counterclaim Plaintiffs are all domiciled in Brooklyn, New York.

3. Erickson and Harrison authored the "Phanatic" at the request of The Phillies Major League Baseball team.  Counterclaim Defendant The Phillies is a Pennsylvania limited partnership, which is trying to subvert the letter and intent of the Copyright Act by attempting to prevent Harrison and Erickson from terminating an assignment of the copyrights authored and owned by Harrison and Erickson to the Phanatic, under 17 U.S.C. § 203.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of the action pursuant to 28 U.S.C. §§ 1331 and 1338 because the counterclaims arise under the Copyright Act.

5. An actual controversy exists between the parties because The Phillies have wrongly claimed an ownership interest in the Phanatic as a purported copyright author of the

mascot and of an associated "character." The Phillies have also wrongly claimed that a notice of termination served by Counterclaim Plaintiffs on The Phillies, instructing that the October 31, 1984 Assignment of the copyright to the Phanatic from Counterclaim Plaintiffs to The Phillies will terminate (and now has terminated) on June 15, 2020 under 17 U.S.C. § 203 is invalid. Thus, the Court has subject matter jurisdiction under 28 U.S.C. § 2201.

6.      This Court has personal jurisdiction over The Phillies pursuant to N.Y.C.P.L.R. § 302. The Phillies transact business within the state and enter contracts to supply goods or services in the state. The Phillies have further consented to jurisdiction in this District by filing the instant lawsuit in this District.

7.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400 because a substantial part of the events giving rise to the counterclaims occurred in this District.

## FACTS

8.      Termination rights—which provide authors with an opportunity to reclaim copyright rights and/or renegotiate with an assignee for additional monies 35 years after the rights are assigned—were added by Congress to the 1976 Copyright Act to protect individual artists such as Harrison and Erickson by allowing them to recapture the value of their works. Artists deserve statutory protection to reclaim their rights because they create artistic works that enormously benefit the public.

9.      Counterclaim Plaintiffs lawfully exercised their termination right under the Copyright Act. Concurrently, H/E informed The Phillies that they wanted to renegotiate a re-granting of the rights to the Phanatic for future use of the Phanatic copyright for fair value. Over the thirty five years subsequent to the grant of rights in the 1984 Agreement, The Phanatic earned millions of dollars for The Phillies and their assignees, and the Phanatic has been

recognized as one of the best and most popular mascots in all of sports—a value, longevity, and recognition that was not, and could not have been, predicted in its early years. While the Phanatic was an immediate hit, its popularity has grown beyond any reasonable prediction, and no one could have reasonably known the enormous and enduring impact that the mascot would make on The Phillies, the city of Philadelphia, and Major League Baseball. Having properly terminated the 35-year-old grant to The Phillies in accordance with the express provisions of the Copyright Act, and wanting the Phanatic to remain in Philadelphia where they believe it belongs, Counterclaim Plaintiffs hoped to negotiate fair compensation for the further grant to The Phillies the right to continue to use their artistic creation, the Phanatic. While in the midst of negotiations however, The Phillies without any prior notice commenced this action. Now that the termination of the grant is effective, The Phillies are trying to misappropriate Counterclaim Plaintiffs' intellectual property without paying any compensation for H/E's decades-old registered copyright in the Phanatic.

10.     Counterclaim Plaintiffs did not simply design a costume, but also provided The Phillies with a fully integrated character. Counterclaim Plaintiffs, not The Phillies, who were hesitant about even introducing a new mascot at the time, took action to ensure that the Phanatic mascot would last. Counterclaim Plaintiffs gave direction to Dave Raymond—the first actor to perform as the Phanatic—on how to interpret that character, and created hundreds of illustrations and other portrayals of the Phanatic that embody and promote that character. The rights to all of those illustrations and other portrayals of the Phanatic were granted to The Phillies under the 1984 Agreement. Because Counterclaim Plaintiffs have lawfully terminated the grant of rights in the 1984 Agreement pursuant to Section 203 of the Copyright Act, and because The Phillies have been unwilling or unable to negotiate with Counterclaim Plaintiffs a fair payment reflecting

34

the value of a new grant of rights, all of those rights have lapsed, reverting to Counterclaim Plaintiffs.

11.     The Phillies have known and conceded for four decades that they did not author or initially own the copyrights in the Phanatic and the countless early illustrations and other portrayals of the Phanatic.  They admitted as much in the exhibits attached to their own Complaint in this action, which are binding agreements concerning copyright authorship and ownership, and the exploitation of the Phanatic.  Only after Counterclaim Plaintiffs served The Phillies with a valid termination notice under 17 U.S.C. § 203 in 2018 did The Phillies concoct theories as to why they should be declared an original author of the Phanatic, solely in an attempt to deny Counterclaim Plaintiffs their lawful termination rights and continue using the Phanatic without authorization or payment to Counterclaim Plaintiffs.

12.     When The Phillies asked Counterclaim Plaintiffs to create a mascot, the team knew they were seeking the assistance of established artists.  Although The Phillies first asked Jim Henson to take on the project, he told them they should hire Bonnie Erickson, who had worked with Henson to create such famous art works as Miss Piggy, and who also had worked on the Sesame Street programs.

13.     The entire artistic design for the Phanatic, a fantasy animal, with both artistic merit as well as a well-thought out backstory and personality (*i.e.*, as an anomaly of evolution from the Galapagos Islands), was created solely by Counterclaim Plaintiffs.  The Phillies contributed no copyrightable work to the project and certainly did not consider themselves to be authors of the Phanatic when it was created.  Counterclaim Plaintiffs conceived of, and designed, the color, shape, fictional backstory, and other protectable elements of the Phanatic.  For example, Erickson designed the large snout of the Phanatic to resemble a megaphone, because

35

the name Phanatic implied a loud and boisterous cheerleader-type, super fan character. She also chose green as the color for the mascot, because after visiting The Phillies' old Veterans Stadium to gather inspiration, she thought a green mascot would stand out among the colored seats.

14. As stated above, The Phillies admitted this was true in multiple signed agreements, which reference Counterclaim Plaintiffs' initial ownership and authorship of the copyrights to the Phanatic, including the Phanatic "character." Counterclaim Plaintiffs expressly repudiated any initial authorship claim by The Phillies long ago. Indeed, The Phillies were granted an assignment of the Phanatic copyrights from Counterclaim Plaintiffs in 1984, acknowledging in writing not only that Counterclaim Plaintiffs owned and had registered the Phanatic copyright, but that The Phillies would exercise reasonable efforts to *credit Counterclaim Plaintiffs as the creators of the Phanatic*.

15. The U.S. Copyright Office also acknowledged Counterclaim Plaintiffs' authorship and ownership of the copyright to the Phanatic mascot design by issuing a 1979 registration certificate, VA 0-023-748, to Counterclaim Plaintiffs. That certificate, which is prima facie evidence of the truth of the facts stated therein, 17 U.S.C. § 410, and of which The Phillies were well aware, confirms The Phillies did not author the Phanatic. The Phillies never challenged this registration for decades, until they received a valid termination notice from Counterclaim Plaintiffs, informing The Phillies that Counterclaim Plaintiffs will reclaim ownership of the Phanatic on June 15, 2020 (the "Effective Termination Date"). The U.S. Copyright Office has now also recorded that valid termination notice, indicating it was substantively complete and procedurally proper.

16.     Because the Effective Termination has passed, all rights in the Phanatic that were transferred to The Phillies under the 1984 Agreement have now lapsed and reverted to Counterclaim Plaintiffs.

17.     Prior to the Effective Termination Date, The Phillies threatened to continue using the copyrighted material of the Phanatic, even after ownership of the copyrights revert to Counterclaim Plaintiffs under 17 U.S.C. § 203.  The Effective Termination Date has now passed, and, consistent with those threats and fueled purely by a desire to avoid the effects of termination and steal Counterclaim Plaintiffs' valuable intellectual property, The Phillies have continued to use the Phanatic mascot design and related artwork without permission, infringing copyrights that have now reverted to Counterclaim Plaintiffs.

18.     Also, with blatant disrespect of Counterclaim Plaintiffs' rights and artistry in the Phanatic, The Phillies have created a knock-off Phanatic, which they introduced during their Spring training on February 23, 2020 (hereinafter referred to as "P2").  The Phillies created this P2 knock-off, because they know that they have no basis to challenge Counterclaim Plaintiffs' termination right under 17 U.S.C. § 203.

19.     P2 features minor, slavish changes to Counterclaim Plaintiffs' Phanatic mascot design, and represents a lazy attempt by The Phillies to try to use an exception to the termination right that is reserved solely for derivative works created under the authority of the grant, such as a movie adaptation of a novel.  *See* 17 U.S.C. § 203(b)(1) (the "Derivative Work Exception"). The Derivative Work Exception is only intended to allow creators of derivative works to continue utilizing such works after termination.  It is not, however, intended to protect the creators of wholesale knock-offs.

20.     P2 is not a derivative work prepared under the authority of the 1984 Agreement.

The Phillies did not recast, transform, or adapt the Phanatic.  They copied it.  Indeed, P2 is a

blatant knock-off reproduction of the Phanatic mascot design that Counterclaim Plaintiffs

created, and which The Phillies no longer own nor have the right to use.  The alterations to

Counterclaim Plaintiffs' design are minimal, wholly unoriginal, and in no way reflect an artistic

desire to change it.  These statements are not merely the view of Counterclaim Plaintiffs, but the

opinion of Counterclaim Plaintiffs' qualified expert, who has worked in the creative industries

designing original characters and brand mascots for decades.

21.     In fact, The Phillies deliberately designed P2 so that people would not notice the

difference between Counterclaim Plaintiffs' Phanatic mascot design and P2.  The Phillies

themselves internally confirmed that they knew that it was unlikely that anyone would notice a

difference between the original Phanatic and the P2 knock-off.  The Phillies' express goal was to

create P2 in a way that it would be perceived as virtually indistinguishable from the original

Phanatic character created by Counterclaim Plaintiffs.  Even media reports have suggested that

the differences in P2 are barely noticeable.

22.     The Phillies' creation of P2, solely to try to nullify Counterclaim Plaintiffs'

termination right, is an abuse of the Derivative Work Exception, and does not fall within its

purview.  The Phillies' continued exploitation of P2, now that the Effective Termination Date

has passed, is infringing, and continues to infringe, Counterclaim Plaintiffs' copyright rights.

23.     The Phillies have confirmed through their conduct after the Effective Termination

Date that their attempt to take advantage of the Derivative Work Exception is a ruse.  Even if

The Phillies were legally entitled to continue using P2 under the Derivative Work Exception (and

they cannot, given that P2 is not a derivative work, as described above), The Phillies have no

legal right to create *new* derivative works now that the Effective Termination Date has passed.

This is because the Derivative Work Exception is limited only to derivative works prepared

while the 1984 Agreement was still in effect. Congress made clear that the privilege to continue

utilizing derivative works prepared under authority of the grant "does not extend to the

preparation **after the termination of other derivative works** based upon the copyrighted work

covered by the terminated grant." 17 U.S.C. § 203(b)(1) (emphasis added).   In other words, the

Derivative Work Exception does not allow The Phillies to make post-termination derivatives of a

derivative work, *i.e.*, new works based on a derivative work, where such a new work was created

after termination, because any "derivative of a derivative" would necessarily be based upon the

copyrighted work covered by the terminated grant.  For instance, while the Derivative Work

Exception might allow The Phillies to continue exploiting a comic book based on the Phanatic

that was a permitted derivative work prior to termination, the Derivative Work Exception would

not allow The Phillies to develop a film adaptation of the comic book after its rights in the

Phanatic have lapsed.

24.    Despite the unequivocal limitation on the Derivative Works Exception, The

Phillies have willfully prepared or caused others to prepare countless derivative works based on

P2 *after* the Effective Termination Date, and have threatened to produce countless more.  Every

single one of these new works unlawfully incorporates Counterclaim Plaintiff's Phanatic design,

which The Phillies are aware they no longer own.

25.    These new "derivatives of a derivative," *i.e.*, new works based on the purported

derivative P2 work, include *inter alia* new performances and portrayals of P2, which The Phillies

have directly prepared, or knowingly authorized, enabled, encouraged and/or induced others to

prepare, and which have been fixed in videos and images that have been transmitted, displayed,

and disseminated to the public. Since the Effective Termination Date, The Phillies have blatantly prepared and broadcast over the internet various promotional videos that prominently feature P2, such as "Phanatic takes on the speed pitch machine," "Phanatic celebrates Opening Day in 2020 … finally!," "Phanatic launches a hotdog to … T-Mac?," and "Phanatic ensures umpires are properly sanitizing in 2020," or have knowingly authorized, enabled, encouraged and/or induced others to prepare and broadcast such promotional videos; The Phillies have prepared, displayed, and disseminated numerous new photographs and artwork that prominently feature P2 on their social media channels, such as on Instagram, or have knowingly authorized, enabled, encouraged and/or induced others to prepare, display, and disseminate such new photographs and artwork; and The Phillies have prominently featured P2 acting out routines during broadcasts of baseball games at Citizens Bank Park, which The Phillies or others acting in conjunction with or on behalf of The Phillies have fixed into new works and transmitted to the public. Every single one of these portrayals of P2 constitutes a new, unauthorized work created after the Effective Termination Date that incorporates Counterclaim Plaintiffs' Phanatic design, which The Phillies are aware they no longer own. Attached hereto as Exhibit A is a non-exhaustive list illustrating the vast number of ways that The Phillies are exploiting P2, in blatant disregard for Counterclaim Plaintiffs' rights in the underlying Phanatic mascot design. The Phillies seemingly produce new works that unlawfully incorporate the Phanatic every week, each of which constitutes a new and separate instance of infringement.

26.     The Phillies have admitted that they have no intention of complying with Counterclaim Plaintiffs' termination rights and the Derivative Work Exception going forward. The Phillies have repeatedly admitted that they intend to create new merchandise featuring P2 after the Effective Termination Date, without Counterclaim Plaintiffs' permission, and without

any compensation to Counterclaim Plaintiffs.  Every piece of merchandise featuring P2 constitutes a new derivative work that would necessarily incorporate Counterclaim Plaintiffs' Phanatic design, which The Phillies are aware they no longer own.

27.    The Phillies have even produced what they refer to as a P2 "Style Guide," which features artwork that in many cases is copied almost verbatim from early artwork that Counterclaim Plaintiffs created.  Such artwork, including the artwork listed on Exhibit B hereto (hereinafter referred to as the "Phanatic Artwork"), was bundled into the 1984 Assignment along with the Phanatic mascot design, and the rights to such works are no longer The Phillies to exploit.  The Phillies have admitted that this "Style Guide" is intended to assist third parties in unlawfully preparing new derivative works featuring P2 after the Effective Termination Date. Each new derivative work featuring P2 prepared by a third party would necessarily incorporate Counterclaim Plaintiffs' Phanatic mascot design and the Phanatic Artwork, which The Phillies are aware they do not own.

28.    The foregoing is a non-exhaustive description of The Phillies' ongoing activities and threatened activities with respect to The Phillies' unauthorized exploitation of P2.  The full scope of such infringing conduct is not yet known to Counterclaim Plaintiffs, and it is continuing to increase.  The Phillies are aware that every single derivative work that features P2 after the Effective Terminate Date unlawfully incorporates Counterclaim Plaintiffs' Phanatic mascot design and/or the Phanatic Artwork, and is not allowed by the Derivative Work Exception.  The Phillies have no interest in curbing such illegal activities.  The Phillies in this case have even represented through their agents that they will continue to engage in such infringing conduct even if they lose this lawsuit.

29.     By continuing to unilaterally create and authorize others to create new works featuring P2 after the Effective Terminate Date, The Phillies have demonstrated that they have no intention to comply with the termination provisions of the Copyright Act or respect Counterclaim Plaintiffs' copyright rights.  To the contrary, The Phillies seek to profit off the creative work of others, and ignore their legal responsibilities.

30.     In addition to the unlawful activities described above, The Phillies also continue to sell and knowingly authorize, enable, encourage, and/or induce others to sell unauthorized merchandise featuring numerous pieces of the Phanatic Artwork listed on Exhibit B.  The Phillies know that their rights to exploit such merchandise or license others to exploit such merchandise had cut off on the Effective Termination Date, but they and their licensees continue to produce and sell such works without Counterclaim Plaintiffs' permission.

31.     The Phillies derive an obvious and direct financial benefit from the infringement of Counterclaim Plaintiffs' Phanatic mascot design and related artwork.  The Phanatic is notably a major commercial draw to The Phillies' baseball franchise, and while The Phillies have the legal and practical right, and indeed obligation, to prevent or limit the infringement of the Phanatic, they have chosen not to do so because they want to continue to profit off of Counterclaim Plaintiffs' creativity without compensating the Counterclaim Plaintiffs.

32.     By The Phillies' unlawful conduct, wholesale unauthorized copies and adaptations of Counterclaim Plaintiffs' copyrighted works are being made and distributed into the stream of commerce with no restriction preventing their downstream dissemination.  Such infringing activity strips Counterclaim Plaintiffs of the creative control to which they are entitled, undermines Counterclaim Plaintiffs' own ability to exploit their works, diminishes the perceived value of those works to Counterclaim Plaintiffs' potential licensees, and associates Counterclaim

Plaintiffs with a knock-off Phanatic design that cheapens Counterclaim Plaintiffs' iconic creation, thereby causing irreparable damage to Counterclaim Plaintiffs' business and reputation as renowned character and mascot designers.

33.     In full recognition that their conduct is illegal, The Phillies have represented to Counterclaim Plaintiffs that they have no intention of respecting Counterclaim Plaintiffs' rights going forward, and have further represented to Counterclaim Plaintiffs that they will continue to infringe Counterclaim Plaintiffs' copyrights even if The Phillies lose this lawsuit.  In other words, The Phillies have made the conscious decision to infringe first and pay later, rather than responsibly comply with the law and obtain permission from Counterclaim Plaintiffs.

34.     The Phillies' infringement will result, and has resulted, in a substantial decline in revenue to which Counterclaim Plaintiffs' are entitled, and—if permitted to continue— effectively renders the termination provisions of the 1976 Copyright Act meaningless.  Actions such as those taken by The Phillies not only violate the express rights granted to H/E under the Copyright Act, but also undermine the very purposes of the Copyright Act, adversely impacting the creation of new artwork.

35.     Rather than respecting the public policy choices of Congress to protect artists by providing them with the ability to reclaim their rights, The Phillies are willfully and unlawfully exploiting Counterclaim Plaintiffs' Phanatic, and they must answer for their blatantly unlawful conduct.

## **CLAIMS**

### **First Cause of Action –Authorship of the Phanatic**

36.     Counterclaim Plaintiffs reallege all of the allegations in paragraphs 1-35 herein.

37.     In 1978, Counterclaim Plaintiffs created the Phillie Phanatic. The Phillies contributed no artistic expression to the Phanatic whatsoever, let alone copyrightable expression.

38.     Between 1978 and 1984, the parties entered multiple written agreements within which The Phillies acknowledged Counterclaim Plaintiffs' authorship of the Phanatic. These agreements include acknowledgement of Counterclaim Plaintiffs' authorship of the Phanatic "character."

39.     After Counterclaim Plaintiffs served a notice on The Phillies in 2018, as required by the Copyright Act, to terminate the 1984 assignment of the copyright rights in the Phanatic, The Phillies concocted an argument to attempt to claim partial authorship of the Phanatic. An actual, substantial, and justiciable controversy thus exists between Counterclaim Plaintiffs and The Phillies concerning who authored and initially owned the copyright rights in the Phanatic. A judicial declaration is necessary to vindicate Counterclaim Plaintiffs' rights.

40.     Based on the foregoing, Counterclaim Plaintiffs hereby request a judicial declaration that they authored the Phanatic, and that The Phillies did not.

### Second Cause of Action – Statute of Limitations and Estoppel

41.     Counterclaim Plaintiffs reallege all of the allegations in paragraphs 1-40 herein.

42.     Counterclaim Plaintiffs always claimed authorship and initial ownership of the copyright to the Phanatic. Counterclaim Plaintiffs also always denied that The Phillies had any authorship interest in the Phanatic. These denials were express, and were even conveyed in writing multiple times in and before 1984. Indeed, in 1979, Counterclaim Plaintiffs registered the copyright to the Phanatic, and informed The Phillies that they did so. The Phillies never claimed an authorship interest in the Phanatic for forty years.

43.     The Copyright Act, 17 U.S.C. § 507, includes a three-year statute of limitations. This limitations provision applies to claims of authorship, just as it does to infringement actions. Because Counterclaim Plaintiffs repudiated any authorship claim possessed by The Phillies, and The Phillies failed to file an action within three years contesting Counterclaim Plaintiffs' rights, the statute of limitations now bars The Phillies from claiming any authorship interest.

44.     Moreover, Counterclaim Plaintiffs materially and reasonably relied on The Phillies' representations that they acknowledged Counterclaim Plaintiffs' authorship of the Phanatic when the parties entered written agreements and Counterclaim Plaintiffs continued to do business with The Phillies after doing so.

45.     Nevertheless, after taking the benefit of the written agreements and exploiting the Phanatic grant for more than 35 years, The Phillies are now asserting, for the first time, that they authored the Phanatic.  Equitable estoppel bars The Phillies from now challenging Counterclaim Plaintiffs' authorship of the Phanatic. An actual, substantial, and justiciable controversy thus exists between Counterclaim Plaintiffs and The Phillies concerning who authored the Phanatic. A judicial declaration is necessary to vindicate Counterclaim Plaintiffs' rights.

46.     Based on the foregoing, Counterclaim Plaintiffs hereby request a judicial declaration that the Copyright Act's statute of limitations and equitable estoppel prevent The Phillies from claiming any authorship of the Phanatic.

### Third Cause of Action – Validity of Copyright Registration

47.     Counterclaim Plaintiffs reallege all of the allegations in paragraphs 1-46 herein.

48.     In 1979, Counterclaim Plaintiffs registered their copyright interests in the Phanatic, and the U.S Copyright Office issued a registration certificate that same year.  In applying for the registration, Counterclaim Plaintiffs complied with all applicable Copyright

Office regulations and practices. Counterclaim Plaintiffs did so in good faith, and informed The Phillies of the issuance of the Copyright Office registration certificate. The Phillies acknowledged the existence of the certificate in writing, and even used it to enforce their rights during the term of the 1984 assignment.

49. Moreover, Counterclaim Plaintiffs reasonably and materially relied on The Phillies representations that they acknowledged the validity of Counterclaim Plaintiffs' registration when the parties entered written agreements and Counterclaim Plaintiffs continued to do business with The Phillies after doing so. Equitable estoppel, and the Copyright Act's statute of limitations, 17 U.S.C. § 507, therefore bar The Phillies from now challenging the validity of Counterclaim Plaintiffs' registration.

50. Nevertheless, The Phillies assert that the registration is invalid. An actual, substantial, and justiciable controversy thus exists between Counterclaim Plaintiffs and The Phillies concerning the whether Counterclaim Plaintiffs possess a valid registration. A judicial declaration is necessary to vindicate Counterclaim Plaintiffs' rights.

51. Based on the foregoing, Counterclaim Plaintiffs hereby request a judicial declaration that their registration certificate is valid.

### Fourth Cause of Action – Validity of Termination Notice

52. Counterclaim Plaintiffs reallege all of the allegations in paragraphs 1-51 herein.

53. On October 31, 1984, Counterclaim Plaintiffs assigned, in writing, their copyrights in the Phanatic to The Phillies. Under 17 U.S.C. § 203, Counterclaim Plaintiffs are entitled to terminate that transfer.

54. The statute states: "Termination of the grant may be effected at any time during a period of five years beginning at the end of thirty-five years from the date of execution of the

46

grant ...” The statute also states: “Termination of the grant may be effected notwithstanding any agreement to the contrary, including an agreement to make a will or to make any future grant.” The statute also states: “Upon the effective date of termination, all rights under this title that were covered by the terminated grants revert to the author, authors, and other persons owning termination interests …”

55.     Counterclaim Plaintiffs complied with all of 17 U.S.C. § 203's requirements, including a timely notice of termination and the requirement to record the termination notice with the U.S. Copyright Office.  The notice was timely, complete, and valid.  Pursuant to the notice, the 1984 assignment of the Phanatic copyright by Counterclaim Plaintiffs to The Phillies terminated on June 15, 2020.

56.     The Phillies have claimed that the termination notice is ineffective, and threatened to continue, and continued, to use the copyright rights to the Phanatic after the date on which the assignment terminated.  An actual, substantial, and justiciable controversy thus exists between Counterclaim Plaintiffs and The Phillies concerning whether the termination notice is valid.  A judicial declaration is necessary to vindicate Counterclaim Plaintiffs' rights.

57.     Based on the foregoing, Counterclaim Plaintiffs hereby request a judicial declaration that, under the Copyright Act, the termination notice effectively terminates the 1984 Assignment and all copyright interests owned by Counterclaim Plaintiffs in the Phanatic reverts to Counterclaim Plaintiffs in accordance with Section 203.

### Fifth Cause of Action – Copyright Infringement

58.     Counterclaim Plaintiffs reallege all of the allegations of paragraphs 1-57 herein.

59.     The Phanatic mascot design and Phanatic Artwork listed on Exhibit B created by Counterclaim Plaintiffs constitute original, copyrightable subject matter pursuant to the

Copyright Act, and are protected by a United States Certificate of Copyright Registration duly registered with the United States Copyright Office (the "Phanatic Copyrights"). Counterclaim Plaintiffs have validly exercised their termination rights pursuant to 17 U.S.C. § 203, and with the passage of the Effective Termination Date on June 15, 2020, are the owners of and/or exclusively control all rights, title, and interest in and to the Phanatic Copyrights.

60.     The Phanatic Artwork listed on Exhibit B repeats content verbatim from the original copyrighted Phanatic mascot design, and Counterclaim Plaintiffs rely upon their copyright registration for the underlying mascot design. In addition, independent registrations for the works listed on Exhibit B were filed with the U.S. Copyright Office on the Effective Termination Date, and Counterclaim Plaintiffs intend to amend their Counterclaims as necessary to reflect those registrations when they are issued.

61.     The Phillies have reproduced, adapted, distributed, and publicly displayed the Phanatic Copyrights without authorization subsequent to the Effective Termination Date, including *inter alia*, by continuing to exploit a knock-off Phanatic mascot design, P2, creating new adaptations of the Phanatic Copyrights such as those set forth in Exhibit A, and continuing to exploit merchandise that unlawfully incorporates the Phanatic Artwork. In addition, without the permission or consent of Counterclaim Plaintiffs, The Phillies have knowingly encouraged, induced, materially contributed to, and/or facilitated, the unauthorized reproduction, adaptation, distribution, and public display of the Phanatic Copyrights subsequent to the Effective Termination Date. The Phillies also have the right and ability to stop or limit the infringement, and have a direct financial interest in such infringing activities. As such, The Phillies are directly and secondarily liable for infringement under the Copyright Act.

62.     The infringement of Counterclaim Plaintiffs' rights in each of their respective copyrighted works constitutes a separate and distinct act of infringement.

63.     The Phillies' unlawful conduct, as set forth above, was willful, intentional, malicious and purposeful, in disregard of and with indifference to the rights of Counterclaim Plaintiffs.

64.     The Phillies' actions described above have caused and will continue to cause irreparable damage to Counterclaim Plaintiffs, for which Counterclaim Plaintiffs have no remedy at law.  Indeed, The Phillies have already engaged in the blatant wholesale infringement of the Phanatic Copyrights by, among other things, continuing to prepare new derivative works featuring P2 after the Effective Termination Date without permission.  The Phillies are aware that every single one of these new works unlawfully incorporates, and therefore infringes on, Counterclaim Plaintiffs' copyrighted material, *see* 17 U.S.C. § 203(b)(1), but nonetheless have expressed every intention of continuing to expand their use of P2 through the preparation of countless more unauthorized new works that feature P2.  Such conduct is indefensible.  Unless The Phillies are restrained by this Court from continuing their infringement of Counterclaim Plaintiffs' copyrights, these injuries will continue to occur in the future.  Counterclaim Plaintiffs are accordingly entitled to injunctive relief restraining The Phillies from further infringement.

## PRAYER FOR RELIEF AND DEMAND FOR JURY

65.     Wherefore, Counterclaim Plaintiffs pray for a judgment in their favor and against The Phillies and request the following relief:

> a.  A declaratory judgment that Counterclaim Plaintiffs authored and initially owned the Phanatic, and that The Phillies did not;

49

b.   A declaratory judgment that The Phillies are barred by the Copyright Act's statute of limitations, and by equitable estoppel, from asserting an authorship interest in the Phanatic;

c.   A declaratory judgment that Counterclaim Plaintiffs' 1979 copyright registration for the Phanatic is valid;

d.   A declaratory judgment that the termination notice served by Counterclaim Plaintiffs on The Phillies is effective and valid, and that the 1984 assignment from Counterclaim Plaintiffs to The Phillies of the copyright rights to the Phillie Phanatic terminated on June 15, 2020;

e.   For a declaration that The Phillies have willfully infringed and are continuing to infringe Counterclaim Plaintiffs' copyrights, including *inter alia*, through the preparation after the Effective Termination Date of new works that are based upon Counterclaim Plaintiffs' copyrights.

f.   For statutory damages pursuant to 17 U.S.C. § 504(c), in an amount up to the maximum provided by law, arising from The Phillies' willful violations of Counterclaim Plaintiffs' rights under the Copyright Act or, in the alternative, at Counterclaim Plaintiffs' election pursuant to 17 U.S.C. § 504(b), Counterclaim Plaintiffs' actual damages, including The Phillies profits from the infringements and the value received by the Phillies resulting from its infringements, in an amount to be proven at trial;

g.   An order pursuant to 17 U.S.C. § 505 awarding Counterclaim Plaintiffs their costs in this action, including their reasonable attorneys' fees;

h. For pre-judgment and post-judgment interest at the applicable rate on any monetary award made part of the judgment against The Phillies;

i. For such equitable relief under Title 17, Title 28, and/or the Court's inherent authority as is necessary to prevent or restrain infringement of Counterclaim Plaintiffs' copyrights, including permanent injunctive relief prohibiting The Phillies and their officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with each or any of them, from:

    i. Directly or indirectly infringing Counterclaim Plaintiffs' Phanatic Copyrights;

    ii. Copying, reproducing, distributing, transmitting, displaying, or otherwise exploiting without authorization Counterclaim Plaintiffs' Phanatic Copyrights;

    iii. Preparing derivative works that are based upon Counterclaim Plaintiffs' Phanatic Copyrights;

    iv. Enabling, facilitating, permitting, assisting, soliciting, encouraging, or inducing others to copy, reproduce, distribute, transmit, display, or otherwise exploit without authorization Counterclaim Plaintiffs' Phanatic Copyrights; and

    v. Enabling, facilitating, permitting, assisting, soliciting, encouraging, or inducing others to prepare derivative works that are based upon Counterclaim Plaintiffs' Phanatic Copyrights; and

j. All other relief the Court deems just and proper.

DATED:     September 29, 2020          MITCHELL SILBERBERG & KNUPP LLP
           New York, New York


                                       By: /s/ Paul D. Montclare
                                           Paul D. Montclare (*pdm@msk.com*)
                                           Leo M. Lichtman (*lml@msk.com*)
                                           Elaine Nguyen (*eln@msk.com*)
                                           437 Madison Avenue, 25th Floor
                                           New York, NY 10022
                                           Telephone: (212) 509-3900
                                           Facsimile:  (212) 509-7239

                                           J. Matthew Williams (*mxw@msk.com*)
                                           1818 N St. NW, 7th Floor
                                           Washington, DC 20036
                                           Telephone: (202) 355-7900
                                           Facsimile: (202) 355-7899

                                           *Attorneys for Defendants and
                                           Counterclaim Plaintiffs Harrison/Erickson
                                           Incorporated, Harrison Erickson, Wayde
                                           Harrison, and Bonnie Erickson*





**Exhibit A**

*The Phillies v. Harrison/Erickson, et. al.*, Case No. 1:19-cv-7239-VM-SN



12490308.1

**Exhibit A**

*The Phillies v. Harrison/Erickson, et. al.*, Case No. 1:19-cv-7239-VM-SN



**Exhibit A**

*The Phillies v. Harrison/Erickson, et. al.*, Case No. 1:19-cv-7239-VM-SN



12490308.1

**Exhibit A**
*The Phillies v. Harrison/Erickson, et. al.*, Case No. 1:19-cv-7239-VM-SN







**Exhibit A**

*The Phillies v. Harrison/Erickson, et. al.*, Case No. 1:19-cv-7239-VM-SN



**Exhibit A**
*The Phillies v. Harrison/Erickson, et. al.*, Case No. 1:19-cv-7239-VM-SN





**Exhibit A**
*The Phillies v. Harrison/Erickson, et. al.*, Case No. 1:19-cv-7239-VM-SN







**Exhibit A**
*The Phillies v. Harrison/Erickson, et. al.*, Case No. 1:19-cv-7239-VM-SN



12490308.1

**Exhibit A**

*The Phillies v. Harrison/Erickson, et. al.*, Case No. 1:19-cv-7239-VM-SN



16

**Exhibit A**
*The Phillies v. Harrison/Erickson, et. al.*, Case No. 1:19-cv-7239-VM-SN



12490308.1

**Exhibit A**
*The Phillies v. Harrison/Erickson, et. al.*, Case No. 1:19-cv-7239-VM-SN



12490308.1

**Exhibit A**

*The Phillies v. Harrison/Erickson, et. al.*, Case No. 1:19-cv-7239-VM-SN



**Exhibit A**
*The Phillies v. Harrison/Erickson, et. al.*, Case No. 1:19-cv-7239-VM-SN



12490308.1

**Exhibit B**

*The Phillies v. Harrison/Erickson, et. al.*, Case No. 1:19-cv-7239-VM-SN



**Exhibit B**

*The Phillies v. Harrison/Erickson, et. al.*, Case No. 1:19-cv-7239-VM-SN



12490327.1



12490327.1

**Exhibit B**

*The Phillies v. Harrison/Erickson, et. al.*, Case No. 1:19-cv-7239-VM-SN



#1

12490327.1

**Exhibit B**

*The Phillies v. Harrison/Erickson, et. al.*, Case No. 1:19-cv-7239-VM-SN



**Exhibit B**

*The Phillies v. Harrison/Erickson, et. al.*, Case No. 1:19-cv-7239-VM-SN



12490327.1

**Exhibit B**

*The Phillies v. Harrison/Erickson, et. al.*, Case No. 1:19-cv-7239-VM-SN



7

**Exhibit B**
*The Phillies v. Harrison/Erickson, et. al.*, Case No. 1:19-cv-7239-VM-SN





12490327.1

**Exhibit B**

*The Phillies v. Harrison/Erickson, et. al.*, Case No. 1:19-cv-7239-VM-SN



**Exhibit B**

*The Phillies v. Harrison/Erickson, et. al.*, Case No. 1:19-cv-7239-VM-SN



**Exhibit B**

*The Phillies v. Harrison/Erickson, et. al.*, Case No. 1:19-cv-7239-VM-SN



**Exhibit B**

*The Phillies v. Harrison/Erickson, et. al.*, Case No. 1:19-cv-7239-VM-SN



39a

12490327.1

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE PHILLIES, a Pennsylvania limited partnership, <br><br> Plaintiff, <br><br> v. <br><br> HARRISON/ERICKSON, INCORPORATED, a New York corporation, HARRISON ERICKSON, a partnership, and WAYDE HARRISON and BONNIE ERICKSON, <br><br> Defendants. | CIVIL ACTION NO. 19-CV-7239 (VM) <br><br><br> JURY TRIAL DEMANDED |

**PROPOSED FIRST AMENDED ANSWER AND COUNTERCLAIMS**

Defendants and Counterclaim Plaintiffs Harrison/Erickson Incorporated, Harrison

Erickson, a partnership, Wayde Harrison, and Bonnie Erickson, by and through their undersigned

counsel, for their Answer to Plaintiff's Complaint, allege as follows:

**INTRODUCTORY RESPONSE TO THE COMPLAINT**

1.      Plaintiff, The Phillies ~~brings, first brought~~ this case, not because ~~they have~~it had

any valid claim to the Phanatic copyright——they do~~it does~~ not.   Instead, The Phillies are using

~~their, and have used, its~~ Complaint in this action as a weapon to try to get the Defendants to

accept a lower amount for the renewal of the 1984 assignment of the Phanatic copyright, which

was originally granted to The Phillies by Wayde Harrison and Bonnie Erickson (collectively,

"H/E") by the October 31, 1984 ~~A~~agreement attached to the Complaint as Exhibit G. (hereinafter

referred to as the "1984 Agreement").  Unsuccessful in that attempt, The Phillies are now

actively attempting to misappropriate H/E's copyright rights in the Phanatic, by freeloading off

of H/E's artistry in perpetuity while denying H/E fair compensation for H/E's copyrighted

artistic works.

1

2.        ~~Despite~~Notwithstanding the twisted allegations of the Complaint, it is undeniable that for four decades The Phillies absolutely knew and repeatedly acknowledged that H/E were the sole authors of the Phanatic copyright.  The Phillies even conceded this in the ~~very~~ agreements ~~that are~~ attached to their Complaint as Exhibits B, C, F, and G.  ~~Most significantly,~~ ~~the~~The 1984 Agreement assigning the Phanatic copyright to The Phillies specifically acknowledged that H/E owned the Phanatic copyright, stating in the very first clause: "Whereas, HE owns the copyright of the artistic sculpture presently known as the 'Phillies Phanatic' (hereinafter referred to as the 'MASCOT')~~".~~."  If that was not clear enough, The Phillies also agreed under the 1984 Agreement, to "**credit HE as the creator of the MASCOT,**" consistent with The Phillies' express understanding that H/E, and not The Phillies, were the copyright author (*i.e.*, creator) of the Phanatic.

3.        ~~This~~It is simply undeniable ~~concession by~~that The Phillies ~~is~~conceded in the principal 1984 Agreement, executed by The Phillies themselves~~, which granted~~ ~~The Phillies the~~ ~~right to~~ that they wanted to purchase H/E's Phanatic copyright in accordance with the Copyright Act so they could use H/E's copyrighted artistic work, the Phanatic.  ~~While~~, and all existing reproductions and portrayals of the Phanatic.  It is disingenuous in the extreme for The Phillies now to claim, 36 years after they entered into the principal 1984 Agreement, that they already owned the Phanatic copyright in 1984, when they purchased H/E's Phanatic copyright in 1984.  This lack of candor is not an oversight—rather, it represents an intentional effort to present a false narrative, unhinged to the truth, displayed in false and misleading allegations made in The Phillies' Complaint that started this case.  The Phillies had to attach ~~this key document~~the 1984 Agreement as Exhibit G to the Complaint, but there is not a word ~~of this clause acknowledging~~ ~~H/E's sole, initial ownership of the Phanatic copyright found anywhere~~ in The Phillies' prolix~~,~~

2

fiction-filled Complaint.  This kind of Complaint that describes the pertinent clauses in the 1984 Agreement that expressly acknowledged that H/E, and not The Phillies, were the sole author, creator, and owner, of the Phanatic copyright.  The Phillies' selective exclusion of real facts pervades the disingenuous allegations of the Complaint.

4.      In their complaint, The Phillies also falsely and shamelessly allege that they or Bill Giles, a former Executive Vice President of The Phillies, created the Phanatic.  The truth is that other than wanting it to be named the Phanatic and to be family friendly, Giles and The Phillies had no input into the design and creation of the Phanatic.  In fact, while The Phillies allege that Mr. Giles envisioned the Phanatic to be green, Mr. Giles testified at his own deposition that he did not remember picking the color, that he may have "brainwashed" himself into thinking otherwise, and that he often took credit for the work of others.

5.      Instead Also, the real, undeniable facts—acknowledged by The Phillies in their course of ongoing work and dealings with H/E for over 40 years—are that H/E originally designed and created the Phanatic.  H/E are renowned designers who over the course of several decades, created countless iconic puppets, costumes, and other creations, including numerous Muppets characters and major sports league mascots.  Defendant Bonnie Erickson, while working for the legendary Jim Henson of Sesame Street and Muppets fame, created iconic characters, including Miss Piggy, among others.  In 1978, The Phillies first asked Jim Henson to create their mascot.  Mr. Henson declined, and personally recommended that The Phillies contact H/E to create The Phanatic.  H/E met with Phillies representatives—not Mr. Giles—early in 1978, and began working on the design and specifications for creation of the Phanatic.  In March of 1978, H/E entered into a written letter agreement (the "Letter Agreement") with The Phillies to create the Phanatic.  While The Phillies attach that this seminal Letter Agreement to the

3

Complaint as Exhibit B, they once again intentionally omit from the narrative in their Complaint that this early Letter Agreement contained express language that specifically provided "**The character [i.e., the Phanatic] will be copywritten by Harrison/Erickson . . . .**"  Once again, The Phillies are allergic to the real facts and bent on spreading half-truths throughout their Complaint.

6.      In accordance with their promises in the 1978 Letter Agreement, H/E completed their design and construction of the Phanatic, which debuted as The Phillies' mascot at The Phillies' ballpark on April 25, 1978.  And, as contemplated by the express terms of the 1978 Letter Agreement, H/E registered their copyright in the Phanatic with the U.S. Copyright Office in 1979.  It is telling that The Phillies never took issue with this H/E copyright or the Copyright Office registration until 40 years later, and then only after H/E exercised their express right under the United States Copyright law (in accordance with Section 203) to terminate the assignment of the copyright granted to The Phillies over 35 years ago in the 1984 Agreement.

7.      The Phillies, one of the most lucrative franchises in Major League Baseball, cannot deny with any integrity that they knew, or at least should have known, that H/E had the right to terminate the 1984 assignment of rights contained in the 1984 Agreement after 35 years in accordance with the plain language of the Copyright LawAct.  Section 203 of the Copyright Act provides that any transfer of copyright executed by the author(s) on or after January 1, 1978 may be terminated starting thirty-five (35) years from the date of execution of the grant.  17 U.S.C. § 203(a)(3).  In order to ensure that itsthis express legislation could not be overriddenabrogated by contract, Congress expressly made the termination right inalienable; it may be effectedexpressly providing in the statute that this termination right may be exercised by the copyright author "notwithstanding any agreement to the contrary."  17 U.S.C. § 203(a)(5).  If

4

management and counsel of The Phillies now say they were ignorant of the copyright law when they executed the 1984 Agreement, then ~~shame~~that unlikely scenario is their fault and no one ~~them~~else's.

8. In any event, H/E had the absolute right to terminate its 1984 Agreement and sent the appropriate timely notice of termination to The Phillies in early June ~~of~~ 2018, ~~and~~with an effective date of termination of June 15, 2020.  H/E properly recorded that termination notice with the U.S. Copyright Office, where it was duly recorded.  At the same time, H/E, through their representatives, made it clear ~~they~~to The Phillies from the day they sent the termination notice that H/E wanted to negotiate a re-granting of the Phanatic copyright to The Phillies for a fair price, to be negotiated.  ~~Indeed,~~, so that their creation could continue to bring joy to Phillies fans.  ~~n~~Negotiations proceeded for more than a year prior to **The Phillies bringing this lawsuit** ~~(and, including the ludicrous claims that the Phillies through Bill Giles were the creators of the Phanatic, or somehow joint owners of the Phanatic copyright, or that H/E's 40 year old registered copyright, never challenged to date, was invalid or improperly undertaken in 1979)__without any prior notice.__~~  And The Phillies did so in a rambling, factually flawed, disingenuous complaint that ignored critical contractual provisions, facts, and settled statutory law that puts the lie to their Complaint.  It was also made clear to The Phillies during this year-long negotiation process that H/E were very proud of the success of their creation and the joy the Phanatic ~~has~~ brought to Phillies fans and Philadelphians for more than 40 years.  This success was due in no small part to H/E's artistry and ~~continued~~ongoing work, support, cooperation, and other related artistic work~~s~~ regarding the Phanatic, which H/E provided to The Phillies continuing over the past 40 years (ending only upon the filing of the termination notice with The Phillies in ~~June~~ 2018).

5

9.      During these negotiations to re-grant the Phanatic copyright, The Phillies repeatedly said that the Phanatic had very little monetary value for The Phillies.  It was during a single negotiation session that Ms. Erickson made a reference to making the Phanatic a "free agent" was spoken, in a light moment during a courteous and civil face-to-face negotiation with The Phillies' management.  Rather than being a threat, this remark addressed, in baseball terms, the repeated negotiating position claimed by The Phillies that the Phanatic had very little economic or goodwill value to them.  As in baseball, the copyright rights in the Phanatic would be able to walk away from The Phillies once its contract (*i.e.*, the assignment of copyrights) ended upon the effective date of termination (June 15, 2020), if the parties could not reach a mutually acceptable price for H/E re-granting the Phanatic rights to The Phillies.  That was the context for the entire "free agent" thought, expressed in a sentence at most, during a long, confidential negotiation session.  To stretch this innocent, singular play on words into an imminent threat to be enjoined is bizarre, and reflects the hyperbolic, empty rhetoric that permeates the Complaint.  Likewise, for The Phillies to try to bolster its spurious "free agent" argument by referencing a completely unrelated H/E transaction with the Montreal Canadiens regarding H/E's Youppi! character is even more ridiculous, given that the circumstances of H/E was not even a party to that transaction, and its circumstances—a sports franchise leaving town and voluntarily agreeing to give up its mascot for a new mascot—were entirely different.  Plus, The Phillies ignored their promise, which they insisted on at the commencement of talks, to keep the substance of the negotiations with H/E confidential.

10.      In accordance with Section 203 of the Copyright Act, effective June 15, 2020, The Phillies' rights in the Phanatic copyright were terminated, and reverted to H/E pursuant to the express provisions of the Copyright Act.  Knowing that H/E's termination of the assignment

6

contained in the 1984 Agreement became effective as of June 15, 2020, The Phillies are attempting to circumvent the clear termination provisions of the Copyright Act by *inter alia*, producing a shoddy knock-off of the Phanatic devoid of new, original creative expression.  Like common counterfeiters, The Phillies are now actively engaging in theft of H/E's intellectual property, and trying to use this falsely premised litigation as cover.

11.    The Phillies are also continuing to reproduce, sell, and authorize the sale of merchandise featuring H/E's early portrayals of the Phanatic, which The Phillies do not own.  Now that the 1984 Agreement has terminated, all of those existing reproductions and portrayals have reverted to and are owned and/or exclusively controlled by H/E.  In other words, The Phillies are continuing to profit off H/E's creative work for free and without any legal right to do so, and without paying for the lawful exploitation of H/E's intellectual property. The Phillies' organization is effectively stealing H/E's intellectual property and trying to get away with it.

12.    10. The facts are—and Defendants will prove—that The Phillies' claims in this action are all built on half-truths, distortions of fact and law, and incomplete snippets of confidential settlement communications.  This lawsuit never should have been filed by The Phillies, and it is H/E, not The Phillies, who are entitled to a declaratory judgment that: (i) their termination notice is valid; (ii) and that H/E are the sole authors and owners of the Phanatic; and (iii) after the termination notice's effective date (in June 2020), H/E are entitled to use.  And now that the 1984 Phanatic copyright grant terminated, The Phillies must answer in damages for their unlawful use of H/E's copyrighted works and be enjoined by this Court from causing further harm to H/E and their copyrighteds work as they see fit and The Phillies may not use it whatsoever absent H/E's permission.

**ANSWERING THE INTRODUCTION SECTION OF THE COMPLAINT**

7

13. ~~11.~~ Defendants deny the truth of the allegations in paragraph "1" of the Complaint, and refer to paragraphs 1 through 1~~0~~2 of this Answer.

14. ~~12.~~ Defendants deny the truth of the allegations in paragraph "2" of the Complaint, and refer to paragraphs 1 through 1~~0~~2 of this Answer.

15. ~~13.~~ Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "3" of the Complaint and on that basis deny said allegations, and refer to paragraphs 1 through 1~~0~~2 of this Answer.

16. ~~14.~~ Defendants deny the truth of the allegations in paragraph "4" of the Complaint.

17. ~~15.~~ Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "5" of the Complaint and on that basis deny said allegations, and refer to 1984 Agreement for the terms thereof.

18. ~~16.~~ Defendants deny the truth of the allegations in paragraph "6" of the Complaint, and refer to the 1984 Agreement for the terms thereof.

19. ~~17.~~ Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "7" of the Complaint and on that basis deny said allegations.

20. ~~18.~~ Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "8" of the Complaint and on that basis deny said allegations.

21. ~~19.~~ Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "9" of the Complaint and on that basis deny said allegations.

22. ~~20.~~ Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "10" of the Complaint and on that basis deny said allegations.

23. 21. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "11" of the Complaint and on that basis deny said allegations, and specifically deny the legal conclusions therein.

24. 22. Defendants admit only that H/E's attorneys sent a termination notice by letter to The Phillies in June of 2018 terminating the 1984 Agreement in accordance with Section 203 of the Copyright Act, and refer to that letter for the contents thereof, and otherwise deny the truth of the allegations in paragraph "12" of the Complaint, and further refer to the 1984 Agreement for the terms thereof, and to paragraphs 1 through 102 of this Answer.

25. 23. Defendants deny the truth of the allegations in paragraph "13" of the Complaint.

26. 24. Defendants deny the truth of the allegations in the first sentence of paragraph "14" of the Complaint, refer the Court to the statute referenced in paragraph "14" of the Complaint, and lack knowledge or information sufficient to form a belief as to the truth of the allegations in the final sentence of paragraph "14" of the Complaint and on that basis deny said allegations, and otherwise deny the truth of the allegations in paragraph "14" of the Complaint.

27. 25. Defendants deny the truth of the allegations in paragraph "15" of the Complaint.

28. 26. Defendants deny the truth of the allegations in paragraph "16" of the Complaint, and refer to paragraphs 1 through 102 of this Answer, and further refer to *inter alia*, Exhibit B to the Complaint.

29. 27. Defendants deny the truth of the allegations in paragraph "17" of the Complaint, and refer to paragraphs 1 through 102 of this Answer.

9

30. ~~28.~~ Paragraph "18" of the Complaint is a legal argument to which no response is required, and to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "18" of the Complaint.

31. ~~29.~~ Paragraph "19" of the Complaint is a legal argument to which no response is required, and to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "19" of the Complaint.

32. ~~30.~~ Paragraph "20" of the Complaint is a legal argument to which no response is required, and to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "20" of the Complaint.

33. ~~31.~~ Paragraph "21" of the Complaint is a legal argument to which no response is required, and to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "21" of the Complaint.

## ANSWERING THE PARTIES SECTION

34. ~~32.~~ Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "22" of the Complaint and on that basis deny said allegations.

35. ~~33.~~ Defendants only admit the allegations in the first sentence in paragraph "23" of the Complaint that Harrison/Erickson, Incorporated, is a New York Corporation, having its principal place of business at 62 Pierrepont Street, Brooklyn, NY 11201, and otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence in paragraph 23 of the Complaint and on that basis deny said allegations.

36. ~~34.~~ Defendants deny the truth of the allegations in paragraph "24" of the Complaint.

37. ~~35.~~ Defendants admit the part of paragraph "25" of the Complaint that alleges that Wayde Harrison is an individual residing in Brooklyn and otherwise lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph "25" of the Complaint and on that basis deny said allegations.

38. ~~36.~~ Defendants admit the part of paragraph "26" of the Complaint that alleges that Bonnie Erickson is an individual residing in Brooklyn and otherwise lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph "26" of the Complaint and on that basis deny said allegations.

**ANSWERING THE JURISDICTION AND VENUE SECTION**

39. ~~37.~~ Defendants refer the Court to the Statutes referred to in paragraph "27" of the Complaint that establish subject matter jurisdiction over cases and controversies arising under the Copyright Act and Lanham Act, and otherwise deny the truth of the allegations in paragraph "2~8~7" of the Complaint.

40. ~~38.~~ Defendants refer the Court to the Statute referred to in paragraph "28" of the Complaint, and otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "28" of the Complaint and on that basis deny said allegations.

41. ~~39.~~ Defendants refer the Court to the Statute referred to in paragraph "29" of the Complaint, and otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "29" of the Complaint and on that basis deny said allegations.

42. ~~40.~~ Defendants deny the truth of the allegations in paragraph "30" of the Complaint, except admit only that on June 15, 2018  H/E's attorneys sent a proper termination

letter to The Phillies which ~~will~~has terminate~~d~~ the Phanatic copyright rights in accordance with 17 USC § 203, and refer to that statute for its content.

43. ~~41.~~ Defendants deny the truth of the allegations in paragraph "31" of the Complaint, and aver that they will enforce their rights upon termination of the 1984 Assignment of the Phanatic copyright.

44. ~~42.~~ Defendants deny the truth of the allegations in paragraph "32" of the Complaint.

45. ~~43.~~ Paragraph "33" of the Complaint contains legal conclusions to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "33" of the Complaint.

46. ~~44.~~ Paragraph "34" of the Complaint contains legal conclusions to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "34" of the Complaint.

## ANSWERING THE FACTS SECTION

47. ~~45.~~ Defendants deny the truth of the allegations in paragraph "35" of the Complaint, and refer to paragraphs 1 through 1~~0~~2 of this Answer.

48. ~~46.~~ With respect to paragraph "36" of the Complaint, Defendants admit only that on February 14, 1978, H/E spoke with Frank Sullivan and otherwise deny the truth of the allegations in paragraph "36" of the Complaint, and refer to paragraphs 1 through 1~~0~~2 of this Answer.

49. ~~47.~~ With respect to paragraph "37" Defendants admit that H/E entered into the agreement attached to the Complaint as Exhibit B and respectfully refer the Court to that

12

Agreement for the terms thereof, and otherwise deny the truth of the allegations in paragraph "37" of the Complaint, and refer to paragraphs 1 through 102 of this Answer.

50. Defendants deny the truth of the allegations in paragraph "38" of the Complaint, and refer to paragraphs 1 through 102 of this Answer.

51. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "39" of the Complaint and on that basis deny said allegations.

52. Defendants deny the truth of the allegations in paragraph "40" of the Complaint, and refer to paragraphs 1 through 102 of this Answer, and further aver that H/E asked for a Phillies shirt and cap for reference, not at the suggestion of Giles.

53. Defendants deny the truth of the allegations in paragraph "41" of the Complaint, and refer to paragraphs 1 through 102 of this Answer.

54. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "42" of the Complaint and on that basis deny said allegations.

55. Defendants admit only that H/E delivered the original Phanatic work of art that they created to The Phillies in April 1978, and otherwise deny the truth of the allegations in paragraph "43" of the Complaint.

56. Defendants deny the truth of the allegation in paragraph "44" of the Complaint that "the Club had decided that the Phanatic would be mute" and aver that H/E and not The Phillies designed the Phanatic to be mute, and otherwise lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph "44" of the Complaint and on that basis deny said allegations.

13

57. 55. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "45" of the Complaint and on that basis deny said allegations, and admit only that H/E's original Phanatic work of art debuted on April 25, 1978.

58. 56. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "46" of the Complaint and on that basis deny said allegations, and refer to the referenced affidavit in this paragraph of the Complaint for the full contents thereof.

59. 57. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "47" of the Complaint and on that basis deny said allegations, and further answering refer to the terms of the July 15, 1978 Agreement, attached to the Complaint as Exhibit C for the terms thereof.

60. 58. Answering Paragraph "48" of the Complaint, the Defendants admit that The Phillies and H/E entered into the July 15, 1978 Agreement attached to the Complaint as Exhibit C and refer to that agreement for the terms thereof, and further aver that paragraph 3 of the July 15, 1978 Agreement provides that "Copies of all Licensed Articles made by you [The Phillies], or presently in your possession or control, shall bear copyright notice in our [H/E's] name in the proper location as follows: © 1978 Harrison Erickson"; and otherwise deny the remaining allegations in paragraph "48" of the Complaint.

61. 59. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "49" of the Complaint and on that basis deny said allegations.

62. 60. Answering paragraph "50" of the Complaint, H/E sued The Phillies in 1979 for copyright infringement because, *inter alia*, The Phillies, granted only reproduction rights,

14

were producing inferior quality Phanatic merchandise without H/E's required approval in violation of the March 17, 1978 and the July 15, 1978 Agreements, and The Phillies indisputably knew based on the complaint in that case that H/E had duly registered the Phanatic at the U.S. Copyright Office as "an artistic sculpture," a term that was used again in the 1984 Agreement; and for 41 years The Phillies never claimed that the copyright registration was improper, never mind fraudulent, and Defendants admit that H/E commenced the action identified in Paragraph "50" of the Complaint, and otherwise deny the truth of the allegations in paragraph "50" of the Complaint.

63. 61. Defendants deny the truth of the allegations in paragraph "51" of the Complaint.

64. 62. Defendants refer to the Erickson Affidavit and exhibits attached thereto for the full contents thereof, and otherwise deny the truth of the allegations in paragraph "52" of the Complaint.

65. 63. Defendants refer to the Erickson Affidavit and exhibits attached thereto for the full contents thereof, and otherwise deny the truth of the allegations in paragraph "53" of the Complaint.

66. 64. Defendants refer to H/E's Copyright Office registration for the full contents thereof, and otherwise deny the truth of the allegations in paragraph "54" of the Complaint.

67. 65. Defendants refer to H/E's Copyright Office registration for the full contents thereof, and otherwise deny the truth of the allegations in paragraph "55" of the Complaint.

68. 66. Defendants refer to H/E's Copyright Office registration certificate attached to the Erickson Affidavit for the full contents thereof, and otherwise deny the truth of the allegations in paragraph "56" of the Complaint.

15

69. 67. Defendants deny the truth of the allegations in paragraph "57" of the Complaint.

70. 68. Defendants admit H/E settled the 1979 SDNY Litigation, and otherwise deny the truth of the allegations in paragraph "58" of the Complaint.

71. 69. Defendants refer to the Erickson Affidavit for the full contents thereof, and otherwise deny the truth of the allegations in paragraph "59" of the Complaint.

72. 70. Defendants refer to the November 26, 1979 Agreement, attached as Exhibit F to the Complaint, for the full contents thereof, and otherwise deny the truth of the allegations in paragraph "60" of the Complaint.

73. 71. Defendants refer to the November 26, 1979 Agreement, attached as Exhibit F to the Complaint, for the full contents thereof, lack knowledge or information sufficient to form a belief as to the truth of the allegations in the last sentence of paragraph "61" of the Complaint, and on that basis deny said allegation, and otherwise deny the truth of the remaining allegations in paragraph "61" of the Complaint.

74. 72. Defendants deny the truth of the allegations in paragraph "62" of the Complaint, refer to paragraphs 1 through 102 of this Answer, and refer to the 1984 Agreement attached as Exhibit G to the Complaint for the full contents thereof.

75. 73. Defendants deny the truth of the allegations in paragraph "63" of the Complaint, refer to paragraphs 1 through 102 of this Answer, and refer to the 1984 Agreement attached as Exhibit G to the Complaint for the full contents thereof.

76. 74. Defendants deny the truth of the allegations in paragraph "64" of the Complaint, and refer to the 1984 Agreement attached as Exhibit G to the Complaint for the full contents thereof.

16

77. 75. Defendants deny the truth of the allegations in paragraph "65" of the Complaint, and refer to the 1984 Agreement attached as Exhibit G to the Complaint for the full contents thereof.

78. 76. Defendants deny the truth of the allegations in paragraph "66" of the Complaint, refer to paragraphs 1 through 102 of this Answer, and refer to the 1984 Agreement attached as Exhibit G to the Complaint for the full contents thereof.

79. 77. Defendants deny the truth of the allegations in paragraph "67" of the Complaint, refer to paragraphs 1 through 102 of this Answer, and refer to the 1984 Agreement attached as Exhibit G to the Complaint for the full contents thereof.

80. 78. Defendants deny the truth of the allegations in paragraph "68" of the Complaint, refer to paragraphs 1 through 102 of this Answer, and refer to the 1984 Agreement attached as Exhibit G to the Complaint for the full contents thereof.

81. 79. Defendants deny the truth of the allegations in paragraph "69" of the Complaint.

82. 80. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "70" of the Complaint and on that basis deny said allegations.

83. 81. Defendants deny the truth of the allegations in paragraph "71" of the Complaint.

84. 82. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "72" of the Complaint and on that basis deny said allegations.

17

85. 83. Defendants deny the truth of the allegations in paragraph "73" of the Complaint.

86. 84. Defendants deny the truth of the allegations in the first sentence of paragraph "74" of the Complaint, and refer to paragraphs 1 through 102 of this Answer, and lack knowledge or information sufficient to form a belief as to the truth of the rest of the allegations in paragraph "74" of the Complaint and on that basis deny said allegations.

87. 85. Defendants deny the truth of the allegations in paragraph "75" of the Complaint.

88. 86. Defendants deny the truth of the allegations in paragraph "76" of the Complaint, except admit only that on June 15, 2018 H/E's attorneys sent a proper termination letter to The Phillies which will has terminated the Phanatic copyright in accordance with 17 USC § 203, and refer to such letter for the complete contents thereof.

89. 87. Defendants deny the truth of the allegations in paragraph "77" of the Complaint, and refer to paragraphs 1 through 102 of this Answer.

90. 88. Defendants deny the truth of the allegations in paragraph "78" of the Complaint, and refer to paragraphs 1 through 102 of this Answer.

91. 89. Defendants deny the truth of the allegations in paragraph "79" of the Complaint, and refer to paragraphs 1 through 102 of this Answer, and further aver that H/E will seek all legal remedies available to it if for The Phillies' use of the Phanatic in violation of the termination of the 1984 grant of rights.

92. 90. Paragraph "80" of the Complaint is a legal conclusion to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "80" of the Complaint.

18

**ANSWERING COUNT I:**

**(Declaratory Judgment that H/E Does Not Have a Right to Terminate the 1984 Agreement)**

93. ~~91.~~ Defendants reallege the forgoing responses to the Complaint as if set forth fully herein.

94. ~~92.~~ Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "82" of the Complaint and on that basis deny said allegations.

95. ~~93.~~ Answering paragraph "83" of the Complaint, Defendants admit that the Phanatic debuted on April 25, 1978.

96. ~~94.~~ Answering paragraph "84" of the Complaint, Defendants admit that H/E entered into the July 15, 1978 Letter Agreement attached to the Complaint as Exhibit C and refer to that agreement for the full contents thereof, and otherwise deny the truth of the allegations set forth in paragraph "84" of the Complaint.

97. ~~95.~~ Answering paragraph "85" of the Complaint, Defendants admit that H/E entered into the November 26, 1979 agreement attached to the Complaint as Exhibit F and refer to that agreement for the full contents thereof, and otherwise deny the truth of the allegations set forth in paragraph "85" of the Complaint.

98. ~~96.~~ Defendants deny the truth of the allegations in paragraph "86" of the Complaint.

99. ~~97.~~ Defendants deny the truth of the allegations in paragraph "87" of the Complaint

19

100. 98. Paragraph "88" of the Complaint is a legal conclusion to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "88" of the Complaint.

101. 99. Paragraph "89" of the Complaint is a legal conclusion to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "89" of the Complaint.

102. 100. Paragraph "90" of the Complaint is a legal conclusion to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "90" of the Complaint.

103. 101. Paragraph "91" of the Complaint is a legal conclusion to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "91" of the Complaint.

104. 102. Paragraph "92" of the Complaint is a legal conclusion to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "92" of the Complaint.

105. 103. Paragraph "93" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "93" of the Complaint.

**ANSWERING COUNT II:**

**(Declaratory Judgment for Fraud on the Copyright Office)**

106. 104. Defendants reallege the forgoing responses to the Complaint as if set forth fully herein.

107. ~~105.~~ Defendants deny the truth of the allegations in paragraph "95" of the Complaint.

108. ~~106.~~ Defendants deny the truth of the allegations in paragraph "96" of the Complaint.

109. ~~107.~~ Defendants deny the truth of the allegations in paragraph "97" of the Complaint.

110. ~~108.~~ Defendants deny the truth of the allegations in paragraph "98" of the Complaint.

111. ~~109.~~ Defendants deny the truth of the allegations in paragraph "99" of the Complaint.

112. ~~110.~~ Answering paragraph "100" of the Complaint, Defendants refer to the complete Copyright Office registration for the Phanatic for the contents thereof, and otherwise deny the truth of the allegations in paragraph "100" of the Complaint.

113. ~~111.~~ Defendants deny the truth of the allegations in paragraph "101" of the Complaint.

114. ~~112.~~ Defendants deny the truth of the allegations in paragraph "102" of the Complaint.

115. ~~113.~~ Defendants deny the truth of the allegations in paragraph "103" of the Complaint.

116. ~~114.~~ Paragraph "104" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "104" of the Complaint.

117. ~~115.~~ Paragraph "105" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "105" of the Complaint.

118. ~~116.~~ Paragraph "106" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "103~~6~~" of the Complaint.

## ANSWERING COUNT III:

**(Declaratory Judgment That Section 203 Does Not Provide H/E with the Right to the Club's Rights as a Joint Author of the Phanatic Costume)**

119. ~~117.~~ Defendants reallege the forgoing responses to the Complaint as if set forth fully herein.

120. ~~118.~~ Defendants deny the truth of the allegations in paragraph "108" of the Complaint.

121. ~~119.~~ Defendants deny the truth of the allegations in paragraph "109" of the Complaint.

122. ~~120.~~ Defendants deny the truth of the allegations in paragraph "110" of the Complaint.

123. ~~121.~~ Defendants deny the truth of the allegations in paragraph "111" of the Complaint.

124. ~~122.~~ Defendants deny the truth of the allegations in paragraph "112" of the Complaint.

125. ~~123.~~ Paragraph "113" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "113" of the Complaint.

22

126. ~~124.~~ Paragraph "114" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "114" of the Complaint.

### ANSWERING COUNT IV:

### (Declaratory Judgment That Section 203 Does Not Provide H/E with the Right to Terminate the Club's Rights as Author of the Phanatic's Character)

127. ~~125.~~ Defendants reallege the forgoing responses to the Complaint as if set forth fully herein.

128. ~~126.~~ Defendants deny the truth of the allegations in paragraph "116" of the Complaint.

129. ~~127.~~ Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "117" of the Complaint and on that basis deny the truth of the said allegations.

130. ~~128.~~ Defendants deny the truth of the allegations in paragraph "118" of the Complaint.

131. ~~129.~~ Defendants deny the truth of the allegations in paragraph "119" of the Complaint.

132. ~~130.~~ Defendants deny the truth of the allegations in paragraph "120" of the Complaint.

133. ~~131.~~ Paragraph "121" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "121" of the Complaint.

134. ~~132.~~ Paragraph "122" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "122" of the Complaint.

## ANSWERING COUNT V:

### (Declaratory Judgment that the Club has the Right to Utilize Derivative Works under 17 U.S.C. §203(B)(1))

135. ~~133.~~ Defendants reallege the forgoing responses to the Complaint as if set forth fully herein.

136. ~~134.~~ Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "124" of the Complaint and on that basis deny said allegations.

137. ~~135.~~ Defendants deny the truth of the allegations in paragraph "125" of the Complaint, and refer to paragraphs 1-12 of this Answer the allegations in support of Defendants' Counterclaims.

138. ~~136.~~ Defendants deny the truth of the allegations in paragraph "126" of the Complaint, and refer to paragraphs 1-12 of this Answer the allegations in support of Defendants' Counterclaims.

139. ~~137.~~ Paragraph "127" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "127" of the Complaint.

140. ~~138.~~ Paragraph "128" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "128" of the Complaint.

141. Paragraph "129" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "129" of the Complaint.

## ANSWERING COUNT VI

### (Declaratory Judgment and Permanent Injunction Pursuant to
### Sections 32 and 43 of the Lanham)

142. ~~139.~~ Defendants reallege the forgoing responses to the Complaint as if set forth fully herein.

143. ~~140.~~ Defendants deny the truth of the allegations in paragraph "131" of the Complaint.

144. ~~141.~~ Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "132" of the Complaint and on that basis deny said allegations.

145. ~~142.~~ Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "133" of the Complaint and on that basis deny said allegations.

146. ~~143.~~ Defendants deny the truth of the allegations in paragraph "134" of the Complaint and aver that there was no actionable threat made by H/E, or any real threat at all.

147. ~~144.~~ Defendants deny the truth of the allegations in paragraph "135" of the Complaint.

148. ~~145.~~ Paragraph "136" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "136" of the Complaint.

149. ~~146.~~ Defendants deny the truth of the allegations in paragraph "137" of the Complaint.

150. ~~147.~~ Defendants deny the truth of the allegations in paragraph "138" of the Complaint.

26

151. ~~148.~~ Defendants deny the truth of the allegations in paragraph "139" of the Complaint.

152. ~~149.~~ Defendants deny the truth of the allegations in paragraph "140" of the Complaint.

153. ~~150.~~ Defendants deny the truth of the allegations in paragraph "141" of the Complaint.

154. ~~151.~~ Paragraph "142" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "142" of the Complaint.

155. ~~152.~~ Paragraph "143" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "143" of the Complaint.

## ANSWERING COUNT VII

### (Unjust Enrichment)

156. ~~153.~~ Defendants reallege the forgoing responses to the Complaint as if set forth fully herein.

157. ~~154.~~ Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "145" of the Complaint and aver that The Phillies never raised that issue during any such negotiations.

158. ~~155.~~ Defendants deny the truth of the allegations in paragraph "146" of the Complaint.

159. ~~156.~~ Defendants deny the truth of the allegations in paragraph "147" of the Complaint.

160. ~~157.~~ Defendants deny the truth of the allegations in paragraph "148" of the Complaint.

161. ~~158.~~ Defendants deny the truth of the allegations in paragraph "149" of the Complaint.

162. ~~159.~~ Defendants deny the truth of the allegations in paragraph "150" of the Complaint.

## ANSWERING COUNT VIII

### (Breach of the Covenant of Good Faith and Fair Dealing)

163. ~~160.~~ Defendants reallege the forgoing responses to the Complaint as if set forth fully herein.

164. ~~161.~~ Paragraph "152" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "152" of the Complaint.

165. ~~162.~~ Paragraph "153" of the Complaint" is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "153" of the Complaint.

166. ~~163.~~ Defendants deny the truth of the allegations in paragraph "154" of the Complaint.

167. ~~164.~~ Defendants deny the truth of the allegations in paragraph "155" of the Complaint.

168. ~~165.~~ Defendants are not required to respond to the headings in the Complaint which do not have paragraph numbers, but to the extent a response is deemed required Defendants deny the truth of the allegations in each said heading.

169. ~~166.~~ Defendants deny that The Phillies are entitled to any of the relief requested in the Complaint's "Prayer for Relief."

## DEFENSES

Without waiving or excusing the burden of proof of The Phillies, or admitting that Defendants have any burden of proof, Defendants assert the following affirmative and other defenses. Defendants do not presently know all facts and circumstances with respect to The Phillies' allegations, and thereby reserve the right to amend this Answer should they later discover facts demonstrating the existence of additional defenses.

### FIRST DEFENSE

### (Failure to State a Claim)

1. The Complaint and any purported claims for relief therein fail to state a claim upon which relief can be granted.

### SECOND DEFENSE

### (Statute of Limitations)

2. The Complaint and any purported claims for relief therein are barred, precluded, and/or limited by the statute of limitations, including but not limited to 17 U.S.C. § 507 and N.Y. C.P.L.R. § 213.

### THIRD DEFENSE

### (Laches)

3. The Complaint and any purported claims for relief therein are barred, in whole or in part, by the doctrine of laches. To the extent The Phillies contests Defendants' lawful exercise of their copyright law (*i.e.*, federal statutory) right of termination, Copyright Office registration of the Phanatic copyright rights, and/or ownership interests in the Phanatic work, The Phillies did not take reasonable steps to inform Defendants of its subjective beliefs and unreasonably delayed in informing Defendants of its purported claims.

30

## FOURTH DEFENSE

### (Estoppel)

4.     The Complaint and any purported claims for relief therein are barred, in whole or in part, by the doctrine of estoppel.  To the extent The Phillies contests Defendants' lawful exercise of their copyright law (*i.e.*, federal statutory) right of termination, Copyright Office registration of the Phanatic copyright rights, and/or copyright ownership interests in the Phanatic work, The Phillies did not take reasonable steps to inform Defendants of its subjective beliefs and instead, made numerous representations to Defendants that are contrary to the allegations in the Complaint, to Defendants' detriment.

## FIFTH DEFENSE

### (Waiver)

5.     The Complaint and any purported claims for relief therein are barred, in whole or in part, because The Phillies have, through its own actions, conduct, and failure to act, waived any right to relief.

## SIXTH DEFENSE

### (Injunctive/Declaratory Relief Improper)

6.     Any claims by The Phillies for equitable relief are barred because The Phillies have an adequate and complete remedy at law, and/or cannot make the other requisite showings to obtain equitable relief, including but not limited to injunctive relief or declaratory relief.

## SEVENTH DEFENSE

### (Copyright Misuse)

7.     The Complaint and any purported claims for relief therein are barred, in whole or in part, by the doctrine of copyright misuse.

31

**EIGHTH DEFENSE**

**(Trademark Misuse)**

8.        The Phillies' claim under Count VI is barred, in whole or in part, by the doctrine of trademark misuse.

**NINTH DEFENSE**

**(Dastar Rule)**

9.        The Phillies' claim under Count VI is barred, in whole or in part, by the Supreme Court's holding in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003).

**TENTH DEFENSE**

**(Lack of Subject Matter Jurisdiction)**

10.        The Court lacks subject matter jurisdiction over Counts ~~V and~~ VI to the extent that The Phillies fail to allege any case or controversy.

**ELEVENTH DEFENSE**

**(Statutory Standing)**

11.        The Phillies' claims under Counts ~~V and~~ VI are barred, in whole or in part, because The Phillies lack standing under the Declaratory Judgments Act, 28 U.S.C. § 2201.

**TWELFTH DEFENSE**

**(Article III Standing)**

12.        The Phillies' claims under Counts ~~V and~~ VI are barred, in whole or in part, because The Phillies' lack standing under Article III of the United States Constitution.

## THIRTEENTH DEFENSE

### (Ratification/Acquiescence/Abandonment/Forfeiture)

13.     The Complaint and any purported claims for relief therein are barred, in whole or in part, by the doctrines of ratification, acquiescence, abandonment, and/or forfeiture.

## FOURTEENTH DEFENSE

### (Preemption by Federal Law)

14.     The Phillies' claims under Count VII and VIII are preempted by the U.S. Copyright Act, *see* 17 U.S.C. § 301.

## FIFTEENTH DEFENSE

### (No Damages)

15.     The Phillies' claims to damages under Counts VII and VIII are barred, in whole or in part, because The Phillies have not suffered any damage or injury as a result of any act or conduct by Defendants.

## SIXTEENTH DEFENSE

### (Damages Too Speculative)

16.     The Phillies' claims to damages under Counts VII and VIII are barred, in whole or in part, because damages sought are too speculative and remote.

## SEVENTEENTH DEFENSE

### (Failure to Mitigate)

17.     The Phillies' claims to damages under Counts VII and VIII are barred, in whole or in part, because The Phillies have failed to mitigate any alleged damages.

33

**EIGHTEENTH DEFENSE**

**(Good Faith)**

18.     Count VII and VIII are barred, in whole or in part, because Defendants acted in good faith in all of their dealings with The Phillies.  Defendants have dealt honestly and fairly with The Phillies; The Phillies' alleged ignorance of Defendants' statutory termination right under U.S. copyright law is a problem of The Phillies' own making.

**NINETEENTH DEFENSE**

**(Bad Faith)**

19.     The Complaint and any purported claims for relief therein are barred, in whole or in part, as a result of The Phillies' bad faith.

**TWENTIETH DEFENSE**

**(Unclean Hands)**

20.     The Phillies have not come to Court with clean hands and thus, the Complaint and any purported claims for relief therein are barred, in whole or in part, by the doctrine of unclean hands.

**TWENTY-FIRST DEFENSE**

**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

21.     The Complaint and any purported claims for relief therein are barred due to the fact that The Phillies, by their own acts and/or omissions, breached the covenant of good faith and fair dealing implied in its agreements with Defendants.

### TWENTY-SECOND DEFENSE

**(First Amendment)**

22.     The Phillies' claim under Count VI is barred, in whole or in part, by the First Amendment to the U.S. Constitution.

### TWENTY-THIRD DEFENSE

**(Fair Use)**

23.     The Phillies' claim under Count VI is barred, in whole or in part, by the fair use defense.

### TWENTY-FOURTH DEFENSE

**(Breach and Default by Plaintiff)**

24.     Defendants have substantially performed any and all contractual obligations, and any duty or performance on behalf of Defendants is excused by The Phillies' own actions, breaches, and defaults, including but not limited to those specified in Defendants' counterclaims.


WHEREFORE, Defendants request that the Court issue a judgment in their favor; order that The Phillies are not entitled to any relief on any of their claims; and order that Defendants are entitled to a judgment in their favor for their reasonable attorneys' fees and full costs, including under 17 U.S.C. § 505.

## COUNTERCLAIMS

Defendants and Counterclaim Plaintiffs Harrison/Erickson Incorporated, Harrison Erickson, a partnership, Wayde Harrison, and Bonnie Erickson (collectively, "Counterclaim Plaintiffs"), by and through their undersigned counsel, hereby allege, on personal knowledge as to matters relating to themselves and on information and belief as to all other matters, as follows:

### PARTIES

1.      Counterclaim Plaintiffs repeat and reallege paragraphs 1-102 of their Answer, and also incorporate into these counterclaims the denials, averments, and defenses set forth in response to The Phillies' Complaint.

2.      Counterclaim Plaintiff Bonnie Erickson is a designer of puppets, costumes, toys, and graphics, best known for her work as Head of the Muppet Workshop with Jim Henson.  With her husband, Counterclaim Plaintiff Wayde Harrison, she is a partner in Counterclaim Plaintiff Harrison/Erickson.  Counterclaim Plaintiffs are all domiciled in Brooklyn, New York.

3.      Erickson and Harrison authored the "Phanatic" at the request of The Phillies Major League Baseball team.  Counterclaim Defendant The Phillies is a Pennsylvania limited partnership, which is trying to subvert the letter and intent of the Copyright Act by attempting to prevent Harrison and Erickson from terminating an assignment of the copyrights authored and owned by Harrison and Erickson to the Phanatic, under 17 U.S.C. § 203.

### JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of the action pursuant to 28 U.S.C. §§ 1331 and 1338 because the counterclaims arise under the Copyright Act.

5.      An actual controversy exists between the parties because The Phillies have wrongly claimed an ownership interest in the Phanatic as a purported copyright author of the

36

mascot and of an associated "character."  The Phillies have also wrongly claimed that a notice of termination served by Counterclaim Plaintiffs on The Phillies and, instructing that athe October 31, 1984 Assignment of the copyright to the Phanatic from Counterclaim Plaintiffs to The Phillies will terminate (and now has terminated) on June 15, 2020 under 17 U.S.C. § 203, in June 2020, is invalid.  Thus, the Court has subject matter jurisdiction under 28 U.S.C. § 2201.

6.      This Court has personal jurisdiction over The Phillies pursuant to N.Y.C.P.L.R. § 302.  The Phillies transact business within the state and enter contracts to supply goods or services in the state.  The Phillies have further consented to jurisdiction in this District by filing the instant lawsuit in this District.

7.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400 because a substantial part of the events giving rise to the counterclaims occurred in this District.

**FACTS**

8.      Termination rights—which provide authors with an opportunity to reclaim copyright rights and/or renegotiate with an assignee for additional monies 35 years after the rights are assigned—were added by Congress to the 1976 Copyright Act to protect individual artists such as Harrison and Erickson by allowing them to recapture the value of their works.  Artists deserve statutory protection to reclaim their rights because they create artistic works that enormously benefit the public.

9.      Counterclaim Plaintiffs lawfully exercised their termination right under the Copyright Act.  Concurrently, H/E informed The Phillies that they wanted to renegotiate a re-granting of the rights to the Phanatic for future use of the Phanatic copyright for fair value.  Over the thirty five years subsequent to the grant of rights in the 1984 Agreement, The Phanatic earned millions of dollars for The Phillies and their assignees, and the Phanatic has been

recognized as one of the best and most popular mascots in all of sports—a value, longevity, and recognition that was not, and could not have been, predicted in its early years.  While the Phanatic was an immediate hit, its popularity has grown beyond any reasonable prediction, and no one could have reasonably known the enormous and enduring impact that the mascot would make on The Phillies, the city of Philadelphia, and Major League Baseball.  Having properly terminated the 35-year-old grant to The Phillies in accordance with the express provisions of the Copyright Act, and wanting the Phanatic to remain in Philadelphia where they believe it belongs, Counterclaim Plaintiffs hoped to negotiate fair compensation for the further grant to The Phillies the right to continue to use their artistic creation, the Phanatic. While in the midst of negotiations however, The Phillies without any prior notice commenced this action.  Now that the termination of the grant is effective, The Phillies are trying to misappropriate Counterclaim Plaintiffs' intellectual property without paying any compensation for H/E's decades-old registered copyright in the Phanatic.

10.     Counterclaim Plaintiffs did not simply design a costume, but also provided The Phillies with a fully integrated character.  Counterclaim Plaintiffs, not The Phillies, who were hesitant about even introducing a new mascot at the time, took action to ensure that the Phanatic mascot would last. Counterclaim Plaintiffs gave direction to Dave Raymond—the first actor to perform as the Phanatic—on how to interpret that character, and created hundreds of illustrations and other portrayals of the Phanatic that embody and promote that character.  The rights to all of those illustrations and other portrayals of the Phanatic were granted to The Phillies under the 1984 Agreement.  Because Counterclaim Plaintiffs have lawfully terminated the grant of rights in the 1984 Agreement pursuant to Section 203 of the Copyright Act, and because The Phillies have been unwilling or unable to negotiate with Counterclaim Plaintiffs a fair payment reflecting

38

the value of a new grant of rights, all of those rights have lapsed, reverting to Counterclaim Plaintiffs.

11.    8. The Phillies have known and conceded for four decades that they did not author or initially own the copyrights in the Phanatic and the countless early illustrations and other portrayals of the Phanatic.  They admitted as much in the exhibits attached to their own Complaint in this action, which are binding agreements concerning copyright authorship and ownership, and the exploitation of the Phanatic.  Only after Counterclaim Plaintiffs served The Phillies with a valid termination notice under 17 U.S.C. § 203, in 2018, did The Phillies concoct theories as to why they should be declared an original author of the Phanatic, solely in an attempt to deny Counterclaim Plaintiffs their lawful termination rights and continue using the Phanatic without authorization or payment to Counterclaim Plaintiffs.

9. The purpose of termination of assignments under the Copyright Act is to provide authors with an opportunity 35 years later to reclaim rights and/or negotiate with an original assignee, for additional monies, for a term extended beyond the 35 year term.  There is nothing unfair about this statutory entitlement: indeed Congress created it due to the inequities individual authors such as Harrison and Erickson frequently face when entering negotiations with large companies like The Phillies.

12.    10. When The Phillies asked Counterclaim Plaintiffs to create a mascot, the team knew they were seeking the assistance of established artists.  Although The Phillies first asked Jim Henson to take on the project, he told them they should hire Bonnie Erickson, who had worked with Henson to create such famous art works as Miss Piggy, and who also had worked on the Sesame Street programs.

13. 11. The entire artistic design for the Phanatic, a fantasy animal, with both artistic merit, as well as a written and well-thought out backstory and personality (*i.e.*, as an anomaly of evolution from the Galapagos Islands), was created solely by Counterclaim Plaintiffs.  The Phillies contributed no copyrightable work to the project, and only simple, abstract notional ideas, none of which had any copyrightable expression certainly did not consider themselves to be authors of the Phanatic when it was created.  Counterclaim Plaintiffs conceived of, and designed, the color, shape, mannerisms, fictional backstory, and other protectable elements of the Phanatic.  For example, Erickson designed the large snout of the Phanatic to resemble a megaphone, because the name Phanatic implied a loud and boisterous cheerleader-type, super fan character.  She also chose green as the color for the mascot, because after visiting the Philadelphia The Phillies' old Veterans sStadium to gather inspiration, she thought a green mascot would stand out among the multi-colored colored seats.

14. 12. As stated above, The Phillies admitted this was true in multiple signed agreements, which reference Counterclaim Plaintiffs' initial ownership and authorship of the copyrights to the Phanatic, including the Phanatic "character."  So, Counterclaim Plaintiffs expressly repudiated any initial ownership authorship claim by The Phillies long ago.  Indeed, The Phillies were granted an assignment of the Phanatic copyrights from Counterclaim Plaintiffs in 1984, acknowledging in writing not only that H/E Counterclaim Plaintiffs owned and had registered the Phanatic copyright, but that The Phillies would exercise reasonable efforts to credit Counterclaim Plaintiffs as *the creators of the Phanatic*.

15. 13. The U.S. Copyright Office also acknowledged Counterclaim Plaintiffs' authorship and ownership of the copyright to the Phanatic mascot design by issuing a 1979 registration certificate, VA 0-023-748, to Counterclaim Plaintiffs.  That certificate, which is

prima facie evidence of the truth of the facts stated therein, 17 U.S.C. § 410, and of which The Phillies were well aware, confirms The Phillies did not author the Phanatic.  The Phillies never challenged this registration for decades, until they received a valid termination notice from Counterclaim Plaintiffs, informing ~~the~~The Phillies that Counterclaim Plaintiffs will reclaim ownership of the Phanatic on June 15, 2020 (the "Effective Termination Date").  The U.S. Copyright Office has now also recorded that valid termination notice, indicating it was substantively complete and procedurally proper.

16.     Because the Effective Termination has passed, all rights in the Phanatic that were transferred to The Phillies under the 1984 Agreement have now lapsed and reverted to Counterclaim Plaintiffs.

17.     ~~14.~~ Prior to the Effective Termination Date, The Phillies ~~have~~ threatened to continue using the copyrighted material of the Phanatic, even after ownership of the copyrights reverts to Counterclaim Plaintiffs under 17 U.S.C. § 203. ~~Rather than respecting the public policy choices of Congress, which elected to provide artists with the ability to reclaim their rights, or pay additional money for their highly successful work after the termination is effected in 2020, The Phillies are trying to bully~~The Effective Termination Date has now passed, and, consistent with those threats and fueled purely by a desire to avoid the effects of termination and steal Counterclaim Plaintiffs' valuable intellectual property, The Phillies have continued to use the Phanatic mascot design and related artwork without permission, infringing copyrights that have now reverted to Counterclaim Plaintiffs ~~and force them to waste money on a lawsuit.  This Court should set them straight.~~.

18.     Also, with blatant disrespect of Counterclaim Plaintiffs' rights and artistry in the Phanatic, The Phillies have created a knock-off Phanatic, which they introduced during their

41

Spring training on February 23, 2020 (hereinafter referred to as "P2"). The Phillies created this P2 knock-off, because they know that they have no basis to challenge Counterclaim Plaintiffs' termination right under 17 U.S.C. § 203.

19. P2 features minor, slavish changes to Counterclaim Plaintiffs' Phanatic mascot design, and represents a lazy attempt by The Phillies to try to use an exception to the termination right that is reserved solely for derivative works created under the authority of the grant, such as a movie adaptation of a novel. *See* 17 U.S.C. § 203(b)(1) (the "Derivative Work Exception"). The Derivative Work Exception is only intended to allow creators of derivative works to continue utilizing such works after termination. It is not, however, intended to protect the creators of wholesale knock-offs.

20. P2 is not a derivative work prepared under the authority of the 1984 Agreement. The Phillies did not recast, transform, or adapt the Phanatic. They copied it. Indeed, P2 is a blatant knock-off reproduction of the Phanatic mascot design that Counterclaim Plaintiffs created, and which The Phillies no longer own nor have the right to use. The alterations to Counterclaim Plaintiffs' design are minimal, wholly unoriginal, and in no way reflect an artistic desire to change it. These statements are not merely the view of Counterclaim Plaintiffs, but the opinion of Counterclaim Plaintiffs' qualified expert, who has worked in the creative industries designing original characters and brand mascots for decades.

21. In fact, The Phillies deliberately designed P2 so that people would not notice the difference between Counterclaim Plaintiffs' Phanatic mascot design and P2. The Phillies themselves internally confirmed that they knew that it was unlikely that anyone would notice a difference between the original Phanatic and the P2 knock-off. The Phillies' express goal was to create P2 in a way that it would be perceived as virtually indistinguishable from the original

42

Phanatic character created by Counterclaim Plaintiffs.  Even media reports have suggested that the differences in P2 are barely noticeable.

22.      The Phillies' creation of P2, solely to try to nullify Counterclaim Plaintiffs' termination right, is an abuse of the Derivative Work Exception, and does not fall within its purview.  The Phillies' continued exploitation of P2, now that the Effective Termination Date has passed, is infringing, and continues to infringe, Counterclaim Plaintiffs' copyright rights.

23.      The Phillies have confirmed through their conduct after the Effective Termination Date that their attempt to take advantage of the Derivative Work Exception is a ruse.  Even if The Phillies were legally entitled to continue using P2 under the Derivative Work Exception (and they cannot, given that P2 is not a derivative work, as described above), The Phillies have no legal right to create *new* derivative works now that the Effective Termination Date has passed. This is because the Derivative Work Exception is limited only to derivative works prepared while the 1984 Agreement was still in effect. Congress made clear that the privilege to continue utilizing derivative works prepared under authority of the grant "does not extend to the preparation ***after the termination of other derivative works*** based upon the copyrighted work covered by the terminated grant." 17 U.S.C. § 203(b)(1) (emphasis added).   In other words, the Derivative Work Exception does not allow The Phillies to make post-termination derivatives of a derivative work, *i.e.*, new works based on a derivative work, where such a new work was created after termination, because any "derivative of a derivative" would necessarily be based upon the copyrighted work covered by the terminated grant.  For instance, while the Derivative Work Exception might allow The Phillies to continue exploiting a comic book based on the Phanatic that was a permitted derivative work prior to termination, the Derivative Work Exception would

43

not allow The Phillies to develop a film adaptation of the comic book after its rights in the Phanatic have lapsed.

24.     Despite the unequivocal limitation on the Derivative Works Exception, The Phillies have willfully prepared or caused others to prepare countless derivative works based on P2 *after* the Effective Termination Date, and have threatened to produce countless more.  Every single one of these new works unlawfully incorporates Counterclaim Plaintiff's Phanatic design, which The Phillies are aware they no longer own.

25.     These new "derivatives of a derivative," *i.e.*, new works based on the purported derivative P2 work, include *inter alia* new performances and portrayals of P2, which The Phillies have directly prepared, or knowingly authorized, enabled, encouraged and/or induced others to prepare, and which have been fixed in videos and images that have been transmitted, displayed, and disseminated to the public.  Since the Effective Termination Date, The Phillies have blatantly prepared and broadcast over the internet various promotional videos that prominently feature P2, such as "Phanatic takes on the speed pitch machine," "Phanatic celebrates Opening Day in 2020 … finally!," "Phanatic launches a hotdog to … T-Mac?," and "Phanatic ensures umpires are properly sanitizing in 2020," or have knowingly authorized, enabled, encouraged and/or induced others to prepare and broadcast such promotional videos; The Phillies have prepared, displayed, and disseminated numerous new photographs and artwork that prominently feature P2 on their social media channels, such as on Instagram, or have knowingly authorized, enabled, encouraged and/or induced others to prepare, display, and disseminate such new photographs and artwork; and The Phillies have prominently featured P2 acting out routines during broadcasts of baseball games at Citizens Bank Park, which The Phillies or others acting in conjunction with or on behalf of The Phillies have fixed into new works and transmitted to the

44

public.  Every single one of these portrayals of P2 constitutes a new, unauthorized work created after the Effective Termination Date that incorporates Counterclaim Plaintiffs' Phanatic design, which The Phillies are aware they no longer own.  Attached hereto as Exhibit A is a non-exhaustive list illustrating the vast number of ways that The Phillies are exploiting P2, in blatant disregard for Counterclaim Plaintiffs' rights in the underlying Phanatic mascot design.  The Phillies seemingly produce new works that unlawfully incorporate the Phanatic every week, each of which constitutes a new and separate instance of infringement.

26.     The Phillies have admitted that they have no intention of complying with Counterclaim Plaintiffs' termination rights and the Derivative Work Exception going forward.  The Phillies have repeatedly admitted that they intend to create new merchandise featuring P2 after the Effective Termination Date, without Counterclaim Plaintiffs' permission, and without any compensation to Counterclaim Plaintiffs.  Every piece of merchandise featuring P2 constitutes a new derivative work that would necessarily incorporate Counterclaim Plaintiffs' Phanatic design, which The Phillies are aware they no longer own.

27.     The Phillies have even produced what they refer to as a P2 "Style Guide," which features artwork that in many cases is copied almost verbatim from early artwork that Counterclaim Plaintiffs created.  Such artwork, including the artwork listed on Exhibit B hereto (hereinafter referred to as the "Phanatic Artwork"), was bundled into the 1984 Assignment along with the Phanatic mascot design, and the rights to such works are no longer The Phillies to exploit.  The Phillies have admitted that this "Style Guide" is intended to assist third parties in unlawfully preparing new derivative works featuring P2 after the Effective Termination Date.  Each new derivative work featuring P2 prepared by a third party would necessarily incorporate

45

Counterclaim Plaintiffs' Phanatic mascot design and the Phanatic Artwork, which The Phillies are aware they do not own.

28.     The foregoing is a non-exhaustive description of The Phillies' ongoing activities and threatened activities with respect to The Phillies' unauthorized exploitation of P2. The full scope of such infringing conduct is not yet known to Counterclaim Plaintiffs, and it is continuing to increase. The Phillies are aware that every single derivative work that features P2 after the Effective Terminate Date unlawfully incorporates Counterclaim Plaintiffs' Phanatic mascot design and/or the Phanatic Artwork, and is not allowed by the Derivative Work Exception. The Phillies have no interest in curbing such illegal activities. The Phillies in this case have even represented through their agents that they will continue to engage in such infringing conduct even if they lose this lawsuit.

29.     By continuing to unilaterally create and authorize others to create new works featuring P2 after the Effective Terminate Date, The Phillies have demonstrated that they have no intention to comply with the termination provisions of the Copyright Act or respect Counterclaim Plaintiffs' copyright rights. To the contrary, The Phillies seek to profit off the creative work of others, and ignore their legal responsibilities.

30.     In addition to the unlawful activities described above, The Phillies also continue to sell and knowingly authorize, enable, encourage, and/or induce others to sell unauthorized merchandise featuring numerous pieces of the Phanatic Artwork listed on Exhibit B. The Phillies know that their rights to exploit such merchandise or license others to exploit such merchandise had cut off on the Effective Termination Date, but they and their licensees continue to produce and sell such works without Counterclaim Plaintiffs' permission.

31.     The Phillies derive an obvious and direct financial benefit from the infringement of Counterclaim Plaintiffs' Phanatic mascot design and related artwork.  The Phanatic is notably a major commercial draw to The Phillies' baseball franchise, and while The Phillies have the legal and practical right, and indeed obligation, to prevent or limit the infringement of the Phanatic, they have chosen not to do so because they want to continue to profit off of Counterclaim Plaintiffs' creativity without compensating the Counterclaim Plaintiffs.

32.     By The Phillies' unlawful conduct, wholesale unauthorized copies and adaptations of Counterclaim Plaintiffs' copyrighted works are being made and distributed into the stream of commerce with no restriction preventing their downstream dissemination.  Such infringing activity strips Counterclaim Plaintiffs of the creative control to which they are entitled, undermines Counterclaim Plaintiffs' own ability to exploit their works, diminishes the perceived value of those works to Counterclaim Plaintiffs' potential licensees, and associates Counterclaim Plaintiffs with a knock-off Phanatic design that cheapens Counterclaim Plaintiffs' iconic creation, thereby causing irreparable damage to Counterclaim Plaintiffs' business and reputation as renowned character and mascot designers.

33.     In full recognition that their conduct is illegal, The Phillies have represented to Counterclaim Plaintiffs that they have no intention of respecting Counterclaim Plaintiffs' rights going forward, and have further represented to Counterclaim Plaintiffs that they will continue to infringe Counterclaim Plaintiffs' copyrights even if The Phillies lose this lawsuit.  In other words, The Phillies have made the conscious decision to infringe first and pay later, rather than responsibly comply with the law and obtain permission from Counterclaim Plaintiffs.

34.     The Phillies' infringement will result, and has resulted, in a substantial decline in revenue to which Counterclaim Plaintiffs' are entitled, and—if permitted to continue—

47

effectively renders the termination provisions of the 1976 Copyright Act meaningless.  Actions such as those taken by The Phillies not only violate the express rights granted to H/E under the Copyright Act, but also undermine the very purposes of the Copyright Act, adversely impacting the creation of new artwork.

35.     Rather than respecting the public policy choices of Congress to protect artists by providing them with the ability to reclaim their rights, The Phillies are willfully and unlawfully exploiting Counterclaim Plaintiffs' Phanatic, and they must answer for their blatantly unlawful conduct.

## CLAIMS

### First Cause of Action –Authorship of the Phanatic

36.     15. Counterclaim Plaintiffs reallege all of the allegations in paragraphs 1-14 35 herein.

37.     16. In 1978, Counterclaim Plaintiffs created the Phillie Phanatic.  The Phillies contributed no artistic expression to the Phanatic whatsoever, let alone copyrightable expression.

38.     17. Between 1978 and 1984, the parties entered multiple written agreements within which The Phillies acknowledged Counterclaim Plaintiffs' authorship of the Phanatic. These agreements include acknowledgement of Counterclaim Plaintiffs' authorship of the Phanatic "character."

39.     18. After Counterclaim Plaintiffs served a notice on The Phillies in 2018, as required by the Copyright Act, to terminate their the 1984 Aassignment of the copyright rights in the Phanatic, The Phillies concocted an argument to attempt to claim partial authorship of the Phanatic.  An actual, substantial, and justiciable controversy thus exists between Counterclaim

Plaintiffs and The Phillies concerning who authored and initially owned the copyright rights in

the Phanatic. A judicial declaration is necessary to vindicate Counterclaim Plaintiffs' rights.

40. 19. Based on the foregoing, Counterclaim Plaintiffs hereby request a judicial

declaration that they authored the Phanatic, and that The Phillies did not.

## **Second Cause of Action – Statute of Limitations and Estoppel**

41. 20. Counterclaim Plaintiffs reallege all of the allegations in paragraphs 1-1940

herein.

42. 21. Counterclaim Plaintiffs always claimed authorship and initial ownership of

the copyright to the Phanatic. Counterclaim Plaintiffs also always denied that The Phillies had

any authorship interest in the Phanatic. These denials were express, and were even conveyed in

writing multiple times in and before 1984. Indeed, in 1979, Counterclaim Plaintiffs registered

the copyright to the Phanatic, and informed The Phillies that they did so. The Phillies never

claimed an authorship interest in the Phanatic for forty years.

43. 22. The Copyright Act, 17 U.S.C. § 507, includes a three-year statute of

limitations. This limitations provision applies to claims of authorship, just as it does to

infringement actions. Because Counterclaim Plaintiffs repudiated any authorship claim

possessed by The Phillies, and The Phillies failed to file an action within three years contesting

Counterclaim Plaintiffs' rights, the statute of limitations now bars The Phillies from claiming any

authorship interest.

44. 23. Moreover, Counterclaim Plaintiffs materially and reasonably relied on The

Phillies' representations that they acknowledged Counterclaim Plaintiffs' authorship of the

Phanatic when the parties entered written agreements and Counterclaim Plaintiffs continued to

do business with The Phillies after doing so.  ~~Equitable estoppel therefore~~ ~~bars The Phillies from~~ ~~now challenging Counterclaim Plaintiffs' authorship of~~ ~~the Phanatic.~~

45. ~~24.~~ Nevertheless, ~~the~~after taking the benefit of the written agreements and exploiting the Phanatic grant for more than 35 years, The Phillies are now asserting, for the first time, that they authored the Phanatic.  Equitable estoppel bars The Phillies from now challenging Counterclaim Plaintiffs' authorship of the Phanatic. An actual, substantial, and justiciable controversy thus exists between Counterclaim Plaintiffs and The Phillies concerning who authored the Phanatic.  A judicial declaration is necessary to vindicate Counterclaim Plaintiffs' rights.

46. ~~25.~~ Based on the foregoing, Counterclaim Plaintiffs hereby request a judicial declaration that the Copyright Act's statute of limitations and equitable estoppel prevent The Phillies from claiming any authorship of the Phanatic.

### Third Cause of Action – Validity of Copyright Registration

47. ~~26.~~ Counterclaim Plaintiffs reallege all of the allegations in paragraphs 1-~~25~~46 herein.

48. ~~27.~~ In 1979, Counterclaim Plaintiffs registered their copyright interests in the Phanatic, and the U.S Copyright Office issued a registration certificate that same year.  In applying for the registration, Counterclaim Plaintiffs complied with all applicable Copyright Office regulations and practices.  Counterclaim Plaintiffs did so in good faith, and informed The Phillies of the issuance of the Copyright Office registration certificate.  The Phillies acknowledged the existence of the certificate in writing, and even used it to enforce their rights during the term of the 1984 assignment.

49. 28. Moreover, Counterclaim Plaintiffs reasonably and materially relied on The Phillies representations that they acknowledged the validity of Counterclaim Plaintiffs' registration when the parties entered written agreements and Counterclaim Plaintiffs continued to do business with The Phillies after doing so.  Equitable estoppel, and the Copyright Act's statute of limitations, 17 U.S.C. § 507, therefore bar The Phillies from now challenging the validity of Counterclaim Plaintiffs' registration.

50. 29. Nevertheless, The Phillies assert that the registration is invalid.  An actual, substantial, and justiciable controversy thus exists between Counterclaim Plaintiffs and The Phillies concerning the whether Counterclaim Plaintiffs possess a valid registration.  A judicial declaration is necessary to vindicate Counterclaim Plaintiffs' rights.

51. 30. Based on the foregoing, Counterclaim Plaintiffs hereby request a judicial declaration that their registration certificate is valid.

## Fourth Cause of Action – Validity of Termination Notice

52. 31. Counterclaim Plaintiffs reallege all of the allegations in paragraphs 1-3051 herein.

53. 32. On October 31, 1984, Counterclaim Plaintiffs assigned, in writing, their copyrights in the Phanatic to The Phillies.  Under 17 U.S.C. § 203, Counterclaim Plaintiffs are entitled to terminate that transfer.

54. 33. The statute states: "Termination of the grant may be effected at any time during a period of five years beginning at the end of thirty-five years from the date of execution of the grant ..." The statute also states: "Termination of the grant may be effected notwithstanding any agreement to the contrary, including an agreement to make a will or to make any future grant."  The statute also states: "Upon the effective date of termination, all rights

51

under this title that were covered by the terminated grants revert to the author, authors, and other persons owning termination interests …"

55. 34. Counterclaim Plaintiffs complied with all of 17 U.S.C. § 203's requirements, including a timely notice of termination and the requirement to record the termination notice with the U.S. Copyright Office. The notice was timely, complete, and valid. Pursuant to the notice, the 1984 assignment of the Phanatic copyright by Counterclaim Plaintiffs to The Phillies will terminated on June 15, 2020.

56. 35. The Phillies have claimed that the termination notice is ineffective, and have threatened to continue, and continued, to use the copyright rights to the Phanatic after the date on which the assignment is terminated. An actual, substantial, and justiciable controversy thus exists between Counterclaim Plaintiffs and The Phillies concerning whether the termination notice is valid. A judicial declaration is necessary to vindicate Counterclaim Plaintiffs' rights.

57. 36. Based on the foregoing, Counterclaim Plaintiffs hereby request a judicial declaration that, under the Copyright Act, the termination notice effectively terminates the 1984 Assignment and all copyright interests owned by Counterclaim Plaintiffs in the Phanatic reverts to Counterclaim Plaintiffs in accordance with Section 203.

**Fifth Cause of Action – ~~Injunctive Relief~~Copyright Infringement**

58. 37. Counterclaim Plaintiffs reallege all of the allegations of paragraphs 1-3657 herein.

59. The Phanatic mascot design and Phanatic Artwork listed on Exhibit B created by Counterclaim Plaintiffs constitute original, copyrightable subject matter pursuant to the Copyright Act, and are protected by a United States Certificate of Copyright Registration duly registered with the United States Copyright Office (the "Phanatic Copyrights"). Counterclaim

Plaintiffs have validly exercised their termination rights pursuant to 17 U.S.C. § 203, and with the passage of the Effective Termination Date on June 15, 2020, are the owners of and/or exclusively control all rights, title, and interest in and to the Phanatic Copyrights.

60.     The Phanatic Artwork listed on Exhibit B repeats content verbatim from the original copyrighted Phanatic mascot design, and Counterclaim Plaintiffs rely upon their copyright registration for the underlying mascot design.  In addition, independent registrations for the works listed on Exhibit B were filed with the U.S. Copyright Office on the Effective Termination Date, and Counterclaim Plaintiffs intend to amend their Counterclaims as necessary to reflect those registrations when they are issued.

61.     The Phillies have reproduced, adapted, distributed, and publicly displayed the Phanatic Copyrights without authorization subsequent to the Effective Termination Date, including *inter alia*, by continuing to exploit a knock-off Phanatic mascot design, P2, creating new adaptations of the Phanatic Copyrights such as those set forth in Exhibit A, and continuing to exploit merchandise that unlawfully incorporates the Phanatic Artwork.  In addition, without the permission or consent of Counterclaim Plaintiffs, The Phillies have knowingly encouraged, induced, materially contributed to, and/or facilitated, the unauthorized reproduction, adaptation, distribution, and public display of the Phanatic Copyrights subsequent to the Effective Termination Date.  The Phillies also have the right and ability to stop or limit the infringement, and have a direct financial interest in such infringing activities.  As such, The Phillies are directly and secondarily liable for infringement under the Copyright Act.

38. Given that Counterclaim Plaintiffs' termination notice is valid and enforceable as stated above in the Fourth Cause of Action, continued use by The Phillies of the Phanatic copyright after the effective date of termination will constitute actionable copyright infringement

under 17 U.S.C. §§ 106 and 501.  A copyright owner whose exclusive rights are infringed is entitled, *inter alia*, to an injunction under 17 U.S.C. § 502.  The Court has the power to issue an injunction not only to restrain copyright infringement, but also to prevent it under 17 U.S.C. § 502(a).  Moreover, Counterclaim Plaintiffs obtained a copyright registration certificate from the U.S. Copyright Office for the copyright rights in the Phanatic in 1979.

39. The Phillies have expressly threatened to willfully continue to use the Phanatic copyright without authorization, even if this Court rejects their declaratory judgment claims and grants Counterclaim Plaintiffs' declaratory judgment claims.  In other words, The Phillies have threatened to force Counterclaim Plaintiffs to sue The Phillies for infringement, even if the Court issues a declaratory judgment in Counterclaim Plaintiffs' favor stating that the termination notice served on The Phillies effectively terminates the 1984 grant made to The Phillies by Counterclaim Plaintiffs.  This bold threat creates a dispute between Counterclaim Plaintiffs and The Phillies concerning whether The Phillies may continue to use the Phanatic copyright rights after the date of termination.  A judicial declaration and permanent injunction is necessary to prevent blatant infringement of Counterclaim Plaintiffs' rights.

40. In the absence of an injunction, Counterclaim Plaintiffs will be substantially and irreparably injured by The Phillies' willful infringement.  These injuries are not compensable by monetary damages alone and there is no adequate remedy at a law.

62. 41. Based on the foregoing,The infringement of Counterclaim Plaintiffs hereby request a permanent injunction against The Phillies' continued willful violation of the exclusive rights that Counterclaim Plaintiffs will reclaim upon the effective date of the termination notice.' rights in each of their respective copyrighted works constitutes a separate and distinct act of infringement.

63.	The Phillies' unlawful conduct, as set forth above, was willful, intentional, malicious and purposeful, in disregard of and with indifference to the rights of Counterclaim Plaintiffs.

64.	The Phillies' actions described above have caused and will continue to cause irreparable damage to Counterclaim Plaintiffs, for which Counterclaim Plaintiffs have no remedy at law.  Indeed, The Phillies have already engaged in the blatant wholesale infringement of the Phanatic Copyrights by, among other things, continuing to prepare new derivative works featuring P2 after the Effective Termination Date without permission.  The Phillies are aware that every single one of these new works unlawfully incorporates, and therefore infringes on, Counterclaim Plaintiffs' copyrighted material, *see* 17 U.S.C. § 203(b)(1), but nonetheless have expressed every intention of continuing to expand their use of P2 through the preparation of countless more unauthorized new works that feature P2.  Such conduct is indefensible.  Unless The Phillies are restrained by this Court from continuing their infringement of Counterclaim Plaintiffs' copyrights, these injuries will continue to occur in the future.  Counterclaim Plaintiffs are accordingly entitled to injunctive relief restraining The Phillies from further infringement.

## PRAYER FOR RELIEF AND DEMAND FOR JURY

65.	42. Wherefore, Counterclaim Plaintiffs pray for a judgment in their favor and against The Phillies and request the following relief:

> a.	A declaratory judgment that Counterclaim Plaintiffs authored and initially owned the Phanatic, and that The Phillies did not;
>
> b.	A declaratory judgment that The Phillies are barred by the Copyright Act's statute of limitations, and by equitable estoppel, from asserting an authorship interest in the Phanatic;

55

c. A declaratory judgment that Counterclaim Plaintiffs' 1979 copyright registration for the Phanatic is valid;

d. A declaratory judgment that the termination notice served by Counterclaim Plaintiffs on The Phillies is effective and valid, and that the 1984 assignment from Counterclaim Plaintiffs to The Phillies of the copyright rights to the Phillie Phanatic ~~will~~ terminated on June 15, 2020;

e. For a declaration that The Phillies have willfully infringed and are continuing to infringe Counterclaim Plaintiffs' copyrights, including *inter alia*, through the preparation after the Effective Termination Date of new works that are based upon Counterclaim Plaintiffs' copyrights.

f. For statutory damages pursuant to 17 U.S.C. § 504(c), in an amount up to the maximum provided by law, arising from The Phillies' willful violations of Counterclaim Plaintiffs' rights under the Copyright Act or, in the alternative, at Counterclaim Plaintiffs' election pursuant to 17 U.S.C. § 504(b), Counterclaim Plaintiffs' actual damages, including The Phillies profits from the infringements and the value received by the Phillies resulting from its infringements, in an amount to be proven at trial;

g. An order pursuant to 17 U.S.C. § 505 awarding Counterclaim Plaintiffs their costs in this action, including their reasonable attorneys' fees;

h. For pre-judgment and post-judgment interest at the applicable rate on any monetary award made part of the judgment against The Phillies;

i. ~~e. A~~ For such equitable relief under Title 17, Title 28, and/or the Court's inherent authority as is necessary to prevent or restrain infringement of

56

Counterclaim Plaintiffs' copyrights, including permanent injunctionve enjoiningrelief prohibiting The Phillies and their officers, agents, servants, employees, attorneys, and all other persons in active concert or participation from infringing Counterclaim Plaintiffs' exclusive copyright rights in the Phanatic after June 15, 2020;with each or any of them, from:

f. An order awarding Counterclaim Plaintiffs all of their attorneys' fees and full costs under 17 U.S.C. § 505; and

    i.  Directly or indirectly infringing Counterclaim Plaintiffs' Phanatic Copyrights;

    ii.  Copying, reproducing, distributing, transmitting, displaying, or otherwise exploiting without authorization Counterclaim Plaintiffs' Phanatic Copyrights;

    iii.  Preparing derivative works that are based upon Counterclaim Plaintiffs' Phanatic Copyrights;

    iv.  Enabling, facilitating, permitting, assisting, soliciting, encouraging, or inducing others to copy, reproduce, distribute, transmit, display, or otherwise exploit without authorization Counterclaim Plaintiffs' Phanatic Copyrights; and

    v.  Enabling, facilitating, permitting, assisting, soliciting, encouraging, or inducing others to prepare derivative works that are based upon Counterclaim Plaintiffs' Phanatic Copyrights; and

j.  g.All other relief the Court deems just and proper.

DATED: ~~October 7~~ September 29, ~~201~~ 9 20  
New York, New York

MITCHELL SILBERBERG & KNUPP LLP


By: /s/ Paul D. Montclare
    Paul D. Montclare (*pdm@msk.com*)
    Leo M. Lichtman (*lml@msk.com*)
    Elaine Nguyen (*eln@msk.com*)
    437 Madison Avenue, 25th Floor
    New York, NY 10022
    Telephone: (212) 509-3900
    Facsimile:  (212) 509-7239

    J. Matthew Williams (*mxw@msk.com*)
    1818 N St. NW, 7th Floor
    Washington, DC 20036
    Telephone: (202) 355-7900
    Facsimile: (202) 355-7899

    *Attorneys for Defendants and Counterclaim Plaintiffs Harrison/Erickson Incorporated, Harrison Erickson, Wayde Harrison, and Bonnie Erickson*

58





**Exhibit A**
*The Phillies v. Harrison/Erickson, et. al.*, Case No. 1:19-cv-7239-VM-SN



12490308.1



12490308.1



12490308.1



12490308.1







12490308.1





12490308.1





12490308.1



**Exhibit A**
*The Phillies v. Harrison/Erickson, et. al.*, Case No. 1:19-cv-7239-VM-SN



12490308.1





12490308.1





12490308.1

**Exhibit A**
*The Phillies v. Harrison/Erickson, et. al.*, Case No. 1:19-cv-7239-VM-SN





#RingTheBell #Phillies #MLB
Phanatic takes on the speed pitch machine

2,313 views · Aug 31, 2020                    👍 128    👎 2     ➤ SHARE    ⊟ SAVE    ...

Philadelphia Phillies ✓
20.5K subscribers                                                              SUBSCRIBE

The Phanatic takes to the Yard to give the speed pitch machine a whirl ... or maybe the speed pitch
machine gives him a whirl?

#RingTheBell #Phillies #MLB









#1



**Exhibit B**
*The Phillies v. Harrison/Erickson, et. al.*, Case No. 1:19-cv-7239-VM-SN



**Exhibit B**
*The Phillies v. Harrison/Erickson, et. al.*, Case No. 1:19-cv-7239-VM-SN



12490327.1



12490327.1



12490327.1









# EXHIBIT C

| From: | Montclare, Paul |
|---|---|
| To: | "Wolfsohn, David J." |
| Cc: | "Marandola, Tyler R."; Williams, Matthew; Lichtman, Leo; Nguyen, Elaine |
| Subject: | RE: [EXTERNAL] Re: Phillies V. H/E |
| Date: | Friday, September 25, 2020 12:42:20 PM |
| Attachments: | Change-Pro Redline - Answer and Counterclaim  filed and Amended answer   counterclaims -final 9_24_2020(12520686.pdf |
| | FINAL Proposed Amendment.pdf |
| | Exhibit A to Counterclaims.pdf |

David,

Attached is a slightly revised redline  version of the proposed amended answer and counterclaim we intend to file. Based on our last email exchange, please confirm that it is still The Phillies position that they will not consent to the filing of this amended pleading. If I do not hear back  from you today I will assume that you still do not consent to the filling of this amended pleading.

Paul



**Paul D. Montclare** | **Partner, through his LLP**

T: 917.546.7704 | C: 917-670-0133 | F: (917) 546-7674 | pdm@msk.com

**Mitchell Silberberg & Knupp LLP** | **www.msk.com**

437 Madison Ave., 25th Floor, New York, NY 10022

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION, AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT AN INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY BY REPLY E-MAIL OR TELEPHONE, AND DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS FROM YOUR SYSTEM. THANK YOU.

**From:** Montclare, Paul
**Sent:** Monday, September 14, 2020 2:56 PM
**To:** 'Wolfsohn, David J.' <DJWolfsohn@duanemorris.com>
**Cc:** Marandola, Tyler R. <TMarandola@duanemorris.com>; Williams, Matthew <mxw@msk.com>; Lichtman, Leo <lml@msk.com>; Nguyen, Elaine <eln@msk.com>
**Subject:** RE: [EXTERNAL] Re: Phillies V. H/E

David,

Putting aside the churlish comments directed at my clients, there is no need to address your flawed characterization of my client's motives for filing an amended counterclaim as you imagine in your first paragraph. You have known for some time now that we would be seeking to amend our counterclaim to address post-termination infringement by your client.  This is no surprise  to you. In fact, we have even raised this in  correspondence with the Court, and in emails between us relating to the end of discovery.

Regarding your second and third paragraph, there is nothing defamatory about this proposed pleading, and we will prove the allegations in our counterclaims. If you make a Rule 12(b)(f) motion we will respond with the basis for our allegations. Notably,  for some reason,  while you threaten a motion, you have not articulated what parts of the proposed pleading you believe should be stricken

under Rule 12(b)(f). Nor have you indicated, what you contend needs to be pleaded with more definiteness under Rule 12 (e).  You simply  say: "So amendment will be futile", based on your complaints about the pleading somehow not being definite enough. Please articulate what you believe should be pleaded with more particularity so we can address that, if necessary.

Regarding your last paragraph, my client's infringement claims arise out of the Phillies' post-termination infringements of my clients' Phanatic copyrights. That termination took effect in June, 2020.  In the existing action, there are declaratory judgment claims regarding the same Phanatic copyright  and termination rights. The proposed amendment addresses the post-termination infringement based on  my clients copyright and termination rights. The  reality  is that the Phillies are  now using and exploiting  H/E's Phanatic copyright  post-termination. That is, and should be part of this case.  There has been extensive discovery on these issues already. Indeed, many legal issues regarding the validity of H/E's  copyright and termination that have already been explored in discovery, apply to our proposed infringement claims, as does extensive prior discovery relating to the use of P-2 and the post-termination use of derivative works.

At the same time,  we too want the issues framed in our pre-motion letter for summary judgment to be teed up now, notwithstanding the counterclaim amendment alleging infringement.  A decision on those issues may inform damages and liability issues relating to our  infringement claim.

Finally, as I have repeatedly stated, a fair settlement is preferable, if it can be attained. But, it has been weeks now since  the parties wanted to begin earnest discussions. My clients sought information that was important to their valuation. You eventually agreed to provide it, and sent a draft NDA. I responded. I am still awaiting a response from you and for the information. When do you think you can provide the information requested? In the meantime, we have no choice but to continue on a litigation footing.

Paul



**Access COVID-19 Resources Here**
**Paul D. Montclare | Partner, through his LLP**
T: 917.546.7704 | C: 917-670-0133 | F: (917) 546-7674 | pdm@msk.com
**Mitchell Silberberg & Knupp LLP | www.msk.com**
437 Madison Ave., 25th Floor, New York, NY 10022

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION, AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT AN INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY BY REPLY E-MAIL OR TELEPHONE, AND DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS FROM YOUR SYSTEM. THANK YOU.

**From:** Wolfsohn, David J. <DJWolfsohn@duanemorris.com>
**Sent:** Friday, September 11, 2020 12:28 PM

**To:** Montclare, Paul <pdm@msk.com>
**Cc:** Marandola, Tyler R. <TMarandola@duanemorris.com>; Williams, Matthew <mxw@msk.com>;
Lichtman, Leo <lml@msk.com>; Nguyen, Elaine <eln@msk.com>
**Subject:** RE: [EXTERNAL] Re: Phillies V. H/E

-EXTERNAL MESSAGE-
Paul,

I do not understand what legitimate reason there could be to amend the answer, other than to get
your firm's name or perhaps your clients' names in the press/social media, or perhaps because of
some misplaced effort to exert what you perceive to be "leverage" in settlement negotiations.

Moreover, portions of the answer are blatantly false and defamatory, and would be subject to a
motion to strike. Fed. R. Civ. P. 12(b)(f).

In the counterclaims, you've added one for infringement. That count would be subject to a motion
to dismiss for failure to state a claim (Rule 12(b)(6)) and, in the alternative, for a more definite
statement (Rule 12(e)). So amendment would be futile.

In addition, discovery ended 2 months ago, so to the extent you had intended this proposed
amendment as a vehicle for delaying resolution of the case, that would be an additional reason to
deny a motion for leave to amend. We filed this case over a year ago in the hopes of obtaining the
Court's rulings on our positions as soon as possible so that we could be guided accordingly and we
would not want any further delay.

There may be other reasons as well.


Very truly yours,

David Wolfsohn


---

**From:** Montclare, Paul <pdm@msk.com>
**Sent:** Sunday, September 6, 2020 12:05 PM
**To:** Wolfsohn, David J. <DJWolfsohn@duanemorris.com>
**Cc:** Marandola, Tyler R. <TMarandola@duanemorris.com>; Williams, Matthew <mxw@msk.com>;
Lichtman, Leo <lml@msk.com>; Nguyen, Elaine <eln@msk.com>
**Subject:** RE: [EXTERNAL] Re: Phillies V. H/E

Please tell me the reasons why you are declining to consent to the amended pleading that I sent
you.

Sent with BlackBerry Work
([www.blackberry.com](www.blackberry.com))

---

**From:** Wolfsohn, David J. <[DJWolfsohn@duanemorris.com](DJWolfsohn@duanemorris.com)>
**Date:** Friday, Sep 04, 2020, 12:14 PM
**To:** Montclare, Paul <[pdm@msk.com](pdm@msk.com)>
**Cc:** Marandola, Tyler R. <[TMarandola@duanemorris.com](TMarandola@duanemorris.com)>, Williams, Matthew <[mxw@msk.com](mxw@msk.com)>, Lichtman, Leo <[lml@msk.com](lml@msk.com)>, Nguyen, Elaine <[eln@msk.com](eln@msk.com)>
**Subject:** [EXTERNAL] Re: Phillies V. H/E

-EXTERNAL MESSAGE-
We do not.

David J. Wolfsohn
Partner
Duane Morris LLP
30 South 17th St.
Philadelphia, PA 19103-4196

215 979 1866
Cell: 215 300 5020
[Djwolfsohn@duanemorris.com](Djwolfsohn@duanemorris.com)

[Www.duanemorris.com](Www.duanemorris.com)

Sent from phone. Please excuse typos and autocorrect errors.


On Sep 4, 2020, at 10:45 AM, Montclare, Paul <[pdm@msk.com](pdm@msk.com)> wrote:


David,

Please respond to our inquiry  below as to whether you consent to the proposed amended answer and counterclaim that I sent you.

Paul

**&lt;image001.gif&gt;**
**Access COVID-19 Resources Here**
**Paul D. Montclare | Partner, through his LLP**
T: 917.546.7704 | C: 917-670-0133 | F: (917) 546-7674 | [pdm@msk.com](pdm@msk.com)
**Mitchell Silberberg & Knupp LLP | [www.msk.com](www.msk.com)**
437 Madison Ave., 25th Floor, New York, NY 10022

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION, AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT AN INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY BY REPLY E-MAIL OR TELEPHONE, AND DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS FROM YOUR SYSTEM. THANK YOU.

**From:** Montclare, Paul
**Sent:** Thursday, August 27, 2020 1:37 PM
**To:** 'Wolfsohn, David J.' <DJWolfsohn@duanemorris.com>; Marandola, Tyler R. <TMarandola@duanemorris.com>
**Cc:** Williams, Matthew <mxw@msk.com>; Lichtman, Leo <lml@msk.com>; Nguyen, Elaine <eln@msk.com>
**Subject:** Phillies V. H/E

David,

Attached are a proposed amended answer and counterclaim and  a redline comparison to the original. Please indicate whether you will consent to this proposed amended pleading.

Paul

**<image001.gif>**
Access COVID-19 Resources Here
**Paul D. Montclare | Partner, through his LLP**
T: 917.546.7704 | C: 917-670-0133 | F: (917) 546-7674 | pdm@msk.com
**Mitchell Silberberg & Knupp LLP | www.msk.com**
437 Madison Ave., 25th Floor, New York, NY 10022

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION, AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT AN INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY BY REPLY E-MAIL OR TELEPHONE, AND DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS FROM YOUR SYSTEM. THANK YOU.

For more information about Duane Morris, please visit http://www.DuaneMorris.com

Confidentiality Notice: This electronic mail transmission is privileged and confidential and is intended only for the review of the party to whom it is addressed. If you have received this transmission in error, please immediately return it to the sender. Unintended transmission shall not constitute waiver of the attorney-client or any other privilege.

# EXHIBIT D

| From: | Wolfsohn, David J. |
|---|---|
| To: | Montclare, Paul; Williams, Matthew; Lichtman, Leo; Nguyen, Elaine |
| Cc: | Marandola, Tyler R.; Inwek, Cheryl; Hill, Kimberly A. |
| Subject: | [EXTERNAL] RE: The Phillies v. H/E etc.: Discovery Schedule/Issues |
| Date: | Friday, June 26, 2020 11:30:42 AM |
| Attachments: | Proposed Letter to Judge Netburn re proposed discovery deadlines(12270474.1).DOCX |

-EXTERNAL MESSAGE-

Paul,

Looks good, except I changed the paragraph about our not having experts to make it clear that if you file a motion for injunctive relief or amend the pleadings to assert claims of infringement, etc., that would be a whole new ballgame, so to speak.

David

---

**From:** Montclare, Paul <pdm@msk.com>
**Sent:** Friday, June 26, 2020 11:02 AM
**To:** Wolfsohn, David J. <DJWolfsohn@duanemorris.com>; Williams, Matthew <mxw@msk.com>; Lichtman, Leo <lml@msk.com>; Nguyen, Elaine <eln@msk.com>
**Cc:** Marandola, Tyler R. <TMarandola@duanemorris.com>; Inwek, Cheryl <CInwek@duanemorris.com>; Hill, Kimberly A. <KAHill@duanemorris.com>
**Subject:** RE: The Phillies v. H/E etc.: Discovery Schedule/Issues

Here is it is with the changes highlighted.



Access COVID-19 Resources **Here**

**Paul D. Montclare** | **Partner, through his LLP**
T: 917.546.7704 | C: 917-670-0133 | F: (917) 546-7674 | pdm@msk.com
**Mitchell Silberberg & Knupp LLP** | **www.msk.com**
437 Madison Ave., 25th Floor, New York, NY 10022

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION, AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT AN INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY BY REPLY E-MAIL OR TELEPHONE, AND DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS FROM YOUR SYSTEM. THANK YOU.

---

**From:** Wolfsohn, David J. <DJWolfsohn@duanemorris.com>
**Sent:** Friday, June 26, 2020 10:42 AM
**To:** Montclare, Paul <pdm@msk.com>; Williams, Matthew <mxw@msk.com>; Lichtman, Leo <lml@msk.com>; Nguyen, Elaine <eln@msk.com>
**Cc:** Marandola, Tyler R. <TMarandola@duanemorris.com>; Inwek, Cheryl <CInwek@duanemorris.com>; Hill, Kimberly A. <KAHill@duanemorris.com>
**Subject:** [EXTERNAL] RE: The Phillies v. H/E etc.: Discovery Schedule/Issues

-EXTERNAL MESSAGE-
Got it.

Could you please revise per our exchange and let me review one more time before submitting?

---

**From:** Montclare, Paul <pdm@msk.com>
**Sent:** Friday, June 26, 2020 10:36 AM
**To:** Wolfsohn, David J. <DJWolfsohn@duanemorris.com>; Williams, Matthew <mxw@msk.com>; Lichtman, Leo <lml@msk.com>; Nguyen, Elaine <eln@msk.com>
**Cc:** Marandola, Tyler R. <TMarandola@duanemorris.com>; Inwek, Cheryl <CInwek@duanemorris.com>; Hill, Kimberly A. <KAHill@duanemorris.com>
**Subject:** RE: The Phillies v. H/E etc.: Discovery Schedule/Issues

David,
I was referring to your request in the proposed order for additional time to complete expert depositions if you decide to seek judicial intervention to get more documents prior to the depositions.
Paul



Access COVID-19 Resources Here
**Paul D. Montclare | Partner, through his LLP**
T: 917.546.7704 | C: 917-670-0133 | F: (917) 546-7674 | pdm@msk.com
**Mitchell Silberberg & Knupp LLP** | **www.msk.com**
437 Madison Ave., 25th Floor, New York, NY 10022

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION, AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT AN INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY BY REPLY E-MAIL OR TELEPHONE, AND DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS FROM YOUR SYSTEM. THANK YOU.

---

**From:** Wolfsohn, David J. <DJWolfsohn@duanemorris.com>
**Sent:** Friday, June 26, 2020 10:31 AM
**To:** Montclare, Paul <pdm@msk.com>; Williams, Matthew <mxw@msk.com>; Lichtman, Leo <lml@msk.com>; Nguyen, Elaine <eln@msk.com>
**Cc:** Marandola, Tyler R. <TMarandola@duanemorris.com>; Inwek, Cheryl <CInwek@duanemorris.com>; Hill, Kimberly A. <KAHill@duanemorris.com>
**Subject:** [EXTERNAL] RE: The Phillies v. H/E etc.: Discovery Schedule/Issues

-EXTERNAL MESSAGE-
I see your point about the contention interrogatories, but what additional expert disclosure are you referring to?

**From:** Montclare, Paul <pdm@msk.com>
**Sent:** Friday, June 26, 2020 10:17 AM
**To:** Wolfsohn, David J. <DJWolfsohn@duanemorris.com>; Williams, Matthew <mxw@msk.com>;
Lichtman, Leo <lml@msk.com>; Nguyen, Elaine <eln@msk.com>
**Cc:** Marandola, Tyler R. <TMarandola@duanemorris.com>; Inwek, Cheryl
<CInwek@duanemorris.com>; Hill, Kimberly A. <KAHill@duanemorris.com>
**Subject:** RE: The Phillies v. H/E etc.: Discovery Schedule/Issues

Because July 10 th may not be the last day of expert disclosure and we still need to exchange
contention interrogatories, I think we should close all discovery a week prior to the MSJ letter or
July 20th, Ok?



<span style="background-color: #ccc">Access COVID-19 Resources **Here**</span>
**Paul D. Montclare** | **Partner, through his LLP**
T: 917.546.7704 | C: 917-670-0133 | F: (917) 546-7674 | pdm@msk.com
**Mitchell Silberberg & Knupp LLP** | **www.msk.com**
437 Madison Ave., 25th Floor, New York, NY 10022

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE
DESIGNATED RECIPIENTS. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION, AND AS SUCH IS PRIVILEGED AND
CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT AN INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW,
USE, DISSEMINATION, FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY BY
REPLY E-MAIL OR TELEPHONE, AND DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS FROM YOUR SYSTEM. THANK YOU.

**From:** Wolfsohn, David J. <DJWolfsohn@duanemorris.com>
**Sent:** Friday, June 26, 2020 9:47 AM
**To:** Montclare, Paul <pdm@msk.com>; Williams, Matthew <mxw@msk.com>; Lichtman, Leo
<lml@msk.com>; Nguyen, Elaine <eln@msk.com>
**Cc:** Marandola, Tyler R. <TMarandola@duanemorris.com>; Inwek, Cheryl
<CInwek@duanemorris.com>; Hill, Kimberly A. <KAHill@duanemorris.com>
**Subject:** [EXTERNAL] RE: The Phillies v. H/E etc.: Discovery Schedule/Issues

-EXTERNAL MESSAGE-
Paul,

Let's move service of contention interrogatories to July 3, with responses due on July 17th. I don't
think 2 weeks response time should be a problem for either of us.

Let's move the deadline for the SJ pre-motions to July 27, just to give us a bit more time to consider
the interrogatory responses, in case they are material to our respective SJ issues.

If the last day for deposing experts and finishing the H/E Rule 30(b)(6) deposition is July 10th, that

would make the last day of discovery that day, so let's pop in July 10th for that date.

For finishing the H/E deposition, let's do afternoon of July 2.

David

**From:** Montclare, Paul <pdm@msk.com>
**Sent:** Thursday, June 25, 2020 12:43 PM
**To:** Wolfsohn, David J. <DJWolfsohn@duanemorris.com>; Marandola, Tyler R.
<TMarandola@duanemorris.com>; Williams, Matthew <mxw@msk.com>; Lichtman, Leo
<lml@msk.com>; Nguyen, Elaine <eln@msk.com>
**Subject:** RE: The Phillies v. H/E etc.: Discovery Schedule/Issues

David,
Please see my proposed letter to the Court regarding scheduling. I have yellow highlighted changes  I
made to the schedule you proposed in your last email to address the continuation of Bonnie's  30(b)
(6) deposition, and to add an outside date for all discovery, which I believe the Court will want to
include in the scheduling order. Otherwise, it comports with what you proposed. Please advise if you
consent . If I do not hear back from you by 4 pm today, or we cannot agree,  I will delete the last part
of the letter which indicates your consent,  say you did not consent,  and will attach our meet and
confer email exchanges.
Paul



Access COVID-19 Resources **Here**
**Paul D. Montclare** | **Partner, through his LLP**
T: 917.546.7704 | C: 917-670-0133 | F: (917) 546-7674 | pdm@msk.com
**Mitchell Silberberg & Knupp LLP** | **www.msk.com**
437 Madison Ave., 25th Floor, New York, NY 10022

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE
DESIGNATED RECIPIENTS. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION, AND AS SUCH IS PRIVILEGED AND
CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT AN INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW,
USE, DISSEMINATION, FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY BY
REPLY E-MAIL OR TELEPHONE, AND DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS FROM YOUR SYSTEM. THANK YOU.

**From:** Montclare, Paul
**Sent:** Wednesday, June 24, 2020 6:00 PM
**To:** 'Wolfsohn, David J.' <DJWolfsohn@duanemorris.com>; 'Marandola, Tyler R.'
<TMarandola@duanemorris.com>; Williams, Matthew <mxw@msk.com>; Lichtman, Leo
<lml@msk.com>; Nguyen, Elaine <eln@msk.com>
**Subject:** RE: The Phillies v. H/E etc.: Discovery Schedule/Issues

David,

Do you want me to draft a letter to Magistrate Judge Netburn addressing the schedule we generally agreed to below?

Also, when do you want to resume Bonnie deposition? Please advise as soon as possible.
Paul



**Access COVID-19 Resources Here**
**Paul D. Montclare** | **Partner, through his LLP**
T: 917.546.7704 | C: 917-670-0133 | F: (917) 546-7674 | pdm@msk.com
**Mitchell Silberberg & Knupp LLP** | **www.msk.com**
437 Madison Ave., 25th Floor, New York, NY 10022

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION, AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT AN INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY BY REPLY E-MAIL OR TELEPHONE, AND DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS FROM YOUR SYSTEM. THANK YOU.

**From:** Montclare, Paul
**Sent:** Wednesday, June 17, 2020 4:58 PM
**To:** 'Wolfsohn, David J.' <DJWolfsohn@duanemorris.com>; Marandola, Tyler R. <TMarandola@duanemorris.com>; Williams, Matthew <mxw@msk.com>; Lichtman, Leo <lml@msk.com>; Nguyen, Elaine <eln@msk.com>
**Subject:** RE: The Phillies v. H/E etc.: Discovery Schedule/Issues

David,

We are generally in agreement about the schedule. See my redline comments below.

Regarding the Zung subpoena, we believe that the documents referred to in the Zung expert disclosure and the response to the subpoena more than satisfy Rule 26 expert disclosure requirements. The remaining documents to be produced pursuant to the subpoena are being be processed for production and should be ready for production by the end of the week or Monday. After you receive the documents I am happy to meet and confer regarding the adequacy of Mr. Zung's expert document production.

Also, we should meet and confer regarding the requested depositions of Sapp and Carfagno. As I mentioned in my prior email, Mr. Brandreth at his 30(b)(6) deposition was admittedly not prepared to discuss the creative contributions of either Sapp or Carfagno to the design of P-2, which was a specific 30(b)(6) topic relating to important issues that were the subject of prior arguments addressed to the court. Let's meet and discuss both the Zung subpoena response and issues

relating to Sapp and Carfagno contributions early next week.

Meanwhile see my redline comments below so we can draft a joint scheduling letter to Judge Netburn ASAP.

Paul



**Access COVID-19 Resources Here**
**Paul D. Montclare** | **Partner, through his LLP**
T: 917.546.7704 | C: 917-670-0133 | F: (917) 546-7674 | pdm@msk.com
**Mitchell Silberberg & Knupp LLP** | **www.msk.com**
437 Madison Ave., 25th Floor, New York, NY 10022

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION, AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT AN INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY BY REPLY E-MAIL OR TELEPHONE, AND DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS FROM YOUR SYSTEM. THANK YOU.

**From:** Wolfsohn, David J. <DJWolfsohn@duanemorris.com>
**Sent:** Wednesday, June 17, 2020 3:22 PM
**To:** Montclare, Paul <pdm@msk.com>; Marandola, Tyler R. <TMarandola@duanemorris.com>; Williams, Matthew <mxw@msk.com>; Lichtman, Leo <lml@msk.com>; Nguyen, Elaine <eln@msk.com>
**Subject:** [EXTERNAL] RE: The Phillies v. H/E etc.: Discovery Schedule/Issues

-EXTERNAL MESSAGE-
Paul,

As I explained to you, I've been waiting to see what Mr. Zung would be producing in response to the subpoena before agreeing to expert deposition deadlines. My thinking is that, if we have to conduct motion practice over that subpoena, that would delay the taking of the two expert depositions until after Judge Netburn can resolve the parties' dispute.

We received your objections yesterday and believe they are quite improper, but you also say you will be producing documents, so I will await their production as well as meet-and-confer discussion before filing a motion regarding Mr. Zung's subpoena. (I'm assuming the documents will be produced this week?).

Your proposal to take more lay depositions is improper given that fact discovery ended on April 27th, with the exception of our agreement that you could conduct the MLB deposition after that deadline

and the remaining Phillies Rule 30(b)(6) topics, and the Court ruling that we could take the H/E Rule 30(b)(6) deposition, which you had opposed.

With regard to damages, I sent you a formal letter on the subject, which updates our initial disclosures.

Your other comments about the stipulations etc. are vague and I don't know what, specifically, you are referring to.  I would be happy to respond to any specific items you think you're still missing.

Here's my counterproposal on the schedule:

A.    **Expert Disclosure**

1.    **Expert depositions  of Defendants' two designated Experts** will be concluded **no later than July 10, 2020**, on dates to be agreed. Provided, however, that if The Phillies requests the Court's assistance with regard to the documents to be produced in response to the subpoena on Mr. Zung, The Phillies may take the ~~two~~ expert depositions after the Court's decision on that issue, and, if the Court orders the production of additional documents, The Phillies may have a reasonable time after the receipt of those documents to take the depositions.

2.    **The Plaintiff will not  designate experts in this case.**

.    The last day for **Expert Discovery will be  July 10th, 2020, subject to the caveat in paragraph 1 above.**

C.    **Contention interrogatories,** if any, to be **exchanged on June 26, 2020 with Responses due July 17, 2020**

D.    **Deadline to submit MSJ Letters will be July 24, 2020**

In addition, nothing in this proposed  schedule should be construed to waive or affect any rights or defenses that the Defendants' may have as a result of the  passing of the effective date of the Termination Notice. Nor will it preclude Defendants from seeking an order from the Court regarding the depositions of Sapp and Carfagno, if  the parties cannot reach an agreement as to these potential depositions.

Best,

David

For more information about Duane Morris, please visit http://www.DuaneMorris.com

Confidentiality Notice: This electronic mail transmission is privileged and confidential and is intended only for the review of the party to whom it is addressed. If you have received this transmission in error, please immediately return it to the sender. Unintended transmission shall not constitute waiver of the attorney-client or any other privilege.



NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
LOS ANGELES
TAIWAN
BOSTON
HOUSTON
AUSTIN
HANOI
HO CHI MINH CITY

*FIRM and AFFILIATE OFFICES*

DAVID J. WOLFSOHN
DIRECT DIAL: +1 215 979 1866
PERSONAL FAX: +1 215 689 2739
*E-MAIL:* DJWolfsohn@duanemorris.com

*www.duanemorris.com*

SHANGHAI
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN
*A GCC REPRESENTATIVE OFFICE
OF DUANE MORRIS*

ALLIANCES IN MEXICO
AND SRI LANKA

October 1, 2020

VIA ECF

The Honorable Victor Marrero
United States District Court
  for the Southern District of New York
500 Pearl Street, Room 660
New York, NY 10007

      **Re:**    *The Phillies v. Harrison/Erickson, Inc., et al.*, No. 19-cv-7239-VM-SN

Dear Judge Marrero:

On behalf of The Phillies, this letter responds to H/E's September 29 letter describing its intent to file a motion for leave to file its proposed amended answer and counterclaim (the "PAC").

H/E's PAC—dripping with nasty rhetoric and invective, written more as a press piece than a pleading—comes as the parties await the Court's decision on their requests to file motions for summary judgment. It accuses The Phillies of jumping the gun on filing a declaratory judgment action, while also claiming that The Phillies is somehow "willfully" infringing H/E's purported copyrights. H/E omits the inconvenient fact that The Phillies instituted this action about a year *before* the purported June 15, 2020 termination date in a good faith attempt to obtain the Court's rulings regarding The Phillies' rights to the Phanatic, including the fact that H/E does not have the right to terminate the 1984 Agreement because The Phillies are the author of the Phanatic's character, because of H/E's fraud on the copyright office, and because H/E has already used up any arguable termination rights it claims to have had by repeatedly demanding and receiving more money for the costume it constructed in a few hours back in 1978. The PAC also fails to acknowledge that defendants have ***admitted*** in this litigation that The Phillies (1) created the Phanatic's "fun and sensitive" character, (2) own all the Phanatic trademarks (including to the distinctive design of the Phanatic), (3) paid H/E numerous times over for ownership of H/E's drawings,[1] and (4) are entitled to continue to utilize ***hundreds*** of "derivative works" that The Phillies designed or paid for during the last 36 years.

---

[1] H/E's repeated use of the words "steal" and "theft" is as improper as it is utterly false. The Phillies has paid H/E multiple times over for any artwork prepared by Ms. Erickson. In fact, it is undisputed that The Phillies has paid H/E over $1 million for art and costumes.

DUANE MORRIS LLP

30 SOUTH 17TH STREET   PHILADELPHIA, PA 19103-4196      PHONE: +1 215 979 1000   FAX: +1 215 979 1020

Duane Morris

The Honorable Victor Marrero
October 1, 2020
Page 2

The Phillies will oppose H/E's motion for leave to file the PAC because the proposed claims cannot withstand a Rule 12(b)(6) motion. A motion for leave to amend is properly denied when amendment would be futile. *Lefkowitz v. Bank of New York*, 676 F. Supp. 2d 229, 277 (S.D.N.Y. 2009) (Marrero, J.). "[T]he analysis appropriate to an assertion of futility is typically whether the proposed new pleading could survive a 12(b)(6) motion." *Id.*[2]

First, amendment is futile as to H/E's infringement claim based on the original 1979 Phanatic registration. The Court need look no further than the pleadings to determine that The Phillies' utilization of its "P2" costume is non-infringing pursuant to the derivative works exception in 17 U.S.C. § 203(b)(1). As explained in The Phillies' July 27, 2020 letter (Dkt. No. 99), the Court is entitled to make that determination as a matter of law by making a "visual comparison" between P2, as depicted in Exh. A to the PAC, and the image in H/E's 1979 deposit, attached to the Complaint as Exh. D (Dkt. No. 1-4). *See, e.g., Eden Toys, Inc. v. Florelee Undergarment Co.*, Inc., 697 F.2d 27, 35 (2d Cir. 1982). As the case law cited in The Phillies' July 27 letter makes clear, P2 clearly meets the requisite level of originality for a derivative work. And P2 was introduced by The Phillies on February 23, 2020—well before June 15. Accordingly, because § 203(b)(1) permits The Phillies to continue to utilize any derivative work prepared before termination of the 1984 Agreement, The Phillies have the absolute right to continue to utilize P2.

Second, H/E's claim that The Phillies has infringed by creating "derivatives of derivatives" is implausible. If, as H/E alleges, P2 is **not** a derivative work, then there can be no "derivatives of derivatives." But if the various P2 routines and costumes are "derivative works," then P2 must be one as well. The differences between the depictions of P2 in the PAC show much fewer significant differences than those between P2 and the Phanatic depicted in H/E's 1979 registration. If P2 clowning around is "derivative," then P2 itself must be a derivative work of the Phanatic depicted in the 1979 registration. In fact, H/E's examples of post-June 15 Phanatic activity are simply the "continued utilization" of P2 as a mascot—donning silly outfits and engaging in slapstick—which are uses that are squarely within the scope of § 203(b)(1): "A derivative work prepared under authority of the grant before its termination may continue to be utilized under the terms of the grant after its termination." 17 U.S.C. § 203(b)(1). Under the plain language of § 203(b)(1), The Phillies is entitled to "continue to . . . utilize[]" P2 and the related artwork as they were utilized before the purported termination on June 15.

Third, H/E's claim based on numerous unregistered works listed in Exhibit B cannot survive a motion to dismiss. To state a claim for copyright infringement, the claimant must establish that each copyright upon which the claim is based was registered before suit was instituted. *Malibu*

---

[2] H/E represents that amendment would cause no delay in the Court's ability to decide the parties' motions for partial summary judgment. If the amendment would, The Phillies would also argue that amendment would cause undue delay and prejudice. H/E's allegations in its PAC that they created "hundreds" and "countless" illustrations (¶¶ 10, 11) certainly gives one pause.

The Honorable Victor Marrero
October 1, 2020
Page 3

*Media, LLC v. Baker*, No. 18 CV 3263 JGK BCM, 2020 WL 3978302, at *4 (S.D.N.Y. June 18, 2020), *report and recommendation adopted*, No. 18 CV 3263 (JGK), 2020 WL 3972736 (S.D.N.Y. July 13, 2020). "'[R]egistration occurs, and a copyright claimant may commence an infringement suit, when the Copyright Office registers a copyright,' not when the claimant first submits its registration application and related materials." *Id.* (quoting *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 886 (2019)).

H/E admits that these drawings are unregistered, but incorrectly assumes that H/E will be allowed to "amend their Counterclaims as necessary to reflect those registrations when they are issued." PAC ¶ 60. But a claimant is not allowed to amend a claim for infringement based on works that were not registered at the time the initial claim was filed. *Malibu Media*, 2020 WL 3978302, at *4. "[A] contrary result would make a meaningless formality of [the Supreme Court's] requirement that an application be approved prior to filing suit [since] a plaintiff could file suit at any time, notwithstanding Section 411(a)'s precondition, and simply update the complaint when registration finally occurred." *Id.* (quotation marks and citation omitted); *see also Xclusive-Lee, Inc. v. Hadid*, No. 19 CV 520 PKC CLP, 2019 WL 3281013, at *3 (E.D.N.Y. July 18, 2019). Because the works listed in Exhibit B are not registered, H/E's claims as to those works cannot withstand a motion to dismiss.

Fourth, for the same reason that H/E's claim fails as to the unregistered works in Exhibit B, H/E also fails to state a claim for infringement of the copyrighted character. Because H/E has admitted that **The Phillies** created the Phanatic's character, they have never even attempted to register the character, so H/E cannot assert any such claim.

Fifth, H/E's amendment to include statutory damages based on the unregistered works would also be futile. Statutory damages and attorneys' fees are not available to a claimant where "any infringement of copyright commenced . . . before the effective date of its registration," unless registration is made within three months of the first publication. 17 U.S.C. § 412. H/E alleges that The Phillies commenced infringement of H/E's copyrights as of June 16, 2020. However, all of the works listed in Exhibit B were first published in the 1980s. Statutory damages are therefore unavailable with respect to these works.

Finally, H/E provides no reason to amend its answer (it raises no new defenses), and the newly proposed language consists of argument and bloviating rhetoric inappropriate for a pleading. Even the "facts" section of the proposed amended counterclaim reads like a preview of H/E's summary judgment brief. "[I]t is inappropriate to include a legal argument and briefing within a complaint," and an amended pleading should not be used as a vehicle for presenting blustery argument. *See Anthes v. New York University*, No. 17 Civ. 2511 (ALC), 2018 WL 1737540, at *19 (S.D.N.Y. Mar. 12, 2018); *Gleis v. Buehler*, No. 11 Civ. 663 (VLB), 2012 WL 1194987, at *5 (D. Conn. Apr. 10, 2012).

The Honorable Victor Marrero
October 1, 2020
Page 4

<div style="text-align:right">DuaneMorris</div>

Respectfully,

/s/ David J. Wolfsohn

David J. Wolfsohn

DJW/kah
cc:    Paul D. Montclare, Esq.
       Elaine Nguyen, Esq.
       Leo M. Lichtman, Esq.
       Tyler Marandola, Esq.
       Kendra Oxholm, Esq.



**MITCHELL SILBERBERG & KNUPP LLP**
A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Paul D. Montclare
Partner
(917) 546-7704 Phone
(917) 546-7674 Fax
pdm@msk.com

October 5, 2020

**VIA ECF**

Honorable Victor Marrero
U.S. District Judge
500 Pearl Street, Suite 1610
New York, NY 10007

Re:     **Phillies v. Harrison/Erickson, Inc. et al., No. 19-cv-7239-VM-SN**

Dear Judge Marrero:

We write on behalf of Counterclaim Plaintiffs Bonnie Erickson and Wayde Harrison, *et al.*
("H/E") in reply to The Phillies' October 1, 2020 letter (ECF No. 106). The Phillies' letter is
replete with churlish, distracting false statements and insults, but those rhetorical tactics cannot
change the fact that The Phillies have infringed upon H/E's rights in the Phanatic, which reverted
to H/E on June 15, 2020 (the "Effective Termination Date") pursuant to H/E's valid termination
notice. The Phillies' arguments concerning the purported futility of H/E's infringement claims
are meritless.[1]

*First*, H/E easily meet the pleading standards under Fed. R. Civ. P. 8. H/E alleges facts
demonstrating that The Phillies are using an unauthorized reproduction of their registered
copyrighted work, the Phanatic, *see* Proposed Amended Counterclaims, ECF No. 105-1 ("PAC")
¶¶ 18-21, 61; The Phillies have been creating and exploiting *new* derivative works based upon
the Phanatic, *after* the Effective Termination Date, and threaten to create and exploit countless
more, *see* PAC ¶¶ 23-27, 61, Ex. A to PAC; and The Phillies continue to sell and knowingly
authorize, enable, encourage, and/or induce others to sell unauthorized merchandise featuring
pieces of Phanatic artwork that The Phillies do not own, *see* PAC ¶¶ 30, 61, Ex. B to PAC. This
more than meets the pleading requirements for an infringement action. *See BWP Media USA
Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 353 (S.D.N.Y. 2014) ("Courts in this
district have held that "[t]o withstand a motion to dismiss, a complaint based on copyright
infringement must allege: (1) which original works are the subject of the copyright claim; (2)
that the plaintiff owns the copyrights in those works; (3) that the copyrights have been registered
in accordance with the statute; and (4) 'by what acts during what time' the defendant infringed
the copyright.").[2]

---

[1] The Phillies do not meaningfully argue that the Proposed Amended Counterclaim would cause undue delay or
prejudice, as it is undisputed that The Phillies were aware from the outset of the case that H/E would bring an
infringement claim against The Phillies once H/E's rights were violated after the Effective Termination Date.

[2] The issue of whether P2 is a derivative work permitted under the derivative work exception to 17 U.S.C. § 203 has
already been discussed in the parties' pre-motion summary judgment letters, and the record is replete with evidence



*Second*, The Phillies willfully mischaracterize H/E's allegation concerning "derivatives of derivatives," again, attempting to twist the meaning of the derivative work exception under 17 U.S.C. § 203. The Phillies' counsel has already represented to the Court that the threshold question regarding the derivative work exception is whether the derivative work was "<u>prepared before June 15, 2020</u>." *See* Wolfsohn Letter to Judge Marrero, ECF No. 99, at 2 (emphasis added). But The Phillies do not dispute that they created numerous staged photographs and videos based on the Phanatic <u>after June 15, 2020</u>. *See* PAC, ¶¶ 23-27, 61, Ex. A to PAC. Each new staged photograph and video that The Phillies have created and used after termination is an unauthorized derivative work based on the Phanatic. *See* PAC ¶ 24; *Cooley v. Penguin Grp. (USA) Inc.*, 31 F. Supp. 3d 599, 607-609 (S.D.N.Y. 2014). The Phillies do not—and cannot—set forth any legal basis allowing them to utilize these post-termination derivative works.

*Third*, The Phillies suggest that H/E's claim based on Exhibit B works cannot survive because those works are unregistered. The Phillies are wrong. The works on Exhibit B embody, and repeat content verbatim from, H/E's registered Phanatic mascot design. *See, e.g.* PAC ¶¶ 10, 15, 60. As such, H/E may rely on the copyright for the original Phanatic registration to maintain a suit on the Exhibit B works. *See, e.g, SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*, 642 F. Supp. 2d 206, 214 (S.D.N.Y. 2009) (holding that the owner of the registered work underlying a derivative work can maintain a suit for copying the unregistered derivative work (citing 2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 7.16[B][2][b] (2008)); *see also Klauber Bros. v. Russell-Newman, Inc.*, No. 11 Civ. 4985 (PGG), 2013 WL 1245456, at *4-5 (S.D.N.Y. Mar. 26, 2013) (same). The Phillies' cases are thus inapposite, because the Exhibit B works *are based on, and share content with, the underlying Phanatic mascot design*, which is *registered, see, e.g.* PAC ¶¶ 10, 15, 60, and accordingly, H/E has satisfied the statutory prerequisite of § 411(a).

*Fourth*, H/E has a counterclaim seeking a declaration that they own the Phanatic character. The Phillies' assertion that H/E admitted that The Phillies created the character is untrue, and their suggestion that H/E should have "attempted to register the character," is contrary to the law, as any "character" is not a separate copyright; rather it is embodied in the original Phanatic mascot design registered with the Copyright Office that H/E created, and the countless other works of authorship that H/E created. *See Conan Properties Int'l LLC v. Sanchez*, No. 1:17-CV-00162-FB-RLM, 2018 WL 3869894, at *3 (E.D.N.Y. Aug. 15, 2018) (adopting Report & Recommendation and explaining that "copyright protection for characters is a result of their embodiment in original works of authorship," and it is erroneous to treat characters "as separate and distinct copyright subject matter").

*Fifth*, The Phillies' contention that H/E will not be able to seek statutory damages on the works with pending registrations, *see* PAC, Ex. B, is incorrect. H/E filed copyright registrations for such works on June 15, 2020, the date the rights in the Phanatic reverted to H/E, and also the

<hr />

showing that P2 is not a true derivative work. The Phillies' attempt to sidestep the summary judgment determination on P2 by raising it in a futility opposition argument to this motion to amend is circular. The parties have already asked to file summary judgment motions addressing this same point regarding the existing declaratory judgment claims. Those claims have now matured into infringement actions post-termination.



date infringement commenced.  Section 412 precludes statutory damages and fees only if infringement commences *before* the effective registration date.  *See* 17 U.S.C. § 412(2).  Thus, H/E meet the requirements for statutory damages and attorney's fees under the plain language of 17 U.S.C. § 412.  In any event, this is no basis for rejecting the proposed amendment as futile. Even if H/E were not entitled to statutory damages and attorney's fees for the Exhibit B works, H/E will still be able to seek statutory damages and attorney's fees on the original Phanatic copyright, as well as actual damages on all other works.

We appreciate the Court's consideration of H/E's proposed amendment and are ready, of course, to brief this matter further and more fully at the Court's request.

Respectfully,


/s/ Paul D. Montclare


Paul D. Montclare
Partner
MITCHELL SILBERBERG & KNUPP LLP

PDM/mcp