

| | | |
|---|---|---|
| NEW YORK | | SHANGHAI |
| LONDON | | ATLANTA |
| SINGAPORE | FIRM and AFFILIATE OFFICES | BALTIMORE |
| PHILADELPHIA | | WILMINGTON |
| CHICAGO | | MIAMI |
| WASHINGTON, DC | | BOCA RATON |
| SAN FRANCISCO | DAVID J. WOLFSOHN | PITTSBURGH |
| SILICON VALLEY | DIRECT DIAL: +1 215 979 1866 | NEWARK |
| SAN DIEGO | PERSONAL FAX: +1 215 689 2739 | LAS VEGAS |
| LOS ANGELES | E-MAIL: DJWolfsohn@duanemorris.com | CHERRY HILL |
| TAIWAN | | LAKE TAHOE |
| BOSTON | www.duanemorris.com | MYANMAR |
| HOUSTON | | OMAN |
| AUSTIN | | A GCC REPRESENTATIVE OFFICE |
| HANOI | | OF DUANE MORRIS |
| HO CHI MINH CITY | | |
| | | ALLIANCES IN MEXICO |
| | | AND SRI LANKA |

October 20, 2020

VIA ECF

The Honorable Sarah Netburn
United States Magistrate Judge
USDC for the Southern District of New York
Thurgood Marshall Courthouse
40 Foley Square
New York, NY 10007

   Re: The Phillies v. Harrison/Erickson, Inc., et al., C.A. No. 19-7239-VM-SN

Dear Judge Netburn:

  Pursuant to Judge Marrero's order of October 5 (Dkt. No. 108) referring to Your Honor the cross motions for summary judgment, defendants' request to file an amended answer and counterclaims, and any remaining pretrial proceedings, and Your Honor's order of October 8 (Dkt. No. 111) granting defendants' motion for a conference, this letter summarizes The Phillies' positions on the outstanding issues.

  ***Relevant Background Facts.*** In 1978, The Phillies, together with Bonnie Erickson, designed the original costume for the Phillie Phanatic. The costume incorporated The Phillies' intellectual property in The Phillies' logos, trademarks, and clothing designs, and Bill Giles' specifications that the Phanatic be fat, green, large nosed, and "indescribable" like Jim Henson's Big Bird. The Phillies' Dave Raymond first appeared in the costume in April 1978. Defendants admit that, by the summer of 1978, Raymond had "created a fun and sensitive character" for the mascot. Bonnie Erickson described Raymond's Phanatic as "enormously popular." Harrison Erickson received about $2 million in revenue on Phanatic merchandise sales the first few years.

  Not content, however, with their windfall, in 1979, Harrison Erickson sued The Phillies in this district. In connection with that lawsuit, Harrison Erickson registered the costume design with the Copyright Office, describing it as an "artistic sculpture" since, at the time, the Copyright Office would not register costumes. The copyright office no longer has the photo that

DUANE MORRIS LLP

30 SOUTH 17TH STREET PHILADELPHIA, PA 19103-4196  PHONE: +1 215 979 1000 FAX: +1 215 979 1020

DuaneMorris

The Honorable Sarah Netburn
October 20, 2020
Page 2

accompanied Harrison Erickson's registration application. But in her 1979 lawsuit, Ms. Erickson swore that the Phanatic looked like this:



To settle the 1979 litigation, The Phillies paid Harrison Erickson another $142,000.

In 1984, The Phillies paid Harrison Erickson $215,000 for an assignment of whatever rights Erickson and her husband, Wayde Harrison, claimed to have had in the Phanatic costume design. Harrison and Erickson promised in the 1984 assignment that they were conveying those rights "forever." In the years that followed this transaction, The Phillies continued to pay Harrison Erickson for costumes and artwork pursuant to numerous separate agreements. All told, The Phillies has paid Harrison Erickson about $1 million.

Breaching their promise in the 1984 assignment to sell all rights "forever," on June 15, 2018, out of the blue, Harrison Erickson sent a letter to Phillies CEO Dave Montgomery, purporting to terminate the 1984 assignment effective June 15, 2020. In fact, Harrison Erickson do not have the right to terminate the 1984 assignment (1) because The Phillies is a co-author of the costume design, (2) because The Phillies is the sole author of the Phanatic's character, (3) because H/E already used its "one shot" at termination when it renegotiated deals for more money after the Phanatic was already "wildly popular" in 1979 and again in 1984, and (4) because H/E's description of the costume as an "artistic sculpture" in its 1979 application for registration constituted fraud on the Copyright Office.

For over a year after the purported termination notice was received, The Phillies attempted to negotiate a resolution with Harrison and Erickson. When those attempts failed, The Phillies filed a complaint in this Court in August 2019 seeking, *inter alia*, a declaratory judgment that H/E did not have the right to terminate the 1984 assignment and, that aside, that The Phillies could continue to utilize the hundreds of derivative works it and its licensees or Major League Baseball's licensees, had prepared during the 42 years before the purported termination. The Phillies had hoped to obtain a court ruling on the pertinent legal issues in advance of the purported termination date of June 15, 2020.



1.  ***The Phillies' Request to File a Cross Motion for Summary Judgment.*** On July 27, 2020, The Phillies requested permission to file a motion for partial summary judgment on two discrete issues: (1) that, as a matter of law, the redesigned Phanatic and an associated style guide constitute "derivative works" prepared before the purported June 15 termination and that, in accordance with the plain language of section 203(b)(1) of the Copyright Act, The Phillies can therefore "continue to utilize" those designs as they had utilized earlier designs of the Phanatic; and (2) that The Phillies has the right to utilize designs and art work prepared by Bonnie Erickson pursuant to various agreements that post-dated the 1984 assignment. *See* Dkt. No. 99.

a.  **Summary Judgment Issue No. 1: The Phillies' Redesign of the Phanatic Is a Derivative Work.** In light of defendants' request to file a proposed amended answer and amended counterclaims, resolution of these issues is particularly acute. Last year, during discovery, The Phillies submitted to defendants images of 399 Phanatic designs, artwork, and merchandise that The Phillies or MLB and their licensees had prepared and that they potentially would want to continue to utilize after the purported termination date of June 15, 2020. Then, in July, The Phillies asked defendants which ones of the 399 they contended were not derivative works or were not noninfringing when compared to the "artistic sculpture" design that Bonnie Erickson submitted to the Copyright Office in 1979 (see above). Of those 399 designs, defendants admitted that The Phillies could continue to utilize 368 of them.[1] *In other words, Harrison Erickson concede that The Phillies have the right under the Copyright Act to continue to use at least 368 depictions of the Phanatic even if the purported termination on June 15 is deemed effective.*

Among the 368 designs that defendants admit The Phillies may continue to utilize are the following:



---

[1] The complete list is attached hereto as Exhibit A.

DuaneMorris

The Honorable Sarah Netburn
October 20, 2020
Page 4



While conceding that these and 362 other designs may be used legally by The Phillies under the Derivative Works Exception of 17 U.S.C. § 203(b)(1), defendants argue that The Phillies' redesign of the Phanatic, which had its debut at Spring Training in February of this year, is not within the exception because, supposedly, it is not a "true" derivative work but rather a "shoddy knock-off" (Dkt No. 107 at 2 n.2; Dkt. No. 105-2 ¶ 11.):



According to defendants, by creating a derivative work *after* notice of purported termination (here, June 15, 2018) but *before* purported termination (here, June 15, 2020) The Phillies "attempt[ed] to circumvent the clear termination provisions of the Copyright Act." Dkt.



The Honorable Sarah Netburn
October 20, 2020
Page 5

No. 105-2 ¶ 11. Defendants' novel interpretation of the Derivative Works Exception even leads them to label The Phillies as "thieves" and "common counterfeiters." Dkt. no. 105-2 at ¶ 10.

In fact, the plain language of the Copyright Act provides content owners with the absolute right to prepare derivative works after notice but before termination, and to continue to utilize them after purported termination. 17 U.S.C. § 203(b)(1). And, as a matter of law, a visual comparison of the redesigned Phanatic with defendants' 1979 registration makes it clear that it meets the Copyright Act's definition of a derivative work. *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 34 (2d Cir. 1982) (based on "visual comparison" of Paddington sketches, drawings of Paddington constituted derivative works where they had the "same aesthetic appeal" but differed as to smoothing of lines, proportions of hat, and lack of individualized fingers and toes); *Klauber Bros., Inc. v. Russell-Newman, Inc.,* 2013 Westlaw 1245456, *8 (March 26, 2013 S.D.N.Y.) (granting motion to dismiss as to substantial similarity based on "visual comparison of the works").

If defendants are correct that the 368 designs in Exhibit A are derivative works or noninfringing, then so too is the redesigned Phanatic. The Phillies are no more "common counterfeiters" or "thieves," (Dkt. no. 105-2 at ¶ 10) for exercising their absolute right to redesign the Phanatic than were any of the artists and merchandise licensees—including Bonnie Erickson herself—who depicted the Phanatic in those 368 designs.

Defendants' fanciful interpretation of the Copyright Act is a proper subject for summary judgment, and The Phillies looks forward to briefing this issue promptly.

**b. Summary Judgment Issue No. 2: The Copyright Act Does not Give Defendants the Right to Renege on Their Remunerative Post-1984 Agreements With The Phillies.** As explained in our July 27 letter to Judge Marrero (Dkt. 99), The Phillies paid defendants over the years for numerous drawings and designs. Among these were various "style guides," which defendants have admitted were developed for The Phillies with the express purpose and intent that they would be used by licensees of The Phillies and Major League Baseball to design new Phanatic-related products and merchandise. One of those deals was a 1990 transaction in which The Phillies purchased all rights to Bonnie Erickson's "Original" style guide. Importantly, eleven of the thirteen pre-1984 designs that defendants' proposed amended answer and counterclaims alleges The Phillies are ***"stealing"*** (depicted in Exhibit B to defendants' proposed amended pleading) were ***bought*** fair and square by The Phillies from Harrison Erickson in 1990.

Defendants appear to argue that the rights The Phillies acquired under these ***post-1984*** transactions have somehow been "terminated" because of defendants' purported termination of the 1984 assignment. Dkt. No. 102 at 3. But defendants' termination notice references only the 1984 assignment. H/E Counterclaims, Dkt. No. 38 ¶ 34. The Copyright Office's regulations provide that, to be effective, a termination notice must include a "clear identification" of the "grant to which the notice of termination applies." 37 C.F.R. §201.10. Defendants' purported termination notice does not identify any of the later transactions. Moreover, Section 203 of the



The Honorable Sarah Netburn
October 20, 2020
Page 6

Copyright Act is crystal clear that the earliest one can achieve termination is 35 years from the date of the "grant." 17 U.S.C. § 203(a)(3). Accordingly, even assuming, *arguendo,* that one or more of these transactions would be subject to termination, the earliest the 1990 sale could be terminated would the 2025; and an April 2018 deal could not be terminated before 2053.

Here again, the notion that The Phillies could be considered "common counterfeiters" and "thieves" for using drawings they bought from Harrison Erickson has no basis in the law, to say nothing of morality. Harrison Erickson's inflammatory and wildly off-base rhetoric again highlights the need for the Court to set a briefing schedule so that defendants' meritless theories can be promptly debunked.

2. ***Harrison/Erickson's Request to File a Motion Seeking Leave to Amend Its Answer and Counterclaims.*** On September 29, defendants submitted to Judge Marrero a proposed amended answer and counterclaims. Defendants have never articulated a legitimate reason for amending the ***answer*** portion of their pleading. As noted, the answer accuses The Phillies of being "common counterfeiters" and "thieves" for exercising their absolute rights under the plain language of the Copyright Act, while falsely alleging that defendants were entirely responsible for creating the Phanatic when their own internal papers state that The Phillies' Dave Raymond "has created a fun and sensitive character." Defendants used the proposed answer to generate press they misguidedly believe is helpful to their cause, an improper reason for amending a pleading.

As for the amended counterclaims themselves, amendment would be futile for the reasons stated in our October 1, 2020 letter to Judge Marrero (Dkt. 106). Among other things, the proposed counterclaims (1) are implausible because they allege on the one hand that the redesigned Phanatic is not a derivative work while simultaneously claiming that, say, putting a mask on him makes the Phanatic a "derivative work of a derivative work," (2) are improperly based on unregistered works (the drawings and photos appearing in Exhibit B to the proposed amendment), (3) do not identify the alleged infringement with the requisite particularity, and (4) claim infringement of the Phanatic's character when all that defendants have (improperly) registered is "an artistic sculpture," not a character.

Ironically, defendants accuse The Phillies' of attempting to "sidestep the summary judgment determination on P2 by raising it in a futility opposition argument" to defendants' proposed motion for leave to amend. Doc. 107 n.2. In fact, the reverse is true: The Phillies believe that the summary judgment issues should be decided ***before*** permitting defendants to move forward with their hyperbolic and legally erroneous accusations of "theft" and "common counterfeiters." If The Phillies' reading of the plain language of the Copyright Act is correct, then defendants have no infringement case. The parties and the Court would save themselves a lot of time and effort if defendants awaited the Court's rulings on summary judgment before initiating a new round of scorched earth litigation. Notably, defendants have until June 15, 2023 before the statute of limitations begins to run on their alleged (and mistaken) infringement claims, so there is plenty of time to await the Court's resolution of the summary judgment issues.



The Honorable Sarah Netburn
October 20, 2020
Page 7

    3. ***Contention Interrogatories.***

The following of defendants' answers to The Phillies' contention interrogatories (Exhibit B hereto) are evasive and/or incomplete:

    **Interrogatory 14.** Defendants claim that they are entitled to a permanent injunction, which would require their proving irreparable harm. This interrogatory asks them for the factual basis for such a contention. The response contains a lot of colorful words like "blatant," "malicious," and "steals," but it does not explain why continued use of the Phanatic would harm defendants in a way that could not be compensated by a royalty. The notion of irreparable harm is particularly misplaced in this context where defendants concede that The Phillies can continue to utilize 368 different depictions of the Phanatic, and where defendants must concede that neither they nor any third party could use any depiction of the Phanatic in commerce without violating The Phillies' incontestable trademarks. Ironically, one of defendants' claimed reasons for wanting to amend their counterclaims is to request an injunction, yet they are unable or unwilling to articulate a factual basis for any such relief.

    **Interrogatories 15 & 16.** These interrogatories ask whether defendants contend that any of the Phillies' trademarks are invalid. The responses are evasive and inaccurate. The Phillies produced to defendants many thousands of documents showing the extensive use of The Phillies' Phanatic-related trademarks over the past few decades. Defendants have not asserted any basis on which to contest the validity of The Phillies' marks, so they should simply say that.

    **Interrogatory 17.** Defendants contend that they were somehow underpaid by The Phillies, even though they have received over $1 million for Phanatic design, artwork, and costumes. The documentary record shows that the original costume was designed and built by a team of about half a dozen workers who were paid $4 an hour over about a 2 week period. The Phillies is entitled to a straight answer about whether defendants contend it cost more than $2000 to construct the first Phanatic costume.

    **Interrogatory 20.** This interrogatory asks whether defendants contend that they did not intend the 1984 assignment to be for "forever" or at least as long as the copyright term. Defendants' answer is evasive. The question is relevant to The Phillies claims for unjust enrichment and breach of the duty of good faith and fair dealing. Moreover, defendants' answer asserts that The Phillies should have known that "forever" actually meant "35 years," so defendants' intent is relevant.

    **Interrogatories 21 & 22.** These interrogatories ask defendants to explain in detail which aspects of the Phanatic they believe they could sell or license. The answers are evasive because they do not spell out what would be sold or licensed in any such transaction, and how any third parties could *use* anything recognizable as The Phanatic given the fact that both the word "Phanatic" and the design of the Phanatic are trademarked.


The Honorable Sarah Netburn
October 20, 2020
Page 8

**Interrogatory 23.** Here, defendants refuse to say whether they are contesting the fact that The Phillies has acquired substantial good will in the Phanatic. The issue is critical to defendants' claim that they are entitled to injunctive relief.

The Phillies requests the Court to order defendants to answer fully and completely the foregoing contention interrogatories.

4. ***The Court Should not Ask the Copyright Office Pursuant to Section 411 to Resolve Disputed Factual Issues.*** The Phillies' position on this issue is set forth in its letters of July 6 (Dkt. No. 92), July 23 (Dkt. No. 97), and July 30 (Dkt. No. 103). In short, defendant's proposed letter improperly asks the Copyright Office to resolve fundamental factual disagreements between the parties, most notably what defendants deposited with the Copyright Office with the Phanatic application. At the time the July letters were written, The Phillies was unaware that Ms. Erickson had filed with the Copyright Office on June 15 thirteen applications to register thirteen Phanatic designs she claims are derivative works. (These are the unregistered designs depicted in Exhibit B of defendants' proposed amended answer and counterclaims. The applications are attached hereto as Exhibit C.) Those applications and accompanying deposits are not available from the Copyright Office, and they were not produced by defendants until last month. The applications are significant to this issue in at least one respect: Although the Copyright Office no longer has the deposit that accompanied the July 1979 registration of the "artistic sculpture," Ms. Erickson apparently did not provide the Copyright Office with any photographs that she contends constituted the deposit for the 1979 registration. This further underscores the fact that the critical issue of what constituted the deposit for the 1979 registration needs to be resolved by a finder of fact, and not by the Copyright Office. As The Phillies argued in July, Section 411 provides no basis for asking the Copyright Office to resolve disputed issues of fact, or any issue other than whether the Copyright Office would have permitted the Phanatic registration to issue if it had described the work as a "costume."

***

We look forward to addressing the issues on the agenda for Thursday's conference with the Court.

Respectfully,

/s/ David J. Wolfsohn

David J. Wolfsohn

DJW/kah
cc:    Paul D. Montclare, Esq.
        Leo M. Lichtman, Esq.
        Elaine Nguyen, Esq.
        J. Matthew William, Esq.

DuaneMorris

The Honorable Sarah Netburn
October 20, 2020
Page 9

      Tyler R. Marandola, Esq.
      Kendra C. Oxholm, Esq.