## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE PHILLIES, a Pennsylvania limited partnership, <br><br>       Plaintiff, <br><br> v. <br><br> HARRISON/ERICKSON, INCORPORATED, a New York corporation, HARRISON ERICKSON, a partnership, and WAYDE HARRISON and BONNIE ERICKSON, <br><br>       Defendants. | CIVIL ACTION NO. 19-CV-7239 (VM) <br><br><br> JURY TRIAL DEMANDED |

## FIRST AMENDED ANSWER AND COUNTERCLAIMS

Defendants and Counterclaim Plaintiffs Harrison/Erickson Incorporated, Harrison Erickson, a partnership, Wayde Harrison, and Bonnie Erickson, by and through their undersigned counsel, for their Answer to Plaintiff's Complaint, allege as follows:

## INTRODUCTORY RESPONSE TO THE COMPLAINT

1.     Plaintiff, The Phillies, first brought this case, not because it had any valid claim to the Phanatic copyright—it does not.  Instead, The Phillies are using, and have used, its Complaint in this action as a weapon to try to get the Defendants to accept a lower amount for the renewal of the 1984 assignment of the Phanatic copyright, which was originally granted to The Phillies by Wayde Harrison and Bonnie Erickson (collectively, "H/E") by the October 31, 1984 agreement attached to the Complaint as Exhibit G (hereinafter referred to as the "1984 Agreement").  Unsuccessful in that attempt, The Phillies are now actively attempting to misappropriate H/E's copyright rights in the Phanatic, by freeloading off of H/E's artistry in perpetuity while denying H/E fair compensation for H/E's copyrighted artistic works.

1

2.      Notwithstanding the twisted allegations of the Complaint, it is undeniable that for four decades The Phillies absolutely knew and repeatedly acknowledged that H/E were the sole authors of the Phanatic copyright.  The Phillies even conceded this in the agreements attached to their Complaint as Exhibits B, C, F, and G.  The 1984 Agreement assigning the Phanatic copyright to The Phillies specifically acknowledged that H/E owned the Phanatic copyright, stating in the very first clause: "Whereas, HE owns the copyright of the artistic sculpture presently known as the 'Phillies Phanatic' (hereinafter referred to as the 'MASCOT')."  If that was not clear enough, The Phillies also agreed under the 1984 Agreement, to "**credit HE as the creator of the MASCOT**," consistent with The Phillies' express understanding that H/E, and not The Phillies, were the copyright author (*i.e.*, creator) of the Phanatic.

3.      It is simply undeniable that The Phillies conceded in the principal 1984 Agreement, executed by The Phillies themselves that they wanted to purchase H/E's Phanatic copyright in accordance with the Copyright Act so they could use H/E's copyrighted artistic work, the Phanatic, and all existing reproductions and portrayals of the Phanatic.  It is disingenuous in the extreme for The Phillies now to claim, 36 years after they entered into the principal 1984 Agreement, that they already owned the Phanatic copyright in 1984, when they purchased H/E's Phanatic copyright in 1984.  This lack of candor is not an oversight—rather, it represents an intentional effort to present a false narrative, unhinged to the truth, displayed in false and misleading allegations made in The Phillies' Complaint that started this case.  The Phillies had to attach the 1984 Agreement as Exhibit G to the Complaint, but there is not a word in The Phillies' prolix Complaint that describes the pertinent clauses in the 1984 Agreement that expressly acknowledged that H/E, and not The Phillies, were the sole author, creator, and owner, of the Phanatic copyright.  The Phillies' selective exclusion of real facts pervades the allegations

of the Complaint.

4.      In their complaint, The Phillies shamelessly allege that they or Bill Giles, a former Executive Vice President of The Phillies, created the Phanatic.  The truth is that other than wanting it to be named the Phanatic and to be family friendly, Giles and The Phillies had no input into the design and creation of the Phanatic.  In fact, while The Phillies allege that Mr. Giles envisioned the Phanatic to be green, Mr. Giles testified at his own deposition that he did not remember picking the color, that he may have "brainwashed" himself into thinking otherwise, and that he often took credit for the work of others.

5.      Also, the real, undeniable facts—acknowledged by The Phillies in their course of ongoing work and dealings with H/E for over 40 years—are that H/E originally designed and created the Phanatic.  H/E are renowned designers who over the course of several decades, created countless iconic puppets, costumes, and other creations, including numerous Muppets characters and major sports league mascots.  Defendant Bonnie Erickson, while working for the legendary Jim Henson of Sesame Street and Muppets fame, created iconic characters, including Miss Piggy, among others.  In 1978, The Phillies first asked Jim Henson to create their mascot. Mr. Henson declined, and personally recommended that The Phillies contact H/E to create The Phanatic.  H/E met with Phillies representatives—not Mr. Giles—early in 1978, and began working on the creation of the Phanatic.  In March of 1978, H/E entered into a written letter agreement (the "Letter Agreement") with The Phillies to create the Phanatic.  While The Phillies attach this seminal Letter Agreement to the Complaint as Exhibit B, they once again intentionally omit from the narrative in their Complaint that this early Letter Agreement contained express language that specifically provided "**The character [i.e., the Phanatic] will be copywritten by Harrison/Erickson . . . .**"  Once again, The Phillies are allergic to the real

3

facts and bent on spreading half-truths throughout their Complaint.

6.      In accordance with their promises in the 1978 Letter Agreement, H/E completed their design and construction of the Phanatic, which debuted as The Phillies' mascot at The Phillies' ballpark on April 25, 1978.  And, as contemplated by the express terms of the Letter Agreement, H/E registered their copyright in the Phanatic with the U.S. Copyright Office in 1979.  It is telling that The Phillies never took issue with this H/E copyright or the Copyright Office registration until 40 years later, and then only after H/E exercised their express right under the United States Copyright law to terminate the assignment of the copyright granted to The Phillies over 35 years ago in the 1984 Agreement.

7.      The Phillies, one of the most lucrative franchises in Major League Baseball, cannot deny with any integrity that they knew, or at least should have known, that H/E had the right to terminate the assignment of rights contained in the 1984 Agreement after 35 years in accordance with the plain language of the Copyright Act.  Section 203 of the Copyright Act provides that any transfer of copyright executed by the author(s) on or after January 1, 1978 may be terminated starting thirty-five (35) years from the date of execution of the grant.  17 U.S.C. § 203(a)(3).  In order to ensure that this express legislation could not be abrogated by contract, Congress expressly made the termination right inalienable; expressly providing in the statute that this termination right may be exercised by the copyright author "notwithstanding any agreement to the contrary."  17 U.S.C. § 203(a)(5).  If management and counsel of The Phillies now say they were ignorant of the copyright law when they executed the 1984 Agreement, then that unlikely scenario is their fault and no one else's.

8.      In any event, H/E had the absolute right to terminate its 1984 Agreement and sent the appropriate timely notice of termination to The Phillies in early June 2018, with an effective

4

date of termination of June 15, 2020.  H/E properly recorded that termination notice with the

U.S. Copyright Office, where it was duly recorded.  At the same time, H/E, through their

representatives, made it clear to The Phillies from the day they sent the termination notice that

H/E wanted to negotiate a re-granting of the Phanatic copyright to The Phillies for a fair price, to

be negotiated, so that their creation could continue to bring joy to Phillies fans.  Negotiations

proceeded for more than a year prior to **The Phillies bringing this lawsuit without any prior

notice.**  And The Phillies did so in a rambling, factually flawed, disingenuous complaint that

ignored critical contractual provisions, facts, and settled statutory law that puts the lie to their

Complaint.  It was also made clear to The Phillies during this year-long negotiation process that

H/E were very proud of the success of their creation and the joy the Phanatic brought to Phillies

fans and Philadelphians for more than 40 years.  This success was due in no small part to H/E's

artistry and ongoing work, support, cooperation, and other related artistic works regarding the

Phanatic, which H/E provided to The Phillies continuing over the past 40 years (ending only

upon the filing of the termination notice with The Phillies in 2018).

       9.      During these negotiations to re-grant the Phanatic copyright, The Phillies

repeatedly said that the Phanatic had very little monetary value for The Phillies.  It was during a

single negotiation session that Ms. Erickson made a reference to making the Phanatic a "free

agent" was spoken, in a light moment during a courteous and civil face-to-face negotiation with

The Phillies' management.  Rather than being a threat, this remark addressed, in baseball terms,

the repeated negotiating position claimed by The Phillies that the Phanatic had very little

economic or goodwill value to them.  As in baseball, the copyright rights in the Phanatic would

be able to walk away from The Phillies once its contract (*i.e.*, the assignment of copyrights)

ended upon the effective date of termination (June 15, 2020), if the parties could not reach a

mutually acceptable price for H/E re-granting the Phanatic rights to The Phillies.  That was the context for the entire "free agent" thought, expressed in a sentence at most, during a long, confidential negotiation session.  To stretch this innocent, singular play on words into an imminent threat to be enjoined is bizarre, and reflects the hyperbolic, empty rhetoric that permeates the Complaint.  Likewise, for The Phillies to try to bolster its spurious "free agent" argument by referencing a completely unrelated H/E transaction with the Montreal Canadiens regarding H/E's Youppi! character is even more ridiculous, given that H/E was not even a party to that transaction, and its circumstances—a sports franchise leaving town and voluntarily agreeing to give up its mascot for a new mascot—were entirely different.

10.     In accordance with Section 203 of the Copyright Act, effective June 15, 2020, The Phillies' rights in the Phanatic copyright were terminated, and reverted to H/E pursuant to the express provisions of the Copyright Act.  Knowing that H/E's termination of the assignment contained in the 1984 Agreement became effective as of June 15, 2020, The Phillies are attempting to circumvent the clear termination provisions of the Copyright Act by *inter alia*, producing a shoddy knock-off of the Phanatic devoid of new, original creative expression.  Like common counterfeiters, The Phillies are now actively engaging in theft of H/E's intellectual property, and trying to use this falsely premised litigation as cover.

11.     The Phillies are also continuing to reproduce, sell, and authorize the sale of merchandise featuring H/E's early portrayals of the Phanatic, which The Phillies do not own. Now that the 1984 Agreement has terminated, all of those existing reproductions and portrayals have reverted to and are owned and/or exclusively controlled by H/E.  In other words, The Phillies are continuing to profit off H/E's creative work for free and without any legal right to do so, and without paying for the lawful exploitation of H/E's intellectual property. The Phillies'

organization is effectively stealing H/E's intellectual property and trying to get away with it.

12.     The Phillies' claims in this action are built on half-truths, distortions of fact and law, and incomplete snippets of confidential settlement communications.  This lawsuit never should have been filed by The Phillies, and H/E are entitled to a declaratory judgment that their termination notice is valid and that H/E are the sole authors and owners of the Phanatic.  And now that the 1984 Phanatic copyright grant terminated, The Phillies must answer in damages for their unlawful use of H/E's copyrighted works and be enjoined by this Court from causing further harm to H/E and their copyrights.

## ANSWERING THE INTRODUCTION SECTION OF THE COMPLAINT

13.     Defendants deny the truth of the allegations in paragraph "1" of the Complaint, and refer to paragraphs 1 through 12 of this Answer.

14.     Defendants deny the truth of the allegations in paragraph "2" of the Complaint, and refer to paragraphs 1 through 12 of this Answer.

15.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "3" of the Complaint and on that basis deny said allegations, and refer to paragraphs 1 through 12 of this Answer.

16.     Defendants deny the truth of the allegations in paragraph "4" of the Complaint.

17.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "5" of the Complaint and on that basis deny said allegations, and refer to 1984 Agreement for the terms thereof.

18.     Defendants deny the truth of the allegations in paragraph "6" of the Complaint, and refer to the 1984 Agreement for the terms thereof.

19.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "7" of the Complaint and on that basis deny said allegations.

20.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "8" of the Complaint and on that basis deny said allegations.

21.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "9" of the Complaint and on that basis deny said allegations.

22.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "10" of the Complaint and on that basis deny said allegations.

23.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "11" of the Complaint and on that basis deny said allegations, and specifically deny the legal conclusions therein.

24.     Defendants admit only that H/E's attorneys sent a termination notice by letter to The Phillies in June of 2018 terminating the 1984 Agreement in accordance with Section 203 of the Copyright Act, and refer to that letter for the contents thereof, and otherwise deny the truth of the allegations in paragraph "12" of the Complaint, and further refer to the 1984 Agreement for the terms thereof, and to paragraphs 1 through 12 of this Answer.

25.     Defendants deny the truth of the allegations in paragraph "13" of the Complaint.

26.     Defendants deny the truth of the allegations in the first sentence of paragraph "14" of the Complaint, refer the Court to the statute referenced in paragraph "14" of the Complaint, and lack knowledge or information sufficient to form a belief as to the truth of the allegations in the final sentence of paragraph "14" of the Complaint and on that basis deny said allegations, and otherwise deny the truth of the allegations in paragraph "14" of the Complaint.

27.     Defendants deny the truth of the allegations in paragraph "15" of the Complaint.

28.     Defendants deny the truth of the allegations in paragraph "16" of the Complaint, and refer to paragraphs 1 through 12 of this Answer, and further refer to *inter alia*, Exhibit B to the Complaint.

29.     Defendants deny the truth of the allegations in paragraph "17" of the Complaint, and refer to paragraphs 1 through 12 of this Answer.

30.     Paragraph "18" of the Complaint is a legal argument to which no response is required, and to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "18" of the Complaint.

31.     Paragraph "19" of the Complaint is a legal argument to which no response is required, and to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "19" of the Complaint.

32.     Paragraph "20" of the Complaint is a legal argument to which no response is required, and to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "20" of the Complaint.

33.     Paragraph "21" of the Complaint is a legal argument to which no response is required, and to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "21" of the Complaint.

## ANSWERING THE PARTIES SECTION

34.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "22" of the Complaint and on that basis deny said allegations.

9

35.     Defendants only admit the allegations in the first sentence in paragraph "23" of the Complaint that Harrison/Erickson, Incorporated, is a New York Corporation, having its principal place of business at 62 Pierrepont Street, Brooklyn, NY 11201, and otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence in paragraph 23 of the Complaint and on that basis deny said allegations.

36.     Defendants deny the truth of the allegations in paragraph "24" of the Complaint.

37.     Defendants admit the part of paragraph "25" of the Complaint that alleges that Wayde Harrison is an individual residing in Brooklyn and otherwise lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph "25" of the Complaint and on that basis deny said allegations.

38.     Defendants admit the part of paragraph "26" of the Complaint that alleges that Bonnie Erickson is an individual residing in Brooklyn and otherwise lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph "26" of the Complaint and on that basis deny said allegations.

**ANSWERING THE JURISDICTION AND VENUE SECTION**

39.     Defendants refer the Court to the Statutes referred to in paragraph "27" of the Complaint that establish subject matter jurisdiction over cases and controversies arising under the Copyright Act and Lanham Act, and otherwise deny the truth of the allegations in paragraph "27" of the Complaint.

40.     Defendants refer the Court to the Statute referred to in paragraph "28" of the Complaint, and otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "28" of the Complaint and on that basis deny said allegations.

10

41.     Defendants refer the Court to the Statute referred to in paragraph "29" of the Complaint, and otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "29" of the Complaint and on that basis deny said allegations.

42.     Defendants deny the truth of the allegations in paragraph "30" of the Complaint, except admit only that on June 15, 2018  H/E's attorneys sent a proper termination letter to The Phillies which has terminated the Phanatic copyright rights in accordance with 17 USC § 203, and refer to that statute for its content.

43.     Defendants deny the truth of the allegations in paragraph "31" of the Complaint, and aver that they will enforce their rights upon termination of the 1984 Assignment of the Phanatic copyright.

44.     Defendants deny the truth of the allegations in paragraph "32" of the Complaint.

45.     Paragraph "33" of the Complaint contains legal conclusions to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "33" of the Complaint.

46.     Paragraph "34" of the Complaint contains legal conclusions to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "34" of the Complaint.

**ANSWERING THE FACTS SECTION**

47.     Defendants deny the truth of the allegations in paragraph "35" of the Complaint, and refer to paragraphs 1 through 12 of this Answer.

48.     With respect to paragraph "36" of the Complaint, Defendants admit only that on February 14, 1978, H/E spoke with Frank Sullivan and otherwise deny the truth of the

11

allegations in paragraph "36" of the Complaint, and refer to paragraphs 1 through 12 of this Answer.

49.     With respect to paragraph "37" Defendants admit that H/E entered into the agreement attached to the Complaint as Exhibit B and respectfully refer the Court to that Agreement for the terms thereof, and otherwise deny the truth of the allegations in paragraph "37" of the Complaint, and refer to paragraphs 1 through 12 of this Answer.

50.     Defendants deny the truth of the allegations in paragraph "38" of the Complaint, and refer to paragraphs 1 through 12 of this Answer.

51.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "39" of the Complaint and on that basis deny said allegations.

52.     Defendants deny the truth of the allegations in paragraph "40" of the Complaint, and refer to paragraphs 1 through 12 of this Answer, and further aver that H/E asked for a Phillies shirt and cap for reference, not at the suggestion of Giles.

53.     Defendants deny the truth of the allegations in paragraph "41" of the Complaint, and refer to paragraphs 1 through 12 of this Answer.

54.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "42" of the Complaint and on that basis deny said allegations.

55.     Defendants admit only that H/E delivered the original Phanatic work of art that they created to The Phillies in April 1978, and otherwise deny the truth of the allegations in paragraph "43" of the Complaint.

56.     Defendants deny the truth of the allegation in paragraph "44" of the Complaint that "the Club had decided that the Phanatic would be mute" and aver that H/E and not The Phillies designed the Phanatic to be mute, and otherwise lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph "44" of the Complaint and on that basis deny said allegations.

57.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "45" of the Complaint and on that basis deny said allegations, and admit only that H/E's original Phanatic work of art debuted on April 25, 1978.

58.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "46" of the Complaint and on that basis deny said allegations, and refer to the referenced affidavit in this paragraph of the Complaint for the full contents thereof.

59.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "47" of the Complaint and on that basis deny said allegations, and further answering refer to the terms of the July 15, 1978 Agreement, attached to the Complaint as Exhibit C for the terms thereof.

60.     Answering Paragraph "48" of the Complaint, the Defendants admit that The Phillies and H/E entered into the July 15, 1978 Agreement attached to the Complaint as Exhibit C and refer to that agreement for the terms thereof, and further aver that paragraph 3 of the July 15, 1978 Agreement provides that "Copies of all Licensed Articles made by you [The Phillies], or presently in your possession or control, shall bear copyright notice in our [H/E's] name in the proper location as follows: © 1978 Harrison Erickson"; and otherwise deny the remaining allegations in paragraph "48" of the Complaint.

13

61.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "49" of the Complaint and on that basis deny said allegations.

62.     Answering paragraph "50" of the Complaint, H/E sued The Phillies in 1979 for copyright infringement because, *inter alia*, The Phillies, granted only reproduction rights, were producing inferior quality Phanatic merchandise without H/E's required approval in violation of the March 17, 1978 and the July 15, 1978 Agreements, and The Phillies indisputably knew based on the complaint in that case that H/E had duly registered the Phanatic at the U.S. Copyright Office as "an artistic sculpture," a term that was used again in the 1984 Agreement; and for 41 years The Phillies never claimed that the copyright registration was improper, never mind fraudulent, and Defendants admit that H/E commenced the action identified in Paragraph "50" of the Complaint, and otherwise deny the truth of the allegations in paragraph "50" of the Complaint.

63.     Defendants deny the truth of the allegations in paragraph "51" of the Complaint.

64.     Defendants refer to the Erickson Affidavit and exhibits attached thereto for the full contents thereof, and otherwise deny the truth of the allegations in paragraph "52" of the Complaint.

65.     Defendants refer to the Erickson Affidavit and exhibits attached thereto for the full contents thereof, and otherwise deny the truth of the allegations in paragraph "53" of the Complaint.

66.     Defendants refer to H/E's Copyright Office registration for the full contents thereof, and otherwise deny the truth of the allegations in paragraph "54" of the Complaint.

67.     Defendants refer to H/E's Copyright Office registration for the full contents thereof, and otherwise deny the truth of the allegations in paragraph "55" of the Complaint.

68.     Defendants refer to H/E's Copyright Office registration certificate attached to the Erickson Affidavit for the full contents thereof, and otherwise deny the truth of the allegations in paragraph "56" of the Complaint.

69.     Defendants deny the truth of the allegations in paragraph "57" of the Complaint.

70.     Defendants admit H/E settled the 1979 SDNY Litigation, and otherwise deny the truth of the allegations in paragraph "58" of the Complaint.

71.     Defendants refer to the Erickson Affidavit for the full contents thereof, and otherwise deny the truth of the allegations in paragraph "59" of the Complaint.

72.     Defendants refer to the November 26, 1979 Agreement, attached as Exhibit F to the Complaint, for the full contents thereof, and otherwise deny the truth of the allegations in paragraph "60" of the Complaint.

73.     Defendants refer to the November 26, 1979 Agreement, attached as Exhibit F to the Complaint, for the full contents thereof, lack knowledge or information sufficient to form a belief as to the truth of the allegations in the last sentence of paragraph "61" of the Complaint, and on that basis deny said allegation, and otherwise deny the truth of the remaining allegations in paragraph "61" of the Complaint.

74.     Defendants deny the truth of the allegations in paragraph "62" of the Complaint, refer to paragraphs 1 through 12 of this Answer, and refer to the 1984 Agreement attached as Exhibit G to the Complaint for the full contents thereof.

75.      Defendants deny the truth of the allegations in paragraph "63" of the Complaint, refer to paragraphs 1 through 12 of this Answer, and refer to the 1984 Agreement attached as Exhibit G to the Complaint for the full contents thereof.

76.      Defendants deny the truth of the allegations in paragraph "64" of the Complaint, and refer to the 1984 Agreement attached as Exhibit G to the Complaint for the full contents thereof.

77.      Defendants deny the truth of the allegations in paragraph "65" of the Complaint, and refer to the 1984 Agreement attached as Exhibit G to the Complaint for the full contents thereof.

78.      Defendants deny the truth of the allegations in paragraph "66" of the Complaint, refer to paragraphs 1 through 12 of this Answer, and refer to the 1984 Agreement attached as Exhibit G to the Complaint for the full contents thereof.

79.      Defendants deny the truth of the allegations in paragraph "67" of the Complaint, refer to paragraphs 1 through 12 of this Answer, and refer to the 1984 Agreement attached as Exhibit G to the Complaint for the full contents thereof.

80.      Defendants deny the truth of the allegations in paragraph "68" of the Complaint, refer to paragraphs 1 through 12 of this Answer, and refer to the 1984 Agreement attached as Exhibit G to the Complaint for the full contents thereof.

81.      Defendants deny the truth of the allegations in paragraph "69" of the Complaint.

82.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "70" of the Complaint and on that basis deny said allegations.

83.      Defendants deny the truth of the allegations in paragraph "71" of the Complaint.

16

84.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "72" of the Complaint and on that basis deny said allegations.

85.     Defendants deny the truth of the allegations in paragraph "73" of the Complaint.

86.     Defendants deny the truth of the allegations in the first sentence of paragraph "74" of the Complaint, and refer to paragraphs 1 through 12 of this Answer, and lack knowledge or information sufficient to form a belief as to the truth of the rest of the allegations in paragraph "74" of the Complaint and on that basis deny said allegations.

87.     Defendants deny the truth of the allegations in paragraph "75" of the Complaint.

88.     Defendants deny the truth of the allegations in paragraph "76" of the Complaint, except admit only that on June 15, 2018  H/E's attorneys sent a proper termination letter to The Phillies which has terminated the Phanatic copyright in accordance with 17 USC § 203, and refer to such letter for the complete contents thereof.

89.     Defendants deny the truth of the allegations in paragraph "77" of the Complaint, and refer to paragraphs 1 through 12 of this Answer.

90.     Defendants deny the truth of the allegations in paragraph "78" of the Complaint, and refer to paragraphs 1 through 12 of this Answer.

91.     Defendants deny the truth of the allegations in paragraph "79" of the Complaint, and refer to paragraphs 1 through 12 of this Answer, and further aver that H/E will seek all legal remedies available for The Phillies' use of the Phanatic in violation of the termination of the 1984 grant of rights.

92.     Paragraph "80" of the Complaint is a legal conclusion to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "80" of the Complaint.

### ANSWERING COUNT I:

### (Declaratory Judgment that H/E Does Not Have a Right to Terminate the 1984 Agreement)

93.     Defendants reallege the forgoing responses to the Complaint as if set forth fully herein.

94.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "82" of the Complaint and on that basis deny said allegations.

95.     Answering paragraph "83" of the Complaint, Defendants admit that the Phanatic debuted on April 25, 1978.

96.     Answering paragraph "84" of the Complaint, Defendants admit that H/E entered into the July 15, 1978 Letter Agreement attached to the Complaint as Exhibit C and refer to that agreement for the full contents thereof, and otherwise deny the truth of the allegations set forth in paragraph "84" of the Complaint.

97.     Answering paragraph "85" of the Complaint, Defendants admit that H/E entered into the November 26, 1979 agreement attached to the Complaint as Exhibit F and refer to that agreement for the full contents thereof, and otherwise deny the truth of the allegations set forth in paragraph "85" of the Complaint.

98.     Defendants deny the truth of the allegations in paragraph "86" of the Complaint.

99.     Defendants deny the truth of the allegations in paragraph "87" of the Complaint

100.     Paragraph "88" of the Complaint is a legal conclusion to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "88" of the Complaint.

101.     Paragraph "89" of the Complaint is a legal conclusion to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "89" of the Complaint.

102.     Paragraph "90" of the Complaint is a legal conclusion to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "90" of the Complaint.

103.     Paragraph "91" of the Complaint is a legal conclusion to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "91" of the Complaint.

104.     Paragraph "92" of the Complaint is a legal conclusion to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "92" of the Complaint.

105.     Paragraph "93" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "93" of the Complaint.

### ANSWERING COUNT II:

### (Declaratory Judgment for Fraud on the Copyright Office)

106.     Defendants reallege the forgoing responses to the Complaint as if set forth fully herein.

107.     Defendants deny the truth of the allegations in paragraph "95" of the Complaint.

108.     Defendants deny the truth of the allegations in paragraph "96" of the Complaint.

109.     Defendants deny the truth of the allegations in paragraph "97" of the Complaint.

110.     Defendants deny the truth of the allegations in paragraph "98" of the Complaint.

111.     Defendants deny the truth of the allegations in paragraph "99" of the Complaint.

112.     Answering paragraph "100" of the Complaint, Defendants refer to the complete

Copyright Office registration for the Phanatic for the contents thereof, and otherwise deny the

truth of the allegations in paragraph "100" of the Complaint.

113.     Defendants deny the truth of the allegations in paragraph "101" of the Complaint.

114.     Defendants deny the truth of the allegations in paragraph "102" of the Complaint.

115.     Defendants deny the truth of the allegations in paragraph "103" of the Complaint.

116.     Paragraph "104" of the Complaint is a legal argument to which no response is

required, but to the extent a response is deemed required, Defendants deny the truth of the

allegations in paragraph "104" of the Complaint.

117.     Paragraph "105" of the Complaint is a legal argument to which no response is

required, but to the extent a response is deemed required, Defendants deny the truth of the

allegations in paragraph "105" of the Complaint.

118.     Paragraph "106" of the Complaint is a legal argument to which no response is

required, but to the extent a response is deemed required, Defendants deny the truth of the

allegations in paragraph "106" of the Complaint.

**ANSWERING COUNT III:**

**(Declaratory Judgment That Section 203 Does Not Provide H/E with the Right to the
Club's Rights as a Joint Author of the Phanatic Costume)**

20

119.    Defendants reallege the forgoing responses to the Complaint as if set forth fully herein.

120.    Defendants deny the truth of the allegations in paragraph "108" of the Complaint.

121.    Defendants deny the truth of the allegations in paragraph "109" of the Complaint.

122.    Defendants deny the truth of the allegations in paragraph "110" of the Complaint.

123.    Defendants deny the truth of the allegations in paragraph "111" of the Complaint.

124.    Defendants deny the truth of the allegations in paragraph "112" of the Complaint.

125.    Paragraph "113" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "113" of the Complaint.

126.    Paragraph "114" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "114" of the Complaint.

### ANSWERING COUNT IV:

### (Declaratory Judgment That Section 203 Does Not Provide H/E with the Right to Terminate the Club's Rights as Author of the Phanatic's Character)

127.    Defendants reallege the forgoing responses to the Complaint as if set forth fully herein.

128.    Defendants deny the truth of the allegations in paragraph "116" of the Complaint.

129.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "117" of the Complaint and on that basis deny the truth of the said allegations.

130.    Defendants deny the truth of the allegations in paragraph "118" of the Complaint.

131.    Defendants deny the truth of the allegations in paragraph "119" of the Complaint.

132.    Defendants deny the truth of the allegations in paragraph "120" of the Complaint.

133.    Paragraph "121" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "121" of the Complaint.

134.    Paragraph "122" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "122" of the Complaint.

**ANSWERING COUNT V:**

**(Declaratory Judgment that the Club has the Right to Utilize Derivative Works under 17 U.S.C. §203(B)(1))**

135.    Defendants reallege the forgoing responses to the Complaint as if set forth fully herein.

136.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "124" of the Complaint and on that basis deny said allegations.

137.    Defendants deny the truth of the allegations in paragraph "125" of the Complaint, and refer to paragraphs 1-12 of this Answer the allegations in support of Defendants' Counterclaims.

138.    Defendants deny the truth of the allegations in paragraph "126" of the Complaint, and refer to paragraphs 1-12 of this Answer the allegations in support of Defendants' Counterclaims.

139.     Paragraph "127" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "127" of the Complaint.

140.     Paragraph "128" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "128" of the Complaint.

141.     Paragraph "129" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "129" of the Complaint.

## ANSWERING COUNT VI

### (Declaratory Judgment and Permanent Injunction Pursuant to Sections 32 and 43 of the Lanham)

142.     Defendants reallege the forgoing responses to the Complaint as if set forth fully herein.

143.     Defendants deny the truth of the allegations in paragraph "131" of the Complaint.

144.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "132" of the Complaint and on that basis deny said allegations.

145.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "133" of the Complaint and on that basis deny said allegations.

146.     Defendants deny the truth of the allegations in paragraph "134" of the Complaint and aver that there was no actionable threat made by H/E, or any real threat at all.

23

147.     Defendants deny the truth of the allegations in paragraph "135" of the Complaint.

148.     Paragraph "136" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "136" of the Complaint.

149.     Defendants deny the truth of the allegations in paragraph "137" of the Complaint.

150.     Defendants deny the truth of the allegations in paragraph "138" of the Complaint.

151.     Defendants deny the truth of the allegations in paragraph "139" of the Complaint.

152.     Defendants deny the truth of the allegations in paragraph "140" of the Complaint.

153.     Defendants deny the truth of the allegations in paragraph "141" of the Complaint.

154.     Paragraph "142" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "142" of the Complaint.

155.     Paragraph "143" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "143" of the Complaint.

**ANSWERING COUNT VII**

**(Unjust Enrichment)**

156.     Defendants reallege the forgoing responses to the Complaint as if set forth fully herein.

157.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "145" of the Complaint and aver that The Phillies never raised that issue during any such negotiations.

158.     Defendants deny the truth of the allegations in paragraph "146" of the Complaint.

24

159.   Defendants deny the truth of the allegations in paragraph "147" of the Complaint.

160.   Defendants deny the truth of the allegations in paragraph "148" of the Complaint.

161.   Defendants deny the truth of the allegations in paragraph "149" of the Complaint.

162.   Defendants deny the truth of the allegations in paragraph "150" of the Complaint.

**ANSWERING COUNT VIII**

**(Breach of the Covenant of Good Faith and Fair Dealing)**

163.   Defendants reallege the forgoing responses to the Complaint as if set forth fully herein.

164.   Paragraph "152" of the Complaint is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "152" of the Complaint.

165.   Paragraph "153" of the Complaint" is a legal argument to which no response is required, but to the extent a response is deemed required, Defendants deny the truth of the allegations in paragraph "153" of the Complaint.

166.   Defendants deny the truth of the allegations in paragraph "154" of the Complaint.

167.   Defendants deny the truth of the allegations in paragraph "155" of the Complaint.

168.   Defendants are not required to respond to the headings in the Complaint which do not have paragraph numbers, but to the extent a response is deemed required Defendants deny the truth of the allegations in each said heading.

169.   Defendants deny that The Phillies are entitled to any of the relief requested in the Complaint's "Prayer for Relief."

## DEFENSES

Without waiving or excusing the burden of proof of The Phillies, or admitting that Defendants have any burden of proof, Defendants assert the following affirmative and other defenses.  Defendants do not presently know all facts and circumstances with respect to The Phillies' allegations, and thereby reserve the right to amend this Answer should they later discover facts demonstrating the existence of additional defenses.

### FIRST DEFENSE

### (Failure to State a Claim)

1.      The Complaint and any purported claims for relief therein fail to state a claim upon which relief can be granted.

### SECOND DEFENSE

### (Statute of Limitations)

2.      The Complaint and any purported claims for relief therein are barred, precluded, and/or limited by the statute of limitations, including but not limited to 17 U.S.C. § 507 and N.Y. C.P.L.R. § 213.

### THIRD DEFENSE

### (Laches)

3.      The Complaint and any purported claims for relief therein are barred, in whole or in part, by the doctrine of laches.  To the extent The Phillies contests Defendants' lawful exercise of their copyright law (*i.e.*, federal statutory) right of termination, Copyright Office registration of the Phanatic copyright rights, and/or ownership interests in the Phanatic work, The Phillies did not take reasonable steps to inform Defendants of its subjective beliefs and unreasonably delayed in informing Defendants of its purported claims.

26

## FOURTH DEFENSE

### (Estoppel)

4.      The Complaint and any purported claims for relief therein are barred, in whole or in part, by the doctrine of estoppel.  To the extent The Phillies contests Defendants' lawful exercise of their copyright law (*i.e.*, federal statutory) right of termination, Copyright Office registration of the Phanatic copyright rights, and/or copyright ownership interests in the Phanatic work, The Phillies did not take reasonable steps to inform Defendants of its subjective beliefs and instead, made numerous representations to Defendants that are contrary to the allegations in the Complaint, to Defendants' detriment.

## FIFTH DEFENSE

### (Waiver)

5.      The Complaint and any purported claims for relief therein are barred, in whole or in part, because The Phillies have, through its own actions, conduct, and failure to act, waived any right to relief.

## SIXTH DEFENSE

### (Injunctive/Declaratory Relief Improper)

6.      Any claims by The Phillies for equitable relief are barred because The Phillies have an adequate and complete remedy at law, and/or cannot make the other requisite showings to obtain equitable relief, including but not limited to injunctive relief or declaratory relief.

## SEVENTH DEFENSE

### (Copyright Misuse)

7.      The Complaint and any purported claims for relief therein are barred, in whole or in part, by the doctrine of copyright misuse.

## EIGHTH DEFENSE

### (Trademark Misuse)

8.      The Phillies' claim under Count VI is barred, in whole or in part, by the doctrine of trademark misuse.

## NINTH DEFENSE

### (Dastar Rule)

9.      The Phillies' claim under Count VI is barred, in whole or in part, by the Supreme Court's holding in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003).

## TENTH DEFENSE

### (Lack of Subject Matter Jurisdiction)

10.      The Court lacks subject matter jurisdiction over Count VI to the extent that The Phillies fail to allege any case or controversy.

## ELEVENTH DEFENSE

### (Statutory Standing)

11.      The Phillies' claims under Count VI are barred, in whole or in part, because The Phillies lack standing under the Declaratory Judgments Act, 28 U.S.C. § 2201.

## TWELTH DEFENSE

### (Article III Standing)

12.      The Phillies' claims under Count VI are barred, in whole or in part, because The Phillies' lack standing under Article III of the United States Constitution.

## THIRTEENTH DEFENSE

### (Ratification/Acquiescence/Abandonment/Forfeiture)

13.     The Complaint and any purported claims for relief therein are barred, in whole or in part, by the doctrines of ratification, acquiescence, abandonment, and/or forfeiture.

## FOURTEENTH DEFENSE

### (Preemption by Federal Law)

14.     The Phillies' claims under Count VII and VIII are preempted by the U.S. Copyright Act, *see* 17 U.S.C. § 301.

## FIFTEENTH DEFENSE

### (No Damages)

15.     The Phillies' claims to damages under Counts VII and VIII are barred, in whole or in part, because The Phillies have not suffered any damage or injury as a result of any act or conduct by Defendants.

## SIXTEENTH DEFENSE

### (Damages Too Speculative)

16.     The Phillies' claims to damages under Counts VII and VIII are barred, in whole or in part, because damages sought are too speculative and remote.

## SEVENTEENTH DEFENSE

### (Failure to Mitigate)

17.     The Phillies' claims to damages under Counts VII and VIII are barred, in whole or in part, because The Phillies have failed to mitigate any alleged damages.

## EIGHTEENTH DEFENSE

### (Good Faith)

18.     Count VII and VIII are barred, in whole or in part, because Defendants acted in good faith in all of their dealings with The Phillies.  Defendants have dealt honestly and fairly with The Phillies; The Phillies' alleged ignorance of Defendants' statutory termination right under U.S. copyright law is a problem of The Phillies' own making.

## NINETEENTH DEFENSE

### (Bad Faith)

19.     The Complaint and any purported claims for relief therein are barred, in whole or in part, as a result of The Phillies' bad faith.

## TWENTIETH DEFENSE

### (Unclean Hands)

20.     The Phillies have not come to Court with clean hands and thus, the Complaint and any purported claims for relief therein are barred, in whole or in part, by the doctrine of unclean hands.

## TWENTY-FIRST DEFENSE

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

21.     The Complaint and any purported claims for relief therein are barred due to the fact that The Phillies, by their own acts and/or omissions, breached the covenant of good faith and fair dealing implied in its agreements with Defendants.

**TWENTY-SECOND DEFENSE**

**(First Amendment)**

22.     The Phillies' claim under Count VI is barred, in whole or in part, by the First

Amendment to the U.S. Constitution.

**TWENTY-THIRD DEFENSE**

**(Fair Use)**

23.     The Phillies' claim under Count VI is barred, in whole or in part, by the fair use

defense.

**TWENTY-FOURTH DEFENSE**

**(Breach and Default by Plaintiff)**

24.     Defendants have substantially performed any and all contractual obligations, and

any duty or performance on behalf of Defendants is excused by The Phillies' own actions,

breaches, and defaults, including but not limited to those specified in Defendants' counterclaims.


WHEREFORE, Defendants request that the Court issue a judgment in their favor; order

that The Phillies are not entitled to any relief on any of their claims; and order that Defendants

are entitled to a judgment in their favor for their reasonable attorneys' fees and full costs,

including under 17 U.S.C. § 505.

## COUNTERCLAIMS

Defendants and Counterclaim Plaintiffs Harrison/Erickson Incorporated, Harrison

Erickson, a partnership, Wayde Harrison, and Bonnie Erickson (collectively, "Counterclaim

Plaintiffs"), by and through their undersigned counsel, hereby allege, on personal knowledge as

to matters relating to themselves and on information and belief as to all other matters, as follows:

### PARTIES

1.      Counterclaim Plaintiffs repeat and reallege paragraphs 1-12 of their Answer, and

also incorporate into these counterclaims the denials, averments, and defenses set forth in

response to The Phillies' Complaint.

2.      Counterclaim Plaintiff Bonnie Erickson is a designer of puppets, costumes, toys,

and graphics, best known for her work as Head of the Muppet Workshop with Jim Henson.  With

her husband, Counterclaim Plaintiff Wayde Harrison, she is a partner in Counterclaim Plaintiff

Harrison/Erickson.  Counterclaim Plaintiffs are all domiciled in Brooklyn, New York.

3.      Erickson and Harrison authored the "Phanatic" at the request of The Phillies

Major League Baseball team.  Counterclaim Defendant The Phillies is a Pennsylvania limited

partnership, which is trying to subvert the letter and intent of the Copyright Act by attempting to

prevent Harrison and Erickson from terminating an assignment of the copyrights authored and

owned by Harrison and Erickson to the Phanatic, under 17 U.S.C. § 203.

### JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of the action pursuant to 28

U.S.C. §§ 1331 and 1338 because the counterclaims arise under the Copyright Act.

5.      An actual controversy exists between the parties because The Phillies have

wrongly claimed an ownership interest in the Phanatic as a purported copyright author of the

mascot and of an associated "character."  The Phillies have also wrongly claimed that a notice of termination served by Counterclaim Plaintiffs on The Phillies, instructing that the October 31, 1984 Assignment of the copyright to the Phanatic from Counterclaim Plaintiffs to The Phillies will terminate (and now has terminated) on June 15, 2020 under 17 U.S.C. § 203 is invalid. Thus, the Court has subject matter jurisdiction under 28 U.S.C. § 2201.

6.      This Court has personal jurisdiction over The Phillies pursuant to N.Y.C.P.L.R. § 302.  The Phillies transact business within the state and enter contracts to supply goods or services in the state.  The Phillies have further consented to jurisdiction in this District by filing the instant lawsuit in this District.

7.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400 because a substantial part of the events giving rise to the counterclaims occurred in this District.

## FACTS

8.      Termination rights—which provide authors with an opportunity to reclaim copyright rights and/or renegotiate with an assignee for additional monies 35 years after the rights are assigned—were added by Congress to the 1976 Copyright Act to protect individual artists such as Harrison and Erickson by allowing them to recapture the value of their works. Artists deserve statutory protection to reclaim their rights because they create artistic works that enormously benefit the public.

9.      Counterclaim Plaintiffs lawfully exercised their termination right under the Copyright Act.  Concurrently, H/E informed The Phillies that they wanted to renegotiate a re-granting of the rights to the Phanatic for future use of the Phanatic copyright for fair value.  Over the thirty five years subsequent to the grant of rights in the 1984 Agreement, The Phanatic earned millions of dollars for The Phillies and their assignees, and the Phanatic has been

33

recognized as one of the best and most popular mascots in all of sports—a value, longevity, and recognition that was not, and could not have been, predicted in its early years.  While the Phanatic was an immediate hit, its popularity has grown beyond any reasonable prediction, and no one could have reasonably known the enormous and enduring impact that the mascot would make on The Phillies, the city of Philadelphia, and Major League Baseball.  Having properly terminated the 35-year-old grant to The Phillies in accordance with the express provisions of the Copyright Act, and wanting the Phanatic to remain in Philadelphia where they believe it belongs, Counterclaim Plaintiffs hoped to negotiate fair compensation for the further grant to The Phillies the right to continue to use their artistic creation, the Phanatic. While in the midst of negotiations however, The Phillies without any prior notice commenced this action.  Now that the termination of the grant is effective, The Phillies are trying to misappropriate Counterclaim Plaintiffs' intellectual property without paying any compensation for H/E's decades-old registered copyright in the Phanatic.

10.      Counterclaim Plaintiffs did not simply design a costume, but also provided The Phillies with a fully integrated character.  Counterclaim Plaintiffs, not The Phillies, who were hesitant about even introducing a new mascot at the time, took action to ensure that the Phanatic mascot would last. Counterclaim Plaintiffs gave direction to Dave Raymond—the first actor to perform as the Phanatic—on how to interpret that character, and created hundreds of illustrations and other portrayals of the Phanatic that embody and promote that character.  The rights to all of those illustrations and other portrayals of the Phanatic were granted to The Phillies under the 1984 Agreement.  Because Counterclaim Plaintiffs have lawfully terminated the grant of rights in the 1984 Agreement pursuant to Section 203 of the Copyright Act, and because The Phillies have been unwilling or unable to negotiate with Counterclaim Plaintiffs a fair payment reflecting

34

the value of a new grant of rights, all of those rights have lapsed, reverting to Counterclaim Plaintiffs.

11.     The Phillies have known and conceded for four decades that they did not author or initially own the copyrights in the Phanatic and the countless early illustrations and other portrayals of the Phanatic.  They admitted as much in the exhibits attached to their own Complaint in this action, which are binding agreements concerning copyright authorship and ownership, and the exploitation of the Phanatic.  Only after Counterclaim Plaintiffs served The Phillies with a valid termination notice under 17 U.S.C. § 203 in 2018 did The Phillies concoct theories as to why they should be declared an original author of the Phanatic, solely in an attempt to deny Counterclaim Plaintiffs their lawful termination rights and continue using the Phanatic without authorization or payment to Counterclaim Plaintiffs.

12.     When The Phillies asked Counterclaim Plaintiffs to create a mascot, the team knew they were seeking the assistance of established artists.  Although The Phillies first asked Jim Henson to take on the project, he told them they should hire Bonnie Erickson, who had worked with Henson to create such famous art works as Miss Piggy, and who also had worked on the Sesame Street programs.

13.     The entire artistic design for the Phanatic, a fantasy animal, with both artistic merit as well as a well-thought out backstory and personality (*i.e*., as an anomaly of evolution from the Galapagos Islands), was created solely by Counterclaim Plaintiffs.  The Phillies contributed no copyrightable work to the project and certainly did not consider themselves to be authors of the Phanatic when it was created.  Counterclaim Plaintiffs conceived of, and designed, the color, shape, fictional backstory, and other protectable elements of the Phanatic.  For example, Erickson designed the large snout of the Phanatic to resemble a megaphone, because

the name Phanatic implied a loud and boisterous cheerleader-type, super fan character. She also chose green as the color for the mascot, because after visiting The Phillies' old Veterans Stadium to gather inspiration, she thought a green mascot would stand out among the colored seats.

14.     As stated above, The Phillies admitted this was true in multiple signed agreements, which reference Counterclaim Plaintiffs' initial ownership and authorship of the copyrights to the Phanatic, including the Phanatic "character." Counterclaim Plaintiffs expressly repudiated any initial authorship claim by The Phillies long ago. Indeed, The Phillies were granted an assignment of the Phanatic copyrights from Counterclaim Plaintiffs in 1984, acknowledging in writing not only that Counterclaim Plaintiffs owned and had registered the Phanatic copyright, but that The Phillies would exercise reasonable efforts to *credit Counterclaim Plaintiffs as the creators of the Phanatic*.

15.     The U.S. Copyright Office also acknowledged Counterclaim Plaintiffs' authorship and ownership of the copyright to the Phanatic mascot design by issuing a 1979 registration certificate, VA 0-023-748, to Counterclaim Plaintiffs. That certificate, which is prima facie evidence of the truth of the facts stated therein, 17 U.S.C. § 410, and of which The Phillies were well aware, confirms The Phillies did not author the Phanatic. The Phillies never challenged this registration for decades, until they received a valid termination notice from Counterclaim Plaintiffs, informing The Phillies that Counterclaim Plaintiffs will reclaim ownership of the Phanatic on June 15, 2020 (the "Effective Termination Date"). The U.S. Copyright Office has now also recorded that valid termination notice, indicating it was substantively complete and procedurally proper.

16.     Because the Effective Termination has passed, all rights in the Phanatic that were transferred to The Phillies under the 1984 Agreement have now lapsed and reverted to Counterclaim Plaintiffs.

17.     Prior to the Effective Termination Date, The Phillies threatened to continue using the copyrighted material of the Phanatic, even after ownership of the copyrights revert to Counterclaim Plaintiffs under 17 U.S.C. § 203.  The Effective Termination Date has now passed, and, consistent with those threats and fueled purely by a desire to avoid the effects of termination and steal Counterclaim Plaintiffs' valuable intellectual property, The Phillies have continued to use the Phanatic mascot design and related artwork without permission, infringing copyrights that have now reverted to Counterclaim Plaintiffs.

18.     Also, with blatant disrespect of Counterclaim Plaintiffs' rights and artistry in the Phanatic, The Phillies have created a knock-off Phanatic, which they introduced during their Spring training on February 23, 2020 (hereinafter referred to as "P2").  The Phillies created this P2 knock-off, because they know that they have no basis to challenge Counterclaim Plaintiffs' termination right under 17 U.S.C. § 203.

19.     P2 features minor, slavish changes to Counterclaim Plaintiffs' Phanatic mascot design, and represents a lazy attempt by The Phillies to try to use an exception to the termination right that is reserved solely for derivative works created under the authority of the grant, such as a movie adaptation of a novel.  *See* 17 U.S.C. § 203(b)(1) (the "Derivative Work Exception").  The Derivative Work Exception is only intended to allow creators of derivative works to continue utilizing such works after termination.  It is not, however, intended to protect the creators of wholesale knock-offs.

20.     P2 is not a derivative work prepared under the authority of the 1984 Agreement. The Phillies did not recast, transform, or adapt the Phanatic.  They copied it.  Indeed, P2 is a blatant knock-off reproduction of the Phanatic mascot design that Counterclaim Plaintiffs created, and which The Phillies no longer own nor have the right to use.  The alterations to Counterclaim Plaintiffs' design are minimal, wholly unoriginal, and in no way reflect an artistic desire to change it.  These statements are not merely the view of Counterclaim Plaintiffs, but the opinion of Counterclaim Plaintiffs' qualified expert, who has worked in the creative industries designing original characters and brand mascots for decades.

21.     In fact, The Phillies deliberately designed P2 so that people would not notice the difference between Counterclaim Plaintiffs' Phanatic mascot design and P2.  The Phillies themselves internally confirmed that they knew that it was unlikely that anyone would notice a difference between the original Phanatic and the P2 knock-off.  The Phillies' express goal was to create P2 in a way that it would be perceived as virtually indistinguishable from the original Phanatic character created by Counterclaim Plaintiffs.  Even media reports have suggested that the differences in P2 are barely noticeable.

22.     The Phillies' creation of P2, solely to try to nullify Counterclaim Plaintiffs' termination right, is an abuse of the Derivative Work Exception, and does not fall within its purview.  The Phillies' continued exploitation of P2, now that the Effective Termination Date has passed, is infringing, and continues to infringe, Counterclaim Plaintiffs' copyright rights.

23.     The Phillies have confirmed through their conduct after the Effective Termination Date that their attempt to take advantage of the Derivative Work Exception is a ruse.  Even if The Phillies were legally entitled to continue using P2 under the Derivative Work Exception (and they cannot, given that P2 is not a derivative work, as described above), The Phillies have no

legal right to create *new* derivative works now that the Effective Termination Date has passed. This is because the Derivative Work Exception is limited only to derivative works prepared while the 1984 Agreement was still in effect. Congress made clear that the privilege to continue utilizing derivative works prepared under authority of the grant "does not extend to the preparation **after the termination of other derivative works** based upon the copyrighted work covered by the terminated grant." 17 U.S.C. § 203(b)(1) (emphasis added).   In other words, the Derivative Work Exception does not allow The Phillies to make post-termination derivatives of a derivative work, *i.e.*, new works based on a derivative work, where such a new work was created after termination, because any "derivative of a derivative" would necessarily be based upon the copyrighted work covered by the terminated grant.  For instance, while the Derivative Work Exception might allow The Phillies to continue exploiting a comic book based on the Phanatic that was a permitted derivative work prior to termination, the Derivative Work Exception would not allow The Phillies to develop a film adaptation of the comic book after its rights in the Phanatic have lapsed.

24.     Despite the unequivocal limitation on the Derivative Works Exception, The Phillies have willfully prepared or caused others to prepare countless derivative works based on P2 *after* the Effective Termination Date, and have threatened to produce countless more.  Every single one of these new works unlawfully incorporates Counterclaim Plaintiff's Phanatic design, which The Phillies are aware they no longer own.

25.     These new "derivatives of a derivative," *i.e.*, new works based on the purported derivative P2 work, include *inter alia* new performances and portrayals of P2, which The Phillies have directly prepared, or knowingly authorized, enabled, encouraged and/or induced others to prepare, and which have been fixed in videos and images that have been transmitted, displayed,

and disseminated to the public.  Since the Effective Termination Date, The Phillies have

blatantly prepared and broadcast over the internet various promotional videos that prominently

feature P2, such as "Phanatic takes on the speed pitch machine," "Phanatic celebrates Opening

Day in 2020 … finally!," "Phanatic launches a hotdog to … T-Mac?," and "Phanatic ensures

umpires are properly sanitizing in 2020," or have knowingly authorized, enabled, encouraged

and/or induced others to prepare and broadcast such promotional videos; The Phillies have

prepared, displayed, and disseminated numerous new photographs and artwork that prominently

feature P2 on their social media channels, such as on Instagram, or have knowingly authorized,

enabled, encouraged and/or induced others to prepare, display, and disseminate such new

photographs and artwork; and The Phillies have prominently featured P2 acting out routines

during broadcasts of baseball games at Citizens Bank Park, which The Phillies or others acting in

conjunction with or on behalf of The Phillies have fixed into new works and transmitted to the

public.  Every single one of these portrayals of P2 constitutes a new, unauthorized work created

after the Effective Termination Date that incorporates Counterclaim Plaintiffs' Phanatic design,

which The Phillies are aware they no longer own.  Attached hereto as Exhibit A is a non-

exhaustive list illustrating the vast number of ways that The Phillies are exploiting P2, in blatant

disregard for Counterclaim Plaintiffs' rights in the underlying Phanatic mascot design.  The

Phillies seemingly produce new works that unlawfully incorporate the Phanatic every week, each

of which constitutes a new and separate instance of infringement.

26.     The Phillies have admitted that they have no intention of complying with

Counterclaim Plaintiffs' termination rights and the Derivative Work Exception going forward.

The Phillies have repeatedly admitted that they intend to create new merchandise featuring P2

after the Effective Termination Date, without Counterclaim Plaintiffs' permission, and without

any compensation to Counterclaim Plaintiffs. Every piece of merchandise featuring P2 constitutes a new derivative work that would necessarily incorporate Counterclaim Plaintiffs' Phanatic design, which The Phillies are aware they no longer own.

27.     The Phillies have even produced what they refer to as a P2 "Style Guide," which features artwork that in many cases is copied almost verbatim from early artwork that Counterclaim Plaintiffs created. Such artwork, including the artwork listed on Exhibit B hereto (hereinafter referred to as the "Phanatic Artwork"), was bundled into the 1984 Assignment along with the Phanatic mascot design, and the rights to such works are no longer The Phillies to exploit. The Phillies have admitted that this "Style Guide" is intended to assist third parties in unlawfully preparing new derivative works featuring P2 after the Effective Termination Date. Each new derivative work featuring P2 prepared by a third party would necessarily incorporate Counterclaim Plaintiffs' Phanatic mascot design and the Phanatic Artwork, which The Phillies are aware they do not own.

28.     The foregoing is a non-exhaustive description of The Phillies' ongoing activities and threatened activities with respect to The Phillies' unauthorized exploitation of P2. The full scope of such infringing conduct is not yet known to Counterclaim Plaintiffs, and it is continuing to increase. The Phillies are aware that every single derivative work that features P2 after the Effective Terminate Date unlawfully incorporates Counterclaim Plaintiffs' Phanatic mascot design and/or the Phanatic Artwork, and is not allowed by the Derivative Work Exception. The Phillies have no interest in curbing such illegal activities. The Phillies in this case have even represented through their agents that they will continue to engage in such infringing conduct even if they lose this lawsuit.

41

29.     By continuing to unilaterally create and authorize others to create new works featuring P2 after the Effective Terminate Date, The Phillies have demonstrated that they have no intention to comply with the termination provisions of the Copyright Act or respect Counterclaim Plaintiffs' copyright rights.  To the contrary, The Phillies seek to profit off the creative work of others, and ignore their legal responsibilities.

30.     In addition to the unlawful activities described above, The Phillies also continue to sell and knowingly authorize, enable, encourage, and/or induce others to sell unauthorized merchandise featuring numerous pieces of the Phanatic Artwork listed on Exhibit B.  The Phillies know that their rights to exploit such merchandise or license others to exploit such merchandise had cut off on the Effective Termination Date, but they and their licensees continue to produce and sell such works without Counterclaim Plaintiffs' permission.

31.     The Phillies derive an obvious and direct financial benefit from the infringement of Counterclaim Plaintiffs' Phanatic mascot design and related artwork.  The Phanatic is notably a major commercial draw to The Phillies' baseball franchise, and while The Phillies have the legal and practical right, and indeed obligation, to prevent or limit the infringement of the Phanatic, they have chosen not to do so because they want to continue to profit off of Counterclaim Plaintiffs' creativity without compensating the Counterclaim Plaintiffs.

32.     By The Phillies' unlawful conduct, wholesale unauthorized copies and adaptations of Counterclaim Plaintiffs' copyrighted works are being made and distributed into the stream of commerce with no restriction preventing their downstream dissemination.  Such infringing activity strips Counterclaim Plaintiffs of the creative control to which they are entitled, undermines Counterclaim Plaintiffs' own ability to exploit their works, diminishes the perceived value of those works to Counterclaim Plaintiffs' potential licensees, and associates Counterclaim

Plaintiffs with a knock-off Phanatic design that cheapens Counterclaim Plaintiffs' iconic creation, thereby causing irreparable damage to Counterclaim Plaintiffs' business and reputation as renowned character and mascot designers.

33.     In full recognition that their conduct is illegal, The Phillies have represented to Counterclaim Plaintiffs that they have no intention of respecting Counterclaim Plaintiffs' rights going forward, and have further represented to Counterclaim Plaintiffs that they will continue to infringe Counterclaim Plaintiffs' copyrights even if The Phillies lose this lawsuit.  In other words, The Phillies have made the conscious decision to infringe first and pay later, rather than responsibly comply with the law and obtain permission from Counterclaim Plaintiffs.

34.     The Phillies' infringement will result, and has resulted, in a substantial decline in revenue to which Counterclaim Plaintiffs' are entitled, and—if permitted to continue— effectively renders the termination provisions of the 1976 Copyright Act meaningless.  Actions such as those taken by The Phillies not only violate the express rights granted to H/E under the Copyright Act, but also undermine the very purposes of the Copyright Act, adversely impacting the creation of new artwork.

35.     Rather than respecting the public policy choices of Congress to protect artists by providing them with the ability to reclaim their rights, The Phillies are willfully and unlawfully exploiting Counterclaim Plaintiffs' Phanatic, and they must answer for their blatantly unlawful conduct.

## CLAIMS

### First Cause of Action –Authorship of the Phanatic

36.     Counterclaim Plaintiffs reallege all of the allegations in paragraphs 1-35 herein.

43

37.     In 1978, Counterclaim Plaintiffs created the Phillie Phanatic.  The Phillies contributed no artistic expression to the Phanatic whatsoever, let alone copyrightable expression.

38.     Between 1978 and 1984, the parties entered multiple written agreements within which The Phillies acknowledged Counterclaim Plaintiffs' authorship of the Phanatic.  These agreements include acknowledgement of Counterclaim Plaintiffs' authorship of the Phanatic "character."

39.     After Counterclaim Plaintiffs served a notice on The Phillies in 2018, as required by the Copyright Act, to terminate the 1984 assignment of the copyright rights in the Phanatic, The Phillies concocted an argument to attempt to claim partial authorship of the Phanatic.  An actual, substantial, and justiciable controversy thus exists between Counterclaim Plaintiffs and The Phillies concerning who authored and initially owned the copyright rights in the Phanatic.  A judicial declaration is necessary to vindicate Counterclaim Plaintiffs' rights.

40.     Based on the foregoing, Counterclaim Plaintiffs hereby request a judicial declaration that they authored the Phanatic, and that The Phillies did not.

### **Second Cause of Action – Statute of Limitations and Estoppel**

41.     Counterclaim Plaintiffs reallege all of the allegations in paragraphs 1-40 herein.

42.     Counterclaim Plaintiffs always claimed authorship and initial ownership of the copyright to the Phanatic.  Counterclaim Plaintiffs also always denied that The Phillies had any authorship interest in the Phanatic.  These denials were express, and were even conveyed in writing multiple times in and before 1984.  Indeed, in 1979, Counterclaim Plaintiffs registered the copyright to the Phanatic, and informed The Phillies that they did so.  The Phillies never claimed an authorship interest in the Phanatic for forty years.

43.     The Copyright Act, 17 U.S.C. § 507, includes a three-year statute of limitations. This limitations provision applies to claims of authorship, just as it does to infringement actions. Because Counterclaim Plaintiffs repudiated any authorship claim possessed by The Phillies, and The Phillies failed to file an action within three years contesting Counterclaim Plaintiffs' rights, the statute of limitations now bars The Phillies from claiming any authorship interest.

44.     Moreover, Counterclaim Plaintiffs materially and reasonably relied on The Phillies' representations that they acknowledged Counterclaim Plaintiffs' authorship of the Phanatic when the parties entered written agreements and Counterclaim Plaintiffs continued to do business with The Phillies after doing so.

45.     Nevertheless, after taking the benefit of the written agreements and exploiting the Phanatic grant for more than 35 years, The Phillies are now asserting, for the first time, that they authored the Phanatic.  Equitable estoppel bars The Phillies from now challenging Counterclaim Plaintiffs' authorship of the Phanatic. An actual, substantial, and justiciable controversy thus exists between Counterclaim Plaintiffs and The Phillies concerning who authored the Phanatic. A judicial declaration is necessary to vindicate Counterclaim Plaintiffs' rights.

46.     Based on the foregoing, Counterclaim Plaintiffs hereby request a judicial declaration that the Copyright Act's statute of limitations and equitable estoppel prevent The Phillies from claiming any authorship of the Phanatic.

## Third Cause of Action – Validity of Copyright Registration

47.     Counterclaim Plaintiffs reallege all of the allegations in paragraphs 1-46 herein.

48.     In 1979, Counterclaim Plaintiffs registered their copyright interests in the Phanatic, and the U.S Copyright Office issued a registration certificate that same year.  In applying for the registration, Counterclaim Plaintiffs complied with all applicable Copyright

45

Office regulations and practices.  Counterclaim Plaintiffs did so in good faith, and informed The Phillies of the issuance of the Copyright Office registration certificate.  The Phillies acknowledged the existence of the certificate in writing, and even used it to enforce their rights during the term of the 1984 assignment.

49.     Moreover, Counterclaim Plaintiffs reasonably and materially relied on The Phillies representations that they acknowledged the validity of Counterclaim Plaintiffs' registration when the parties entered written agreements and Counterclaim Plaintiffs continued to do business with The Phillies after doing so.  Equitable estoppel, and the Copyright Act's statute of limitations, 17 U.S.C. § 507, therefore bar The Phillies from now challenging the validity of Counterclaim Plaintiffs' registration.

50.     Nevertheless, The Phillies assert that the registration is invalid.  An actual, substantial, and justiciable controversy thus exists between Counterclaim Plaintiffs and The Phillies concerning the whether Counterclaim Plaintiffs possess a valid registration.  A judicial declaration is necessary to vindicate Counterclaim Plaintiffs' rights.

51.     Based on the foregoing, Counterclaim Plaintiffs hereby request a judicial declaration that their registration certificate is valid.

### Fourth Cause of Action – Validity of Termination Notice

52.     Counterclaim Plaintiffs reallege all of the allegations in paragraphs 1-51 herein.

53.     On October 31, 1984, Counterclaim Plaintiffs assigned, in writing, their copyrights in the Phanatic to The Phillies.  Under 17 U.S.C. § 203, Counterclaim Plaintiffs are entitled to terminate that transfer.

54.     The statute states: "Termination of the grant may be effected at any time during a period of five years beginning at the end of thirty-five years from the date of execution of the

grant ...” The statute also states: “Termination of the grant may be effected notwithstanding any agreement to the contrary, including an agreement to make a will or to make any future grant.” The statute also states: “Upon the effective date of termination, all rights under this title that were covered by the terminated grants revert to the author, authors, and other persons owning termination interests …”

55.     Counterclaim Plaintiffs complied with all of 17 U.S.C. § 203’s requirements, including a timely notice of termination and the requirement to record the termination notice with the U.S. Copyright Office.  The notice was timely, complete, and valid.  Pursuant to the notice, the 1984 assignment of the Phanatic copyright by Counterclaim Plaintiffs to The Phillies terminated on June 15, 2020.

56.     The Phillies have claimed that the termination notice is ineffective, and threatened to continue, and continued, to use the copyright rights to the Phanatic after the date on which the assignment terminated.  An actual, substantial, and justiciable controversy thus exists between Counterclaim Plaintiffs and The Phillies concerning whether the termination notice is valid.  A judicial declaration is necessary to vindicate Counterclaim Plaintiffs’ rights.

57.     Based on the foregoing, Counterclaim Plaintiffs hereby request a judicial declaration that, under the Copyright Act, the termination notice effectively terminates the 1984 Assignment and all copyright interests owned by Counterclaim Plaintiffs in the Phanatic reverts to Counterclaim Plaintiffs in accordance with Section 203.

**Fifth Cause of Action – Copyright Infringement**

58.     Counterclaim Plaintiffs reallege all of the allegations of paragraphs 1-57 herein.

59.     The Phanatic mascot design and Phanatic Artwork listed on Exhibit B created by Counterclaim Plaintiffs constitute original, copyrightable subject matter pursuant to the

47

Copyright Act, and are protected by a United States Certificate of Copyright Registration duly registered with the United States Copyright Office (the "Phanatic Copyrights").  Counterclaim Plaintiffs have validly exercised their termination rights pursuant to 17 U.S.C. § 203, and with the passage of the Effective Termination Date on June 15, 2020, are the owners of and/or exclusively control all rights, title, and interest in and to the Phanatic Copyrights.

60.     The Phanatic Artwork listed on Exhibit B repeats content verbatim from the original copyrighted Phanatic mascot design, and Counterclaim Plaintiffs rely upon their copyright registration for the underlying mascot design.  In addition, independent registrations for the works listed on Exhibit B were filed with the U.S. Copyright Office on the Effective Termination Date, and Counterclaim Plaintiffs intend to amend their Counterclaims as necessary to reflect those registrations when they are issued.

61.     The Phillies have reproduced, adapted, distributed, and publicly displayed the Phanatic Copyrights without authorization subsequent to the Effective Termination Date, including *inter alia*, by continuing to exploit a knock-off Phanatic mascot design, P2, creating new adaptations of the Phanatic Copyrights such as those set forth in Exhibit A, and continuing to exploit merchandise that unlawfully incorporates the Phanatic Artwork.  In addition, without the permission or consent of Counterclaim Plaintiffs, The Phillies have knowingly encouraged, induced, materially contributed to, and/or facilitated, the unauthorized reproduction, adaptation, distribution, and public display of the Phanatic Copyrights subsequent to the Effective Termination Date.  The Phillies also have the right and ability to stop or limit the infringement, and have a direct financial interest in such infringing activities.  As such, The Phillies are directly and secondarily liable for infringement under the Copyright Act.

62.     The infringement of Counterclaim Plaintiffs' rights in each of their respective copyrighted works constitutes a separate and distinct act of infringement.

63.     The Phillies' unlawful conduct, as set forth above, was willful, intentional, malicious and purposeful, in disregard of and with indifference to the rights of Counterclaim Plaintiffs.

64.     The Phillies' actions described above have caused and will continue to cause irreparable damage to Counterclaim Plaintiffs, for which Counterclaim Plaintiffs have no remedy at law.  Indeed, The Phillies have already engaged in the blatant wholesale infringement of the Phanatic Copyrights by, among other things, continuing to prepare new derivative works featuring P2 after the Effective Termination Date without permission.  The Phillies are aware that every single one of these new works unlawfully incorporates, and therefore infringes on, Counterclaim Plaintiffs' copyrighted material, *see* 17 U.S.C. § 203(b)(1), but nonetheless have expressed every intention of continuing to expand their use of P2 through the preparation of countless more unauthorized new works that feature P2.  Such conduct is indefensible.  Unless The Phillies are restrained by this Court from continuing their infringement of Counterclaim Plaintiffs' copyrights, these injuries will continue to occur in the future.  Counterclaim Plaintiffs are accordingly entitled to injunctive relief restraining The Phillies from further infringement.

## PRAYER FOR RELIEF AND DEMAND FOR JURY

65.     Wherefore, Counterclaim Plaintiffs pray for a judgment in their favor and against The Phillies and request the following relief:

    a.   A declaratory judgment that Counterclaim Plaintiffs authored and initially owned the Phanatic, and that The Phillies did not;

b.  A declaratory judgment that The Phillies are barred by the Copyright Act's statute of limitations, and by equitable estoppel, from asserting an authorship interest in the Phanatic;

c.  A declaratory judgment that Counterclaim Plaintiffs' 1979 copyright registration for the Phanatic is valid;

d.  A declaratory judgment that the termination notice served by Counterclaim Plaintiffs on The Phillies is effective and valid, and that the 1984 assignment from Counterclaim Plaintiffs to The Phillies of the copyright rights to the Phillie Phanatic terminated on June 15, 2020;

e.  For a declaration that The Phillies have willfully infringed and are continuing to infringe Counterclaim Plaintiffs' copyrights, including *inter alia*, through the preparation after the Effective Termination Date of new works that are based upon Counterclaim Plaintiffs' copyrights.

f.  For statutory damages pursuant to 17 U.S.C. § 504(c), in an amount up to the maximum provided by law, arising from The Phillies' willful violations of Counterclaim Plaintiffs' rights under the Copyright Act or, in the alternative, at Counterclaim Plaintiffs' election pursuant to 17 U.S.C. § 504(b), Counterclaim Plaintiffs' actual damages, including The Phillies profits from the infringements and the value received by the Phillies resulting from its infringements, in an amount to be proven at trial;

g.  An order pursuant to 17 U.S.C. § 505 awarding Counterclaim Plaintiffs their costs in this action, including their reasonable attorneys' fees;

h. For pre-judgment and post-judgment interest at the applicable rate on any monetary award made part of the judgment against The Phillies;

i. For such equitable relief under Title 17, Title 28, and/or the Court's inherent authority as is necessary to prevent or restrain infringement of Counterclaim Plaintiffs' copyrights, including permanent injunctive relief prohibiting The Phillies and their officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with each or any of them, from:

    i. Directly or indirectly infringing Counterclaim Plaintiffs' Phanatic Copyrights;

    ii. Copying, reproducing, distributing, transmitting, displaying, or otherwise exploiting without authorization Counterclaim Plaintiffs' Phanatic Copyrights;

    iii. Preparing derivative works that are based upon Counterclaim Plaintiffs' Phanatic Copyrights;

    iv. Enabling, facilitating, permitting, assisting, soliciting, encouraging, or inducing others to copy, reproduce, distribute, transmit, display, or otherwise exploit without authorization Counterclaim Plaintiffs' Phanatic Copyrights; and

    v. Enabling, facilitating, permitting, assisting, soliciting, encouraging, or inducing others to prepare derivative works that are based upon Counterclaim Plaintiffs' Phanatic Copyrights; and

j. All other relief the Court deems just and proper.

DATED:        November 3, 2020            MITCHELL SILBERBERG & KNUPP LLP
              New York, New York


                                          By: /s/ Paul D. Montclare_____
                                              Paul D. Montclare (*pdm@msk.com*)
                                              Leo M. Lichtman (*lml@msk.com*)
                                              Elaine Nguyen (*eln@msk.com*)
                                              437 Madison Avenue, 25th Floor
                                              New York, NY 10022
                                              Telephone: (212) 509-3900
                                              Facsimile:  (212) 509-7239

                                              J. Matthew Williams (*mxw@msk.com*)
                                              1818 N St. NW, 7th Floor
                                              Washington, DC 20036
                                              Telephone: (202) 355-7900
                                              Facsimile: (202) 355-7899

                                              *Attorneys for Defendants and*
                                              *Counterclaim Plaintiffs Harrison/Erickson*
                                              *Incorporated, Harrison Erickson, Wayde*
                                              *Harrison, and Bonnie Erickson*