**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE PHILLIES, a Pennsylvania limited partnership,<br><br>            Plaintiff,<br><br>    v.<br><br>HARRISON/ERICKSON, INCORPORATED, a New York corporation, HARRISON ERICKSON, a partnership, and WAYDE HARRISON and BONNIE ERICKSON,<br><br>            Defendant. | CASE NO. 19-CV-7239 (VM) |

**DEFENDANT/COUNTERCLAIM PLAINTIFF'S**
**<u>RESPONSE TO THE PHILLIES' STATEMENT OF UNDISPUTED FACTS</u>**

Pursuant to Local Rule 56.1, Defendants/Counterclaim Plaintiffs Harrison/Erickson, Incorporated, Harrison Erickson, Wayde Harrison, and Bonnie Erickson (collectively, "H/E") respectfully submit this statement in response to The Phillies' Local Rule 56.1 Statement of Undisputed Facts ("PSUF").  H/E also respectfully refers to the Court to their concurrently-filed Statement of Undisputed Facts Pursuant to Local Rule 56.1 in opposition to The Phillies' Partial Motion for Summary Judgment, and in support of H/E's Motion for Summary Judgment ("HESUF"), and the facts and evidence cited therein.

**H/E Develops The Phanatic Costume for The Phillies in 1978,
Registers it as an "Artistic Sculpture" with the Copyright Office in 1979,
and Assigns All of its Rights in the Artistic Sculpture to The Phillies in 1984.[1]**

1.      In February 1978, then Phillies Executive Vice President Bill Giles, at the urging

of The Phillies' Marketing Director Denny Lehman, decided to develop a new mascot for The

Phillies. Ex. 1 at 23:12-24:19 (W. Giles Feb. 18, 2020 Dep. Tr.).

**RESPONSE:**  Disputed to the extent that this statement implies that Bill Giles or The

Phillies "authored" the Phanatic.  Otherwise, not disputed.


2.      At the recommendation of Jim Henson, The Phillies called Bonnie Erickson, who

had founded a creative design firm with her husband, Wayde Harrison—Harrison/Erickson

("H/E"). Ex. 2 at 20:25-21:3, 261:3-15 (B. Erickson Feb. 7, 2020 Dep. Tr.); Ex. 3 at 37:20-38:21

(B. Erickson June 23, 2020 Dep. Tr.); Ex. 10 at ¶ 3 (P2, 1979 Erickson Affidavit).

**RESPONSE:**  Not disputed.


3.      Ms. Erickson had previously worked as a Muppet designer with Jim Henson. Ex.

3 at 10:13-11:5, 17:13-16, 17:19-24 (B. Erickson June 23, 2020 Dep. Tr.).

**RESPONSE:**  Not disputed.


4.      On March 17, 1978, The Phillies and H/E entered into an agreement whereby H/E

would provide a design and construct a costume for $3,900, plus expenses. Ex. 4 at 23:16-25:17,

26:20-27:13 (W. Harrison Feb. 10, 2020 Dep. Tr.); Ex. 5 (P61, Mar. 17, 1978 Agreement).

---

[1] The Phillies' headings are reproduced solely for ease of reference.

**RESPONSE:**  Disputed to the extent that "provide a design" denotes a copyright sale or assignment.  Otherwise, not disputed.


5.      In exchange, The Phillies was granted the right to use the costume on TV, in commercials, and in personal appearances to promote the team. Ex. 1 at 71:17-72:11 (W. Giles Feb. 18, 2020 Dep. Tr.); Ex. 5 at PHAN0009004 (P61, Mar. 17, 1978 Agreement).

**RESPONSE:**  Not disputed for purposes of this motion.


6.      Ms. Erickson created the preliminary sketch depicted in Ex. 71 for The Phillies' mascot on or around March 14, 1978, but that sketch is "not the Phanatic." Ex. 2 at 55:16-56:1, 62:13-63:11 (B. Erickson Feb. 7, 2020 Dep. Tr.); Ex. 71 (P5, Preliminary Sketch). Among the significant differences between the design in Ex. 71 and the original Phanatic are the eyebrows, the rings around the neck, the shape of the snouts, and the shape of the tails. Ex. 2 at 64:2-70:7 (B. Erickson Feb. 7, 2020 Dep. Tr.).

**RESPONSE:**  H/E objects to this statement on the grounds that the differences between the preliminary sketch depicted in Ex. 71 and the original Phanatic are not relevant for purposes of this motion.  Without waiving this objection, H/E asserts that it is not disputed that Ms. Erickson created a preliminary sketch and testified that it was "not the Phanatic"; however, disputed, but immaterial for purposes of the motion, that the sketch is "not the Phanatic," to the extent it implies that the preliminary sketch is the precursor to a mascot other than the Phanatic.


7.      Ms. Erickson made several significant creative choices when designing the original Phanatic costume. Ex. 8 at 30:7-31:4 (decision about shape of snout was "original"),

36:9-12 (decision to use scallop-shaped "eyebrows" was an artistic choice), 41:8-15 (decision to

cover hands with fur was a significant artistic choice), 43:2-22 (decision to use three fingers and

thumb was an artistic choice because "I consider myself an artist"), 46:10-24 (decision to use

egg-shaped eyeballs as opposed to Henson's eyeball designs was significant artistically), 56:7-

57:4 (decision to make tail out of feathers was artistically different than Henson design for tail),

73:23-74:20 (decision to use feathers for eyebrows was artistically significant difference from

Henson eyebrows for the Muppet called "Animal"), 77:11-18 (decision to use slightly different

shade of green for Phanatic than Oscar the Grouch was "partly practical, partly artistic"), 79:19-

81:5 (decision to use egg-shaped containers for L'Eggs pantyhose for the Phanatic's eyes was an

"artistically significant choice") (July 15, 2020 B. Erickson Dep. Tr.).

**RESPONSE:**  Not disputed that Ms. Erickson made significant creative choices in

designing the Phanatic.  Disputed, but immaterial for purposes of the motion, to the extent that

the quoted excerpts of Ms. Erickson's depositions mischaracterizes her testimony.  As Ms.

Erickson repeatedly explained in her deposition, all of the Phanatic's elements have to be viewed

in the context of the character as a whole, which is an original fantasy character, and within that

context, her choices were created.  Montclare Ex. 16 (11:11-24, 13:6-12, 35:7-36:5, 74:13-24,

92:8-15, 153:24-154:8).[2]  The quoted excerpts omit that Ms. Erickson was being asked to look at

specific aspects of the Phanatic, which had not previously existed, and compare them against

completely separate characters.  By way of example, when asked if Ms. Erickson copied Jim

---

[2] The Declaration of Paul Montclare in support of H/E's Motion for Summary Judgment and
Opposition to The Phillies' Motion for Partial Summary Judgment and Motion to Dismiss
("Montclare Decl.") is submitted herewith.  Citations to relevant portions of the record which are
necessary to respond to The Phillies' Local Rule 56.1 Statement, but which are not cited by The
Phillies, or which are cited in an incomplete manner, are being submitted as exhibits to the
Montclare Decl.

12829182.2

Henson's characters when she designed the Phanatic to have three fingers and a thumb, Ms. Erickson replied that this was a common feature in puppetry as it made the puppets easier to manipulate, and that her decision to also design the Phanatic this way was an artistic choice, in the sense that the "whole character is a significant creative choice."  Montclare Ex. 16 (41:11-15, 42:11-43:12).

8.    The costume was delivered to The Phillies in April 1978. Ex. 4 at 34:18-37:12 (W. Harrison Feb. 10, 2020 Dep. Tr.); Ex. 6 at PHAN0009238 (P60, H/E Business Notes stating on 4/21/78, "We will deliver it ourselves Tues in t[i]me for their first home game," and on 4/28/78, "Delivered the Phanatic Tuesday . . . .").

**RESPONSE:**  Not disputed.

9.    The photos in Ex. 7 (P6), taken in either 1978 or 1979, accurately depict the original Phanatic costume. Ex. 7 (P6, Original Phanatic Photos); Ex. 8 at 9:21-11:5 (B. Erickson July 15, 2020 Dep. Tr); Ex. 2 at 57:6-58:12 (B. Erickson Feb. 7, 2020 Dep. Tr.).

**RESPONSE:**  Disputed that the photographs in Ex. 7 provide a complete depiction of the Phanatic costume in the sense that the Phanatic costume has appeared in numerous other poses, with numerous other backgrounds and in different lighting, and the Phanatic has worn a number of different "outfits" apart from the 1978 Phillies uniform.  HESUF ¶ 31; Erickson Decl.  ¶ 8.[3] Otherwise, not disputed.

---

[3] The Declaration of Bonnie Erickson in support of H/E's Motion for Summary Judgment and Opposition to The Phillies' Motion for Partial Summary Judgment and Motion to Dismiss ("Erickson Decl.") is submitted herewith.

10.    Wearing the costume constructed by H/E, The Phillies' Dave Raymond debuted the Phanatic at a Phillies home game on April 25, 1978. Ex. 9 at 53:5-9 (D. Raymond Apr. 14, 2020 Dep. Tr.).

**RESPONSE:**  Disputed to the extent "debuted the Phanatic" implies Raymond created a copyrightable character.  Otherwise, not disputed.

11.    Wayde Harrison noted in the summer of 1978 in his business diary that Raymond had created a "fun and sensitive character." Ex. 4 at 42:7-44:5 (W. Harrison Feb. 10, 2020 Dep. Tr.); Ex. 6 at PHAN0009255 (P60, H/E Business Notes).

**RESPONSE:**  Disputed as the proposition mischaracterizes the proffered evidence, but immaterial for purposes of the motion.  The notes that The Phillies purport to quote state that Raymond "perform[ed] very well" and "developed a fun and sensitive character.  Word is that the chicken man character from San Diego is crude, if more entertaining."  Wolfsohn Ex. 6 at PHAN0009255 (P60, H/E Business Notes).[4]  Further disputed to the extent The Phillies imply that Harrison was in any way suggesting that Raymond authored a "character" in the copyright sense.  The Phillies omit that those same notes also state that Raymond "like[d] the character" that H/E created when Raymond came into H/E's studio to be fitted.  HESUF ¶ 18; Wolfsohn Ex. 6, at PHAN0009238; *see also* Harrison Decl. ¶ 6.[5]

---

[4] Where applicable, references to the documents relied upon by The Phillies and annexed to the Declaration of David J. Wolfsohn are referred to as "Wolfsohn Ex."

[5] The Declaration of Wayde Harrison in support of H/E's Motion for Summary Judgment and Opposition to The Phillies' Motion for Partial Summary Judgment and Motion to Dismiss ("Harrison Decl.") is submitted herewith.

12.     By May of 1979, the Phanatic had become enormously popular. Ex. 2 at 30:23-31:3, 202:14-17 (B. Erickson Feb. 7, 2020 Dep. Tr.); Ex. 10 at ¶ 5 (P2, 1979 Erickson Affidavit).

**RESPONSE:**  Not disputed.


13.     In May 1979, H/E sued The Phillies for copyright infringement. Ex. 11 (D24, May 18, 1979 Complaint).

**RESPONSE:**  Not disputed.


14.     Before filing suit, H/E filed a registration application with the Copyright Office describing the work as an "artistic sculpture" titled "Phillie Phanatic." Ex. 12 at 14 (P84, Certificate of Registration); Ex. 13 at 238:23-420:12, 255:13-256:5 (B. Erickson July 2, 2020 Dep. Tr.).

**RESPONSE:**  Not disputed.


15.     The Copyright Office registered the work as a "sculpture" on May 4, 1979, describing it as "Shaggy creature wearing tennis shoes, tights & baseball shirt while carrying pennant." Ex. 14 (P85, Copyright Office Online Public Catalog); Ex. 12 (P84, Certificate of Registration); Ex. 13 at 251:13-252:24 (B. Erickson July 2, 2020 Dep. Tr.).

**RESPONSE:**  Disputed as not supported by the proffered evidence, but immaterial for purposes of the motion.  It is not clear whether the U.S. Copyright Office or H/E supplied this description, and Ms. Erickson testified that she does not remember.  Wolfsohn Ex. 13 at 251:13-252:24.  The online catalogue did not exist in 1979.

12829182.2

16.     On November 1, 1979, The Phillies and H/E settled the 1979 litigation and

entered into a new agreement with respect to the Phanatic (the "November 1, 1979 Agreement").

Ex. 3 at 198:18-199:6, 201:18-202:6 (B. Erickson June 23, 2020 Dep. Tr.); Ex. 15 (P7, Nov. 1,

1979 Agreement).

**RESPONSE:**  Disputed as to the characterization of the November 1, 1979 Agreement

but immaterial for purposes of the motion.  This agreement was not simply a "new agreement

with respect to the Phanatic," but rather, a settlement agreement that settled the 1979 copyright

infringement lawsuit filed against The Phillies.  HESUF ¶¶ 49-51, 54.  Otherwise, not disputed.


17.     The November 1, 1979 Agreement acknowledged that The Phillies had "valuable

trademark, service mark and other property rights" associated with the Phanatic, and granted The

Phillies exclusive rights to use "the PHILLIE PHANATIC in costume form, and in various

reproductions of the costume." Ex. 15 at 1 & ¶ 1 (P7, Nov. 1, 1979 Agreement).

**RESPONSE:**  Not disputed.


18.     The November 1, 1979 Agreement left to H/E "sole and exclusive artistic control"

of "all reproductions of the PHILLIE PHANATIC, including merchandise, audio visual and

photographic reproductions." Ex. 15 at ¶ 4 (P7, Nov. 1, 1979 Agreement).

**RESPONSE:**  Not disputed.


19.     On October 31, 1984, The Phillies and H/E entered into a new agreement

effective October 31, 1984 (the "1984 Agreement"). Ex. 16 at 1 & 3 ¶ 10 (P1, 1984 Agreement).

**RESPONSE:**  Not disputed.

20.    The 1984 Agreement stated, in part:

WHEREAS, HE owns the copyright of the artistic sculpture presently known as the "Phillies Phanatic" (hereinafter referred to as the "MASCOT"); and

WHEREAS, HE and the PHILLIES entered into a written agreement dated November 1, 1979 for the use and reproduction of the MASCOT (hereinafter referred to as the "EXISTING AGREEMENT");

WHEREAS, the PHILLIES desire to purchase the copyright and all other rights of HE in the MASCOT and to terminate the EXISTING AGREEMENT;

NOW, THEREFORE, in consideration of the foregoing and other good and valuable consideration, it is agreed:

1.  Subject to the terms of this agreement only, HE hereby sells, transfers and assigns to the PHILLIES all of HE's rights, title and interest in and to the MASCOT and in and to all reproductions and portrayals of all or part of the MASCOT in any medium whatsoever, everywhere and forever, including all copyrights therein throughout the world, free and clear of any adverse claims and interest . . . . HE shall not create any other artistic sculpture in the form of MASCOT or substantially similar to MASCOT.

Ex. 16 at 1 & ¶ 1 (P1, 1984 Agreement).

**RESPONSE:**  Not disputed.

21.    Under the 1984 Agreement, H/E assigned all of its rights in "the MASCOT," defined as "the artistic sculpture presently known as the 'Phillies Phanatic'" Ex. 16 at 1 & ¶ 1 (P1, 1984 Agreement).

**RESPONSE:**  Disputed as contrary to the evidence to the extent that the proposition implies that H/E assigned their statutory termination right under 17 U.S.C. § 203 and did not

assign any works other than the registered Phanatic.  *See* PSUF ¶ 20; HESUF ¶ 57.  The 1984

Agreement does not reference termination, nor could H/E legally assign that right in 1984.  17

U.S.C. § 203(a)(5).  Otherwise, not disputed.

22.    In other words, what was conveyed by H/E to The Phillies under the 1984

Agreement was H/E's rights in the Phanatic artistic sculpture. Ex. 2 at 12:20-13:5 (B. Erickson

Feb. 7, 2020 Dep. Tr.); Ex. 4 at 78:22-79:14 (W. Harrison Feb. 10, 2020 Dep. Tr.).

**RESPONSE:**  Undisputed that H/E conveyed to The Phillies their rights in and to the

Phanatic artistic sculpture; however, disputed as contrary to the evidence to the extent that The

Phillies imply that the grant of rights did not also include a conveyance of rights "in and to all

reproductions and portrayals of all or part of the [Phanatic artistic sculpture] in any medium

whatsoever," which The Phillies admit above, PSUF ¶ 20; *see also* HESUF ¶ 57.

23.    In connection with the 1984 Agreement, H/E delivered to the Phillies an

assignment of copyright in the form of the assignment attached to the 1984 Agreement. Ex. 16 at

2 ¶ 4 (P1, 1984 Agreement).

**RESPONSE:**  Disputed to the extent The Phillies imply that the short form assignments

attached to the 1984 Agreement limit the scope of the assignment described in the 1984

Agreement itself, which, as described above, included a conveyance of rights "in and to all

reproductions and portrayals of all or part of the [Phanatic artistic sculpture] in any medium

whatsoever." PSUF ¶ 20; HESUF ¶ 57.  Otherwise, not disputed.

24.    The "Short Form Assignment" attached to the 1984 Agreement, signed by H/E

and the Phillies, stated:

> Title of Work: PHILLIE PHANATIC
> Registration No. VA23-748, May 4, 1979
>
> ASSIGNMENT made this 31st day of October 1984, by and between HARRISON ERICKSON . . . (hereinafter referred to as "HE") and THE PHILLIES . . . .
>
> HE, for good and valuable consideration, . . . hereby sells, assigns, and transfers to the PHILLIES, its successors and assigns, all of HE's right, title and interest in and to (a) the copyright in the artistic sculpture identified above, and all renewals and extensions thereof and (b) any and all causes of action heretofore accrued in HE's favor for infringement of said copyright.

Ex. 16 at PHAN0009826 (P1, 1984 Agreement).

**RESPONSE:**  Disputed to the extent The Phillies imply that the short form assignments attached to the 1984 Agreement limit the scope of the assignment described in the 1984 Agreement itself, which, as described above, included a conveyance of rights "in and to all reproductions and portrayals of all or part of the [Phanatic artistic sculpture] in any medium whatsoever."  PSUF ¶ 20; HESUF ¶ 57.  Otherwise, not disputed.

25.    Another form of the assignment attached to the 1984 Agreement, signed by H/E, stated:

> KNOW ALL MEN BY THESE PRESENTS:
>
> THAT, for and in consideration of the agreement made October 31, 1984, between the undersigned (hereinafter referred to as the "Grantor") and THE PHILLIES (hereinafter referred to as the "Grantee") and other good and valuable consideration, receipt whereof is hereby acknowledged, the Grantor hereby transfers, grants, assigns and sets over to the Grantee, its successors and assigns, . . . all rights, title and interests whatsoever, in and to the artistic sculpture identified as PHILLIE PHANATIC, VA 23-748, May 4, 1979, under any and all copyrights therein, throughout the world, and all renewals and extensions, including among all other

> things and without limitation, all existing causes of action and all
> rights and interests whatsoever now or hereafter known or existing
> in and to all of the foregoing."

Ex. 16 at PHAN0009828 (P1, 1984 Agreement).

**RESPONSE:**  Disputed to the extent The Phillies imply that the short form assignments

attached to the 1984 Agreement limit the scope of the assignment described in the 1984

Agreement itself, which, as described above, included a conveyance of rights "in and to all

reproductions and portrayals of all or part of the [Phanatic artistic sculpture] in any medium

whatsoever."  PSUF ¶ 20; HESUF ¶ 57.  Otherwise, not disputed.


26.    Pursuant to the terms of the 1984 Agreement, the Phillies paid H/E the sum of

$215,000 "constituting the purchase price of HE's interests in the MASCOT." Ex. 16 at 1 ¶ 2

(P1, 1984 Agreement); Ex. 2 at 14:13-21 (B. Erickson Feb. 7, 2020 Dep. Tr.); Ex. 4 at 89:19-22

(W. Harrison Feb. 10, 2020 Dep. Tr.).

**RESPONSE:**  Not disputed.


27.    The Phillies has paid at least $789,627 to H/E for costume repair and the creation

of various pieces of Phanatic artwork. Ex. 17 (P76, Spreadsheet listing payments made by The

Phillies to H/E); Ex. 3 at 86:5-87:15 (B. Erickson June 23, 2020 Dep. Tr.).

**RESPONSE:**  Disputed to the extent The Phillies imply that all artwork Erickson was

hired to provide after 1984 involved the creation of new artwork.  *See* HESUF ¶¶  66-68;

Erickson Decl. ¶¶ 14-22. Otherwise, not disputed, though immaterial for purposes of the motion.


28.    Combined with the assignment fee, The Phillies have paid H/E over $1 million

related to the Phanatic since 1984. Ex. 17 (P76, Spreadsheet listing payments made by The Phillies to H/E indicating total fees paid of $789,627); Ex. 3 at 86:5-87:15 (B. Erickson June 23, 2020 Dep. Tr.); Ex. 16 at 1 ¶ 2 (P1, 1984 Agreement indicating purchase price of $215,000).

**RESPONSE:**  Not disputed.

### After Acquiring the Rights to the Phanatic Costume, The Phillies Builds Substantial Good Will in the Mascot.

29.      The Phanatic has become a symbol of The Phillies baseball club. Ex. 2 at 49:4-8 (B. Erickson Feb. 7, 2020 Dep. Tr.).

**RESPONSE:**  Not disputed.

30.      Over the past 40 years, The Phillies has invested millions of dollars in developing and promoting the Phanatic, and making the Phanatic a symbol of the baseball club and building its good will. Ex. 18 at 79:3-19 (D. Buck Apr. 23, 2020 Dep. Tr.); Ex. 19 at 85:20-86:3, 139:5-140:2 (S. Brandreth Feb. 28, 2020 Dep. Tr.); Ex. 20, at p. 5, Suppl. Resp. to Interrogatory No. 23 (Defendants' 11/18/20 Supplemental Responses to Plaintiff's Third and Fourth Set of Interrogatories, Supplemental Response to Interrogatory 23, stating: "Defendants do not contend that The Phillies has not acquired good will in the term Phillie Phanatic with certain segments of the consuming public, solely as the concept of 'good will' is understood within trademark law.").

**RESPONSE:**  H/E objects to this statement on the grounds that it lacks foundation.  The Phillies have not produced sufficient information to accurately quantify the amount of monies invested by The Phillies in "developing and promoting the Phanatic, and making the Phanatic a symbol of the baseball club and building its good will," and the statement is not supported by admissible evidence.  Notwithstanding this objection, the statement is disputed to the extent that

12829182.2

the proffered evidence does not sufficiently support the proposition, though not material for

purposes of the motion.

31.    The Phillies' good will in the Phanatic is reflected in various incontestable

trademarks, including in the name Phanatic, in the Phanatic's design, and in various other

costume elements. Ex. 20 at p. 4, Suppl. Resp. to Interrogatory No. 15 (Defendants' 11/18/20

Supplemental Responses to Plaintiff's Third and Fourth Set of Interrogatories, Supplemental

Response to Interrogatory No. 15, stating: "Defendants do not contend that [The Phillies']

trademark registrations are invalid); Ex. 20 at p. 5, Suppl. Resp. to Interrogatory No. 23

(Defendants' 11/18/20 Supplemental Responses to Plaintiff's Third and Fourth Set of

Interrogatories, Supplemental Response to Interrogatory 23, conceding that Phillies have

acquired good will in the Phanatic trademarks); Ex. 75 (P38, Trademark Registration).

**RESPONSE:**  H/E objects to this statement on the grounds that it lacks foundation.  The

Phillies have not produced sufficient evidence demonstrating that any of The Phillies' marks are

incontestable.  For instance, in connection with this proposition, The Phillies produced only a

single trademark registration for one design.  Notwithstanding this objection, the statement is

disputed to the extent the proffered evidence does not sufficiently support the proposition,

though immaterial for purposes of the motion.  In any case, The Phillies' right to use any design

created by H/E is subject to any copyright interest that H/E may hold in the design(s).

32.    The Phillies' investment in developing the Phanatic as a symbol of the team and

building its good will include thousands of performances at Phillies' baseball games, hundreds of

paid and charitable appearances in public, and appearances on news programs, movies,

12829182.2

commercials, and in social media. Ex. 21 at 99:3-100:18 (T. Burgoyne Feb. 13, 2020 Dep. Tr.);

Ex. 19 at 139:5-140:2 (S. Brandreth Feb. 28, 2020 Dep. Tr.); Ex. 18 at 121:6-18 (D. Buck Apr.

23, 2020 Dep. Tr.); Ex. 72 at 94:6-12 (D. Raymond May 8, 2020 Dep. Tr.); Ex. 73

(PHAN0016269, 8/1/06 Press Release re: Phanatic movie); Ex. 74 (PHAN0024013, 10/28/16

email attaching visual depiction of a year of Phanatic appearances).

**RESPONSE:**  Disputed to the extent the proffered evidence does not sufficiently support

the proposition, though immaterial for purposes of the motion.


33.     The Phillies and its or Major League Baseball's licensees have created hundreds

of promotional items, products, and designs based on the Phanatic, including cartoons,

bookmarks, posters, books, toys, dolls, bobbleheads, figurines, t-shirts, hats, jewelry, socks,

shoes, and headbands, such as, for example, the illustrations and products depicted in Ex. 23

(Appendix A). Ex. 19 at 86:16-87:11 (S. Brandreth Feb. 28, 2020 Dep. Tr.); Ex. 25 at 95:24-

98:11, 24:9-14, 126:12-16, 128:17-22, 130:2-14 (S. Brandreth May 7, 2020 Dep. Tr.); Ex. 22 at

p. 4, Suppl. Resps. to Nos. 5 & 6 (Phillies 12/23/2019 First Amended Resps. and Objs. to

Interrogatory Nos. 5 & 6); Ex. 23 (Appendix A to Phillies 12/23/2019 First Amended Resps. and

Objs. to Interrogatory Nos. 5 & 6).

**RESPONSE:**  H/E objects to this statement on the grounds that it lacks foundation.  In

particular, The Phillies purport to rely on a summary chart, Appendix A to The Phillies'

12/23/2019 First Amended Resps. And Objs. to Interrogatory Nos. 5 & 6 ("The Phillies'

Appendix A"), which purports to list derivative works that The Phillies contend they created

during the term of the 1984 Agreement, and which The Phillies allege they have the right to

continue to use after June 15, 2020.  The chart, which was prepared by counsel, has not been

verified, is not supported by admissible evidence, and many of the statements therein are inaccurate, incomplete, and/or misleading.  Scott Brandreth, who testified at his deposition as to the preparation of The Phillies' Appendix A, could not provide any details other than that he filled in some holes in the chart by "[l]ooking through files" and pulling information "off the top of [his] head."  Montclare Ex. 5 (99:16-104:20).  Mr. Brandreth further admitted that The Phillies have not kept the underlying documents necessary to prove all of the information on the chart.  *Id.*

And certain information is blatantly false.  By way of example, item 71 on The Phillies' Appendix A portrays an illustration of the Phanatic created by H/E which The Phillies contend was created under the terms of the 1984 Agreement.  However, the image has been blatantly cropped, and critically, The Phillies removed important copyright management information signifying that the illustration was created before the 1984 Agreement and copyrighted by H/E.  Erickson Decl., Ex. A, at 86, PHAN00000063.

For all of these reasons and more, The Phillies' Appendix A is inadmissible and should not be considered on summary judgment.  *See* Fed. R. Evid. 1006 (explaining that the proponents may use "a summary, chart, or calculation to prove the contents of voluminous writings" but "must make the originals or duplicates available for examination or copying"); *see, e.g., Kim v. Kum Gang, Inc.*, 2014 WL 2081775, at *4 (S.D.N.Y. May 12, 2014) (excluding charts where party did not have any witness who had personal knowledge of the creation of the charts and failed to preserve the underlying documents); *UPS Store, Inc. v. Hagan*, No. 2017 WL 3309721, at *5 (S.D.N.Y. Aug. 2, 2017) ("A party offering summary evidence must . . . establish that the summary is accurate and nonprejudicial and . . . and can be properly introduced through the testimony of a witness who supervised its preparation.") (internal quotations and citations

omitted); *Matthews v. Corning Inc.*, 77 F. Supp. 3d 275, 285 n.2 (W.D.N.Y. 2014) (refusing to consider large portions of plaintiff's appendix submitted on summary judgment because many of the exhibits were hearsay, lacked foundation, and consisted of unsupported and conclusory documents); *U.S. v. Citron*, 783 F.2d 307, 316-17 (2d Cir. 1986) (holding that court erred by admitting chart consisting of numbers calculated from a "grab-bag of documents," and noting "[s]ummary charts should not be admitted unless a proper foundation is established connecting the numbers on the chart with the underlying evidence").

Notwithstanding these objections, the statement is disputed to the extent the proffered evidence does not sufficiently support the proposition, though immaterial for purposes of the motion.  Not disputed that such items exist, but it has not been sufficiently established that The Phillies have set forth that "The Phillies and or its or Major League Baseball's licensees have created hundreds of promotional items, products, and designs, based on the Phanatic . . . ."  Also, The Phillies' citation for Wolfsohn Ex. 25, 95:24-98:11 is missing.


34.    The Phillies and Major League Baseball have worked with several different artists and licensees to develop new Phanatic artwork and merchandise over the years. Ex. 19 at 86:16-87:11 (S. Brandreth Feb. 28, 2020 Dep. Tr.); Ex. 25 at 95:24-98:11, 24:9-14, 126:12-16, 128:17-22, 130:2-14 (S. Brandreth May 7, 2020 Dep. Tr.); Ex. 22 at p. 4, Suppl. Resps. to Nos. 5 & 6 (Phillies 12/23/2019 First Amended Resps. and Objs. to Interrogatory Nos. 5 & 6); Ex. 23 (Appendix A to 12/23/2019 First Amended Resps. and Objs. to Interrogatory Nos. 5 & 6).

**RESPONSE:**  H/E objects that The Phillies' Appendix A lacks foundation and should be excluded for the reasons set forth above.  Notwithstanding this objection, the statement that "The Phillies and Major League Baseball have worked with several different artists and licensees" is

12829182.2

disputed, as the proposition that Major League Baseball has worked with artists and licensees is not supported by the proffered evidence, though not material for purposes of the motion.  Also, the The Phillies' citation for Wolfsohn Ex. 25, 95:24-98:11 is missing.

35.    For example, cartoonist Len Epstein designed numerous Phanatic works for The Phillies between 1985 and 2020. Ex. 22 (Phillies 12/23/2019 First Amended Resps. and Objs. to Interrogatory Nos. 5 & 6); Ex. 23, e.g. ID Nos. 3, 4, 9-12, 15-34, 37-39, 43-47, 49-50, 52-53, 55, 58-61, 67, 68-69, 94-99, 116, 173-189, 300, 309-310 (Appendix A to Phillies 12/23/2019 First Amended Resps. and Objs. to Interrogatory Nos. 5 & 6).

**RESPONSE:**  H/E objects that The Phillies' Appendix A lacks foundation and should be excluded for the reasons set forth above.  Notwithstanding this objection, the statement is undisputed that "Len Epstein designed numerous Phanatic works for The Phillies between 1985 and 2020."

36.    As another example, in or before 2002, Major League Baseball, under a license from The Phillies, worked with a designer to create the Phanatic illustrations, depicted in Ex. 24 (P21), for use in the MLB Style Guide. Ex. 2 at 137:4-138:15 (B. Erickson Feb. 7, 2020 Dep. Tr.); Ex. 24 (P21, 2002 MLB Style Guide); Ex. 25 at 50:20-51:19 (S. Brandreth May 7, 2020 Dep. Tr.).

**RESPONSE:**  Disputed to the extent the proffered evidence does not sufficiently support the proposition, though immaterial for purposes of the motion.  Furthermore, the proposition ignores that The Phillies asked H/E to replace the Phanatic illustrations depicted in Wolfsohn Ex. 24. *See* Wolfsohn Ex. 2 at 137:4-138:15 ("Scott Brandreth sent it to me and said 'This is what I

don't like.'"); Montclare Ex. 15 (Harrison Erickson 7/2/20 30(b)(6) Dep. Tr., Vol. II, 262:7-263:5).

37.     H/E does not contest that The Phillies has the right to use at least 368 Phanatic designs, illustrations, or products that have been developed by The Phillies or Major League Baseball or their licensees. Ex. 26 at p. 23, Resp. to Interrogatory No. 25 (H/E 7/23/2020 Response to Third and Fourth Interrogatories, Response to No. 25, stating that the only items on Appendix A that Defendants contest are not derivative works prepared under authority of the 1984 grant are: 1, 2, 5, 71, 75, 77, 79, 82, 84, 86, 87, 88, 100, 101, 104, 106, 193, 233, 235, 327, 328, 329, 331, 332, 333, 334, 335, 336, 338, 339, 340); Ex. 23 (Appendix A to Phillies 12/23/2019 First Amended Resps. and Objs. to Interrogatory Nos. 5 & 6).

**RESPONSE:**  H/E objects that The Phillies' Appendix A lacks foundation and should be excluded for the reasons set forth above.

Notwithstanding this objection, the statement is **disputed**.  The Phillies seek to improperly shift their burden to prove that they are entitled to engage in uses of the Phanatic after termination through an inadmissible chart and manufactured admissions.  *See Woods v. Bourne Co.*, 60 F.3d 978, 994 (2d Cir. 1995) (holding that burden is on grantee to demonstrate entitlement to post-termination uses under 17 U.S.C. § 203(b)(1)).

First, H/E's response to The Phillies' Interrogatory No. 25 reflects that "***at least*** the following items . . . are not derivative works prepared under authority of the grant of rights contained in the 1984 Assignment:  1, 2, 5, 71, 75, 77, 79, 82, 84, 86, 87, 88, 100, 101, 104, 106, 193, 233, 235, 327, 329, 329, 331, 332, 333, 334, 335, 336, 338, 339,340, ***and any other item that reproduces the aforementioned items on another medium or produce without added***

***protectable material.***" (emphasis added).  Montclare Ex. 101, at p. 23-24. As H/E explains in its

contention, any item which simply reproduces one of the enumerated items on another medium

without added protectable material is also not a derivative work prepared under authority of the

grant of rights contained in the 1984 Assignment.  By way of example, H/E did not list item 114,

which reproduces enumerated items 75, 77, 79, and 87; H/E did not list item 196, which

reproduces enumerated items 1 and 88; H/E did not list item 197, which reproduces enumerated

items 1, 84, and 88; H/E did not list items 228 and 240, which reproduce enumerated item 87;

and H/E did not list items 236 and 239, which reproduce enumerated item 88.  H/E contends that

these items, and others, are not derivative works prepared under authority of the grant of rights

contained in the 1984 Assignment.

Second, H/E's response contained no admission that The Phillies has "the right to use"

any particular item contained on The Phillies' Appendix A after termination.  In addition to The

Phillies' failure to prove who created the items therein or when such items were created, The

Phillies have not met their burden to demonstrate that the rights granted to them enable them to

legally use the item after termination.  By way of example, certain post-1984 items created by

H/E may have only been licensed to The Phillies under a limited scope, such that The Phillies

does not have the "right to use" the item, even if that item is a derivative work.  By way of

example, The Phillies was granted "one-time use" of item 64 on The Phillies' Appendix A.

Montclare Ex. 3. (112:18-114:8); Montclare Ex. 100 (D14/HE001302).  Accordingly, they do

not have the "right to use" this item after June 15, 2020.

This dispute is immaterial for purposes of the motion as to at least items 41, 42, 48, 63,

64, 73, 74, 76, 78, 83, 85, 86, 89, 101, 102, 103, 104, 193, 329, 331-334, 338, which The Phillies

has represented to H/E that it does not intend to commercialize after termination.  Montclare Ex.

10 (82:21-83:9).

38.     Some of the Phanatic products and illustrations that have been used over the years by The Phillies in promotional materials and merchandise were designed by H/E. *See infra* ¶¶ 44-76.

**RESPONSE:**  Not disputed.

39.     Between 1984 and 1992 The Phillies did not commission H/E to design any Phanatic artwork for The Phillies. Ex. 3 at 115:22-116:24 (B. Erickson June 23, 2020 Dep. Tr.); Ex. 17 (P76, Spreadsheet listing payments made by The Phillies to H/E, showing first invoice for new artwork in 1992).

**RESPONSE:**  Disputed as the proffered evidence does not support the proposition, but immaterial for purposes of the motion.  The proposition is specifically contradicted by The Phillies' representations in The Phillies' Appendix A, which lists certain items purportedly created by H/E between 1984 and 1992, *see, e.g.,* items 6 and 7.  That The Phillies' Appendix A blatantly contradicts The Phillies' own proposition is further indication of why The Phillies Appendix A is not dependable and should not be admitted.  *See Hagan*, No. 2017 WL 3309721, at *5.

40.     Sometime after the 1984 Agreement was executed, The Phillies' Chris Long was interested in having The Phillies use some of Bonnie Erickson's Phanatic artwork that she had done before 1984 for promotions and merchandise. See December 10, 2020 Declaration of Christine Legault-Long ¶ 4.

12829182.2

**RESPONSE:**  Not disputed that, after the 1984 Agreement was executed, The Phillies were interested in using Phanatic artwork that was created prior to 1984.

41.     Ms. Long noticed that some of the Bonnie Erickson designs had a copyright notice on them and others said "Do not reproduce. Photostats for reproduction must be requested by style # from Harrison Erickson." It was not clear to her whether The Phillies had acquired under the 1984 Agreement the right to use Ms. Erickson's artwork for Phanatic promotions or merchandise, so she asked Wayde Harrison if the 1984 Agreement gave The Phillies the rights to use Ms. Erickson's Phanatic artwork. See December 10, 2020 Declaration of Christine Legault-Long ¶ 4.

**RESPONSE:**  Disputed that The Phillies did not know whether they had acquired the right to use Phanatic artwork created before the 1984 Agreement was executed.  This proposition is contradicted by the plain language of the 1984 Agreement, which The Phillies admit expressly conveyed H/E's rights "in and to all reproductions and portrayals of all or part of the [Phanatic artistic sculpture in any medium whatsoever]."  PSUF ¶ 20; HESUF ¶ 57.  The proposition is also contradicted by the testimony of Bill Giles, who represented at his deposition that he directed The Phillies' counsel to negotiate the grant of rights under the 1984 Agreement to include all portrayals of the Phanatic:  "I said, 'I want to get rid of this relationship.  *We have to go ask them every time we do a picture of the Phanatic.  I want to get rid of having to go back to them.*  Ask them how much we can make a deal for,' and that's what I thought we did."  HESUF ¶ 63 (emphasis added).  The statement is further contradicted by Ms. Long's own representations in 1987, when she provided a federal court with a sworn statement attesting that "all right, title and interest in and to the Phillie Phanatic character, including but not limited to, the copyrights

therein" were owned by The Phillies "[b]y virtue of agreements between The Phillies and authors Wayde Harrison and Bonnie Erickson."  HESUF ¶ 73.

This statement appears to reflect a transparent attempt on the part of The Phillies to create a fact issue that does not exist.  The Phillies notably did not explore this proposition in discovery, and have chosen to raise this proposition for the very first time at summary judgment,

42.    Wayde Harrison told The Phillies' Chris Long that The 1984 Agreement did not cover artwork that Bonnie Erickson had previously created, and that an additional payment would be required for the rights to use that artwork. See December 10, 2020 Declaration of Christine Legault-Long ¶ 4.

**RESPONSE:** Disputed as the proffered evidence does not support the proposition.  The proposition is contradicted by the plain language of the 1984 Agreement, which plainly states that the assignment encompassed "all of HE's rights, title and interest in and to the [Phanatic artistic sculpture] and in and to all reproductions and portrayals of all or part of the [Phanatic artistic sculpture in any medium whatsoever]."  PSUF ¶ 20; HESUF ¶ 57.  The proposition is also contradicted by the testimony of Bill Giles, who represented at his deposition that he directed The Phillies' counsel to negotiate the grant of rights under the 1984 Agreement to include all portrayals of the Phanatic:  "I said, 'I want to get rid of this relationship.  *We have to go ask them every time we do a picture of the Phanatic.  I want to get rid of having to go back to them.*  Ask them how much we can make a deal for,' and that's what I thought we did."  HESUF ¶ 63 (emphasis added).  The statement is further contradicted by Ms. Long's own representations in 1987, when she provided a federal court with a sworn statement attesting that "all right, title and interest in and to the Phillie Phanatic character, including but not limited to, the copyrights

therein" were owned by The Phillies "[b]y virtue of agreements between The Phillies and authors Wayde Harrison and Bonnie Erickson." HESUF ¶ 73. The proposition also does not comport with H/E's business practices, as H/E would not have assigned their rights in and to numerous pieces of artwork through a vague invoice with no reference to rights assigned or the artwork in question. Harrison Decl., ¶¶ 2-5.

This statement appears to reflect a transparent attempt on the part of The Phillies to create a fact issue that does not exist. The Phillies notably did not explore this proposition in discovery, and have chosen to raise this proposition for the very first time at summary judgment,

43.    Accordingly, in 1990, The Phillies paid H/E $1,000 for the right to use the "Selected Phillie Phanatic Artwork" designed by H/E up to 1984, depicted in Ex. 27 (PHAN0000656) and Ex. 28 (D116, Original Phillie Phanatic Style Guide), without any limitations. See December 10, 2020 Declaration of Christine Legault-Long ¶¶ 4-6 & Ex. B; Ex. 29 (HE001706, Invoice No. 1735); Ex. 3 at 121:9-122:11, 137:1-141:2, 146:17-6 (B. Erickson June 23, 2020 Dep. Tr.).

**RESPONSE:** Disputed as the proffered evidence does not support the proposition. The proposition is contradicted by the plain language of the 1984 Agreement, which plainly states that the assignment encompassed "all of HE's rights, title and interest in and to the [Phanatic artistic sculpture] and in and to all reproductions and portrayals of all or part of the [Phanatic artistic sculpture in any medium whatsoever]." PSUF ¶ 20; HESUF ¶ 57. The proposition is also contradicted by the testimony of Bill Giles, who represented at his deposition that he directed The Phillies' counsel to negotiate the grant of rights under the 1984 Agreement to include all portrayals of the Phanatic: "I said, 'I want to get rid of this relationship. *We have to*

12829182.2

*go ask them every time we do a picture of the Phanatic.  I want to get rid of having to go back to them.*  Ask them how much we can make a deal for,' and that's what I thought we did."  HESUF ¶ 63 (emphasis added).  The statement is further contradicted by Ms. Long's own representations in 1987, when she provided a federal court with a sworn statement attesting that "all right, title and interest in and to the Phillie Phanatic character, including but not limited to, the copyrights therein" were owned by The Phillies "[b]y virtue of agreements between The Phillies and authors Wayde Harrison and Bonnie Erickson."  HESUF ¶ 73.  The proposition also does not comport with H/E's business practices, as H/E would not have assigned their rights in and to numerous pieces of artwork through a vague invoice with no reference to rights assigned or the artwork in question.  Harrison Decl., ¶¶ 2-5.

This statement appears to reflect a transparent attempt on the part of The Phillies to create a fact issue that does not exist.  The Phillies notably did not explore this proposition in discovery, and have chosen to raise this proposition for the very first time at summary judgment,

44.     H/E compiled Phanatic illustrations Ms. Erickson had designed between 1978 and 1984 into an "Original Phillie Phanatic Style Guide."  Ex. 28 (D116, Original Phillie Phanatic Style Guide); Ex. 3 at 121:9-122:11, 137:1-141:2, 146:17-6 (B. Erickson June 23, 2020 Dep. Tr.).

**RESPONSE:**  Disputed to the extent that the proposition contends that the "Original Phillie Phanatic Style Guide" contains an exhaustive list of every piece of artwork designed between 1978 and 1984.  Otherwise, not disputed.

45.     Ms. Erickson understood that a "style guide" is provided to licensees and vendors as a model or template for designing new products, renditions, or reproductions of the Phanatic. Ex. 2 at 124:13-125:6 (B. Erickson Feb. 7, 2020 Dep. Tr.); see also Ex. 2 at 181:19-182:7 (B. Erickson Feb. 7, 2020 Dep. Tr.).

**RESPONSE:**  Not disputed.


46.     The Phillies also commissioned H/E to design new Phanatic artwork, costumes, designs, and products at various times over the past 35 years, including, for example, the illustrations described below in ¶¶ 48-76.

**RESPONSE:**  Not disputed that The Phillies commissioned H/E to design new artwork, costumes, designs, and products at various times over the past 35 years.  Disputed to the extent that certain designs purported to be "new" are in fact reproductions of earlier designs that The Phillies asked H/E to re-purpose on new mediums.  This includes certain illustrations described below in ¶¶ 48-76, as set forth in H/E's responses thereto.


47.     In 1992, The Phillies paid H/E $400 to design the Phanatic decal illustration depicted on page 1 of Ex. 30 (P28). Ex. 2 at 156:12-18 (Feb. 7 Erickson Dep. Tr.); Ex. 30 (P28, Artwork & Invoice).

**RESPONSE:**  Not disputed for purposes of the motion.


48.     In 1995, The Phillies paid H/E $1,000 to design Phanatic illustrations, depicted in Ex. 31 (P17), initially used for birthday cards. Ex. 2 at 129:7-130:3 (B. Erickson Feb. 7, 2020 Dep. Tr.); Ex. 31 (P17, Artwork); Ex. 32 (HE000272, Invoice).

**RESPONSE:**  H/E objects that the statement lacks foundation.  It is not clear that the purported invoice, HE000272, relates to this transaction because The Phillies represented that they could not find an invoice relating to the artwork set forth in P17.  Wolfsohn Ex. 2 at 129:7-130:3.  Notwithstanding the objection, the statement is disputed as not supported by the proffered evidence.  The cited deposition testimony demonstrates that Ms. Erickson did not remember how much she charged for these illustrations, or whether there was any consideration at all.

49.    Ms. Erickson did not inform The Phillies as to any restrictions on its use of the illustration depicted in Ex. 31 (P17). Ex. 2 at 129:23-130:3 (B. Erickson Feb. 7, 2020 Dep. Tr.).

**RESPONSE:**  Not disputed for purposes of the motion.

50.    In 1996, The Phillies paid H/E $850 to design a Phanatic illustration, depicted in Ex. 33 (P18), for initial use on a beach towel. Ex. 2 at 130:15-132:2, 133:5-17 (B. Erickson Feb. 7, 2020 Dep. Tr.); Ex. 33 (P18, Artwork & Invoice).

**RESPONSE:**  Not disputed for purposes of the motion.

51.    Ms. Erickson did not inform The Phillies as to any restrictions on its use of the illustration depicted in Ex. 33 (P18). Ex. 2 at 133:5-17 (B. Erickson Feb. 7, 2020 Dep. Tr.).

**RESPONSE:**  Not disputed for purposes of the motion.

52.    In 1999, The Phillies paid H/E $2,000 to design the Phanatic "Appearance Art" depicted in Ex. 34 (P19). Ex. 2 at 134:6-13, 135:16-23 (B. Erickson Feb. 7, 2020 Dep. Tr.); Ex. 34 (P19, Artwork & Invoice).

**RESPONSE:**  Disputed that the "Appearance Art" depicted in P19 was designed in 1999.  The cited deposition testimony demonstrates that Ms. Erickson did similar appearance art starting in 1978.  *See also* HESUF ¶ 68; Erickson Decl. ¶ 21, Ex. H.

53.     Ms. Erickson did not inform The Phillies as to any restrictions on its use of the illustration depicted in Ex. 34 (P19). Ex. 2 at 135:19-23 (B. Erickson Feb. 7, 2020 Dep. Tr.).

**RESPONSE:**  Not disputed for purposes of this motion.

54.     Also in 1999, The Phillies paid H/E $15,000 to design and construct a baby version of the Phanatic costume that would be named "Phred," depicted in Ex. 35 (PHAN0001356), that was, according to Ms. Erickson, significantly different from the original Phanatic costume. Ex. 2 at 158:19-160:6 (B. Erickson Feb. 7, 2020 Dep. Tr.); Ex. 35 (PHAN0001356, Phred Photo); Ex. 36 (HE001761, Invoice).

**RESPONSE:**  Disputed to the extent that The Phillies purports that H/E granted The Phillies any copyright rights in and to rights in the "Phred" costume design, as such a proposition is not supported by the proffered evidence.  The proffered evidence, at most, demonstrates that H/E were paid $15,000 to design and construct the "Phred" costume, which H/E does not dispute.

55.     In late 2003 or early 2004, The Phillies paid H/E $3,750 to design three Phanatic illustrations, depicted in Ex. 37 (P31), in connection with The Phillies' inaugural season at Citizens Bank Park. Ex. 2 at 161:24-164:4 (B. Erickson Feb. 7, 2020 Dep. Tr.); Ex. 37 (P31, Artwork & Invoice); Ex. 38 (PHAN0005117, Invoice).

**RESPONSE:** Not disputed for purposes of this motion.


56. The 2004 Inaugural illustration depicted in Ex. 37 (P31) at PHAN0011089 was designed in a way that would allow The Phillies to create other versions in which the Phanatic was holding different things. Ex. 39 (HE000775, 11/11/08 Email).

**RESPONSE:** Not disputed for purposes of this motion.


57. Ms. Erickson did not inform The Phillies as to any restrictions on its use of the illustrations depicted in Ex. 37 (P31). Ex. 2 at 161:24-164:4 (B. Erickson Feb. 7, 2020 Dep. Tr.).

**RESPONSE:** Not disputed for purposes of the motion.


58. In 2005, The Phillies paid H/E $1,000 to design a Phanatic illustration, depicted on page 3 of Ex. 40 (P32), related to an Asian-American Day celebration. Ex. 2 at 166:11-168:23 (B. Erickson Feb. 7, 2020 Dep. Tr.); Ex. 40 (P32, Artwork & Invoice).

**RESPONSE:** Not disputed for purposes of the motion.


59. In 2007, the Phillies paid H/E $5,000 to design 12 Phanatic illustrations, depicted in Ex. 41 (P11) and Ex. 42 (HE000177), that would be used in a Style Guide used by Major League Baseball and its licensees. Ex. 2 at 115:5-16, 122:5-8, 122:24-123:16 (B. Erickson Feb. 7, 2020 Dep. Tr.); Ex. 43 (P10, Invoice); Ex. 41 (P11, 7/16/07 Memo re: Phanatic Style Guide); Ex. 42 (HE000177, 2016 Phanatic Style Guide); Ex. 44 (HE000163, 3/20/07 Email); Ex. 45 (P78, 8/6/08 Email); Ex. 19 at 133:14-136:23 (S. Brandreth Feb. 28, 2020 Dep. Tr.).

**RESPONSE:** Disputed that certain of the Phanatic illustrations depicted in Ex. 41 (P11)

and Ex. 42 (HE000177) were designed in 2007.  The proffered evidence demonstrates that

numerous works depicted on P11 and bates numbers PHAN0001817-22 were designed before

2007.  Wolfsohn Decl. Ex. 2 115:5-16, 122:5-8, 122:24-123:16.  *See also* HESUF ¶ 68; Erickson

Decl. ¶ 15, Ex. B.


60.     Ms. Erickson intended that the 2007 MLB Style Guide illustrations depicted in

Ex. 41 (P11) and Ex. 42 (HE000177) would be used to design new products and merchandise

and did not inform The Phillies as to any restrictions on its use of the illustrations. Ex. 2 at

123:11-16, 182:2-14 (B. Erickson Feb. 7, 2020 Dep. Tr.); Ex. 3 at 159:12-24, 159:12-161:21,

164:11-17, 166:2-22 (B. Erickson June 23, 2020 Dep. Tr.).

**RESPONSE:** H/E objects that this statement lacks foundation.  The Phillies cite to

Erickson Feb. 7, 2020 Dep. Tr. 182:2-14, Wolfsohn Ex. 2, but that testimony does not even

concern the 2007 transaction.  The testimony from Erickson's June 23 deposition at 164:11-17

and 166:2-22, Wolfsohn Ex. 3, concerns a document that The Phillies do not attach and is

irrelevant to the proposition.

Notwithstanding these objections, it is disputed that Ms. Erickson did not inform The

Phillies as to any restrictions, as this proposition is not cited by the proffered evidence.  As Ms.

Erickson's testimony indicates, The Phillies obtained right to use the artwork "for the use they

specified."  Montclare Ex. 1 (123:6-7).


61.     The illustrations that Bonnie Erickson created in 2007 for The Phillies for use in

the MLB Style Guide included the 3D Mascot Turnaround depicted below and in Ex. 41 (P11) at

PHAN0001816 and in Ex. 42 (HE000177) at HE000181. Ex. 25 at 116:10-16, 131:18-132:7 (S.

Brandreth May 7, 2020 Dep. Tr.); Ex. 19 at 134:4-8 (S. Brandreth Feb. 28, 2020 Dep. Tr.); Ex. 2

at 180:17-181:11 (B. Erickson Feb. 7, 2020 Dep. Tr.).



**RESPONSE:**  Not disputed for purposes of the motion.


62.    Ms. Erickson understood that a 3D Turnaround is used by licensees in designing

3D products like plush dolls, inflatables, and bobbleheads. Ex. 2 at 138:16-139:6 (B. Erickson

Feb. 7, 2020 Dep. Tr.). See also Ex. 25 at 112:13-113:3 (S. Brandreth May 7, 2020 Dep. Tr.);

Ex. 19 at 136:11-15 (S. Brandreth Feb. 28, 2020 Dep. Tr.).

**RESPONSE:**  Disputed to the extent The Phillies imply that the derivative works

exception, 17 U.S.C. § 203(b)(1), entitles them to utilize any Phanatic plush doll after

termination, as several of plush dolls The Phillies seek to utilize are simply slightly altered

iterations of plush dolls created by H/E prior to 1984, and which H/E holds all rights in after

June 15, 2020.  HESUF ¶ 57; *see* Erickson Decl. ¶ 7, Ex. A, at 74, HE00032.  Otherwise, not

disputed.


63.    In 2008, The Phillies paid H/E $1,000 to create illustrations of the Phanatic

holding the World Series Trophy and the Phanatic holding 2008 Pennant, depicted in Ex. 46

(P14) and in Ex. 47 (P27) at PHAN0009513, for use in a Style Guide. Ex. 2 at 126:4-24, 155:12-156:7 (B. Erickson Feb. 7, 2020 Tr.); Ex. 48 (P12, Trophy Invoice); Ex. 46 (P14, Trophy Illustration); Ex. 47 (P27, Pennant Illustration & Invoice).

**RESPONSE:**  Disputed that the illustrations depicted in Ex. 46 (P14) and Ex. 47 (P27) at PHAN0009513 were created in 2008.  HESUF ¶ 68; Erickson Decl. ¶¶ 16, 18, Exs. B-C, E.


64.     Ms. Erickson did not inform The Phillies as to any restrictions on its use of the illustrations depicted in Ex. 46 (P14) and Ex. 47 (P27). Ex. 2 at 126:19-24, 155:22-156:7 (B. Erickson Feb. 7, 2020 Dep. Tr.).

**RESPONSE:**  Not disputed for purposes of the motion.


65.     In 2011, The Phillies paid H/E $500 to design a new Phanatic illustration, depicted in Ex. 49 (P16), that would be initially used on a promotional birthday t-shirt. Ex. 2 at 127:9-22, 128:10-22 (B. Erickson Feb. 7, 2020 Dep. Tr.); Ex. 50 (P15, Invoice); Ex. 49 (P16, Illustration).

**RESPONSE:**  Not disputed.


66.     Ms. Erickson did not inform The Phillies as to any restrictions on its use of the illustration depicted in Ex. 49 (P16). Ex. 2 at 126:19-24, 155:22-156:7 (B. Erickson Feb. 7, 2020 Dep. Tr.).

**RESPONSE:**  Not disputed for purposes of the motion.


67.     In 2017, The Phillies paid H/E $350 to design the Phanatic "Olympic" illustration

depicted in Ex. 51 (P20), for The Phillies' use. Ex. 2 at 136:5-23 (B. Erickson Feb. 7, 2020 Dep. Tr.); Ex. 51 (P20, Invoice & Illustration).

**RESPONSE:** Not disputed.


68.    Ms. Erickson did not inform The Phillies as to any restrictions on its use of the illustration depicted in Ex. 51 (P20). Ex. 2 at 136:20-23 (B. Erickson Feb. 7, 2020 Dep. Tr.).

**RESPONSE:** Not disputed for purposes of the motion.


69.    Also in 2017, The Phillies paid H/E $750 to design a "Back to School" Phanatic illustration depicted in Ex. 52 (P33) at PHAN0020787. Ex. 2 at 169:24-170:7 (B. Erickson Feb. 7, 2020 Dep. Tr.); Ex. 52 (P33, Invoice & Illustration).

**RESPONSE:** Disputed that the illustration depicted in Ex. 52 (P33) at PHAN0020787 was designed in 2017. The proffered evidence demonstrates that the illustration was designed in 1980, © H/E at the time. *See* P33, PHAN0021256  As Ms. Erickson testified, the 2017 drawings are "almost virtually the same. It's almost exactly." Wolfsohn Ex. 2 at 169:24-170:7; *see also* HESUF ¶ 68; Erickson Decl. ¶ 19, Ex F.


70.    In 2018, The Phillies paid H/E $1,600 to design the two "retro" Phanatic illustrations depicted in Ex. 53 (PHAN0001292) and Ex. 54 (PHAN0001293), for The Phillies' Cooperstown Style Guide. Ex. 2 at 174:8-176:9 (B. Erickson Feb. 7, 2020 Dep. Tr.); Ex. 53 (PHAN0001292, Illustration); Ex. 54 (PHAN0001293, Illustration); Ex. 55 (PHAN0011115, 5/16/18 Email with Style Guide attached); Ex. 56 (PHAN0010374, 5/17/18 Email attaching Invoice); Ex. 57 (P79, 1/10/18 Email); Ex. 3 at 170:18-171:9 (B. Erickson June 23, 2020 Dep.

12829182.2

Tr.).

**RESPONSE:** Disputed that the "retro" Phanatic illustrations depicted in Ex. 53 and 54 were designed in 2018.  The proffered evidence demonstrates (and the term "retro" implies) that the illustrations were created much earlier and that The Phillies were asking for digital copies of these illustrations.  HESUF ¶ 68; *see also* Erickson Decl. ¶ 20, Ex. G.

71.     Ms. Erickson intended for The Phillies to use the illustrations depicted in Ex. 53 (PHAN0001292) and Ex. 54 (PHAN0001293) for its Cooperstown Style Guide and did not inform The Phillies as to any restrictions on its use of the illustrations. Ex. 2 at 175:8-23 (B. Erickson Feb. 7, 2020 Dep. Tr.); Ex. 3 at 172:15-173:9 (B. Erickson June 23, 2020 Dep. Tr.).

**RESPONSE:**  Disputed that The Phillies were expressly paying for the rights to the illustrations.  To the extent The Phillies are entitled to use any designs, those rights are implied and/or governed by the 1984 Agreement, and the grant of rights thereunder was terminated on June 15, 2020.

72.     In 2018, The Phillies paid H/E $1,600 to design two Phanatic illustrations, depicted in Ex. 58 (P36), to add to the Major League Baseball Style Guide. Ex. 2 at 177:4-8, 177:23-178:19, 178:24-180:10 (B. Erickson Feb. 7, 2020 Dep. Tr.); Ex. 58 (P36, Invoice with Illustrations); Ex. 59 (P37, 2018 MLB Style Guide); Ex. 19 at 142:10-144:5 (S. Brandreth Feb. 28, 2020 Dep. Tr.); Ex. 60 (P35, 1/12/18 Email).

**RESPONSE:**  Disputed that the illustrations depicted in Ex. 58 (P36) were designed in 2018.  As Ms. Erickson noted in her deposition, these designs were just "taking some of our original designs . . . and putting a line into Illustrator and EPS form."  Wolfsohn Ex. 2 at 178:24-

180:10; *see also* HESUF ¶ 68; Erickson Decl. ¶ 17, Ex. D. Scott Brandreth also noted that these

illustrations were designed prior to 2018. HESUF ¶ 66, Montclare Ex. 5 (144:13-21).

73.    When Ms. Erickson provided The Phillies with the designs that were incorporated

into the 2018 Major League Baseball Style Guide, Ms. Erickson intended for the designs to be

incorporated into the Style Guide and that the Style Guide would be used as a basis for licensees

to develop new products, and Ms. Erickson did not inform The Phillies as to any restrictions on

the use of her Phanatic designs. Ex. 2 at 178:16-19, 179:13-180:10, 181:19-182:24 (B. Erickson

Feb. 7, 2020 Dep. Tr.).

**RESPONSE:**  Disputed that The Phillies were expressly paying for the rights to the

designs.  To the extent The Phillies are entitled to use any designs, those rights are implied

and/or governed by the 1984 Agreement, and the grant of rights thereunder was terminated on

June 15, 2020.

74.    As with all of the other artwork described in ¶¶ 43-71, although there was no

written contract expressly addressing the licensing of the designs depicted in Exhibit 58 (P36),

The Phillies asked Ms. Erickson to do the designs, Ms. Erickson quoted The Phillies a price, The

Phillies paid the price, and Ms. Erickson delivered the designs that were requested, knowing that

The Phillies was paying so it could use the designs. Ex. 2 at 179:13-180:10 (B. Erickson Feb. 7,

2020 Dep. Tr.).

**RESPONSE:**  Disputed that The Phillies were expressly paying for the rights to the

designs.  To the extent The Phillies are entitled to use any designs, those rights are implied

and/or governed by the 1984 Agreement, and the grant of rights thereunder was terminated on

June 15, 2020.

75.    When Ms. Erickson provided Phanatic illustrations to The Phillies after 1984, she affixed a copyright notice that said "© The Phillies" and not "© Harrison Erickson." Ex. 3 at 149:22-150:10 (B. Erickson June 23, 2020 Dep. Tr.).

**RESPONSE:**  Not disputed.  Prior to the execution of the 1984 Agreement the parties expressly understood that all rights in the Phanatic were owned and controlled by H/E and not The Phillies, and that all works depicting the Phanatic were to display a copyright notice in H/E's name and not in The Phillies' name.  HESUF ¶¶ 12, 14, 36, 40, 52.f.

## H/E Designs Other Mascots, Including Sport, Slyly and Duncan.

76.    In the 1984 Agreement, H/E agreed that it would not create any other artistic sculpture in the form of the Phanatic or substantially similar to the Phanatic. Ex. 16 at ¶ 1 (P1, 1984 Agreement, "HE shall not create any other artistic sculpture in the form of MASCOT or substantially similar to MASCOT"). Ms. Erickson testified that H/E complied with this obligation. Ex. 2 at 14:2-12 (B. Erickson Feb. 7, 2020 Dep. Tr.).

**RESPONSE:**  Not disputed, and immaterial for purposes of the motion.

77.    After the original Phanatic, H/E designed and built several other mascots, including "Slyly," "Sport," and "Duncan," shown below and depicted in Ex. 61 (P42):

| "Slyly" Ex. 61 at HE003180-81 | "Sport" Ex. 61 at HE003179 | "Duncan" Ex. 61 at HE003176 |
|---|---|---|



Ex. 61 (P42, Harrison/Erickson Inc. Mascots); Ex. 2 at 209:18-210:13 (B. Erickson Feb. 7, 2020

Dep. Tr., testifying that Ex. 61 (P42) represents mascots H/E created).

**RESPONSE:**  Not disputed, and immaterial for purposes of the motion.


78.     Slyly, Sport, and Duncan are each registered separately as original copyrighted

works, and none of these registrations indicates that Slyly, Sport, or Duncan are based on any

preexisting work. Ex. 62 (Registration Certificate, Slyly); Ex. 63 (P111, Registration Certificate,

Sport); Ex. 64 (P110, Registration Certificate, Duncan); Ex. 8 at 125:5-25, 121:12-124:8 (July

15, 2020 B. Erickson Dep. Tr., stating that design for Duncan was not "based on another work").

**RESPONSE:**  Not disputed.  Slyly, Sport, and Duncan are not "based on any preexisting

work."  Moreover, Slyly was not registered by H/E; rather, it was registered by Hiroshima Toyo

Carp Company, Ltd. ("Hiroshima") who had purchased the rights from H/E.  Montclare Ex. 96

(Slyly Registration).  Notably, the U.S. Copyright Office registered Slyly, even though

Hiroshima described the work as a "costume."  *Id.*


79.     The Phanatic was "built around" the snout's megaphone shape, and therefore

Duncan's "sl[o]ped and shaped" snout is a "significant" difference between the two mascots. Ex. 2 at 221:2-222:6 (B. Erickson Feb. 7, 2020 Dep. Tr.).

    **RESPONSE:**  Not disputed.


    80.    The "feathers" surrounding the original Phanatic costume's snout at the base are a significant difference from Duncan. Ex. 2 at 221:2-222:6 (B. Erickson Feb. 7, 2020 Dep. Tr.).

    **RESPONSE:**  Not disputed.


    81.    Slyly's distinct tail and eyebrows are a "significant" difference between Slyly and the Phanatic. Ex. 2 at 216:3-21 (B. Erickson Feb. 7, 2020 Dep. Tr.).

    **RESPONSE:**  Not disputed.


    82.    Slyly's egg-shaped upside-down eyeballs as compared to the Phanatic's eyeballs is "a significant difference" between Slyly and the Phanatic. Ex. 2 at 215:7-19 (B. Erickson Feb. 7, 2020 Dep. Tr.).

    **RESPONSE:**  Not disputed.


    83.    The pear-shaped proportions of the body design for Slyly, Duncan, and the original Phanatic are "pretty generic." Ex. 2 at 49:9-50:5 (B. Erickson Feb. 7, 2020 Dep. Tr.).

    **RESPONSE:**  Not disputed.


### H/E Sends The Phillies a Purported Termination Notice.

    84.    On June 1, 2018, H/E's attorneys sent a letter to The Phillies stating:

12829182.2

As you know, [Bonnie Erickson and Wayde Harrison] created the copyrighted character and accompanying artwork for the Phillie Phanatic. In May 1979, they registered their work with the U.S. Copyright Office (VA 23-748). In 1984, they granted rights in the copyrighted works to The Philadelphia National League Club, Inc., d/b/a The Phillies, and in 1987 that grant was recorded with the Copyright Office.

Now, in accordance with U.S. Copyright Law (17 U.S.C. § 203), [H/E is] filing the attached copyright termination notice with The Phillies to terminate the 1984 grant of rights, and, because of the ongoing excellent working relationship between my clients and your organization, we would like to immediately commence a renegotiation for this grant with The Phillies for the remainder of the copyright term of the work, so that The Phillies may continue to use the Phillie Phanatic. In accordance with the attached Notice of Termination, the effective date of termination of the 1984 grant will be June 15, 2020. . . .

Ex. 65 at 1 (PHAN0020668, 6/1/18 Letter & Notice).

**RESPONSE:**  Not disputed that H/E's attorneys sent a letter to The Phillies on June 1, 2018, and that The Phillies quote an excerpt from that letter.

85.    The attached Notice of Termination identified the date of execution for the grant being terminated as October 31, 1984 (the date of execution of the 1984 Agreement), and the date of publication of the work affected by the termination as April 18, 1978 (the publication date of the Phanatic costume). Ex. 65 at p. 3 ¶ 2 (PHAN0020668, 6/1/18 Letter & Notice); Ex. 12 (P84, Certificate of Copyright Registration listing date of first publication as April 18, 1978); Ex. 16 at 1 (P1, 1984 Agreement listing execution date as October 31, 1984).

**RESPONSE:**  Disputed to the extent The Phillies imply that the notice only terminated rights in one work.  Otherwise, not disputed.

86.    The Notice of Termination identified the title of the work, name of author, and

original copyright registration number for the work affected by the termination as:

> Title – Phillie Phanatic
> Authors – Wayde Harrison & Bonnie Erickson
> Registration Number – VA 23-[7]48

Ex. 65 at p. 3 ¶ 3 (PHAN0020668, 6/1/18 Letter & Notice).

**RESPONSE:**  Not disputed that The Phillies quote an excerpt from the Notice of Termination; however, the Notice of Termination and accompanying letter made clear that H/E were terminating "the 1984 grant of rights," which included "rights, title and interest in and to the [Phanatic artistic sculpture] and in and to all reproductions and portrayals of all or part of the [Phanatic artistic sculpture] in any medium whatsoever, everywhere and forever, including all copyrights therein through the world."  PSUF ¶ 20; HESUF ¶ 57.  Accordingly, upon termination, all of those rights reverted to H/E.

87.     The Notice of Termination's brief statement reasonably identifying the grant to which the notice of termination applies stated:

> Grant of transfer of copyright executed by Wayde Harrison & Bonnie Erickson, the co-authors of "Phillie Phanatic" – including two and three dimensional drawings of the work consisting of a shaggy creature wearing tennis shoes, tights and a baseball shirt while carrying a pennant. Subject to termination pursuant to Section 203 of the U.S. Copyright Act (17 U.S.C. § 203). The October 31, 1984 grant was recorded with the Copyright Office (June 24, 1987).

Ex. 65 at 3 ¶ 4 (PHAN0020668, 6/1/18 Letter & Notice).

**RESPONSE:**  Not disputed.

88.     The Notice of Termination listed an effective date of termination of June 15, 2020. Ex. 65 at 3 ¶ 5 (PHAN0020668, 6/1/18 Letter & Notice).

**RESPONSE:**  Not disputed.

89.     After receiving H/E's Notice of Termination, the Phillies engaged in negotiations with H/E regarding an extension of the grant, but were unable to reach an agreement. Ex. 18 at 51:15-23 (D. Buck Apr. 23, 2020 Dep. Tr.).

**RESPONSE:**  Not disputed.

90.     The Phillies filed this declaratory judgment action on August 2, 2019. See Dkt. No. 1.

**RESPONSE:**   Not disputed.

### The Phillies Design and Build "P2".

91.     To protect its huge investment in the Phanatic in the event of possible termination, The Phillies redesigned the Phanatic costume and modified and created artwork to reflect those design changes. Ex. 18 at 124:11-17, 129:21-25 (D. Buck Apr. 23, 2020 Dep. Tr.); Ex. 9 at 137:16-149:23, 154:6-157:23, 163:8-164:3 (D. Raymond Apr. 14, 2020 Dep. Tr.).

**RESPONSE:**  H/E objects that the statement lacks foundation because The Phillies have not produced sufficient information to accurately quantify the amount of monies invested by them in the Phanatic (*see* Response to PSUF ¶ 30).  Notwithstanding the objections, the statement is disputed to the extent The Phillies imply that the purported redesign and changes were anything other than trivial attempts to hide from H/E's termination rights.  HESUF ¶¶ 86-100.  Not disputed that The Phillies made certain alterations to the Phanatic, which were prompted by H/E's Notice of Termination.

12829182.2

92.     The redesign was done by a team of employees and former employees, including the original "Phanatic"—Dave Raymond—who had experience designing mascots in a partnership with Ms. Erickson and Mr. Harrison, as well as on his own through a company he founded. Ex. 9 at 116:2-117:21, 142:3-144:9, 147:7-149:23, 161:18-163:7, 174:23-175:6 (D. Raymond Apr. 14, 2020 Dep. Tr.).

**RESPONSE:**  Disputed, but immaterial for purposes of the motion, that Dave Raymond had experience designing mascots, as that proposition is not supported by the proffered evidence. The record demonstrates, at most, that Mr. Raymond worked with others who designed mascots, including H/E.  Montclare Ex. 8 (162:7-163:12).


93.     Artist Tom Sapp prepared artwork reflecting the design changes that were discussed and decided upon by the team. Ex. 9 at 157:3-23 (D. Raymond Apr. 14, 2020 Dep. Tr.); Ex. 19 at 43:23-44:23 (S. Brandreth Feb. 28, 2020 Dep. Tr.); Ex. 21 at 122:19-23 (T. Burgoyne Feb. 13, 2020 Dep. Tr.); Ex. 66 (Defs.' Ex. Burgoyne-7, Draft P2 3D Turnaround); Ex. 67 (PHAN0043055-0043056, 1/30/20 Email attaching P2 3D Turnaround).

**RESPONSE:**  Disputed to the extent The Phillies imply that Tom Sapp created a derivative work.  Otherwise, not disputed that Tom Sapp provided illustrations reflecting P2.


94.     On January 29, 2020, Tom Sapp delivered the P2 3D turnaround artwork, shown below and in Ex. 67 at PHAN0043056, reflecting the final P2 design, to Dave Raymond. Ex. 67 (PHAN0043055-0043056, 1/30/20 Email attaching P2 3D Turnaround).



**RESPONSE:** Disputed to the extent The Phillies imply that Tom Sapp created a derivative work. Otherwise, not disputed.

95.    The differences between P2 and the original Phanatic costume include:

**RESPONSE:** Not disputed that P2 contains certain variations from H/E's Phanatic design, but disputed that any of the listed variations—whether viewed individually or as a whole—contain sufficient originality to be copyrightable. This is particularly true when viewed in the context of the P2's design process, which itself was intended to mimic the Phanatic while undergoing as few changes as possible, so that The Phillies could continue to use H/E's copyrighted work after the termination date. The record demonstrates that The Phillies did not even think people would notice the differences in P2 when it debuted P2, nor did they want people to notice the difference, and each one of the changes was informed entirely by legal considerations. *See* HESUF, ¶¶ 85-100. As set forth more below:

    a.    **Hat.** P2's hat is an oversized "mascot type hat" compared to the normal baseball cap worn by the original Phanatic. Ex. 68 at 50:8-18 (S.

Brandreth May 21, 2020 Dep. Tr.); Ex. 21 at 67:7 (T. Burgoyne Feb. 13, 2020 Dep. Tr.).

**RESPONSE:**  Disputed that this constitutes a variation between the Phanatic and P2, let alone an original variation.  *See* Zung Decl., Ex. B ("Zung Report").[6] The hats are essentially identical, with the changes in proportion being a matter of a few inches.  Zung Decl. Ex. C ("Zung Supplemental Report").  Moreover, the Phanatic's clothing was intended to be interchangeable such that minor variations in the Phanatic's outfit do not constitute a change to the Phanatic's design.  *See* HESUF ¶¶ 31, 94-100; Erickson Decl. ¶ 8.

b.    **Eyebrows.** P2's eyebrows are a lighter powder blue and in a different fabric, so they "wave in the wind more" than the darker blue, stiffer eyebrows on the original Phanatic. Ex. 68 at 45:5-23, 50:19-24 (S. Brandreth May 21, 2020 Dep. Tr.); Ex. 21 at 67:7-8 (T. Burgoyne Feb. 13, 2020 Dep. Tr.).

**RESPONSE:**  Disputed that any variation between the eyebrows of the Phanatic and P2 is significant relative to the overall design or otherwise

---

[6] David Zung is an outside expert with decades of experience in the creative industries designing characters.  Mr. Zung analyzed images of the Phanatic and P2 and concluded that the differences between P2 and the Phanatic were too insignificant to set P2 apart as a new creative work, whether in a marketplace or from an artistic point of view.  No expert has rebutted Mr. Zung's opinions.  HESUF ¶ 100.  The Declaration of David Zung in support of H/E's Motion for Summary Judgment and Opposition to The Phillies' Motion for Partial Summary Judgment and Motion to Dismiss ("Zung Decl.") is submitted herewith.

original.  *See* HESUF ¶¶ 94-100; Zung Report; Zung Supplemental Report.

c.      **Eyelashes.** P2's eyelashes are star-shaped and a lighter pink, as compared to the purple, scalloped eyelashes of the original Phanatic. Ex. 68 at 50:25-51:13 (S. Brandreth May 21, 2020 Dep. Tr.); Ex. 21 at 67:8-10 (T. Burgoyne Feb. 13, 2020 Dep. Tr.).

**RESPONSE:** Disputed that any variation between the eyelashes of the Phanatic and P2 is significant relative to the overall design or otherwise original.  *See* HESUF ¶¶ 94-100; Zung Report; Zung Supplemental Report.

d.      **Eyes.** P2's eyes are round, with oval pupils, which is the opposite of the original Phanatic, which had oval eyes with round pupils. Ex. 68 at 51:14-19 (S. Brandreth May 21, 2020 Dep. Tr.); Ex. 21 at 67:11-15 (T. Burgoyne Feb. 13, 2020 Dep. Tr.).

**RESPONSE:** Disputed that any variation between the eyes of the Phanatic and P2 is significant relative to the overall design or otherwise original.  *See* Zung Report.  The choice of eye shape was also deliberately intended to keep the exact same overall impression as the Phanatic—referred to by Scott Brandreth as the "perpetual look of surprise." Montclare Ex. 13 (68:3-13); *see* HESUF ¶¶ 94-100.

e.    **Head Shape.** P2's head is wider and "noticeably bigger" than the original Phanatic. Ex. 68 at 52:7-15 (S. Brandreth May 21, 2020 Dep. Tr.).

**RESPONSE:** Disputed that any variation between the head shape of P1 and P2 is significant relative to the overall design or otherwise original. *See* Zung Report; HESUF ¶¶ 94-100  Notably, the difference in circumference between the Phanatic and P2 is only one inch. Zung Supplemental Report.

f.    **Snout.** P2's snout is shorter and cylindrical, with no ring of feathers at the base of the snout. In contrast, the original Phanatic has a longer, conical snout with feather ring at the base. Ex. 68 at 51:20-52:6 (S. Brandreth May 21, 2020 Dep.); Ex. 21 at 67:10-11 (T. Burgoyne Feb. 13, 2020 Dep. Tr.).

**RESPONSE:**  Disputed that any variation between the snout shape of the Phanatic and P2 is significant relative to the overall design or otherwise original.  *See* HESUF ¶¶ 94-100; Zung Report; Zung Supplemental Report.

g.    **Hands.** P2's hands are "operable" in that they are not connected to the "wing tips" at the end of P2's arms. Ex. 68 at 55:13-25 (S. Brandreth May 21, 2020 Dep. Tr.).

**RESPONSE:**  Disputed that any variation between the hands of the Phanatic and P2 is significant relative to the overall design or otherwise original.  *See* HESUF ¶¶ 94-100; Zung Report; Zung Supplemental

Report.  The Phillies themselves acknowledged during the design process that P2's hands would be "very similar to the Phanatic's current hands." Montclare Ex. 84 (D111/PHAN0043240).

h.     **Wings.** P2 has "wing tips" that extend past its hands, as well as feathers under its arms to add to the impression of wings. Ex. 68 at 55:10-20 (S. Brandreth May 21, 2020 Dep. Tr.); Ex. 21 at 67:16-17 (T. Burgoyne Feb. 13, 2020 Dep. Tr.). The original Phanatic costume did not have wings. Ex. 2 at 74:20-75:17 (B. Erickson Feb. 7, 2020 Dep. Tr.).

**RESPONSE:** Disputed that any variation between the arms of the Phanatic and P2 is significant relative to the overall design or otherwise original.  *See* HESUF ¶¶ 94-100; Zung Report; Zung Supplemental Report.

i.     **"Duck Butt."** As compared to the original Phanatic, P2 has a larger, "duck butt" allowing the performer to "swing it around a little bit more." Ex. 68 at 54:10-21 (S. Brandreth May 21, 2020 Dep. Tr.). It is "longer," "bigger," and "angles up." Ex. 68 at 84:23-85:5 (S. Brandreth May 21, 2020 Dep. Tr.).

**RESPONSE:** Disputed that any variation between the backside of the Phanatic and P2 is significant relative to the overall design or otherwise original.  *See* HESUF ¶¶ 94-100; Zung Report; Zung Supplemental Report.

j.      **Tail.** P2's tail is a lighter "powder blue" and is made of a new fabric that

makes it "shapeable" as compared to the dark blue ostrich feather tail of

the original Phanatic. Ex. 68 at 45:5-18; 46:16-18 (S. Brandreth May 21,

2020 Dep. Tr.). The original Phanatic costume had feathers for its tail. Ex.

2 at 69:7-70:7 (B. Erickson Feb. 7, 2020 Dep. Tr.).

**RESPONSE:** Disputed that any variation between the tail of the Phanatic

and P2 is significant relative to the overall design or otherwise original.

*See* HESUF ¶¶ 94-100; Zung Report; Zung Supplemental Report.


k.      **Stockings.** P2 wears stockings that mimic those used by players in The

Phillies' 1948 season, in contrast to the original Phanatic's stirrup style

leggings. Ex. 68 at 53:2-8 (S. Brandreth May 21, 2020 Dep. Tr.); Ex. 21 at

67:17-21 (T. Burgoyne Feb. 13, 2020 Dep. Tr.).

**RESPONSE:**  Disputed that this constitutes a variation between the

Phanatic and P2, let alone an original variation.   HESUF ¶¶ 94-100; Zung

Report.  The Phanatic has also worn those same blue stockings (D98,

PHAN0002572) and the Phanatic's clothing was intended to be

interchangeable such that minor variations in the Phanatic's outfit do not

constitute a change to the Phanatic's design.  HESUF ¶ 31; Erickson Decl.

¶ 8.  Also, The Phillies concede that the design of the stockings "mimics"

prior art, *i.e.* the stockings used by players in The Phillies' 1948 season.

l.      **Shoes.** P2 wears red shoes, without shoelaces, and with a logo of the

Liberty Bell on the side, in contrast to the original Phanatic's green shoes

with a Phillies' "P" logo and laces. Ex. 68 at 53:9-54:5 (S. Brandreth May

21, 2020 Dep. Tr.); Ex. 21 at 67:22-24 (T. Burgoyne Feb. 13, 2020 Dep.

Tr.).

**RESPONSE:** Disputed that any variation between the shoes of the

Phanatic and P2 is significant relative to the overall design or otherwise

original.  HESUF ¶¶ 94-100; Zung Report; Zung Supplemental Report.

Also, the Phanatic's clothing was intended to be interchangeable such that

minor variations in the Phanatic's outfit do not constitute a change to the

Phanatic's design.  HESUF ¶ 31; Erickson Decl. ¶ 8.


m.      **Phillies Uniform.** P2 wears a current version of The Phillies' jersey,

featuring PHILLIES in script with stars dotting the eyes. Ex. 68 at 52:16-

22 (S. Brandreth May 21, 2020 Dep. Tr.).

**RESPONSE:**  Disputed that the decision to have P2 wear the current

version of The Phillies' jersey constitutes a variation between the Phanatic

and P2, let alone an original variation.  *See* HESUF ¶¶ 94-100; Zung

Report.  The Phanatic has worn the same version of The Phillies' jersey

and the Phanatic's clothing was intended to be interchangeable such that

minor variations in the Phanatic's outfit do not constitute a change to the

Phanatic's design.  HESUF ¶ 31; Erickson Decl.  ¶ 8.  Also, changes to

that jersey over time that reflect updates in The Phillies' branding do not

constitute a change to the Phanatic character design.  *See* Zung Report. The Phillies concedes that this variation is not significant enough to constitute a derivative work as a matter of law.  Montclare Ex. 33, at p. 17.

96.    The P2 costume was built by costume builder Randy Carfagno and delivered to The Phillies in February 2020. Ex. 19 at 47:13-22 (S. Brandreth Feb. 28, 2020 Dep. Tr.); Ex. 21 at 70:6-8 (T. Burgoyne Feb. 13, 2020 Dep. Tr.).

**RESPONSE:**  Not disputed, although changes may have been made after that time frame.

97.    The photos in Exhibit A attached to Scott Brandreth's December 10, 2020 Declaration accurately depict the P2 costume as worn by Tom Burgoyne. Dec. 10, 2020 Scott Brandreth Declaration ¶ 3 & Ex. A.

**RESPONSE:**  Not disputed for purposes of this motion.  H/E has not had the opportunity however to inspect the P2 costume due to travel complications caused by COVID-19.

98.    The following are photos of the front, side, and back views of the original Phanatic costume on the left and the front, side, and back views of the final version of the P2 costume on the right:

| Original Phanatic, Ex. 7 (Front: HE000016; Side: HE000014; Back: HE000015) | P2, Brandreth Declaration, Ex. A (Front: PHAN0042999; Side: PHAN0043572; Back: PHAN0043571) |
|---|---|



*See also* Ex. 7 (P6, Original Phanatic Photos); Dec. 10, 2020 Scott Brandreth Declaration ¶ 3 & Ex. A.

**RESPONSE:**  Not disputed that the photographs purport to include front, side, and back

views from 1979 of the Phanatic costume on the left, and front, side, and back views of P2 on the right; however, this is immaterial for purposes of the motion.

The Phillies seek to divorce the side-by-side comparison from context, and limit the Court's analysis to a contrived comparison of recent photographs of P2 to a few decades-old grainy photographs of the Phanatic. The Phillies concede that the Phanatic design did not significantly change prior to P2, and that the Phanatic costume that appeared as recently as last year is the same work as the original Phanatic costume as a matter of law. Montclare Ex. 33, at p. 17 H/E was never asked to alter the design. HESUF ¶ 70; Erickson Decl. ¶ 22.

99.     Exhibit 69 depicts larger versions of photos of the front, side, and back views, as well as a face close-up of the original Phanatic costume on the left, and the front, side, and back views, as well as a face close-up of the final version of the P2 costume on the right. Ex. 69 (Front, Side, Back, Face Photos from Ex. 7 (P6) and Exhibit A to the 12/10/20 Brandreth Declaration).

**RESPONSE:** Not disputed that the photographs purport to include front, side, and back views from 1979 of the Phanatic costume on the left, and front, side, and back views of P2 on the right; however, this is immaterial for purposes of the motion.

The Phillies seek to divorce the side-by-side comparison from context, and limit the Court's analysis to a contrived comparison of recent photographs of P2 to a few decades-old grainy photographs of the Phanatic. The Phillies concede that the Phanatic design did not significantly change prior to P2, and that the Phanatic costume that appeared as recently as last year is the same work as the original Phanatic costume as a matter of law. Montclare Ex. 33, at p. 17. H/E was never asked to alter the design. HESUF ¶ 70; Erickson Decl. ¶ 22.

12829182.2

100.     The P2 costume, with Mr. Burgoyne inside, debuted on February 23, 2020, at The

Phillies spring training facility in Clearwater, Florida. Ex. 70 (PHAN0043203, Feb. 23, 2020

Inquirer Article); Ex. 18 at 127:14-129:6 (D. Buck Apr. 23, 2020 Dep. Tr.).

**RESPONSE:**  Not disputed for purposes of the motion.

101.     Mr. Sapp and in-house Phillies artists prepared additional artwork portraying P2

in several different poses, including those depicted in Exhibit B to Scott Brandreth's December

10, 2020 Declaration. Dec. 10, 2020 Brandreth Declaration ¶¶ 3-4 & Ex. B (P2 Artwork).

**RESPONSE:**  Not disputed, but immaterial for purposes of the motion.

102.     All of the P2 Artwork depicted in Exhibit B to Scott Brandeth's December 10,

2020 Declaration was prepared before June 15, 2020. Dec. 10, 2020 Brandreth Declaration ¶ 5 &

Ex. B.

**RESPONSE:**  Disputed that the P2 Artwork bates stamped PHAN0043589,

PHAN0043590, PHAN0043591, and PHAN0043592, were prepared before June 15, 2020, as the

proffered evidence does not support this proposition.  The Phillies notably did not produce this

artwork until November 18, 2020, several months after June 15, 2020 and after the close of

discovery.  To the extent that such artwork was in fact prepared after June 15, 2020, then they

are unauthorized derivative works of the Phanatic.

DATED:    January 20, 2021        MITCHELL SILBERBERG & KNUPP LLP
           New York, New York

By: <u>/s/ Paul D. Montclare</u>
     Paul D. Montclare (*pdm@msk.com*)
     Leo M. Lichtman (*lml@msk.com*)
     Elaine Nguyen (*eln@msk.com*)
     437 Madison Avenue, 25th Floor
     New York, NY 10022
     Telephone: (212) 509-3900
     Facsimile:  (212) 509-7239

     J. Matthew Williams (*mxw@msk.com*)
     1818 N St. NW, 7th Floor
     Washington, DC 20036
     Telephone: (202) 355-7900
     Facsimile: (202) 355-7899

     *Attorneys for Defendants and*
     *Counterclaim Plaintiffs Harrison/Erickson*
     *Incorporated, Harrison Erickson, Wayde*
     *Harrison, and Bonnie Erickson*

12829182.2