# EXHIBIT 86

Page 1

```
 1

 2        IN THE UNITED STATES DISTRICT COURT

 3       FOR THE SOUTHERN DISTRICT OF NEW YORK

 4
     THE PHILLIES, a Pennsylvania    )
 5   limited partnership,            )
                                     )
 6                   Plaintiff,      )
                                     ) Civil Action No.
 7             vs.                   ) 19-7239
                                     )
 8   HARRISON/ERICKSON,              )
     INCORPORATED, a New York        )
 9   corporation, HARRISON ERICKSON,)
     a partnership, and WAYDE        )
10   HARRISON and BONNIE ERICKSON,   )
                                     )
11                   Defendants.     )
     --------------------------------)
12

13

14            ****CONFIDENTIAL****

15       VIDEOTAPED-TELEPHONIC DEPOSITION

16             TAKEN REMOTELY VIA

17     VIDEOCONFERENCE AND TELECONFERENCE

18                     OF

19               DAVID RAYMOND

20    Federal Rule of Civil Procedure 30(b)(6)

21            Thursday, May 7, 2020

22

23

24   Reported by:
     FRANCIS X. FREDERICK, CSR, RPR, RMR
25   JOB NO. 179894
```

```
                                                    Page 2                                                      Page 3
 1                                                         1
 2                                                         2   A P P E A R A N C E S:
 3                                                         3
 4                                                         4         (All Counsel and Participants
 5        May 7, 2020                                      5         present via videoconference and
 6        4:25 p.m.                                        6         teleconference in compliance with
 7                                                         7         COVID-1 restrictions.)
 8        CONFIDENTIAL videotaped deposition               8
 9   of DAVID RAYMOND, pursuant to Federal                 9   DUANE MORRIS
10   Rule of Civil Procedure 30(b)(6), before             10   Attorneys for Plaintiff
11   Francis X. Frederick, a Certified                    11        30 South 17th Street
12   Shorthand Reporter, Registered Merit                 12        Philadelphia, Pennsylvania 19103
13   Reporter and Notary Public of the States             13   BY:  TYLER MARANDOLA, ESQ.
14   of New York and New Jersey.                          14        DAVID WOLFSOHN, ESQ.
15                                                        15
16                                                        16   MITCHELL SILBERBERG & KNUPP
17                                                        17        437 Madison Avenue
18                                                        18        New York, New York 10022
19                                                        19   BY:  PAUL MONTCLARE, ESQ.
20                                                        20        LEO LICHTMAN, ESQ.
21                                                        21           - and -
22                                                        22   MITCHELL SILBERBERG & KNUPP
23                                                        23        1818 N Street N.W.
24                                                        24        Washington, DC 20036
25                                                        25   BY:  MATTHEW WILLIAMS, ESQ.
```

```
                                                    Page 4                                                      Page 5
 1                                                         1        PROCEEDINGS - CONFIDENTIAL
 2   A P P E A R A N C E S:  (Cont'd.)                     2         THE VIDEOGRAPHER:  Good afternoon.
 3                                                         3   My name -- one second.
 4   ALSO PRESENT:                                         4         My name is Phil Rizzuti.  I am the
 5        PHIL RIZZUTI, Videographer                       5   legal videographer in association with
 6                                                         6   TSG Reporting, Inc.  Due to the severity
 7                                                         7   of the COVID-19 and following the
 8                                                         8   practice of social distancing I will not
 9                                                         9   be in the same room with the witness.
10                                                        10   Instead, I will record this videotaped
11                                                        11   deposition remotely.  The reporter,
12                                                        12   Francis Frederick, also will not be in
13                                                        13   the same room and will swear the witness
14                                                        14   remotely.
15                                                        15         Do all parties stipulate to the
16                                                        16   validity of this video recording and
17                                                        17   remote swearing and that it will be
18                                                        18   admissible in the courtroom as if it had
19                                                        19   been taken following Rule 30 of the
20                                                        20   Federal Rules of Civil Procedure and the
21                                                        21   state's rules where this case is
22                                                        22   pending?
23                                                        23         MR. MONTCLARE:  So stipulated on
24                                                        24   behalf of the defense.
25                                                        25         MR. MARANDOLA:  Tyler Marandola
```

Page 6

```
 1    PROCEEDINGS - CONFIDENTIAL
 2   for The Phillies.  We agree.
 3          THE VIDEOGRAPHER:  Okay.  This is
 4   the start of media labeled number one of
 5   video recorded of Mr. David Raymond in
 6   the matter of The Phillies, a
 7   Pennsylvania limited partnership versus
 8   Harrison/Erickson, Inc., a New York
 9   corporation, et al. in the United States
10   District Court for the Southern District
11   of New York.  Case number 1-19-cv-07239
12   (VM).
13          My name is -- this deposition is
14   being held on May 7th, 2020 at
15   approximately 4:27 p.m.  My name is Phil
16   Rizzuti.  I am the legal video
17   specialist from TSG Reporting, Inc.  The
18   court reporter is Francis Frederick in
19   association with TSG Reporting.
20          Counsel, please introduce
21   yourselves.
22          MR. MONTCLARE:  Yes.  This is Paul
23   Montclare on behalf of the defense.
24          MR. WILLIAMS:  Matthew Williams on
25   behalf of the Defendants.
```

Page 7

```
 1    PROCEEDINGS - CONFIDENTIAL
 2          MR. MARANDOLA:  Tyler Marandola on
 3   behalf of Plaintiff, The Phillies.
 4          THE VIDEOGRAPHER:  Will the court
 5   reporter please swear in the witness.
 6          (Witness sworn.)
 7          THE VIDEOGRAPHER:  Could you turn
 8   up the volume at all, Mr. Raymond, if
 9   you can.
10          MR. MONTCLARE:  Yeah, I'm having a
11   real difficulty hearing you.
12          THE WITNESS:  Okay.  Is that
13   better there?  I mean, it's not my
14   volume, per se.  It might be the
15   distance of the phone.
16          THE VIDEOGRAPHER:  This is the
17   videographer.  You're coming in loud and
18   clear now so if you could just keep that
19   same configuration.
20          THE WITNESS:  Okay.  Great.
21          MR. MARANDOLA:  Paul, just at the
22   outset, Mr. Raymond is the designee of
23   The Phillies on topic -- or a portion of
24   topic 7(a) from your March 10th e-mail,
25   the creative contributions by, for, or
```

Page 8

```
 1    PROCEEDINGS - CONFIDENTIAL
 2   on behalf of The Phillies to the
 3   Phanatic character.
 4          MR. MONTCLARE:  I agree.  And we
 5   will mark that e-mail chain into the
 6   record so we have it for everybody to
 7   refer to.
 8          I would say also that this is in
 9   response to a Rule 30(b)(6) demand and
10   you have produced this witness as a
11   knowledgeable person on behalf of The
12   Phillies even though he is not an
13   employee; is that correct?
14          MR. MARANDOLA:  That's correct.
15   And I don't know if you're going to mark
16   the e-mail chain in this deposition as
17   well but just to be clear, topic 7(a)
18   covered both the costume and the
19   character.  Mr. Raymond's testimony is
20   limited to the character element of
21   that.
22          MR. MONTCLARE:  I understand.
23   Understood.
24          I'm not sure what we marked this
25   as, which exhibit number it is.  Is it
```

Page 9

```
 1    D. RAYMOND - CONFIDENTIAL
 2   115?  Leo, do you know what number it
 3   is?
 4          MR. LICHTMAN:  Yes, this is Leo.
 5   D-115 it was previously marked as.
 6          MR. MONTCLARE:  Okay.  All right.
 7   So we're ready to get rolling.
 8          * * *
 9   D A V I D   R A Y M O N D,  called as a
10      witness, having been duly sworn by a
11      Notary Public, was examined and
12      testified as follows:
13   EXAMINATION BY
14   MR. MONTCLARE:
15       Q.   Mr. Raymond, we've met before.
16   You had your deposition taken in this case; is
17   that correct?
18       A.   Yes.
19       Q.   And at that time you were not
20   acting as a designee of The Phillies but you
21   were acting as an individual who was
22   testifying in accordance with the subpoena; is
23   that correct?
24       A.   Yes.
25       Q.   Did you review your prior
```

Page 14

D. RAYMOND - CONFIDENTIAL

passionate Philadelphia sports fan, specifically the Phillies. He's kind of a perpetual ten-year-old boy. ADD. He's frenetic. And the personality that I was involved in creating was a mash-up of favorite cartoon characters and a love of slapstick humor and his ability to connect through using those -- you know, those focuses and those pieces of his personality to connect to Philadelphia fans.

He was -- of course, like the fans, he wore his emotions on his sleeve and he was up and down with the team. And he was entertaining and happy-go-lucky when The Phillies were winning. And he was depressed and frustrated when The Phillies were losing.

Q. Okay. Now, I believe that you were the first performer inside the Phanatic costume, correct?

A. Yes.

Q. And you first performed on April 25th, 1978, correct?

A. Yes.

Q. How many bits of the character

Page 15

D. RAYMOND - CONFIDENTIAL

traits that you just mentioned existed on that date?

A. Well, in the beginning I didn't -- I did not have more direction than from Bill Giles to make sure I was having fun, but I had to make sure that it was G-rated fun, so I was clear that I was supposed to be -- I can exercise my fun and what was fun to me as long as it was good for family entertainment.

And I just went out and really focused that first day, the very first day, on being as frenetic and fast moving as I could. And, you know, the character Daffy Duck was very instrumental in developing that frenetic movement and personality.

So I tried to get to as many people as I could, hug and kiss them, move on. We had -- there was a picnic area in the corner of the stadium -- hold on. I apologize. My phone is ringing there.

There's a picnic area --

Q. Just so we're clear -- I want to move on. Just so we're clear, I'm just talking about on this first day, April 25th,

Page 16

D. RAYMOND - CONFIDENTIAL

1978.

A. Yes, yes.

Yeah. So if you could imagine not having any direction and needing to go out dressed as the Phanatic looked that first day, I just pulled from those cartoon characters and tried to be frenetic and bouncing around.

I found that when I tripped and fell, not on purpose, everybody laughed. So I decided I needed to fall down more.

So the start of it was all about the mash-up of being a Phillies fan, my favorite cartoon characters, slapstick humor from The Three Stooges. Those were my inspirations. And those things developed surprisingly quickly over time into a fully-formed personality that the Phanatic continues to portray today.

Q. When did that fully-formed personality -- when was that completed?

A. It's hard to put a finger on the exact time, but I would say early on in the first two or three months that was the discovery period. Well into the first season

Page 17

D. RAYMOND - CONFIDENTIAL

I would say in August, maybe September it became much easier for me as the performer to put the costume on and really become that personality that I had created with some trial and error.

Q. Okay. So you created this personality. And did you ever write down any of the traits that you just testified about as being part of the character of the Phanatic?

MR. MARANDOLA: Objection, vague.

A. Certainly not in the --

Q. I didn't hear your answer. I didn't hear your answer, sir.

A. Yeah. There was an objection but I wanted to make sure that you heard the objection.

Q. I did but it's okay.

MR. MONTCLARE: Was there an instruction not to answer?

MR. MARANDOLA: The objection was because it was vague.

A. I'm sorry. Ask the question again, Mr. Montclare. I'm sorry.

Q. I'll just have the reporter read

Page 50
D. RAYMOND - CONFIDENTIAL
for 16 years after this. Okay? So I'm assuming they approved of the guy who made the character actually loved and beloved by the City of Philadelphia and took something that they drew, just drew a drawing up, gave a big heap of fur, and then I brought it to life and made it a special personality that everybody believes to this day to be my credit for doing, had nothing to do with Bonnie and Wade. They weren't involved in developing the personality. They never gave me any instruction other than saying don't take acting lessons, it will screw you up.

So I don't have any knowledge of this particular clause. But based on what The Phillies did I'm assuming that Bonnie and Wade approved of the performer that The Phillies went and found, the Phillies gave the opportunity to show his skill and his talent, The Phillies allowed him to find a backup performer and help train that backup performer and put him in a position to be successful and consistently drive this personality that is beloved by Philadelphia and has nothing to do

Page 51
D. RAYMOND - CONFIDENTIAL
with anything that Bonnie and Wade ever did, Mr. Moncreif, ever, other than telling me don't take acting lessons, don't do that. That will screw you up. You are doing just fine. And in Wade's own notes saying that David has created this sensitive and wonderful character.

So I don't need to look at this document anymore. I don't have any knowledge of it. I'm here to tell you what The Phillies brought to the party and what Bonnie and Wade did not bring. And I'm happy to tell you about that.

Q. To your knowledge, sir, is there any agreement that says that The Phillies, as the licensee, had the right to select their own performer without the consent of the licensor, Harrison/Erickson?

MR. MARANDOLA: Objection. Outside the scope of the 30(b)(6) notice. Objection, lack of foundation.

Mr. Raymond, you can answer in your personal capacity to the extent you know.

Page 52
D. RAYMOND - CONFIDENTIAL
A. I just think it's clear that The Phillies did the right thing and were approved to -- if there was a need to get approval, it was approved.

But I have no knowledge specifically of these -- of this information until now.

Q. Do you know if there's any document that states -- withdrawn.

Do you know if there's any contract that states that prior to 1984 that The Phillies own the copyright to Phanatic character?

MR. MARANDOLA: Objection. Outside the scope of the 30(b)(6) notice. Objection, lacks of foundation.

Mr. Raymond, you can answer in your personal capacity.

A. I'm not aware of any of those agreements.

I have a hard stop at 5:30.

Q. Well, your counsel said they wanted to go late so we'll have to come back.

A. That's fine. I've been clear that

Page 53
D. RAYMOND - CONFIDENTIAL
I have a call that I need to prep for at 6:00. And, you know, I -- and it's about dinner time so it's -- I've got to finish by 5:30. I was supposed to go on earlier.

MR. MONTCLARE: Would the court reporter --

MR. WOLFSOHN: I don't know what -- Dave, I don't know what Mr. Montclare is referring to. We did not want to take an hour for lunch and all the other breaks.

MR. MONTCLARE: I wanted to adjourn this deposition because I said we wouldn't have time.

Could the court reporter please tell me how much time we've been on the record.

THE VIDEOGRAPHER: Hold on one second.

MR. MONTCLARE: From the beginning of the day, sir.

THE VIDEOGRAPHER: The first deposition was three hours and 36 minutes. And we've been on the record